**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90004 (MXM)<br><br>(Jointly Administered) |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>AURORA SECURITIES, *et al.*,<br><br>Defendants. | Adv. Pro. No.: ____ |

**PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, the above-captioned debtors and debtors in possession bring this adversary proceeding to temporarily stay certain proceedings involving non-debtors to protect the integrity of these pending Chapter 11 Cases and to preserve the Debtors' ability to conduct an orderly restructuring for the benefit of all creditors. Based on the facts set forth in this complaint ("Complaint"), the Court should grant injunctive relief.

## I. INTRODUCTION

1. Founded in 2016, Inspired Healthcare Capital, LLC (the "Debtor Sponsor")[1] and its affiliated and interrelated entities (collectively, the "Company" or "Debtors") acquires or

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly



NA_DECHERT.96265555.3

develops and oversees upscale Senior Living Communities ("Communities") throughout the country.

2. Luke Lee was a co-founder of the Company and previously served as the Chief Executive Officer of the Debtor Sponsor.

3. To raise capital to fund the acquisition and development of the Communities, the Debtors raised funds through: (1) ten Debtor-fund entities formed as subsidiaries of Debtor Sponsor (such funds the "Investment Funds") and (2) Delaware statutory trusts (each, a "DST"). The Investment Funds raised over $390 million through private-placement offerings of equity or debt (depending on the Investment Fund) to investors ("Fund Investors"). Additionally, the Debtors sold the beneficial interests of the DST (such interests the "DST Interests") pursuant to private-placement offerings to investors ("DST Investors" and together with Fund Investors, the "IHC Investors").

4. Since 2020, Emerson Equity LLC as managing broker-dealer (the "Managing Broker-Dealer") and various soliciting dealers and recommending advisors (collectively, the "Soliciting Dealers" and together with the Managing Broker-Dealer, the "Broker-Dealers") assisted the Debtors with marketing these private placement offerings to the Fund Investors and DST Investors. The Broker-Dealers at relevant times acted through respective officers, directors, employees, affiliated and associated individual brokers, and other agents (solely in such capacity, "Broker-Dealer Affiliated Persons").

---

administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

5. IHC Investors may have claims—which claims may be estate claims—against the Broker-Dealers, the Broker-Dealer Affiliated Persons and Luke Lee (collectively, the "Non-Debtor Defendants").

6. Certain IHC Investors have filed arbitration actions with the Financial Industry Regulatory Authority (the "FINRA Arbitration Actions") against the Broker-Dealers and Broker-Dealer Affiliated Persons.

7. Other persons or entities may also eventually file lawsuits against the Broker-Dealers and/or Mr. Lee.

8. The FINRA Arbitration Actions are listed in **Schedule 1** (the "Listed Actions")**.** Even where the Debtors are not named as defendants in the Listed Actions, these actions directly impact the Debtors because certain Broker-Dealers (on behalf of themselves and Affiliated Persons) and Mr. Lee have asserted, or may assert, indemnification claims against the Debtors.

9. Because the Debtors are obligated to defend, indemnify and/or insure these Non-Debtor Defendants, they share an identity of interest with the Debtors that justifies extending the automatic stay.

10. Furthermore, certain of the claims asserted in the Listed Actions against both Debtors and Non-Debtor Defendants are based on the same set of facts so it is not feasible to separate the claims, arguments, or legal theories pertaining exclusively to a Non-Debtor Defendant without affecting the Debtors.

11. The Debtors also believe they have valuable estate claims against certain Non-Debtor Defendants. Absent the relief sought herein, certain creditors could recover directly from the Non-Debtor Defendants outside of these Chapter 11 Cases, limiting the Debtors' ability to collect on estate causes of action against such Non-Debtor Defendants. This would jeopardize an

orderly distribution to creditors pursuant to the Bankruptcy Code's priority scheme. This relief is essential for the Debtors to maximize the value of their assets and operate effectively during these Chapter 11 Cases.

