July 27, 2020

Emerson Equity LLC
155 Bovet Road, Suite 725
San Mateo , CA 94402

Re: Exclusive Managing Broker-Dealer Agreement

Gentlemen:

This letter sets out the exclusive managing broker-dealer agreement (Agreement) between Inspired Healthcare Capital, LLC (Inspired Healthcare or we), an Arizona limited liability company, and Emerson Equity LLC (Managing Dealer or you), a California limited liability company, regarding the offerings and sale (the Offerings) of Inspired Healthcare Offerings on a go-forward basis, until terminated under the provisions of the Agreement (the Units).

The Units are to be offered and sold in accordance with Section 4(a)(2) of the Securities Act of 1933 (the Securities Act) and Rule 506 of Regulation D promulgated thereunder (the Offerings). The Units shall be offered on a best efforts basis only to Accredited Investors. The Offerings will commence on the date of the Memorandum and continue until the date provided for in the Memorandum. Inspired Healthcare reserves the right to terminate the Offerings at any time, regardless of whether all Units are sold. Each subscription/purchase agreement for the Units shall be made through an executed set of subscription/purchase documents in the form included in the Memorandum (the Subscription/Purchase Agreement) and payment for the Units to be acquired (Subscription/Purchase Proceeds).

**Section 1. Appointment of Managing Dealer.** You are appointed the Managing Dealer for the Offerings. As Managing Dealer, you are authorized as an agent of Inspired Healthcare, and subject to the provisions of this Agreement, to use your best efforts to find purchasers for the Units. As Managing Dealer, you are authorized to enlist selected members of the Financial Industry Regulatory Authority, Inc. or FINRA (Soliciting Dealers) who are acceptable to Inspired Healthcare to use their best efforts to find purchasers for the Units as provided in this Agreement. As Managing Dealer, you are authorized to enlist investment advisers who are registered with the Securities and Exchange Commission (SEC) or with the state in which they have their principal place of business (RIAs) who are acceptable to Inspired Healthcare to place Units with their advisory clients as provided in this Agreement. In this Agreement, the Managing Dealer, Soliciting Dealers and RIAs are jointly referred to as the Selling Group and each is referred to as a Selling Group Member. Each Selling Group Member shall execute a selling agreement in the form provided by Inspired Healthcare and approved by you (Selling Agreements). You shall have no obligation, however, directly or through other Selling Group Members, to place any minimum amount of Units. You shall have no authority to appoint any person or other entity as an agent or sub-agent of you or Inspired Healthcare regarding the Offerings, except to appoint Selling Group Members acceptable to Inspired Healthcare. In your capacity as Managing Dealer, you will also conduct a reasonable basis due diligence investigation of the Offerings and assist with commercially reasonable efforts, the other Members of the Selling Group in conducting their respective due diligence of the Offerings, by organizing distributing and acting as an intermediary between Inspired Healthcare and such parties of due diligence information and requests regarding the Offerings. In your capacity as Managing Dealer, you agree to require each Selling Group Member, pursuant to their respective Selling Agreement, to confirm that all subscribers for the Units meet the suitability requirements established by Inspired Healthcare, including the requirement that each purchaser be an

Accredite d Investor. Subject to the performance of Inspired Healthcare of all of its obligations under this Agreement, and to the completeness and accuracy of all of its representations and warranties contained in this Agreement, you accept such agency as Managing Dealer. You shall have the right to represent other parties in securities Offerings or securities brokerage during the term of this Agreement.

**Section 2. Compensation of Managing Dealer and Soliciting Dealers.**

a. Inspired Healthcare shall pay you fees and sales commissions only upon receipt of collected funds for the related Subscription/Purchase Proceeds. You shall be obligated to pay fees and sales commissions pursuant to this Agreement and any agreement with a Selling Group Member only upon your receipt of collected funds for the related Subscription Proceeds. All payments shall be made on a weekly basis and Subscription/Purchase Proceeds shall be included in each weekly payment as soon as practical after the acceptance of the related subscription/purchase agreement and receipt of collected funds for the Subscription/Purchase Proceeds. For purposes of this Agreement, the term "collected fund" or the term "collected" when referring to Subscription/ Purchase Proceeds shall mean all Subscription/Purchase Proceeds received by Inspired Healthcare or any clearing agent that have cleared normal banking channels and have been settled in the form of cash. Inspired Healthcare does not anticipate that it or its general partner will engage a clearing agent for the purpose of payments to be made by and through such clearing agent. However, if such clearing agent is contracted with, Inspired Healthcare agrees that such clearing agent shall be acceptable to you and you agree that payments due from Inspired Healthcare may be made by or through such clearing agent. You agree that, if and when a clearing agent is engaged, such clearing agent shall make payments to other Selling Group Members in accordance with this Agreement, and you shall not be responsible for payment of any fees or sales commissions when payment is made by such clearing agent. You agree that you will pay all fees and expenses incurred by Inspired Healthcare or any affiliate for services rendered by any clearing agent engaged by Inspired Healthcare and acceptable to you, including any initial set-up or installation or training fees, subject to payment by Inspired Healthcare of compensation in accordance with this Section 2 of this Agreement. You agree that you will supervise such clearing agent in the performance of their services.

b. As compensation for your services as Managing Dealer, Inspired Healthcare will pay you a syndication management fee up to one percent (1%) of the aggregate Subscription/ Purchase Proceeds received in the Offerings under any Subscription/Purchase Agreement dated on or after the effective date of this Agreement and procured by any Selling Group Member. Inspired Healthcare will pay you a syndication management fee up to one percent (1%) of the aggregate Subscription/Purchase Proceeds received in the Offerings under any Subscription/ Purchase Agreement dated on or after thirty days following the effective date of this Agreement and procured by any person or entity who has entered into a selling agreement with Inspired Healthcare prior to the effective date of this Agreement, and such person or entity shall thereupon be deemed a Selling Group Member.

c. Inspired Healthcare will pay you, as a sales commission, up to seven percent (5%) of the aggregate Subscription/Purchase Proceeds received for Subscription/Purchase Agreements obtained by you or by any Soliciting Dealer in the Offerings under any Subscription/ Purchase Agreement dated on or after the effective date of this Agreement.

