**DECHERT LLP**
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
Debbie Green (TX 24059852)
2651 N. Harwood Street, Suite 120
Dallas, Texas 75201-1574
Telephone: (214) 453 4900
marcus.helt@Dechert.com
jack.haake@Dechert.com
debbie.green@Dechert.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90004 (MXM)<br><br>(Jointly Administered) |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>AURORA SECURITIES, *et al.*,<br><br>Defendants. | Adv. Pro. No.: 26-09006 |

**PLAINTIFFS' BRIEF IN SUPPORT OF**
**<u>EMERGENCY MOTION FOR INJUNCTIVE RELIEF</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 1

I. The Parties ........ 1

II. Listed Actions ........ 2

III. Debtor's Identity of Interest with Non-Debtor Defendants ........ 2

ARGUMENT ........ 3

I. The Listed Actions Against Non-Debtor Defendants Should Be Deemed Subject to the Automatic Stay ........ 3

A. The Automatic Stay Applies to the Claims Against the Non-Debtor Defendants in the Listed Actions Because They Have an Identity of Interest with Debtors. ........ 4

B. The Automatic Stay Applies to the Non-Debtor Defendants in the Listed Actions Because those Actions Threaten to Obtain Possession of Property of the Estate ........ 5

II. Alternatively, the Court Should Issue a Discretionary Stay of the Listed Actions Against Non-Debtor Defendants. ........ 7

A. A Temporary Stay Would Serve the Interests of Justice and Protect the Estate. ........ 7

B. Traditional Injunction Factors Support Granting a Discretionary Stay ........ 9

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acis Cap. Mgmt., L.P.*,
604 B.R. 484 (N.D. Tex. 2019)....................10

*In re Bernhard Steiner Pianos USA, Inc.*,
292 B.R. 109 (Bankr. N.D. Tex. 2002)....................10

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
354 B.R. 45 (Bankr. S.D.N.Y. 2006)....................8

*In re FiberTower Network Servs. Corp.*,
482 B.R. 169 (Bankr. N.D. Tex. 2012)....................9

*Gigi's Cupcakes, LLC v. 4 Box LLC*,
No. 17-3009, 2019 WL 1767003 (N.D. Tex. Apr. 22, 2019) ....................4, 7

*Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*,
522 F.3d 575 (5th Cir. 2008) ....................5

*Hunt v. Bankers Tr. Co.*,
799 F.2d 1060 (5th Cir. 1986) ....................11

*In re Jefferson Cnty.*,
491 B.R. 277 (Bankr. N.D. Ala. 2013) ....................5

*In re Kevco, Inc.*,
309 B.R. 458 (Bankr. N.D. Tex. 2004)....................6

*In re Genesis Healthcare, Inc.*, No. 25-2963, 2026 WL 1194759, at *8 (N.D. Tex. May 1, 2026) ....................10

*Midlantic Nat'l Bankers v. N.J. Dep't of Envtl. Prot.*,
474 U.S. 494 (1986)....................11

*Nat'l Oilwell Varco, L.P. v. Mud King Prods.*,
No. 12-3120, 2013 WL 1948766 (S. D. Tex. May 9, 2013)....................4, 7

*In re OGA Charters, L.L.C.*,
901 F.3d 599 (5th Cir. 2018) ....................6

*In re Philadelphia Newspapers, LLC*,
407 B.R. 606 (E.D. Pa. 2009) ....................5, 8

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*,
349 F.3d 816 (5th Cir. 2003) ....................3, 4, 6

*In re Seatco, Inc.*,
257 B.R. 469 (Bankr. N.D. Tex. 2001)....................11

*In re W.R. Grace & Co.*,
115 F. App'x 565 (3d Cir. 2004) ....................8

*In re Wellpath Holdings, Inc.*,
Case No. 24-90533 (Bankr. S.D. Tex. Feb. 20, 2025) [Docket No. 1480]....................4

*Matter of Zale Corp.*,
62 F.3d 746 (5th Cir. 1995) ....................9

## INTRODUCTION

Plaintiff Debtors submit this brief in support of their Emergency Motion for Injunctive Relief.[1] There are currently more than a hundred pending actions that threaten to deplete the bankruptcy estate to the detriment of creditors, derail the Debtors' effort to reorganize in an efficient manner, and risk the ongoing operation of Debtors' business serving elderly residents around the country. Damages or judgments against the Non-Debtor Defendants in those cases—Broker Dealers who helped arrange for investments in the Debtor and the Debtor's former CEO Luke Lee—are tantamount to awards against the bankruptcy estate because of contractual and common law indemnification. Because of the close identity in interest between the Non-Debtor Defendants and Debtors, the claims in the Listed Actions should be subject to § 362's automatic stay. Because those proceedings also threaten the orderly resolution of these chapter 11 cases, the Court should also consider (in the alternative) granting the same temporary relief using its inherent equitable powers.

