Erin E. Jones
Texas Bar No. 24032478
erin@jonesmurray.com
Jones Murray LLP
602 Sawyer St., Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Facsimile: (832) 529-3633
COUNSEL FOR FINRA CLAIMANTS

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| INSPIRED HEALTHCARE CAPITAL | § | Case No. 26-90004 (MXM) |
| HOLDINGS, LLC *et. al.* | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | |
| INSPIRED HEALTHCARE CAPITAL | § | |
| HOLDINGS, LLC *et. al.* | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| v. | § | ADV. PRO. NO.: 26-09006 |
| | § | |
| AURORA SECURITIES, *et. al.* | § | |
| | § | |
| Defendants. | § | |

**OBJECTION TO DEBTORS' EMERGENCY MOTION FOR INJUNCTIVE <u>RELIEF -
TEMPORARY RESTRAINING ORDER</u>**
(Relates to Docket No. 3)

**TO THE HONORABLE UNITED STATES BANKRUPTCY MARK X. MULLIN:**

COMES NOW, Counsel for Claimants in 66 of the FINRA arbitrations (the "FINRA

Claimants"), namely: Soriede Law Group ("Soriede Law"), The White Law Group, LLC ("White

Law"), Wolper Law Firm, P.A. ("Wolper Law"), Shepherd, Smith, Edwards & Kantas, LLP

("SSEK"), Klayman Toskes, PLLC ("KT Law") and ChapmanAlbin LLC ("CA Law") (Soriede

Law, White Law, Wolper Law, SSEK, KT Law and CA Law will be collectively referred to as "Claimants' Counsel") who file this Opposition to Plaintiffs' Emergency Motion for Injunctive Relieve and in support of that Opposition, state the following:

## I.      PRELIMINARY STATEMENT

1.      The Claimants' Counsel collectively represent 67 of the 105 FINRA arbitration claims Plaintiffs attached to their Motion.  The FINRA Claimants and Claimants' Counsel oppose the injunctive relief sought in Plaintiffs' Motion.

2.      Plaintiff has filed an "Emergency" Motion, yet has failed to provide any basis for seeking emergency relief.  Incredibly, Plaintiffs do not even attempt to assert a single argument, much less provide any evidence or proof, that there is any emergency to this issue.  Plaintiffs have not asserted that anything meaningful will happen in the next 14 days (the period the Motion seeks to apply this emergency injunction), nor can Plaintiffs.   In fact, Plaintiffs cannot even assert anything that will happen in the next 30 days or 60 days that will have any impact on this bankruptcy.  As discussed in more detail below, these FINRA cases have been pending for almost one year and this bankruptcy has been pending for almost 5 months, yet Plaintiffs have never taken any action related to the FINRA arbitrations because they have not had impact on Plaintiffs, nor will they.  There simply is no argument or evidence that an emergency motion is needed.

3.      The FINRA Claimants and Claimants' Counsel wholeheartedly adopt and support the Response filed by Goodman & Nevaskil, P.A. and will endeavor not to repeat all of the positions taken in that Response.  *See* Defendant's Response To Plaintiffs' Emergency Motion For Injunctive Relief, Dkt. #12 (June 29, 2026) (hereafter "Goodman & Nevaskil, P.A.'s Response").  Instead, the FINRA Claimants and Claimants' Counsel will focus their Opposition mostly on different arguments and issues than presented in Goodman & Nevaskil, P.A.'s Response so as to

2

not waste the time and resources of the Court.  As a result, failure to not specifically address any issue raised in Goodman & Nevaskil, P.A.'s Response is purposeful and should be interpreted as the FINRA Claimants and Claimants' Counsel relying on Goodman & Nevaskil, P.A.'s Response for that issue.

## II.     SUMMARY OF THE ARGUMENT

4.     Plaintiffs have filed a motion that is full of conjecture and speculation, but completely devoid of any evidence to support any of Plaintiffs' positions.  Instead of providing evidence, Plaintiffs argue they "may" have claims to assert against the brokerage firms the FINRA Claimants are suing or it is possible the brokerage firms would seek indemnity, but none of this is provided with any proof to the Court.  In fact, the Plaintiffs failed to even allege why an emergency motion was warranted, much less provide any proof of an alleged emergency, which is fatal to their Motion.  And, even if Plaintiffs had alleged an emergency, Plaintiffs cannot sustain their burden of proof for any of the elements necessary to prevail on a preliminary injunction.  As such, Plaintiffs' Motion fails on every ground and should be denied.