12. The relief sought by this proceeding—staying the continued prosecution of claims and causes of action and related collection efforts against the Non-Debtor Defendants—is critical to channel the litigation that would otherwise be in multiple forums and would effectively erode a potential source of recovery for the Debtors and their stakeholders. The requested injunctive relief would temporarily stay litigation affecting the debtors, thereby preserving insurance proceeds and sources of recovery for creditors in these bankruptcy proceedings. Extending the stay to the claims against the Non-Debtor Defendants supports the Debtors' three primary goals in these cases: (i) ensuring continued stability of day-to-day operations; (ii) maximizing estate value through a comprehensive strategic and investigative process; and (iii) fairly distributing estate proceeds through a confirmed Chapter 11 plan.

## II. **JURISDICTION AND VENUE**

13. This proceeding is brought pursuant to Federal Rules of Bankruptcy Procedure 7001(7) and 7065 and 11 U.S.C. §§ 105(a) and 362. The Debtors seek: (a) declaratory and injunctive relief extending the automatic stay under 11 U.S.C. § 362 to claims against the Non-Debtor Defendants; or, alternatively: (b) injunctive relief under 11 U.S.C. § 105(a) temporarily staying and enjoining the Listed Actions against Non-Debtor Defendants through the effective date of the Chapter 11 plan.

14. The Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas.

15. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (G) (motions to terminate, annul, or modify the automatic stay), (O) (other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship), and (P) (matters arising under Chapter 11 of the Bankruptcy Code).

16. Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409, as the above-captioned Chapter 11 Cases are pending in this Court.

## III. PARTIES

17. Plaintiff Inspired Healthcare Capital Holdings, LLC ("Holdings") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Scottsdale, Arizona. Holdings is the parent entity of the Debtors' enterprise and is a debtor and debtor in possession in the above-captioned Chapter 11 Cases.

18. Plaintiff Inspired Healthcare Capital, LLC (the "Debtor Sponsor") served as the sponsor of the Debtors' investment offerings, including the private placement of equity interests in investment funds (the "Investment Fund Securities") and the DST Interests.

19. On February 2, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. The Debtors continue to operate their businesses and manage their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

20. Luke Lee served as the Chief Executive Officer of the Debtor Sponsor, Inspired Healthcare Capital, LLC, through the Petition Date. Luke Lee is identified in the Listed Actions in connection with the Debtors' securities offerings and business operations.

21. Emerson Equity LLC ("Emerson Equity") is a limited liability company with its principal place of business in Woodland Hills, California. Emerson Equity served as the Managing Broker-Dealer for the Debtors' private placement securities offerings pursuant to an Exclusive Managing Broker-Dealer Agreement dated July 27, 2020 (the "Managing Broker-Dealer Agreement").

22. Aurora Securities is a corporation with its principal place of business in Troy, Michigan and a Soliciting Dealer under the Soliciting Dealer Agreements.

23. LightPath Capital, Inc. is a corporation with its principal place of business in Southlake, Texas and a Soliciting Dealer under the Soliciting Dealer Agreements.

24. Quincy Wells Capital, LLC (in interest of Great Point Capital) is a limited liability corporation with its principal place of business in Chicago, Illinois and a Soliciting Dealer under the Soliciting Dealer Agreements.

25. Realized Financial is a corporation with its principal place of business in Austin, Texas and a Soliciting Dealer under the Soliciting Dealer Agreements.

**IHC Investors**

26. Numerous IHC Investors have filed claims against one or more of the Non-Debtor Defendants. A list of these individuals is included as part of Sealed **Schedule 1** to this Complaint.[2]

[2] To protect the privacy interests of these claimants, Debtors are separately filing a motion to seal the identities of the claimants identified in Schedule 1. Debtors have also omitted their names from the caption of this Complaint to protect their privacy interests while the Court evaluates that motion to seal.