d. Inspired Healthcare will pay you a non-accountable due diligence fee of one percent (1%) of the aggregate Subscription/Purchase Proceeds received for such Subscription/Purchase Agreements obtained by you or by Soliciting Dealers in the Offerings. You agree that these

percentages shall be reduced in the event you negotiate a lower commission rate or due diligence fee with a Soliciting Dealer and the commission rate or due diligence fee will be the lower agreed upon rate.

e. Inspired Healthcare will pay you a wholesaling fee equal to one percent (1%) of the aggregate Subscription/Purchase Proceeds received in the offering under any Subscription/Purchase Agreement dated on or after thirty days following the effective date of this Agreement, which the Managing Dealer will pay in whole to certain wholesalers.

f. Inspired Healthcare may, in its sole discretion, accept Subscription/Purchase Agreements dated on or after the effective date of this Agreement for the purchase of Units net of all or part of the sales commission and due diligence fee from subscribers/purchasers who invest through RIAs with whom you contract, or who are associated with, or immediate family members of persons who are associated with, any Selling Group Member. You will be paid the syndication management fee, but will not be paid the sales commission or any due diligence fee in connection with any such subscriptions/ purchases. You will not pay any sales commission or other transaction-based compensation to any person who is not a registered securities broker-dealer.

g. You will not be paid the syndication management fee, any sales commission or due diligence fee regarding aggregate Subscription/Purchase Proceeds received for Subscription/Purchase Agreements obtained by the General Partner or associated persons of Inspired Healthcare unless such person is a licensed registered representative of the Managing Broker Dealer.

h. Subject to the payment by Inspired Healthcare of all fees and commissions due under this Agreement and to the provisions of Section 2.a above you will be responsible for the payment of all sales commissions and due diligence fees owed to Selling Group Members you engage or who become Selling Group Members in accordance with Section 2.b above. Unless otherwise agreed in writing by Inspired Healthcare, you shall pay each Soliciting Dealer a sales commission up to seven percent (7%) of the aggregate Subscription/Purchase Proceeds received for Subscription/Purchase Agreements for the Units obtained by such Soliciting Dealer; and you shall pay each Soliciting Dealer a non-accountable due diligence fee of one percent (1%) of the aggregate Subscription/Purchase Proceeds received under Subscription/Purchase Agreements for the Units obtained by such Soliciting Dealer in the Offerings. You shall have no obligation to pay any fee or commission to any Selling Group Member unless and until you have received payment of such fee or commission in collected funds from Inspired Healthcare.

i. If any Subscription/Purchase Agreement is rejected, you will not be paid any syndication management fee, due diligence fee or sales commission regarding such Subscription/Purchase. If any Subscription/Purchase is accepted but later rescinded for any reason whatsoever within five years from the date of the Subscription/Purchase Agreement, you shall promptly refund to Inspired Healthcare all syndication management fees, due diligence fees, and sales commissions paid to you regarding such Subscription/Purchase, whether or not any part of such fees and commissions have been paid to another Selling Group Member.

j. It is understood that no sale shall be regarded as made unless and until the related Subscription/Purchase Agreement has been accepted by Inspired Healthcare. Inspired Healthcare reserves the right in its sole discretion to accept or reject any Subscription/Purchase for Units in whole or in part for a period of 15 days after receipt of the Subscription/Purchase Agreement.

**Section 3. Representations, Warranties and Covenants of Inspired Healthcare.** Inspired Healthcare represents warrants and covenants that:

a. Inspired Healthcare is a limited liability company duly and validly organized under the laws of the State of California, is duly authorized to do business in California and has full power and authority to conduct the business described in the Memorandum. Inspired Healthcare has all the requisite authority to enter into this Agreement.

b. This Agreement has been duly and validly authorized, executed, and delivered by or on behalf of Inspired Healthcare and constitutes a valid and binding agreement of Inspired Healthcare, enforceable in accordance with its terms.

c. All action required to be taken to offer and sell the Units to qualified purchasers has been taken as of the date hereof.

d. Execution by Inspired Healthcare of a Subscription/Purchase Agreement will be duly and validly authorized by or on behalf of Inspired Healthcare and will constitute a valid and binding agreement of Inspired Healthcare.

e. There is no litigation or proceeding at law or in equity before any federal or state authority against Inspired Healthcare wherein an unfavorable decision ruling or finding would materially and adversely affect the business, operations financial condition or income of Inspired Healthcare. Inspired Healthcare is not in default under any material obligation, term, covenant or condition of any agreement or instrument to which Inspired Healthcare is subject or by which it is bound that could have a material adverse effect on Inspired Healthcare.

f. The execution and delivery of this Agreement and the incurrence of the obligations set forth herein and the consummation of the transactions contemplated in this Agreement and the Memorandum will not, to the best of Inspired Healthcare's knowledge, constitute a breach or default under any agreements or instruments by which Inspired Healthcare is bound or under any order, rule or regulation applicable to Inspired Healthcare issued by any court, governmental body or administrative agency having jurisdiction over Inspired Healthcare.

g. The Memorandum [as amended and/or supplemented from time to time], all printed sales literature or other sales materials prepared and authorized by Inspired Healthcare for use with potential investors in connection with the Offerings (Authorized Sales Materials) and any application or other document filed in any jurisdiction in order to qualify the Units under or exempt the Offerings of the Units from the registration or qualification requirements of the securities laws thereof (Application) will not include any untrue statement of a material fact, nor will it omit to state a material fact required to be stated or necessary to make the statements in the Memorandum, Authorized Sales Material or Application, in light of the circumstances under which they were made, not misleading.

h. Inspired Healthcare will deliver to you a reasonable number of copies of the Memorandum, and any amendment or supplement thereto with all appendices thereto, and the information made available to each offeree shall be sufficient to comply with, and conform to, the requirements of Rule 506 of Regulation D. Inspired Healthcare shall make available, during the Offering and prior to the sale of any Units, to each purchaser or his purchaser representative(s) or both:

1. Such additional information (in addition to that contained in the

Memorandum) concerning the Offerings, the Units, Inspired Healthcare, and any other factual matter relating to Inspired Healthcare or the Units you may request to the extent that Inspired Healthcare possesses such information or can acquire it without unreasonable effort or expense; and