Accordingly, and for the reasons set forth in the Complaint and below, the Court should issue the proposed order to grant immediate declaratory and temporary injunctive relief and set a process for issuing longer-term preliminary relief.

## BACKGROUND

### I. The Parties

Plaintiff Inspired Healthcare Capital Holdings, LLC ("Holdings") is the parent entity of the Debtors' enterprise and is a debtor and debtor in possession in the above-captioned Chapter 11 Cases. Plaintiff Inspired Healthcare Capital, LLC (the "Debtor Sponsor") served as the sponsor of the Debtors' investment offerings, including the private placement of equity interests in

---

[1] Defined terms have the same meaning as in the Complaint.

investment funds and the DST Interests. The defendants in this case are: (1) a number of broker-dealers subject to the Listed Actions, together with their officers, directors, employees, affiliated and associated individual brokers, and other agents acting in such capacity; (2) Luke Lee, former CEO of the debtor sponsor; and (3) claimants/plaintiffs in the Listed Actions set forth in Schedule I of the Complaint.

## II. Listed Actions

As listed in Schedule I of the Complaint, IHC Investors and other third parties have filed more than 100 actions against Non-Debtor Defendants.

## III. Debtor's Identity of Interest with Non-Debtor Defendants

As outlined in the Complaint, the Debtor Sponsor and Managing Broker-Dealer entered into an Exclusive Managing Broker-Dealer Agreement (the "Managing Broker-Dealer Agreement"), attached to the Complaint as Exhibit 1. The Managing Broker-Dealer then entered into separate soliciting dealer agreements or recommending advisor agreements for each offering with the Soliciting Dealers (the "Soliciting Dealer Agreements" and together with the Managing Broker-Dealer Agreement, the "Broker-Dealer Agreements"), and engaged Broker-Dealer Affiliated Persons subject to customary indemnification and insurance arrangements. The Debtors' indemnification obligations to the Broker-Dealers arise from the Broker-Dealer Agreements. The indemnification obligation runs from the Debtor Sponsor to both the Managing Broker-Dealer and Soliciting Brokers pursuant to the Managing Broker-Dealer Agreement.[2] Additionally, a second indemnification is passed along to the Soliciting Brokers through an indemnification obligation running from the Managing Broker-Dealer to the Soliciting Brokers

[2] The Soliciting Brokers are indemnified in the Managing Broker-Dealer Agreement through their inclusion in the definition of Selling Group Member Managing Broker-Dealer Agreement as set forth therein.

pursuant to the Soliciting Dealer Agreements and agreements with Broker-Dealer Affiliated Persons. Accordingly, the Non-Debtor Defendants party to the various indemnification agreements with the Debtors may be able to assert an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Listed Actions.

Also as outlined in the Complaint, Luke Lee served as CEO of the Debtor Sponsor and was expressly authorized to act as an agent of the Debtor in connection with the private placement offerings. Debtors anticipate that Mr. Lee may assert indemnification claims against the Debtors based on his role as CEO. The Non-Debtor Defendants are covered by various insurance policies, including a D&O policy that covers both Mr. Lee and the Debtors.

## ARGUMENT

### I. The Listed Actions Against Non-Debtor Defendants Should Be Deemed Subject to the Automatic Stay.

The commencement of a chapter 11 case operates as an immediate stay of, among other things, the "continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the [bankruptcy] case . . . ." 11 U.S.C. § 362(a)(1). The automatic stay further prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3). Bankruptcy courts may extend the automatic stay to litigation against non-debtors where there is an identity of interest between debtors and non-debtors, such that "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). Here, contractual indemnification between the Debtors and Non-Debtor Defendants creates such an identity of interest, which brings claims against the latter within the scope of the automatic stay. Other theories of vicarious liability also support that finding. Further, because the Listed Actions

implicate Debtors' estate claims and insurance policies, those proceedings also qualify as efforts to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" under § 362(a)(3). That is a second, distinct ground to extend the automatic stay to proceedings against the Non-Debtor Defendants.