## III.     STATEMENT OF FACTS

5.     For the purposes of brevity and saving the Court time, the FINRA Claimants and Claimants' Counsel adopt the Factual and Procedural Background from Goodman & Nevaskil, P.A.'s Response and will endeavor to only add details not in that Response.  Claimants' Counsel began to receive call from the FINRA Claimants in the summer of 2025, shortly after IHC stopped making distributions.  *See* Declaration of Samuel B. Edwards ("Edwards Declaration") at ¶ 3, Attached as Exhibit 1 to this Opposition.  In or around August 2025, the Claimants' Counsel began filing FINRA cases against the various brokerage firms who sold IHC sponsored investments.  *See id.*  Most notably, none of those cases name any debtor in the bankruptcy as FINRA arbitrations

are exclusively for disputes between FINRA members (mostly brokerage firms, their owners and their employees) and customers of FINRA members. *See id* at ¶ 4. As a result, no debtor is named in any of those FINRA arbitrations as no debtor could be named as a party in those FINRA arbitrations. *See* Declaration of Michael D. Kennedy ("Kennedy Declaration") at ¶3, Attached as Exhibit 2 to this Opposition.

6.      The claims being asserted in the various FINRA arbitrations are not identical, but they do all involve independent duties that the brokerage firms owed to their customers that the Plaintiffs did not also have. *See* Declaration of Adam Nativ ("Nativ Declaration") at ¶5, Attached as Exhibit 3 to this Opposition; *see also* Edwards Declaration at ¶6. That includes, for example, the application of the FINRA suitability rule and FINRA due diligence obligations that only apply to FINRA members, not any of the Plaintiffs. *See id*.

7.      Of the many FINRA arbitration that have been filed where an IHC sponsored investment is involved, in many – if not most – of the cases, IHC is only one of the investments involve in the dispute with the brokerage firm. *See id.* at ¶4. And, for some of the FINRA arbitration cases the Plaintiffs listed, an IHC sponsored investment is not even involved in the dispute. *See* Nativ Declaration at ¶3.

8.      For almost a year, those cases have progressed through the FINRA arbitration process without the involvement of any debtor, including the last five months, while the debtor has been in bankruptcy. *See* Edwards Declaration at ¶6.

## IV.    ARGUMENT AND AUTHORTIES

### a. <u>Failure to Prove the Emergency is Fatal to Plaintiff's Motion</u>

9.    The Plaintiffs have sought an "emergency" motion for a temporary injunction to extend the automatic stay against at least 105 private arbitration, some of which have been pending for almost a year without the need for the Plaintiffs to take any action.  However, in their moving papers, the Plaintiffs do not provide any basis for needing an emergency ruling on this issue, which is fatal to Plaintiffs' Motion.  Under local rules, when a party seeks to extend or impose an automatic stay on a third party, the party seeking to enforce the automatic stay has to (1) file a motion with the court, (2) serve all the defendants the party is seeking to impose the stay upon, (3) provide proof of service to the court and (4) give at least 21 days' notice of a hearing to provide parties sufficient time to brief the issue.  *See* Local Rule L.B.R. 4001-1(f).  Plaintiffs failed in all but the first of these requirements as Plaintiffs did not serve all of the 105 defendants it named in Exhibit 1, did not provide the Court proof of service (since it had not happened) and did not give the defendants at least 21 days to brief the issue, as required under Local Rules.

10.    While the Local Rules do provide that it is possible for such relief to be addressed in "an expedited or emergency hearing", the Local Rules provide that such emergency hearings "will be granted only in exceptional circumstances."  *Id.*  This is consistent with the law in bankruptcy courts across the country that consistently hold a "preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the [moving party] is entitled to such relief."  *Williams Ohio Valley Midstream, LLC v. Kittle,* No. 23-2185, 2024 U.S. App. LEXIS 16552, 2024 WL 3325532, at *3 (4th Cir. July 8, 2024) (quoting *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship,* 918 F.3d 353, 366 (4th Cir. 2019)).