# IV. BACKGROUND

## A. Background on IHC and Chapter 11 Cases

27. Founded in 2016, Inspired Healthcare Capital, LLC (the "Debtor Sponsor") and its affiliated and interrelated entities (collectively, the "Company" or "Debtors") acquire or develop and oversee upscale Senior Living Communities ("Communities") throughout the country.

28. As of the Petition Date, the Company owns (a) 33 operating senior-living facilities located in Texas (4), Illinois (2), Wisconsin (2), Alabama (1), Michigan (2), Connecticut (1), Florida (7), Nevada (3), Georgia (5), Massachusetts (1), Minnesota (1), New Jersey (1), Oregon (2), and Maryland (1), each of which is held by an individual DST or LLC (as discussed below), and (b) two (2) partially completed Communities located in Oregon and three (3) parcels of real property on which senior-living facilities were to be developed located in Arizona (2) and Georgia. In total, the operating Communities have 444 independent-living units, 1,897 assisted-living units, and 776 memory-care units.

29. As of the Petition Date, the Communities are home to approximately 2,620 Residents and employ approximately 1,950 employees, of which approximately 615 are Debtor employees. While the Company owns the Communities, contracts with the Residents, and the licenses to operate the Communities, the day-to-day operations at each Community are handled by third-party management companies.

30. The Company raised capital for acquisitions and working capital in two ways. ***First***, the Company formed and managed Investment Funds (as defined below) that have collectively raised over $390 million through private-placement offerings of equity or debt (depending on the Investment Fund) to investors ("Fund Investors"). Generally, such proceeds were loaned to the Debtor Sponsor to be utilized in its discretion (a) to provide loans to finance senior-housing projects developed by its affiliates (b) to provide short-term bridge financing to its affiliates, and

(c) to invest in real estate assets, including assets acquired from or to be sold to its affiliates. ***Second***, commencing in 2020, the Company raised funds by using Delaware statutory trusts (each, a "DST") as part of an offering to sell the beneficial interests of the DST pursuant to private-placement offerings to investors ("DST Investors"), many of whom were able to receive tax benefits from the structure. Since inception, the Company has raised more than $1.2 billion in cash from 3,300 Fund Investors, 2,300 DST Investors, and 200 Development Investors.

31. On February 2, 2026 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court"). These Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

**B. The Broker-Dealers and Indemnification Obligations**

32. On July 27, 2020, the Debtor Sponsor and Managing Broker-Dealer entered into an Exclusive Managing Broker-Dealer Agreement (the "Managing Broker-Dealer Agreement"), which is attached to this Complaint as Exhibit 1. The Managing Broker-Dealer then entered into separate soliciting dealer agreements or recommending advisor agreements for each offering with the Soliciting Dealers (the "Soliciting Dealer Agreements" and together with the Managing Broker-Dealer Agreement, the "Broker-Dealer Agreements"). The Debtor Sponsor utilized the Broker-Dealers to sell (a) equity securities in or promissory notes from an Investment Fund ("Investment Fund Securities") to the Fund Investors and (b) DST Interests to the DST Investors through a private placement program sponsored by the Debtor Sponsor and run by the Broker-Dealers.

33. The Debtors' indemnification obligations to the Broker-Dealers arise from the Broker-Dealer Agreements. The indemnification obligation runs from the Debtor Sponsor to both the Managing Broker-Dealer and Soliciting Brokers pursuant to the Managing Broker-Dealer Agreement.