2. The opportunity to ask questions of, and receive answers from, Inspired Healthcare concerning the Offerings, the Units, Inspired Healthcare and any other factual matter relating to Inspired Healthcare or the Units.

i. With respect to those activities undertaken by it, Inspired Healthcare will comply, and will ensure that the Offerings and sale of Units complies, in all respects with the requirements of the Securities Act and the Exchange Act of 1934, as amended (the Exchange Act), rules and regulations of the SEC and the securities or "blue sky" laws of any state or jurisdiction in which an offer and/or sale takes place.

j. None of Inspired Healthcare; any predecessor of Inspired Healthcare; any affiliated issuer of Inspired Healthcare; any director or executive officer or other officer of Inspired Healthcare participating in the Offerings; any general partner of Inspired Healthcare; any managing member of the general partner of Inspired Healthcare; any director or executive officer, or other officer participating in the Offerings of the managing member of the general partner of Inspired Healthcare; any beneficial owner of 20% or more of the outstanding voting securities of Inspired Healthcare; any promoter connected with Inspired Healthcare in any capacity; and any person employed by Inspired Healthcare who has been or will be paid remuneration for solicitation of purchasers, other than any Selling Group Member, is or will be subject to disqualification under Rule 506(d) of Regulation D. Inspired Healthcare will promptly notify you if this representation becomes untrue or is found to be untrue at the time made, at any time prior to the closing of any pending Offering.

k. Inspired Healthcare is not aware, based on a reasonable investigation, of any matters that would have triggered disqualification under Rule 506(d) if they had occurred on or after September 23, 2013, and are required to be disclosed. Inspired Healthcare will furnish a description in writing of any matters that would have triggered disqualification under Rule 506(d) but occurred before September 23, 2013, promptly upon becoming aware of any such matters.

l. Inspired Healthcare will endeavor in good faith to qualify or assist you in qualifying, the Units for offer and sale, or to establish, or assist you in establishing, the exemption of the offer and sale of the Units from qualification or registration under the applicable securities or "blue sky" laws of such jurisdictions as you may reasonably designate, at the expense of Inspired Healthcare, and will promptly notify you, orally or in writing (but if orally then prompt written confirmation shall be delivered to you), as each jurisdiction is so qualified or as an exemption from registration or qualification is established therein; provided, however, that Inspired Healthcare shall not be obligated to do business or offer securities in any jurisdiction or to qualify as a dealer in any jurisdiction in which it is not so qualified.

m. Inspired Healthcare will pay all expenses in connection with the printing arid delivery to you in reasonable quantities of copies of the Memorandum and the qualification of the Units under the securities or "blue sky" laws of any state or jurisdiction in which an offer and/or sale takes place.

n. Inspired Healthcare will timely file a Form D relating to the Offerings with the SEC

under Regulation D of the Securities Act and with each applicable state securities regulatory agency in accordance with applicable state securities laws and regulations.

o. If any event relating to or affecting Inspired Healthcare shall occur during an Offering, as a result of which it is necessary in the opinion of counsel to Inspired Healthcare, to amend or supplement the Memorandum, or any Authorized Sales Material or Application so that it will not contain an untrue statement of a material fact or omit to state a material fact necessaly in order to make the statements therein, in light of the circumstances under which they are made, not misleading Inspired Healthcare shall promptly notify you thereof, and prepare and furnish to you a reasonable number of copies of an amendment or amendments of, or supplement or supplements to, the Memorandum, Authorized Sales Material or Application which you shall promptly deliver to all offerees then being solicited. For purposes of this subsection 3(p), Inspired Healthcare will furnish such information with respect to Inspired Healthcare and the Offerings as you may from time to time reasonably request.

p. Inspired Healthcare and all persons acting on its behalf will act in compliance with the privacy standards of the Managing Dealer as required by Regulation S-P.

q. Inspired Healthcare will apply the net Subscription/Purchase Proceeds received by it in the manner described in the Memorandum.

r. Inspired Healthcare will provide each Subscriber/Purchaser with access to a password protected website which will provide information about each Subscriber/Purchaser distribution, ad valorem tax payments and similar fees and expenses. Inspired Healthcare will provide you with access to selected portions of such website from time to time relating to Inspired Healthcare and the Subscriber/Purchasers in its Offerings and will provide you copies of financial statements when obtained by Inspired Healthcare. Inspired Healthcare will provide you with such other information concerning Inspired Healthcare as you may reasonably request from time to time.

**Section 4. Duties and Obligations of the Selling Group Members.** Managing Dealer agrees that it will use its reasonable best efforts to require each Selling Group Member to comply with the following:

a. Each Selling Group Member will serve in a best efforts capacity in the Offerings, sale and distribution of the Units. Each Selling Group Member may offer the Units as an agent, but all sales shall be made by Inspired Healthcare, and not by any Selling Group Member as a principal.

b. Each Selling Group Member will not offer any of the Units for sale, or solicit any offers to subscribe for or buy any Units, or otherwise negotiate with any person with respect to the Units, on the basis of any communications or documents, except the Memorandum, the information provided by Inspired Healthcare pursuant to Section 3 of this Agreement, or any other documents approved by Inspired Healthcare and reasonably satisfactory in form and substance to Inspired Healthcare and counsel to Inspired Healthcare. Except as approved by Inspired Healthcare, a Selling Group Member shall make no representations or warranties to any prospective Subscriber/Purchaser other than those contained in the Memorandum, and will not allow any other written or electronic materials to be used to describe the potential investment to prospective Subscribers/Purchasers other than the Memorandum and materials provided by Inspired Healthcare.

c. Each Selling Group Member shall exercise reasonable care to assure that the Subscribers/Purchasers of Units are not underwriters within the meaning of Section 2 (11) of the Securities Act, and in that regard, it will obtain from the Subscriber/Purchaser a signed written agreement (contained in the Subscription/Purchase Agreement) that the Units will not be sold or otherwise distributed without registration under the Securities Act and any applicable laws of any other jurisdiction unless an opinion of counsel, satisfactory in form and substance to Inspired Healthcare and its counsel, that an exemption from registration is available is delivered in accordance with such agreement.