**A. The Automatic Stay Applies to the Claims Against the Non-Debtor Defendants in the Listed Actions Because They Have an Identity of Interest with Debtors.**

Bankruptcy courts may extend the automatic stay to cover claims against non-debtors when "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Gigi's Cupcakes, LLC v. 4 Box LLC*, No. 17-3009, 2019 WL 1767003, at *1 (N.D. Tex. Apr. 22, 2019) (quoting *Reliant Energy Servs.*, 349 F.3d at 825). An indemnification obligation in which the debtor is responsible for a judgment against the non-debtor creates such an identity of interest. *See id.*; *see also Nat'l Oilwell Varco, L.P. v. Mud King Prods.*, No. 12-3120, 2013 WL 1948766, at *2, 5 (S.D. Tex. May 9, 2013) (extending automatic stay to non-debtors because debtor's indemnification obligations created an identity of interest); *In re Wellpath Holdings, Inc.*, Case No. 24-90533 (Bankr. S.D. Tex. Feb. 20, 2025) [Docket No. 1480] (same).

Here, Debtors have contractual indemnification obligations to the Non-Debtor Defendants. *See* Background, *supra*. Debtors anticipate that Luke Lee will also assert indemnification claims against the Debtors. The terms of these indemnification provisions are broad and may mean that Debtors are potentially liable for any judgments or awards that arise from the Lawsuits or FINRA Arbitration Actions. The identity of interest between Debtors and the Non-Debtor Defendants flowing from such indemnification is grounds to extend the automatic stay to the claims in the Listed Actions. *See Gigi's Cupcakes, LLC*, 2019 WL 1767003, at *1.

While the express indemnification obligations are sufficient, there are additional grounds to find identity of interest between Debtors and Non-Debtor Defendants that also support extending the automatic stay. Because the Managing Broker, Soliciting Brokers, and Mr. Lee may assert that they were acting as agents of the Debtors in the context of the conduct giving rise to the claims, the Debtors could potentially be liable on an agency / respondeat superior theory even apart from any indemnification obligation. Such a possibility also supports extending the automatic stay here. *See In re Jefferson Cnty.*, 491 B.R. 277, 289 (Bankr. N.D. Ala. 2013) (explaining that "absolute indemnity is not required" to extend the automatic stay . . . "the 'possibility' of a right of indemnification is sufficient"); *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 615-16 (E.D. Pa. 2009) (affirming the extension of the automatic stay to non-debtors because, among other reasons, "the Debtors owe potential contractual and common law duties to indemnify the Non–Debtors," which include the theories of respondeat superior, vicarious liability, and principal/agent theories). Under any such theory, because the Listed Actions could result in awards that would functionally be against the Debtors, they should be deemed to fall within the scope of the automatic stay under § 362(a)(1).

### B. The Automatic Stay Applies to the Non-Debtor Defendants in the Listed Actions Because those Actions Threaten to Obtain Possession of Property of the Estate.

Section 362(a)(3) of the Bankruptcy Code automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "The section 362(a)(3) stay applies to two types of claims: claims that belong to the debtor under applicable state (or federal) law, and claims that seek to recover property of the estate that is controlled by a person or entity other than debtor." *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 588 (5th Cir. 2008). Staying such actions furthers the purposes of the automatic stay, which are "to protect

the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs.*, 349 F.3d at 825. In this case, insurance policies held by the estate create at least two grounds to extend the automatic stay.

First, as noted in the Complaint, Debtors themselves may have claims against Mr. Lee and the Broker Dealers. Mr. Lee's insurance policy has an aggregate policy limit that could be depleted by the Lawsuits. The same is true for at least some of the insurance policies held by the Broker-Dealers. Absent an extension of the automatic stay, there is a real possibility that Debtors will lose any functional chance to recover assets based on their estate claims. That there are competing claims over and above the potential policy limits, including claims by the estate, counsels in favor of staying those claims and bringing the disputes over those claims within the purview of the bankruptcy estate. *See In re OGA Charters, L.L.C.*, 901 F.3d 599, 604 (5th Cir. 2018) ("[W]here a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate.").

Second, Debtors are covered by the same insurance policy as the policy that covers Mr. Lee, both with respect to "Side B" coverage for indemnification claims and "Side C" coverage for claims directly against the Debtors. To the extent third party claims against Non-Debtor Defendants deplete insurance proceeds that could otherwise be paid out to creditors of the estate, those claims are depleting estate property in contravention of 11 U.S.C. § 362(a)(3). *See In re Kevco, Inc.*, 309 B.R. 458, 468 (Bankr. N.D. Tex. 2004) ("The Fifth Circuit has concluded, however, that where a debtor corporation owns a liability policy that exclusively covers its directors and officers, the proceeds are not property of the estate, but where the debtor owns a

policy that covers *its own* liability vis-a-vis third parties, both the policy and its proceeds are property of the estate.”).