11.     While the Local Rules do not define what would justify such exceptional circumstances, the Bankruptcy Code does provide the standard for Courts to use.  Specifically, the Bankruptcy Code states that emergency exists where an "expedited action" can be brought only when "irreparable harm would occur **during the time needed** to consider a response …."  Rule 8013(d)(1)(emphasis added).  That would mean that Plaintiffs would have to suffer irreparable harm in the next 14 days (the time period being sought in the motion) to qualify for filing an emergency motion under bankruptcy rule.  However, Plaintiffs have not given the Court a single argument for any harm, much less irreparable harm, that Plaintiffs will suffer in the next 14 days (or even the next 30 to 60 days) if the FINRA arbitrations are not stayed.

12.     Moreover, even if Plaintiffs had asserted anything in their "Emergency Motion" that alleged a supposed irreparable harm Plaintiffs would suffer in the next 14 days, an allegation alone would not have been enough.  Rather, any "emergency motion **must**: be accompanied by **an affidavit setting for the nature of the emergency** …."  Rule 8013(d)(2)(A)(emphasis added).  Plaintiffs' failure to follow this rule is fatal to Plaintiffs' Emergency Motion and should result in the Court summarily rejecting Plaintiffs' Motion for failure to follow the rules for filing an emergency motion in the bankruptcy court.

### b.  Plaintiffs are Not Likely to Win on the Merits of Their Claim

13.     Even if Plaintiffs had complied with their obligations in filing this Motion, which they did not, Plaintiffs would have to prove they are likely to succeed on the merits of the underlying complaint.  *See Poling v. Foxwell*, No. PWG-18-80, 2019 U.S. Dist. LEXIS 57080, 2019 WL 1472304, at *5 (D. Md. Apr. 3, 2019) ("a preliminary injunction must be tied to the likelihood of success on the merits of a properly pleaded complaint").  Plaintiffs are not even close to meeting this burden.

6

14. Goodman & Nevaskil, P.A.'s Response addresses this issue very well and the FINRA Claimants and Claimants' Counsel adopt those arguments herein. While the Plaintiffs assert a handful of baseless arguments as to the merits of having "aligned interests", the only real argument is that there is an indemnification provision that the brokerage firms "could" use to assert liability against the Plaintiffs if the brokerage firms were found liable in the FINRA arbitrations. However, this argument is misguided as the indemnification agreement the Plaintiffs attach to their Motion could not apply to the claims asserted in the FINRA arbitrations.

15. Specifically, the indemnification agreement the Plaintiffs attached provide that the Plaintiffs would indemnify the "Managing Dealer or any Selling Group Member" but only very limited circumstances, all based on wrongdoing by Plaintiffs. *See* Emerson Equity Managing Broker-Dealer Agreement, Plaintiffs' Complaint [Dkt. 1-1] ("BD Agreement"). None of the bases for indemnification relate to any of the independent duties that each of the brokerage firms owed to their customers. For example, the Plaintiffs provided indemnity for "Any untrue statement or alleged untrue statement of a material fact contained in the Memorandum, Authorized Sales Material or in any Application …." *Id*. at 12. So, if there is a misrepresentation in the offering documents, and **that misrepresentation** resulted in liability and damages to the brokerage firms selling the interests, then Plaintiffs might be required to indemnify the brokerage firms for those the damages caused by those misrepresentations. However, none of the allegations in any of the FINRA arbitration relate to misrepresentations in the offering documents, so this indemnity provision would not apply. Similarly, the Plaintiffs provided indemnification for failing to "comply with any of the applicable provisions of the Securities Act (including, but not limited to, Rule 506 of Regulation D), the Exchange Act or the regulations there under" or "disqualification, within the meaning of Rule 506(d) of Regulation D, of Inspired Healthcare …." *Id*. Put another

way, Plaintiffs agreed to indemnify the brokerage firms for any failures in registration of the securities or Plaintiffs failure to follow the securities laws related to the sale of these investments. However, the claims in the FINRA arbitrations relate to the ***brokerage*** firms allegedly not following securities laws, not Plaintiffs.  As a result, the indemnification the Plaintiffs cite simply does not apply and, as a result, Plaintiffs are not likely to succeed on the merits.