34. In Section 8(a) of the Managing Broker-Dealer Agreement, the Debtors agree to indemnification as follows:

> Inspired Healthcare agrees to indemnify and hold harmless Managing Dealer, the Selling Group Members and their respective directors, trustees, officers, partners, members, employees, registered representatives, agents, associated persons, attorneys, accountants and affiliates and each person who controls or is controlled by Managing Dealer or the Selling Group Member, within the meaning of the Securities Act, from and against any and all losses, claims, damages, expenses or liabilities to which Managing Dealer or a Selling Group Member may become subject, under any United States federal or state securities laws and other United States federal or state statutes, common law or otherwise, insofar as such losses, claims damages expenses, or liabilities arise out of or are based upon:
>
> 1. Any untrue statement or alleged untrue statement of a material fact contained in the Memorandum, Authorized Sales Material or in any Application, except any such statement made in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement, to Inspired Healthcare by Managing Dealer or any Selling Group Member, or any omission or alleged omission from the Memorandum, Authorized Sales Material or Application of a material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading, except any such omission made or in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement to Inspired Healthcare by Managing Dealer or any Selling Group Member;
>
> 2. The failure of Inspired Healthcare to comply with any of the applicable provisions of the Securities Act (including, but not limited to, Rule 506 of Regulation D), the Exchange Act or the regulations thereunder, or any applicable laws, rules or regulations of any state or other jurisdiction (other than as a result of breach of this Agreement or noncompliance with applicable securities laws or FINRA rules or regulations by the Managing Dealer or any other Selling Group Member);
>
> 3. Any unauthorized verbal or written representations in connection with Offerings made by Inspired Healthcare, or its employees, affiliates or agents (other than by Managing Dealer, Selling Group Members or each of their

employees, registered representatives, agents or affiliates) in violation of the Securities Act, or any other applicable federal or state securities laws and regulations;

4. The disqualification, within the meaning of Rule 506(d) of Regulation D, of Inspired Healthcare, any predecessor of Inspired Healthcare, any affiliated issuer of Inspired Healthcare any director or executive officer or other officer of Inspired Healthcare participating in the Offering, any general partner of Inspired Healthcare, any managing member of the general partner of Inspired Healthcare, any beneficial owner of 20% or more of the outstanding voting securities of Inspired Healthcare, any promoter connected with Inspired Healthcare in any capacity, and any person other than Selling Group Members employed by Inspired Healthcare who has been or will be paid remuneration for solicitation of purchasers, during the term of the Offerings, or the failure to disclose any such matter required to be disclosed under Rule 506(e); or

5. The breach by Inspired Healthcare of any representation, warranty or covenant made by Inspired Healthcare in this Agreement.

35. The Soliciting Brokers are indemnified in the Managing Broker-Dealer Agreement through their inclusion in the definition of Selling Group Member in the Managing Broker-Dealer Agreement.

36. Moreover, the Broker-Dealer Affiliated Persons are in turn indemnified by their respective affiliated Broker-Dealers and under customary terms of employment such that claims against such Persons acting in such capacity are effectively claims against such Broker-Dealer.

37. Additionally, upon information and belief, in Section 8(a) of the Soliciting Dealer Agreements, the Managing Broker-Dealer agrees to indemnification, which effectively mimics the indemnification contained in the Managing Broker-Dealer Agreement.

38. Accordingly, the Non-Debtor Defendants party to the various indemnification agreements with the Debtors can assert an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Listed Actions.

39. Luke Lee served as CEO of the Debtor Sponsor and was expressly authorized to act as an agent of the Debtor in connection with the private placement offerings. The Debtors anticipate that Lee will seek indemnification from the Debtors given his former role as CEO.

**C. The Debtors' Estate Claims**

40. The Debtors also may have valid claims against some Non-Debtor Defendants.

41. Third-party claims against Luke Lee will erode the Debtors' Directors' and Officers' liability insurance coverage. As third-party claims against Luke Lee deplete his insurance coverage, Debtors will face greater prospects of not recovering on their own claims against Mr. Lee.

42. Third-party claims against the Broker-Dealers will erode their respective insurance coverage. As third-party claims against the Broker-Dealers deplete their insurance coverage, Debtors will face greater prospects of not recovering on their own claims against Broker-Dealers.

43. The parties bringing claims against the Non-Debtor Defendants may also be creditors of the Debtors. Allowing such parties to assert claims against the Non-Debtor Defendants circumvents the bankruptcy process and results in a race to the courthouse for the DST Investors and Fund Investors.