d. The Offerings shall be conducted without general solicitation or public advertising under Rule 506(b) unless and until Inspired Healthcare notifies you otherwise. Except as permitted by Rule 506(c) of Regulation D and as expressly approved by Inspired Healthcare, a Selling Group Member shall not use any form of general solicitation or general advertising in the course of any offer or sale of the Units, including, but not limited to:

1. Any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio;

2. Any seminar or meeting whose attendees have been invited by any general solicitation or general advertising; and

3. Any solicitation of interest in Inspired Healthcare through any websites.

e. The Selling Group Members will provide each prospective purchaser with a complete copy of the Memorandum and exhibits and appendices thereto (expressly including any amendment or supplements thereto) during the course of the Offerings and before a Subscription/Purchase Agreement from that Subscriber/Purchaser is submitted. Each Selling Group Member shall advise each such Subscriber/Purchaser that Inspired Healthcare and/or its agents and consultants will, during the course of Offerings and prior to any sale, accord said investor and his or her purchaser representative, if any, including Managing Dealer, the opportunity to ask questions of and to receive answers from Inspired Healthcare and/or its agents and consultants concerning the terms and conditions of the Offerings and to obtain any additional information, which information is possessed by Inspired Healthcare or may be obtained by it without unreasonable effort or expense and which is necessary to verify the accuracy of the information contained in the Memorandum.

f. Before making any sale of the Units each Selling Group Member will inform the prospective Subscriber/Purchaser and his or her purchaser representative, if any, of all pertinent facts relating to the liquidity and marketability of the Units (or lack thereof) during the term of the investment.

g. Each Selling Group Member will limit the Offerings of the Units to persons whom it has reasonable grounds to believe, and in fact believes are Accredited Investors (as defined in Regulation D) and with whom it has a prior pre-existing business relationship that predates the Offerings. In recommending the purchase or sale of the Units, each Selling Group Member shall:

1. Have reasonable grounds to believe, on the basis of information obtained from the prospective Subscriber/Purchaser concerning his or her investment objectives, other investments, financial situation and needs, and any other information known by the Selling Group Member or an associated person, that:

i. the prospective purchaser meets the suitability requirements set forth in the Memorandum;

ii. the prospective purchaser has a net worth sufficient to sustain the risks inherent in an investment in the Units, including but not limited to, total loss of his or her investment, lack of liquidity and other risks described in the Memorandum; and

iii. an investment in the Units is otherwise suitable for the prospective purchaser.

2. Maintain in the Selling Group Member's files, for a period of six (6) years following the Offerings Termination Date, documents disclosing the basis upon which the above determination of suitability was reached as to each Subscriber/ Purchaser. Each Selling Group Member shall agree to make available to the Managing Dealer within five (5) business days after receiving a written request from the Managing Dealer, copies of the client investment profile or similar documents in its possession, in addition to the Subscription/Purchase Agreement, which establish that the purchase of Units by said Subscriber/ Purchaser is suitable for him in light of his financial needs, investment goals and business objectives, and which establish the existence of a substantive, pre-existing relationship.

3. If a prospective Subscriber/Purchaser uses or consults a third party as a purchaser representative [as that term is defined in 17 CFR 230.501(h)] other than Soliciting Dealer or its registered representatives, to assist the purchaser in evaluating the merits and risks of the investment, Soliciting Dealer will obtain and deliver to Inspired Healthcare, along with the Subscription/Purchase Agreement, the prospective Subscriber/Purchaser's written acknowledgment that he has used such person(s) in connection with evaluating the merits and risks of the prospective investment and such representative' s written consent so to act, as well as a description of the education and experience of such representative(s).

h. A Selling Group Member shall not submit any Subscription/Purchase in which a Subscriber/Purchaser invests in Units in a discretionary account without prior written approval of the transaction by the Subscriber/Purchaser.

i. Each Selling Group Member will comply in all respects with the Subscription/Purchase Procedures and plan of distribution set forth in the Memorandum. In the event a Selling Group Member receives any Subscription/Purchase Proceeds, such Selling Group Member will transmit such Subscription/Purchase Proceeds not later than noon of the next business day following receipt of such Subscription/Purchase Proceeds for the Units in accordance with the instructions set forth in the Memorandum.

j. Each Selling Group Member shall complete all steps necessary to permit it to offer the Units pursuant to exemptions available under applicable federal laws, and other applicable state laws (including blue sky laws). In making or soliciting such offers, or so negotiating, each Selling Group Member will comply with the provisions of the Securities Act, the Exchange Act, the securities or "blue sky" laws of each jurisdiction in which it makes or solicits such offers, or so negotiates, and the rules of FINRA. Each Selling Group Member shall conduct all of its solicitation and sales efforts in conformity with, and in no manner in violation of, Regulation D

or any state blues sky laws, to enable the Offerings to qualify for the Rule 506 exemption to registration under the Securities Act, and exemptions available under applicable state laws (including blue sky laws). No Selling Group Member will make or permit any general or otherwise impermissible solicitations with respect to the Offerings.

k. Managing Dealer will furnish to Inspired Healthcare upon request a complete list of all persons who have been sold the Units and such persons ' places of residence.

l. Managing Dealer will immediately bring to the attention of Inspired Healthcare any circumstance or fact which causes Managing Dealer to believe the Memorandum (or any portion thereof), or any other literature distributed pursuant to the Offerings, or any information supplied by prospective purchasers in their Subscription Agreement, may be inaccurate or misleading.

m. Each Selling Group Member will offer and sell the Units only in those states or jurisdictions in which it, or any other person or entity acting in its behalf, is properly registered.

n. Each Selling Group Member shall certify that it has implemented an anti-money laundering program that is in compliance with the requirements of 31 U.S.C. 53 18(h), including an appropriate customer identification program. Each Selling Group Member shall verify the identity of any customer who submits a Subscription/Purchase Agreement through such member, and shall agree that the Managing Dealer and Inspired Healthcare may rely on such verification. Each Selling Group Member shall agree to conduct a search of the OFAC Specially Designated Nationals and Blocked Persons List, and any other list of known or suspected terrorists or terrorist organizations issued by any U. S. federal government agency, regarding each subscriber for the Units, and shall agree that the submission of a Subscription/Purchase Agreement shall constitute a representation to the Managing Dealer and NPBC that such s Subscriber/Purchaser does not appear on any such list. Each Selling Group Member shall agree that it will, until termination of the Offerings or their Selling Agreement, upon request of Inspired Healthcare, certify in writing annually that such Selling Group Member is subject to the anti-money laundering requirements of the USA PATRIOT Act and has implemented its customer identification program.