For these reasons, the Court should also extend the automatic stay to the Listed Actions under § 362(a)(3).

## II. Alternatively, the Court Should Issue a Discretionary Stay of the Listed Actions Against Non-Debtor Defendants.

“Even when an extension of the automatic stay may not be warranted, ‘courts may also exercise their discretion to stay a proceeding against non-bankruptcy co-defendants ‘in the interests of justice and in control of their dockets.’” *Gigi’s Cupcakes, LLC,* 2019 WL 1767003, at *3 (quoting *Nat’l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, at *3 (S.D. Tex. May 9, 2013)). Here, the entangled nature of claims against Debtors and the Non-Debtor Defendants, and the extraordinary risk that allowing the Listed Actions to continue poses to the fair and orderly resolution of the chapter 11 case here, warrants granting such a stay.

### A. A Temporary Stay Would Serve the Interests of Justice and Protect the Estate.

Courts have recognized the need to temporarily stay claims or proceedings against non-debtors where “the allegations raised against co-defendants are ‘inextricably interwoven’ with claims against the debtor,” such that severance of the claims would be inappropriate. *Id.* (citing *Blundell v. Home Quality Care Home Health Care, Inc.*, 2017 WL 5889715, at *4–6 (N.D. Tex. Nov. 29, 2017)). Permitting some claims to proceed (against non-debtors) while staying the claims against debtors under those circumstances is both “inefficient and inconvenient.” *See Id.* at *4. That is the situation here. Specific claims against Non-Debtor Defendants may arise from the same factual basis as the claims against the Debtor defendant(s) (e.g., the sales of securities to IHC Investors). Because of the overlapping facts, arguments, and legal theories—including the allegation of theories such as negligence, *respondeat superior*, apparent agency, and other theories

of vicarious liability as to the Debtor defendant—permitting the Listed Actions to move forward at this juncture poses a serious risk to the Debtors' ability to mount a fulsome defense, thereby exposing the Debtors to the risk of res judicata and/or collateral estoppel once the automatic stay is lifted.

As importantly, a temporary stay is warranted because letting claims continue against the Non-Debtor Defendants would "interfere with the reorganization of the debtor" and "diminish [the debtor's] ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004). First, permitting the cases against the Non-Debtor Defendants to continue would force key employees of the Debtors, including the Debtors' legal team, to become involved in the active management of more than 100 proceedings, thereby diverting resources away from their efforts to keep these Chapter 11 Cases on track for a successful sales process restructuring and chapter 11 plan. Given the overlapping nature of the claims and potential liability in the Listed Actions, Debtors' counsel would not be able to sit on the sidelines. Indeed, even if the Listed Actions only proceeded against the Non-Debtor Defendants, it would unavoidably ensnare the Debtors in discovery and create costs for the Debtors' estates while exposing the Debtors to potential collateral estoppel arguments. *See, e.g., In re Philadelphia Newspapers, LLC*, 407 B.R. at 614 (extending the stay to non-debtor parties to avoid diversion of "the time and energy of key personnel from the reorganization effort at a critical time in the formulation of the plan"); *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (extending stay where liability of non-debtor was contingent on liability of debtor, debtor risked being subject to collateral estoppel, debtor was required to indemnify non-debtor defendant, and continuance of cases would distract key personnel from debtor's reorganization efforts).

Moreover, because Debtors themselves may have estate claims against the Non-Debtor Defendants, allowing the Listed Actions to continue would either further deplete Debtors' resources (if they pursue those claims now) or risk losing potential recovery on those claims (if they pursue them later). As outlined above, the Non-Debtor Defendants have a finite amount of assets and insurance coverage to cover potential awards. If those assets are depleted, the Debtors stand to recover less (or nothing) from their own estate causes of action. Staying those claims until the confirmation of a chapter 11 plan would allow the Debtors to pursue those claims on fair footing and distribute the proceeds of such actions in accordance with the priority scheme established by the Bankruptcy Code.

**B. Traditional Injunction Factors Support Granting a Discretionary Stay**

"When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions [including] . . . (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest." *Matter of Zale Corp.*, 62 F.3d 746, 765 (5th Cir. 1995). Here, these factors counsel in favor of a temporary, limited stay of the claims against the Non-Debtor Defendants contained in Schedule I of the Complaint.