16.     Moreover, a claim for possible indemnification is not a basis for "irreparable harm", as the Plaintiffs have suggested.  This exact issue was addressed in *Ferrandino & Son, Inc. v. Sahene Constr., LLC (In re Sahene Constr., LLC)*, Nos. 23-10096, 23-1003, 2023 Bankr. LEXIS 1082 (Bankr. M.D. La. Apr. 19, 2023).  In *Ferradino*, the party in bankruptcy sought to stay an arbitration arguing, as Plaintiffs do here, that there was an indemnification agreement that could result in future liability to the bankruptcy estate. *See id* at * 1-2.  As the *Ferradino* Court explained, "Ferrandino contends irreparable injury would be suffered by it (and presumably) the estate because 'Ferrandino's seeking of indemnification through Sahene's bankruptcy threatens Sahene's plan process,' and a judgment against Ferrandino will effectively be a judgment against Sahene. That explanation falls short of demonstrating irreparable injury. To the contrary, an adverse ruling against Ferrandino in the Arbitration would simply give rise to a liquidated, unsecured claim against this estate, something that happens on a daily basis in bankruptcy court. Stated another way, liquidation of a creditor's claim in another forum is hardly an 'unusual situation' giving rise to grounds to extend the automatic stay to a non-debtor." *Id*. at *9.  The *Ferrandino* Court went on to say that if a stay was in place "this court would no doubt be easily swayed to modify the stay to allow the claims to be liquidated in an efficient manner.  The Supreme Court has also recognized that arbitration affords a simple, informal and

expeditious manner of resolving disputes. As such, Ferrandino had not met its burden of proof with respect to irreparable injury. *Id*. at *13.

17.     This is comparable to the indemnification agreement raised by Plaintiffs here. An award against the brokerage firms *might* give rise to one or more claims against Plaintiffs, but, as discussed above, the scope of the indemnification is limited; Plaintiffs do not have an agreement to indemnify all claims, but only specific, fact dependent issues. So there *might* be awards against the selling brokerage firms, who *might* seek indemnification against Plaintiffs, and which claims *might* or ***might not*** be successful in proving some portion of the damages awarded in these arbitration cases are subject to the indemnification agreement. This is, at best, a ***potential*** identity of interests, which is insufficient for the stay to extent to non-debtors. "[I]n order to extend the stay to a non-debtor, '[t]here must be an actual, as opposed to an alleged or potential, identity of interests, such that a judgment against the non-bankrupt party would in fact be a judgment against the bankrupt party.'" *Id.* at *9 (*quoting In re Divine Ripe, L.L.C.*, 538 B.R. 300 (Bankr. S.D. Tex. 2015)).

### c. Defendants, Not the Plaintiffs, Will Suffer Irreparable Harm if a Stay is Entered for the FINRA Arbitrations

18.     Even if Plaintiffs were likely to win on the merits, Plaintiffs would also have to show they will suffer "irreparable harm" absent the court granting the preliminary injunction. And, Plaintiffs "must make a 'clear showing' [they] will suffer harm that is '**neither remote nor speculative, but actual and imminent**.'" *Williams Ohio Valley Midstream, LLC v. Kittle*, No. 23-2185, 2024 U.S. App. LEXIS 16552, 2024 WL 3325532, at *3 (4th Cir. July 8, 2024) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp*., 952 F.2d 802, 812 (4th Cir. 1991))(emphasis added). Plaintiffs have not provided any non-speculative harm they will suffer and nothing Plaintiffs have cited is "actual" harm Plaintiffs have suffered or a harm that is "imminent." The

9

reason for this failure is that Plaintiffs know the real parties who will be injured with the injunction are the FINRA Claimants.

19.     Many of the FINRA Claimants are elderly and/or have been rendered destitute as a result of IHC sponsored investments stopping all payments and potentially losing much of their value. *See* Edwards Declaration at ¶7&8. Staying the FINRA arbitrations will result in incredible financial hardship for the FINRA Claimants and it is likely that any significant delay would result in many of the FINRA Claimants not surviving to see their claims resolved. *See id.* Moreover, FINRA arbitration provides a specific remedy for such elderly claimants and a stay would unnecessarily interfere with that right the FINRA Claimants have under FINRA arbitration rules. *See id.* This issue is compounded by the way in which FINRA administers cases involving bankruptcy. That is, if the FINRA cases become subject to the automatic stay, FINRA will typically remove the case from processing and cancel the arbitration hearing dates until the stay is lifted. *See id.* at ¶9. Even if the stay is temporary, this would require more than 100 cases to be rescheduled, likely resulting in a year or more delay for each of the FINRA Arbitrations. This would increase the harm the FINRA Claimants would suffer if the injunction were granted.