**D. Insurance Policies**

44. Prior to the Petition Date, Realty Cap Advisors, LLC ("Realty Cap"), the non-debtor parent of Inspired Healthcare Capital Holdings, LLC, maintained a $10 million tower of claims-made directors and officers ("D&O") liability insurance for the policy period June 20, 2024 to June 20, 2025 (collectively, the "D&O Policies"), consisting of: (a) a primary policy issued by Endurance American Insurance Company ("Sompo"), (the "Sompo Policy"), providing a $2.5 million aggregate limit of liability; (b) an excess policy issued by Professional Solutions Insurance Company and Nexus Specialty Inc. (collectively, "Nexus"), (the "Nexus Policy"), providing $2.5

million in excess coverage above the Sompo Policy; (c) an excess policy issued by Hudson Insurance Company ("Hudson") (the "Hudson Policy"), providing $2.5 million in excess coverage above $5 million in underlying insurance; and (d) an excess policy issued by Capitol Specialty Insurance Corporation ("CapSpecialty"), (the "CapSpecialty Policy"), providing $2.5 million in excess coverage above $7.5 million in underlying insurance.

45. True and correct copies of the D&O Policies are attached as Exhibits to the Motion for Entry of an Order Authorizing the Use of Proceeds of Directors and Officers Liability Insurance Policies filed by Luke Lee at Docket No. 782 in the above-captioned Lead Bankruptcy Case (the "Lee D&O Motion"), and are incorporated herein by reference.

46. The D&O Policies contain three distinct insuring agreements. Insuring Agreement A ("Side A") covers loss incurred by Insured Persons that is not indemnified by the Company. Insuring Agreement B ("Side B") covers loss for which the Company indemnifies Insured Persons. Insuring Agreement C ("Side C") covers loss the Company becomes legally obligated to pay on account of a claim made directly against it as an entity.

47. The Debtors are Insureds under the D&O Policies. The Sompo Policy's General Terms and Conditions define "Company" to include "the Named Insured and its Subsidiaries, including any such organization as a debtor-in-possession under United States bankruptcy law." Inspired Healthcare Capital, LLC is among Realty Cap's Subsidiaries, and, as a debtor-in-possession, falls within the definition of "Company" under the D&O Policies. Accordingly, the Debtors are Insureds under the D&O Policies with respect to Side B coverage—for indemnification obligations the Debtors have paid or may become obligated to pay on behalf of Insured Persons, including Mr. Lee—and Side C coverage for claims asserted directly against the Debtors as entities.

48. The D&O Policies are "wasting" policies. The aggregate limit of liability available under the D&O Policies is reduced and may be fully exhausted by the payment of Defense Costs. The Sompo Policy expressly provides that "Defense Costs are part of and not in addition to the applicable Limit of Liability and the payment by the Insurer of Defense Costs reduces and may even exhaust such applicable Limit of Liability." Each dollar of the $10 million aggregate limit consumed by any payment under any insuring agreement—whether for defense costs, settlements, or judgments—is permanently unavailable for any other purpose under the D&O Policies, including any future Side B or Side C payments to which the Debtors, as Insureds, would otherwise be entitled.

49. The Debtors also believe they hold estate claims against Mr. Lee arising from his conduct as Chief Executive Officer of the Debtor Sponsor in connection with the private placement offerings. To the extent any such claims are viable, any estate recovery against Mr. Lee on those claims would ultimately be drawn from the same D&O Policy aggregate limit.

**E. The Listed Actions**

50. The Listed Actions claim damages related to the sale or purchase of DST Interests and Investment Fund Securities, against the Debtors and/or the Non-Debtor Defendants.

51. In certain of the Listed Actions, no Debtor is named as a defendant, and, therefore, have not been automatically stayed.

52. The Debtors are working with their advisors to manage administrative costs and ensure a smooth sale or restructuring process to maximize value for all stakeholders. If the Listed Actions are not temporarily stayed, the Debtors may be forced to participate in the Listed Actions to protect themselves and therefore incur expenses related to prepetition claims.