o. No Selling Group Member, nor any of their general partners, managers, directors, executive officers, officers participating in the Offerings nor any person who has been or will be paid remuneration by any Selling Group Member for solicitation of purchasers in the Offerings; (i) is or will be subject to disqualification under Rule 506(d) of Regulation D during the Subscription Period, and (ii) is subject to any order, judgment or proceeding that would have triggered disqualification under Rule 506(d) but occurred before September 23, 2013 and is required to be disclosed. Each Selling Group Member shall agree to promptly notify the Managing Dealer and Inspired Healthcare if the representations in the preceding sentence become untrue or are found to have been untrue at the time made, at any time prior to the closing of the Offerings. Any submission of a Subscription Agreement in the Offerings pursuant to this Agreement also constitutes a continuing representation that none of the persons described in the first sentence of this paragraph has become subject to any disqualification under Rule 506(d) at any time during the course of the Offerings.

**Section 5. Representations, Warranties and Covenants of Managing Dealer.** The Managing Dealer represents, warrants and covenants that:

a. Managing Dealer is a limited liability company duly organized under the laws of the

State of California and is authorized to do business in California and in each other jurisdiction in which it does business. The Managing Dealer has all requisite authority to enter into this Agreement.

b. This Agreement, when executed by Managing Dealer, will have been duly authorized and will be a valid and binding agreement of Managing Dealer, enforceable in accordance with its terms.

c. The consummation of the transactions contemplated herein and those contemplated by the Memorandum will not result in a breach or violation of any order, rule or regulation directed to Managing Dealer by any court or any federal or state regulatory body or administrative agency having jurisdiction over Managing Dealer.

d. Managing Dealer is, and during the term of this Agreement will be, duly registered as a broker- dealer pursuant to the provisions of the Exchange Act, a broker or dealer duly registered as such in all states or other jurisdictions where it makes offers or sales of securities, and a member in good standing of FINRA. Managing Dealer will comply with all applicable laws, regulations and requirements of the Securities Act, the Exchange Act, FINRA, and of applicable states or other jurisdictions.

e. On the date of the Memorandum, Managing Dealer will have reasonable grounds to believe, based on information made available to it by Inspired Healthcare, that all material facts are adequately and accurately disclosed in the Memorandum and provide an adequate basis for evaluating an investment in the Units.

f. This Agreement, or any supplement or amendment hereof, may be filed with the SEC, if such should be required, and may be filed with FINRA, if required. The Managing Dealer will notify Inspired Healthcare reasonably in advance prior to filing this Agreement or any copy hereof with the SEC or FINRA or any state securities commissions or other regulatory authorities.

g. No agreement will be made by Managing Dealer with any person permitting the resale, repurchase or distribution of any Units purchased by such person.

h. The Managing Dealer will comply with all federal and state laws and regulations relating to the collection, maintenance and disclosure of non-public information provided by prospective investors in connection with their proposed investment in the Units including providing all notices required by Regulation S-P.

i. The Managing Dealer has not committed any action or alleged action that could adversely affect the Offerings and there is no action, suit, litigation, arbitration, proceeding (including any civil), criminal, administrative, investigative or appellate proceeding), hearing, inquiry, audit, examination or investigation involving Managing Dealer that could adversely affect the Offerings or Managing Dealer's ability to carry out its obligations hereunder.

j. Managing Dealer certifies that it has implemented an anti-money laundering program that is in compliance with the requirements of 31 U.S.C. 5318(h) including an appropriate customer identification program. Managing Dealer agrees that it will verify the identity of each customer submitting a Subscription/Purchase Agreement, substantially in accordance with the requirements of 31 CFR 103.122(b), and further agrees that Inspired Healthcare may rely on such verification. Managing Dealer shall conduct a search of the OFAC Specially Designated

Nationals and Blocked Persons List, and any other list of known or suspected terrorists or terrorist organizations is sued by any U. S. federal government agency, regarding each Subscriber/Purchaser for the Units, and agrees that the submission of the Subscription/Purchase Agreement shall constitute a representation to Inspired Healthcare that such Subscriber/Purchaser does not appear on any such list. Managing Dealer shall conduct any other searches and inquiries required or advisable to establish the identity of the beneficial owner of each subscription/purchase and to detect or prevent money laundering, and agrees that Inspired Healthcare may rely on Managing Dealer to establish the identity of the beneficial owner of each Subscription/Purchase and to take other measures to detect or prevent money laundering regarding such Subscription/Purchase. Managing Dealer shall, upon request of Inspired Healthcare certify in writing annually that Managing Dealer is subject to the anti-money laundering requirements of the USA PATRIOT Act and has implemented its customer identification program. Managing Dealer shall use reasonable efforts to obtain and provide any additional information about a potential Subscriber/Purchaser requested by Inspired Healthcare.

l. The appointment of the Managing Dealer will not result in Inspired Healthcare being precluded from relying on any exemption provided under Regulation D for one of the reasons stated in Rule 506(d), relating to bad actor disqualification, nor will it require Inspired Healthcare to disclose any event occurring prior to September 23, 2013, that would constitute a disqualification if it had occurred after such date. None of the Managing Dealer or any of its directors, executive officers, other officers participating in the Offerings, or the general partner or managing member of the Managing Dealer, any director, executive officer, other officer participating in the Offering, general partner or manager of any such general partner or managing member of the Managing Dealer or any person that has been or will be paid by Managing Dealer, directly or indirectly, remuneration for solicitation of purchasers in the Offerings, excluding other Selling Group Members, is or will be subject to disqualification under Rule 506(d) of Regulation D. The Managing Dealer will promptly notify you if this representation becomes untrue or is found to be untrue at the time made at any time prior to the closing of the Offerings.

m. Managing Dealer agrees that at the commencement of an Offerings and periodically as required throughout the Offerings, it will submit to FINRA a copy of the Memorandum, including any materially amended versions thereof, in accordance with FINRA Rule 5123. Managing Dealer agrees that each Selling Group Member may designate Managing Dealer as the FINRA member filing the Memorandum.

n. Managing Dealer agrees to use its best efforts to cause each Selling Group Member to comply with the provisions of their Selling Agreement.