First, Debtors have established a likelihood that they are entitled to the relief sought in this adversary proceeding. *See In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 183 (Bankr. N.D. Tex. 2012) (explaining that the "[p]robability of success means that the Debtor[s] [are] likely to succeed in this lawsuit," i.e., this adversary proceeding). For all the reasons outlined in the Complaint and this memorandum, the existence of indemnification obligations between the

Debtors and Non-Debtor Defendants, overlapping claims against Non-Debtor Defendant insurance policies, and the entangled nature of the claims counsel in favor of temporarily staying the Listed Actions. Some courts considering discretionary injunctions have also considered the likelihood that the underlying reorganization will succeed when assessing whether to grant injunctive relief. *See, e.g.*, *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 528 (N.D. Tex. 2019); *In re Genesis Healthcare, Inc.*, No. 25-2963, 2026 WL 1194759, at *8 (N.D. Tex. May 1, 2026). Here, and as outlined in the First Day Pleadings Declaration of Chief Reorganization Officer Benjamin Jones, IHC has retained sophisticated financial and legal advisors to help manage the ongoing operation of its businesses and assist with the successful confirmation of a plan and emergence from bankruptcy. *See Declaration of M. Benjamin Jones in Support of Chapter 11 Petitions and First Day Pleadings*, No. 26-90004 (MXM) (Bankr. N.D. Tex. Feb. 4, 2026), Docket No. 33. Under either formulation, this factor counsels in favor of awarding relief here.

Second, permitting the bankruptcy estate to be depleted through claims against the Non-Debtor Defendants during these bankruptcy proceedings threatens irreparable harm. Permitting claims against Non-Debtor Defendants to continue during the pendency of these bankruptcy proceedings threatens the ongoing operation of the Communities and the prospect for a successful reorganization, which directly threatens residents and employees. Because "Chapter 11 was adopted to give business in financial difficulties an opportunity to reorganize their business affairs, provide repayment to their creditors, and emerge from their bankruptcy case in a financially sound manner," the risk that a debtor will not be able to successfully reorganize constitutes irreparable harm. *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 118 (Bankr. N.D. Tex. 2002).

Third, the harm to Debtors—potentially threatening the success of reorganization and the ability for Debtors to continue operating Senior Living Communities around the country while

maximizing return to creditors—far outweighs a targeted and temporary stay of litigation pending the confirmation of a chapter 11 plan. These are not just financial harms: the Communities are home to more than 2,500 residents and employ approximately 1,950 employees. The failure of reorganization would directly threaten the continuity of care for those elderly residents and the livelihoods of nearly two thousand employees. By contrast, some of the third parties affected by the stay—such as the Broker-Dealers named as parties to this Complaint—support granting the relief. For any parties that do not support such a temporary stay, the harm of a temporary delay in their ability to pursue their claims is easily outweighed by the potential harms to the Debtors. *See In re Seatco, Inc.*, 257 B.R. 469, 477 (Bankr. N.D. Tex. 2001) (approving a plan of reorganization that included a temporary injunction because "the harm to the Debtor—the inability to successfully reorganize—outweighs the harm" to other creditors from having to wait to collect on certain outstanding liabilities).

Finally, staying claims against the Non-Debtor Defendants serves the public interest by vindicating the aims of bankruptcy law to balance the interests of both Debtors and creditors. Staying litigation claims that threaten the reorganization of the debtor "prevent[s] a ' chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (quoting *In re Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982)). Indeed, staying litigation under these circumstances is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bankers v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Complaint, Plaintiffs respectfully request that the Court enter the proposed order granting temporary injunctive relief to stay certain proceedings involving the Non-Debtor Defendants.

DATED: June 28, 2026

Respectfully submitted by:

**DECHERT LLP**

*/s/ Marcus A. Helt*
Marcus A. Helt (Texas Bar #24052187)
Debbie E. Green (Texas Bar #24059852)
Jack G. Haake (Texas Bar #24127704)
2651 N Harwood Street
Dallas, TX 75201
Telephone: (214) 453-4900
marcus.helt@dechert.com
debbie.green@dechert.com
jack.haake@dechert.com

- and -

Jerry L. Hall (admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
jerry.hall@dechert.com

*PROPOSED COUNSEL FOR THE PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date a true and correct copy of the foregoing motion was served by the Court's CM/ECF system on all counsel of record registered in these Chapter 11 Cases through CM/ECF. Subject to the Court's approval of their retention and access to filing privileges, the Debtors' proposed claims and noticing agent will be filing a supplemental certificate of service on the docket to reflect additional service of this motion.

Dated: June 28, 2026

*/s/ Marcus A. Helt*
Marcus A. Helt