20.     It is also important to note that the FINRA cases going forward results in no harm to Plaintiffs and, to the contrary, could reduce the obligation of the Plaintiffs. The FINRA Claimants are subject to the one recovery rule and any money recovered from the brokerage firms could not also be recovered against the bankruptcy estate. As such, recovery in the FINRA cases actually reduces the burden on the bankruptcy estate, it does not increase it. In fact, this is true even if Plaintiffs' misguided insemination argument was accurate as the FINRA Claimants are already creditors in the bankruptcy. So, even if the FINRA Claimants win claims against the brokerage firms and the brokerage firms subsequently seek indemnification, the amount of liability

10

does not increase for the bankruptcy estate because every dollar paid for indemnification would reduce the amount owed to the FINRA Claimants as creditors in the bankruptcy. As a result, the FINRA arbitrations cannot have any negative impact on the Plaintiffs, only on the FINRA Claimants.

### d. The Balance of Equities is in Favor of the Defendants

21. The balance of equities supports denying the Plaintiffs' Motion. The Plaintiffs ignore that the FINRA arbitrations largely deal with securities other than IHC sponsored investments. *See* Nativ Declaration at ¶2. When the FINRA arbitrations were filed, an IHC sponsored investment was only one of many investments at issue in many cases, and for some of the cases, the IHC sponsored investment was only a fraction of the investments at issue. *See* Kennedy Declaration at ¶4. For example, in one of the cases the White Law Group is counsel of record, there are $6 million in investments at issue in the case and only $1 million of that is an IHC sponsored investment. *See id.* That means that an IHC sponsored investment is less than 17% of what is at issue in the case, yet Plaintiffs would propose a stay that would keep the entire case from moving forward. *See id.* This would result in stopping tens of millions in claims that do not involve IHC in any way, yet since IHC is one investment at issue, Plaintiffs want the entire case halted. *See id.* That clearly is not a balance of the equities as it keeps the FINRA Claimants from bringing tens of millions in claims all to protect the interests of the Plaintiffs.

22. In truth, this Motion is actually being sought to as a favor to brokerage firms, not to help the bankruptcy estate in any way. The best evidence of this clear fact is that the list of FINRA arbitration claims include cases that do not include IHC at all. *See* Native Declaration at ¶3. In fact, Plaintiffs are attempting to obtain a stay against a FINRA case that does not involve IHC, but involves a different investment sponsor that is also in bankruptcy in the Northern District

of Texas, but has not sought to extend the bankruptcy stay. *See id.* This is only being done to appease the brokerage firms, not to benefit the bankruptcy estate, as required.

### V. CONCLUSION

23. Neither the law nor the equities support the Plaintiffs' Motion. First, Plaintiffs have not satisfied the requirements to bring an emergency motion, which should result in summary dismissal of Plaintiffs' request. And, even if the motion had met the requirements, Plaintiffs cannot meet any of the requirements to be given a temporary injunction. Plaintiffs have not proven they are likely to succeed on the merits of the claims, Plaintiffs have not proven they will suffer irreparable harm without the temporary injunction and the balance of the equities unquestionably support the Defendants in this action. As a result, Plaintiffs' Motion should be denied in its entirety.

### PRAYER

WHEREFORE the FINRA Claimants ask that the Court (i) deny Plaintiff's Emergency Injunction Request, and/or (ii) deny Plaintiffs' Motion to extend the automatic stay to the FINRA Arbitrations, and (iii) grant the FINRA Claimants any such additional relief to which they may be entitled.

Dated:  June 30, 2026.

JONES MURRAY, LLP

By: /s/ Erin E. Jones
Erin E. Jones
Texas Bar No. 24032478
Jones Murray, LLP
602 Sawyer St., Suite 400
Houston, Texas 77007
Telephone: (713) 863-8891
Facsimile: (713) 863-1051
erin@jonesmurray.com
COUNSEL FOR FINRA CLAIMANTS

## CERTIFICATE OF SERVICE

I hereby certify, on this 30th day of June 2026 that I served a true and correct copy of the foregoing Response upon all parties registered to receive service via this Court's ECF notification system.

By:     */s/ Erin E. Jones*
Erin E. Jones