## V. CAUSES OF ACTION

### COUNT I
### Declaratory and Injunctive Relief Pursuant to 11 U.S.C. § 362

53. The Debtors incorporate by reference all preceding allegations.

54. Debtors have an identity of interest with the Non-Debtor Defendants with respect to the claims filed by the IHC Investors.

55. As pleaded above, Debtors have contractually indemnified the Broker-Dealers for certain claims against them.

56. As pleaded above, Mr. Lee may seek indemnification from Debtors for certain claims against him.

57. Debtors also have an identity of interest with the Broker-Dealers and Mr. Lee because claimants in other cases may argue that one or more Debtors are vicariously liable for the conduct of Broker-Dealers and Mr. Lee.

58. Because of the intertwined nature of the claims against the Debtor defendants and Non-Debtor Defendants, the Listed Actions threaten to ensnare the Debtors in discovery and create significant costs for the Debtors' estates while exposing the Debtors to potential estoppel arguments.

59. Because the Listed Actions may have res judicata, collateral estoppel, and/or liability consequences for the Debtor and its estate, there is a sufficient identity of interest to extend the automatic stay to the Non-Debtor Defendants in the Listed Actions.

60. Additionally, the Listed Actions constitute an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

61. Debtors themselves may have claims against Mr. Lee and the Broker-Dealers. Because the Listed Actions threaten to deplete the applicable insurance policies of Non-Debtor

Defendants, there is a real possibility that Debtors will lose any meaningful chance to recover assets based on their estate claims absent extension of the automatic stay.

62. The Debtors are covered by the same D&O Policies as Mr. Lee. The Debtors are Insureds under Side B (for indemnification obligations they have paid or may become obligated to pay on behalf of Insured Persons) and Side C (for claims asserted directly against the Debtors as entities). The Debtors' interest in the D&O Policies is a concrete property interest of the estate. To the extent the Listed Actions or other proceedings deplete the $10 million aggregate limit through damage awards against Mr. Lee and the resulting accumulation of defense costs attributable to those proceedings, those actions directly diminish the aggregate limit available for Side B and Side C claims and constitute acts to obtain possession of, or to exercise control over, property of the estate in contravention of 11 U.S.C. § 362(a)(3).

**COUNT II**
**Injunctive Relief Pursuant to 11 U.S.C. § 105**

63. The Debtors incorporate by reference all preceding allegations.

64. The claims in the Listed Actions are interwoven with potential claims against the Debtors, such that segregating claims, arguments, and legal theories applicable only to a Non-Debtor Defendant without impacting the Debtor defendant is impossible.

65. Continued litigation of the Listed Actions against the Non-Debtor Defendants would force key employees of the Debtors to become involved in the active management of the actions, thereby diverting their attention from the efforts to keep these Chapter 11 Cases on track for a successful sales process and restructuring and chapter 11 plan.

66. Permitting claims against Non-Debtor Defendants to continue during the pendency of these bankruptcy proceedings threatens the ongoing operation of the Communities and the prospect for a successful reorganization.

67. As pleaded above, Debtors have taken significant steps to ensure a successful reorganization outcome that protects the Communities.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue the following relief:

### A. Declaratory Relief

1. Enter a declaratory judgment that: (a) the automatic stay imposed by 11 U.S.C. § 362(a) applies to, and encompasses, the Listed Actions against each Broker-Dealer Defendant identified in Sealed **Schedule 1** of this Complaint and its Broker-Dealer Affiliated Persons; (b) that the automatic stay imposed by 11 U.S.C. § 362(a) applies to, and encompasses, the Listed Actions; and (c) that the prosecution of the Listed Actions against any Non-Debtor Defendant constitutes an act to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

### B. Temporary Emergency Relief — Order to Show Cause with Temporary Restraints

2. Upon presentation of this Complaint and accompanying motion for emergency injunctive relief, enter an Order to Show Cause with Temporary Restraints, pursuant to 11 U.S.C. § 105(a) and § 362 and Federal Rules of Civil Procedure 65(b) and 65(d), directing all Defendants to show cause, at a hearing to be scheduled within 14 days, why a preliminary injunction should not be entered, and in the meantime temporarily restraining and enjoining all persons and entities who receive actual notice of this Order from:

> (a) commencing any new lawsuit, arbitration proceeding (including before FINRA), regulatory proceeding, or any other legal proceeding against any Non-Debtor Defendant arising from or relating to any purchase or sale of Investment Fund Securities or DST Interests issued by the Debtors or their affiliates, or relating to any act or omission of any Non-Debtor Defendant in connection with those offerings;

(b) continuing the prosecution of any Listed Action identified on Schedule [1] hereto against any Non-Debtor Defendant, including by filing papers, conducting depositions, seeking or enforcing discovery, seeking defaults, or otherwise advancing those proceedings;

(c) serving any subpoena, deposition notice, discovery demand, or other legal process in connection with any Listed Action that would require the production of documents from, or testimony by, any current or former officer, director, or employee of any Debtor; and

(d) taking any act to obtain possession of, or to exercise control over, property of the Debtors; estates, including the D&O Policies and the proceeds thereof;

pending a hearing on the preliminary injunction and further order of this Court.

**C. Preliminary Injunctive Relief**

3. Following notice and a hearing, enter a preliminary injunction enjoining all persons and entities from the acts described in subparagraphs (a) through (d) of paragraph 2 above, effective from the date of entry through the effective date of the chapter 11 plan.

**D. Bond Waiver**

4. Waive any bond or security requirement pursuant to Federal Rule of Bankruptcy Procedure 7065 and Federal Rule of Civil Procedure 65(c). The Debtors' ongoing reorganization, the nature of the relief sought, and the equitable purposes served by this adversary proceeding constitute good cause for waiver of a security bond, and the imposition of a bond requirement would impose an unjust burden on the Debtors' estates.

**E. Other Relief:**

5. Grant such other and further relief as this Court deems just, equitable, and proper.[3]

[3] The Debtors confirm their consent to the entry of a final order by the Court in connection with this proceeding in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

DATED: June 28, 2026

Respectfully submitted by:

**DECHERT LLP**

*/s/ Marcus A. Helt*

Marcus A. Helt (Texas Bar #24052187)
Debbie E. Green (Texas Bar #24059852)
Jack G. Haake (Texas Bar #24127704)
2651 N Harwood Street
Dallas, Texas 75201
Telephone: (214) 453-4900
marcus.helt@dechert.com
debbie.green@dechert.com
jack.haake@dechert.com

- and -

Jerry L. Hall (admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
jerry.hall@dechert.com

*PROPOSED COUNSEL FOR THE PLAINTIFFS*

# VERIFICATION

I, Benjamin Jones, Chief Reorganization Officer of Plaintiff Inspired Healthcare Capital Holdings, LLC, hereby declare as follows:

1. I am the duly appointed Chief Reorganization Officer of Inspired Healthcare Capital Holdings, LLC, a debtor and debtor-in-possession in the above-captioned Chapter 11 Cases. I am authorized to make this Verification on behalf of the Plaintiffs.

2. I have read the foregoing Verified Complaint for Declaratory Judgment and Injunctive Relief (the "Complaint"), including all exhibits and schedules attached thereto.

3. I am familiar with the facts and circumstances set forth in the Complaint. The statements of fact contained in the Complaint are true and correct to the best of my personal knowledge as to those matters within my personal knowledge, and I believe them to be true and correct as to those matters stated on information and belief.

4. In my capacity as Chief Reorganization Officer, I have reviewed the business records, agreements, and other information of the Debtors' enterprise that form the basis for the allegations set forth in the Complaint, and those allegations accurately reflect the contents of those records and information to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

M Benjamin Jones
________________________
Benjamin Jones

Executed this 28th day of June, 2026, at Greenville, SC.

**<u>SEALED SCHEDULE I</u>**

**(FILED SEPARATELY UNDER SEAL)**