**Section 6. Conditions of the Obligations.** The obligations as of Inspired Healthcare and the Managing Dealer under this Agreement are subject to the accuracy of and compliance with each other's representations, warranties and covenants set forth in Sections 3, 4 and 5, and to the performance by each of their obligations hereunder.

**Section 7. Representations, Warranties and Covenants to Survive Offerings.** All representations warranties and covenants contained in this Agreement or contained in any Subscription Agreement submitted pursuant to this Agreement shall survive and remain operative and in full force and effect following the acceptance of any subscription and the closing of the Offerings of the Units and the termination of this Agreement.

**Section 8. Indemnification.**

a. Inspired Healthcare agrees to indemnify and hold harmless Managing Dealer, the Selling Group Members and their respective directors, trustees, officers, partners, members, employees, registered representatives, agents, associated persons, attorneys, accountants and affiliates and each person who controls or is controlled by Managing Dealer or the Selling Group Member, within the meaning of the Securities Act, from and against any and all losses, claims, damages, expenses or liabilities to which Managing Dealer or a Selling Group Member may become subject, under any United States federal or state securities laws and other United States federal or state statutes , common law or otherwise, insofar as such losses , claims damages expenses , or liabilities arise out of or are based upon:

1. Any untrue statement or alleged untrue statement of a material fact contained in the Memorandum, Authorized Sales Material or in any Application, except any such statement made in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement, to Inspired Healthcare by Managing Dealer or any Selling Group Member, or any omission or alleged omission from the Memorandum, Authorized Sales Material or Application of a material fact necessary in order to make the statements made there in, in light of the circumstances under which they were made , not misleading, except any such omission made or in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement to Inspired Healthcare by Managing Dealer or any Selling Group Member;

2. The failure of Inspired Healthcare to comply with any of the applicable provisions of the Securities Act (including, but not limited to, Rule 506 of Regulation D), the Exchange Act or the regulations there under, or any applicable laws, rules or regulations of any state or other jurisdiction (other than as a result of breach of this Agreement or noncompliance with applicable securities laws or FINRA rules or regulations by the Managing Dealer or any other Selling Group Member);

3. Any unauthorized verbal or written representations in connection with Offerings made by Inspired Healthcare, or its employees, affiliates or agents (other than by Managing Dealer, Selling Group Members or each of their employees, registered representatives, agents or affiliates) in violation of the Securities Act, or any other applicable federal or state securities laws and regulations;

4. The disqualification, within the meaning of Rule 506(d) of Regulation D, of Inspired Healthcare, any predecessor of Inspired Healthcare, any affiliated issuer of Inspired Healthcare any director or executive officer or other officer of Inspired Healthcare participating in the Offering, any general partner of Inspired Healthcare, any managing member of the general partner of Inspired Healthcare, any beneficial owner of 20% or more of the outstanding voting securities of Inspired Healthcare, any promoter connected with Inspired Healthcare in any capacity, and any person other than Selling Group Members employed by Inspired Healthcare who has been or will be paid remuneration for solicitation of purchasers, during the term of the Offerings , or the failure to disclose any such matter required to be disclosed under Rule 506(e) ; or

5. The breach by Inspired Healthcare of any representation, warranty or covenant made by Inspired Healthcare in this Agreement.

b. Managing Dealer agrees to indemnify and hold harmless Inspired Healthcare, the General Partner and each of their partners members, employees, agents, attorneys, accountants, affiliates and each person who controls or is controlled by Inspired Healthcare, within the meaning of the Securities Act, from and against any and all losses, claims, damages, expenses or liabilities to which any of them may become subject under any United States federal or state securities laws and other United States federal or state statutes, common law or otherwise, or the laws or statutes of any other jurisdiction in which Managing Dealer conducts business or a subscriber resides, insofar as such losses, claims, damages expenses, or liabilities arise out of or are based upon:

1. Any unauthorized verbal or written representations in connection with the Offerings made by Managing Dealer (other than by Inspired Healthcare or its employees or affiliates) or any other Selling Group Member, or any of their principals, officers, directors, employees, registered representatives or affiliates in violation of the Securities Act, or any other applicable federal or state securities laws and regulations; but in each case of any Selling Group Member's actions, to the extent of such contribution to indemnification by such Selling Group Member;

2. The failure of any Selling Group Member to comply with any of the applicable provisions of the Securities Act (including, but not limited to, Rule 506 of Regulation D), the Exchange Act or the rules or regulations there under, applicable requirements, rules and regulations of FINRA, or any applicable state laws or regulations in connection with the Offerings;

3. Any breach by the Managing Dealer of any representation, warranty or covenant made by Managing Dealer in this Agreement;

4. The failure by any purchaser of Units who submits a Subscription Agreement through any Selling Group Member to comply with the investor suitability requirements set forth in the Subscription Agreement and the Memorandum;

5. Any untrue statement or alleged untrue statement of a material fact contained in the Memorandum, any Authorized Sales Material or any Application, but only to the extent that such untrue statement or alleged untrue statement was made in the Memorandum or Authorized Sales Material or Application in reliance upon and in conformity with the express written information furnished to Inspired Healthcare by Managing Dealer or any of its representatives or agents;

6. The omission or alleged omission from the Memorandum, any Authorized Sales Material or any Application of a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, but only to the extent that such omission or alleged omission from the Memorandum, Authorized Sales Material or Application was in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement, to Inspired Healthcare by Managing Dealer or any of its representatives or agents; or

7. The disqualification, within the meaning of Rule 506(d) of Regulation D, of any Selling Group Member or any person who is compensated directly or indirectly by any Selling Group Member in connection with the Offerings or the failure to

disclose any matter regarding any Selling Group Member required to be disclosed under Rule 506(e).

c. Notwithstanding the foregoing, to the extent that any and all losses, claims, damages, expenses or liabilities arises out of, or is based in whole or in part upon, any act, failure, failure to act, statement, event, breach, disqualification or obligation of a Selling Group Member or its directors, trustees, officers, partners, members, employees, agents, attorneys, accountants, affiliates, or any person who controls or is controlled by such Selling Group Member, within the meaning of the Securities Act (Selling Group Party), the indemnification and agreement to hold harmless provided to Inspired Healthcare, the General Partner and each of their partners, members, employees, agents, affiliates and each person who controls or is controlled by Inspired Healthcare, in this Section 8 shall be subject to, and limited by, the extent of any contribution to indemnification provided by a Selling Group Member pursuant to indemnification provisions contained in the Selling Agreement or similar agreements with the Selling Group Member, which Managing Dealer shall use its reasonable efforts to enforce for the benefit of such Inspired Healthcare parties. The indemnification under this Section 8 shall include, but not be limited to, recovery of and payment of reasonable legal or other expenses incurred by Managing Dealer or Inspired Healthcare in connection with defending such actions and claims.

d. Within fourteen (14) calendar days after a claim or action is brought or asserted against Inspired Healthcare or the Managing Dealer, or both, which in the opinion of either is subject to the indemnification provisions contains in Section 8, the party seeking indemnification (the Indemnitee") shall notify, in writing, the party from whom indemnification is sought (the "Indemnitor") of the existence of the claim or action. Indemnitor shall assume the defense of the claim or action by employing counsel for the Indemnitee, and shall thereafter be responsible for the payment of all legal fees and expenses incurred in connection with such defense. In the event that a claim or action is brought or asserted against Inspired Healthcare and the Managing Dealer, jointly, Inspired Healthcare and the Managing Dealer shall make a good faith effort to determine whether the claim or action can be defended jointly or if potential conflicts exist which require that separate legal counsel be employed for Managing Dealer and Inspired Healthcare. If any potential conflict exists, and if Inspired Healthcare and the Managing Dealer each seek indemnification from the other, each shall employ separate counsel to represent them and each shall be responsible for the payment of all expenses associated with employment of such counsel, subject to the right of recovery of such expenses as set forth below in this subparagraph (d). If either Inspired Healthcare or Managing Dealer seek indemnification from the other under the provisions of this Section 8, and the party from whom indemnification is sought declines to assume defense of the action or claim, the party seeking indemnification shall have a right of recovery against the party from whom indemnification is sought for all losses, liabilities, damages and expenses incurred in the defense of the action or claim, including all actual attorney's fees and costs incurred, in the event that the defense of the action or claim is successful and there are no findings of wrongdoing on the part of the party seeking indemnification. Any claims for indemnification shall be subject to the arbitration provisions in Section 14.

e. In order to provide for just and equitable contribution in circumstances in which indemnification provided pursuant to this Section 8 is for any reason held to be unavailable from Inspired Healthcare, Managing Dealer or Selling Group Member, as the case may be, Inspired Healthcare, Managing Dealer and Selling Group Member will contribute to the aggregate losses, liabilities, claims, damages and expenses (including any amount paid in settlement of any action, suit, or proceeding or any claims asserted) in such amounts as a court

of competent jurisdiction may determine (or in the case of settlement, in such amounts as may be agreed upon by the parties) in such proportion to reflect the relative fault of Inspired Healthcare, Managing Dealer and Selling Group Member, in connection with the events which resulted in such losses, liabilities, claims damages or expenses, as well as any other equitable considerations. The relative fault of the parties will be determined by reference to, among other things, whether any untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by Inspired Healthcare, Managing Dealer or Selling Group Member and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such omission or statement. Inspired Healthcare, Managing Dealer, Selling Group Members and each person who controls such party will also have rights to contribution under this subsection 8(e).

**Section 9. Relief.** Both parties agree that a breach or threatened breach on the part of either party of any agreement contained in this Agreement will cause such damage to the other as will be irreparable, and, for that reason, the parties agree that the other shall be entitled as a matter of right to an injunction by any court of competent jurisdiction, restraining any further violation of such covenants by the other or its employees, partners, managers officer s or agents. The right of injunction shall be cumulative and in addition to whatever other remedies the offended party may have, including, specifically, recovery of damages. The parties agree to pay reasonable attorney's fees incurred by the other in successfully proving that the other has breached any of the terms of this Agreement.

**Section 10. Notices.** Inspired Healthcare and the Managing Dealer agree that information, disclosures, and notices about or from may be transmitted electronically on an unencrypted basis (i) via email to the email address designated below or subsequently designated by a written notice made in accordance with the following sentence, or (ii) via access to a password protected website. All other communications under this Agreement shall be in writing, and shall be mailed, delivered or telegraphed to the address below:

If to Inspired Healthcare:

Inspired Healthcare Capital, LLC
Attn.: Luke Lee
8502 E Princess Drive
Scottsdale, AZ 85255

If to Managing Dealer:

Emerson Equity LLC
Attn: Dominic Baldini
155 Bovet Road, Suite 725
San Mateo, CA 92656

**Section 11. Costs of the Offerings.** Except for the compensation payable to Managing Dealer described in Section 2, Managing Dealer will pay all of its own costs and expenses, including, but not limited to, all expenses necessary for Managing Dealer to remain in compliance with any applicable federal state or FINRA laws, rules or regulations in order to participate in the Offerings as a broker-dealer, and the fees and costs of Managing Dealer's counsel. Subject to Section 8, Inspired Healthcare agrees to pay all other expenses incident to the performance of their obligations hereunder, including all expenses incident to filings with federal and state regulatory authorities and to the exemption of the Units under federal and state securities laws,

including fees and disbursements of Inspired Healthcare's counsel, all costs of reproduction and distribution of the Memorandum and any amendment or supplement thereto, and all costs and expenses of any third party due diligence report.

**Section 12. Termination.** Inspired Healthcare may terminate this Agreement immediately upon the failure of Managing Dealer to maintain its registration as a securities broker-dealer or at any time after the Managing Dealer is suspended from engaging in any securities-related business for a period of more than five days. Inspired Healthcare may terminate this Agreement immediately if the Managing Dealer, any general partner or managing member of the Managing Dealer, any director or executive officer or other officer of the Managing Dealer participating in the Offering, or any person who has been or will be paid remuneration by the Managing Dealer for solicitation of purchasers in the Offerings, is or becomes subject to disqualification under Rule 506(d) of Regulation D during the Subscription Period. The Managing Dealer shall give Inspired Healthcare notice immediately upon the breach of any representation, warranty or covenant of Inspired Healthcare contained in Section 3 herein, and may terminate this Agreement if such breach or obligation is not cured within thirty days after notice to Inspired Healthcare. The Managing Dealer may terminate this Agreement immediately if Inspired Healthcare, any predecessor of Inspired Healthcare's, any affiliated issuer of Inspired Healthcare, any director or executive officer or other officer of Inspired Healthcare participating in the Offerings, any general partner of Inspired Healthcare, and managing member of the general partner of Inspired Healthcare, any beneficial owner of 20% or more of the outstanding voting securities of Inspired Healthcare, any promoter connected with Inspired Healthcare in any capacity, and any person employed by Inspired Healthcare who has been or will be paid remuneration for the solicitation of Subscribers/Purchasers, and any person employed by Inspired Healthcare who has been or will be paid remuneration for solicitation of Subscribers/ Purchasers is or becomes subject to disqualification under Rule 506(d) of Regulation D. Either party may terminate this Agreement at any time with or without cause upon thirty (30) days notice. Any termination shall not relieve a party of any liability for any breach of this Agreement by its existing at the time of termination and such termination shall not affect the indemnification agreements set forth in Section 8. Any compensation earned prior to the date of termination shall be paid in accordance with this Agreement.

**Section 13. General Provisions.**

a. **Parties.** This Agreement shall inure to the benefit of, and be binding upon, you, any person which controls you, your representatives and your successors, and upon Inspired Healthcare and its representatives and successors this Agreement and its conditions and provisions being for the sole and exclusive benefit of the parties and their representatives and successors, and for the benefit of no other person, firm or corporation.

b. **Relationship of Parties.** It is not the intention of the parties to create, nor shall this Agreement be construed as creating, a partnership, joint venture, agency relationship or association other than as specifically set forth herein, or to render the parties liable as partners, co-venturers, or principals. In their relations with each other under this Agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship with the other.

c. **Entire Agreement.** This Agreement evidences the entire agreement between Inspired Healthcare and the Managing Dealer with respect to the subject matter hereof, and supersedes all prior oral or written agreements regarding this subject matter. This Agreement shall not be amended, nor any provision waived, other than by a writing signed by all parties.

d. **Severability of Provisions.** If one or more of the provisions of this Agreement or any application thereof shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions hereof and any application thereof shall in no way be affected or impaired.

e. **Execution and Counterparts.** A scanned and emailed or other electronic record of a signature to this Agreement or any other notice or document regarding any Subscription/Purchase Agreement shall be given legal effect and deemed valid and binding on the person authorizing or transmitting such signature and any person to whom the signature is attributable, whether or not such signature is encrypted or otherwise verified. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same Agreement.

f. **Waiver and delay.** No failure or delay by any party to this Agreement to exercise any right, remedy, power, or privilege under this Agreement shall operate as a waiver thereof, nor shall a waiver of any right, remedy, power, or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power, or privilege with respect to any other or further occurrence.

g. **Governing Law.** This agreement shall be governed by and construed in accordance with the laws of the state of California, without regard to any conflict of laws provisions that would require reference to the laws of any other jurisdiction. Jurisdiction and venue for all purposes relating to this agreement shall lie in Aliso Viejo, Orange County, California.

**Section 14. Arbitration of Disputes.**

a. Any issue, dispute, claim or controversy (collectively, a Claim) arising out of or relating to this Managing Dealer Agreement shall be resolved through binding arbitration as provided for in this Section 14. For purposes of this Section 14, each of Inspired Healthcare and the Managing Dealer acknowledge that the right to pursue a Claim shall extend to not only Inspired Healthcare and the Managing Dealer, but also to any officer, director, share holder, partner, member, affiliate, agent, legal counsel, registered representative or employee of any of Inspired Healthcare or the Managing Dealer.

b. A party shall notify another in writing (the Arbitration Notice) of its intention to have a Claim resolved by confidential and binding arbitration in Aliso Viejo, Orange County, governed by the laws of the State of California and the Federal Arbitration Act, and in accordance with the Commercial Rules of Arbitration of the American Arbitration Association in effect at that time. Said notice shall be sent so that it is received by another patty no later than ten (10) business days before the filing of arbitration.

c. A total of three arbitrators shall be appointed in accordance with this Section 14(c). Within 10 days after the filing of the arbitration, the parties filing the arbitration and the parties receiving the Arbitration Notice shall each appoint one arbitrator, and the two arbitrators so chosen shall select a third arbitrator within 15 days of the expiration of the 10-day period. Each arbitrator shall have at least I0 years of experience in an industry or profession related to the subject matter involved in the Claim, and all arbitration proceedings shall be held, and a transcribed record thereof shall be prepared, in English. No party involved in the arbitration shall have the right to \conduct discovery of another (except as the arbitrators may so order on the application of a party), but shall furnish to the arbitrators such information as the arbitrators may reasonably request to facilitate the resolving of the Claim. The arbitrators shall announce

the award and the reason therefor in writing within one (1) year from the date of the selection of the third arbitrator, or such later date as the parties may agree upon in writing. Each party shall bear their own expenses of the arbitration, including those relating to the arbitrators, attorney's fees, experts and presentation of proof with respect to the Claim.

d. Any award granted by the arbitrators shall not include factual findings and legal reasoning.

e. Following the entry of any award granted by the arbitrators, a party may move to confirm the award in any court having jurisdiction thereof. Should the award be confirmed by a court of competent jurisdiction, the right of either party to appeal confirmation of the award shall be governed by the provisions of the Federal Arbitration Act.

f. Nothing in this Agreement shall limit a party's ability to pursue injunctive relief in a court of competent jurisdiction to the extent legally permissible.

[Signature page follows]

If the foregoing correctly sets forth the understanding between Inspired Healthcare and the Managing Dealer, please so indicate in the space provided below for that purpose, and return one of the signed copies of this letter agreement to Inspired Healthcare in the envelope provided for this purposes, whereupon this letter agreement shall constitute a binding agreement us.

Very truly yours,
Inspired Healthcare Capital, LLC

By: ________________________
Luke Lee, CEO

**AGREED AND ACCEPTED:**

Emerson Equity LLC

By: ________________________
Dominic Baldini, CEO