Robert A. Simon
Texas Bar No. 18390000
**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**ATTORNEYS FOR DEFENDANTS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **INSPIRED HEALTHCARE CAPITAL** | § | **Case No. 26-90004** |
| **HOLDINGS, LLC**, *et al.*, | § | |
| | § | **(Jointly Administered)** |
| **Debtors** | § | |

| | | |
|---|---|---|
| **INSPIRED HEALTHCARE CAPITAL,** | § | |
| **HOLDINGS, LLC**, *et. al.*, | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **V.** | § | **Adv. Proc. No. 26-09006** |
| | § | |
| **AURORA SECURITIES**, *et al.*, | § | |
| | § | |
| **DEFENDANTS.** | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## EMERGENCY MOTION FOR INJUNCTIVE RELIEF

**TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:**

Defendants Brett W. Henricks, individually and as a member of Henricks Investments,

LLC (Case No. 25-01398), David Walser and Barbara Greenfield (Case No. 25-01799), James

Sean Hillier, individually and as manager of East County Home Solutions (Case No. 25-02029),

Nikki Chua (Case No. 25-02052), Katherine M. Higgins, individually and as manager of Unbridled

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'
EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 1**
DM 845921 / 32093.001

Holdings, LLC (Case No. 25-02069), Michael Barbarick, individually and on behalf of 3030 West Second Street, Inc. (Case No. 25-02160), David Lowenstern, individually and as manager of Valley Gardens, LLC (Case No. 25-02215), Matthew T. O'Reilly and Wenceslaus Achramowicz, individually and as trustee of the Wenceslaus Achramowicz Trust DTD APRIL 5, 2010 (Case No. 25-02296), Dougals C. Baker and Irena M. Baker, individually and on behalf of Velebit Properties, LLC (Case No. 25-02457), Milosh D. Milenkovich and Jelisaveta Milenkovich (Case No. 25-02476), and Jeffery L. North (Case No. 26-00362) (collectively the "Defendants") file this response (the ("Response") to Plaintiffs Inspired Healthcare Capital Holdings, LLC's, *et al.* (the "Plaintiffs") Emergency Motion for Injunctive Relief (the "Motion").  Plaintiffs' Motion is premature and based upon speculation, not evidence.  Consequently, the Motion should be denied. In support of the Response, the Defendants respectfully represent:

**I.**

**PRELIMINARY STATEMENT**

1.      Plaintiffs filed their *Verified Complaint for Declaratory Judgment and Injunctive* (the "Complaint") [Docket No. 1] on June 28, 2026.  Plaintiffs also filed the Motion [Docket No. 3] and their *Brief in Support of Emergency Motion for Injunctive Relief* (the "Brief") [Docket No. 4] on June 28, 2026.

2.      Plaintiffs seek temporary and preliminary injunctive relief to extend the automatic stay to over one hundred arbitration proceeding between non-debtor third parties.  Plaintiffs are not a party to any of the arbitrations they seek to stay.  Nor do any of the arbitrations seek to collect or control property of the estate.  Plaintiffs' arguments to the contrary are premised upon a misunderstanding of who owns the liability insurance proceeds and what conduct Plaintiffs' indemnification agreements with broker-dealers actually covers.

## II.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(a) and is otherwise related to the above-captioned bankruptcy case.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 as the Debtors' Chapter 11 is pending in this District.

6.      The statutory and procedural predicates for the relief requested herein include Federal Rule of Bankruptcy Procedure 7065, Federal Rule of Civil Procedure 65 and Federal Rule of Bankruptcy Procedure 7001(g).  The Court has full authority to grant the requested relief and to enter a final order.  However, that final order should deny the requested relief.

## III.

## FACTUAL AND PROCEDURAL BACKGROUND

7.      Plaintiff, Inspired Healthcare Capital Holdings, LLC ("IHC"), is a debtor in possession and appears to be the parent entity of the other debtors in possession in the main jointly administered bankruptcy case.  Plaintiff, Inspired Healthcare Capital, LLC, served as the sponsor of the of the Debtors' investment offerings, which have generated a firestorm of litigation.

8.      Defendants are numerous individuals and entities who were improperly and negligently sold a high-risk real estate investment opportunity gone bad.  Plaintiffs sold highly leveraged Delaware Statutory Trust ("DST") real estate investments managed by IHC (collectively "IHC DST Investments").  A DSTs is a Delaware Statutory Trust.  DST are a real estate ownership structure that allows multiple investors each to hold an undivided fractional interest in the holdings of the trust, which owns a parcel of real estate. The trust is established by a professional real estate

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'**
**EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 3**
DM 845921 / 32093.001

company, referred to as a "DST sponsor", which first identifies and acquires the real estate assets. As individuals invest, their investments displace the capital used by the DST sponsor to acquire the property until it is eventually wholly owned by the investors.  The structure allows investors to enjoy the tax benefits of direct real estate ownership without having to manage the properties.[1]

9.      Plaintiffs did not personally solicit or sell any shares of the DST.  Instead, Plaintiffs entered into an exclusive managing broker dealer agreement (the "Managing Broker Dealer Agreement").  The Managing Broker Dealer then solicited and entered into contracts with the various third-party broker-dealers to sell DST fractional shares to retail investors.  These third-party broker dealers are the actual respondents in the Defendants' FINRA arbitration actions that Plaintiffs now seek to stay.  At least with respect to Defendants' claims, Plaintiffs are not either a respondent or a responsible third party.

10.     Moreover, Defendants' claims against the various broker dealers have nothing to do with Plaintiffs' conduct.  Certain broker dealers are alleged to have committed fraud or to have misrepresented the risky nature of the DSTs.  The arbitrations at issue are premised solely upon the broker dealers' conduct, not Plaintiffs' conduct.  While the specific conduct various from case to case, in general the broker dealers are accused of:  (1) not conducting reasonable due diligence regarding the DSTs; (2) mispresenting the DSTs to buyers; (3) failing to disclose previously admitted violations of securities laws to the buyers; and (4) making investment recommendations that were unsuitable for the buyers in view of their financial situations, needs, and risk tolerance. Defendants' arbitration pleadings do not allege misconduct by Plaintiffs.

11.     On February 2, 2026 (the "Petition Date"), Plaintiff, Inspired Healthcare Capital Holdings, LLC, commenced the above-captioned bankruptcy case by filing a voluntary petition

---

[1] For example, the DST structure can be used in a Section 1031 exchange.

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'**
**EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 4**
DM 845921 / 32093.001

for relief under Chapter 11 of the United States Code (the "Bankruptcy Code").  Plaintiff Inspired

Healthcare Capital Holdings, LLC's case is being jointly administered with numerous other

entities that are affiliates or subsidiaries of Inspired Healthcare Capital Holdings LLC.

12.     Defendants are numerous individuals and entities seeking redress against various

broker dealers who sold DSTs' sponsored by Plaintiffs.  Prior to the Petition Date, in November

and December of 2025, Defendants initiated FINRA arbitrations against the various broker dealers.

13.     On June 28, 2026, Plaintiffs commenced this adversary proceeding by filing the

Complaint against Defendants among others.

14.     Plaintiffs now seek a preliminary injunction against all FINRA arbitration

claimants who seek redress against the broker dealers who sold Plaintiffs' DST products.

**IV.**

**<u>LEGAL STANDARD</u>**

15.     Federal Rule of Bankruptcy Procedure 7065 makes Federal Rule of Civil Procedure

65 applicable in adversary proceedings.  Rule 65 governs the issuance of preliminary injunctions,

and Rule 7001(g) compels Plaintiff to seek such relief by adversary proceeding.

16.     "The purpose of a preliminary injunction is merely to preserve the relative positions

of the parties until a trial on the merits can be held."  *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025)

(quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).

"A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear

showing that the [moving party] is entitled to such relief."  *Williams Ohio Valley Midstream, LLC*

*v. Kittle*, No. 23-2185, 2024 U.S. App. LEXIS 16552, 2024 WL 3325532, at *3 (4th Cir. July 8,

2024) (quoting *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353,

366 (4th Cir. 2019)).  Such relief is "customarily granted on the basis of procedures that are less

formal and evidence that is less complete than in a trial on the merits." *Camenisch*, 451 U. S., at 395.

17.     A plaintiff seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

18.     Regarding the first element, the plaintiff must prove it is likely to succeed on the merits of its underlying complaint.  *See Poling v. Foxwell*, No. PWG-18-80, 2019 U.S. Dist. LEXIS 57080, 2019 WL 1472304, at *5 (D. Md. Apr. 3, 2019) ("a preliminary injunction must be tied to the likelihood of success on the merits of a properly pleaded complaint").

19.     Regarding the second element, "[a] plaintiff must make a 'clear showing' it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Williams Ohio Valley Midstream, LLC v. Kittle*, No. 23-2185, 2024 U.S. App. LEXIS 16552, 2024 WL 3325532, at *3 (4th Cir. July 8, 2024) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). Furthermore, a "preliminary injunction is not appropriate when the harm complained of does not arise from the harm alleged in the complaint. . .The movant must establish a nexus between the injury claimed in the motion and the conduct giving rise to the complaint." *Stepansky v. SW. Va. Reg'l Jail Auth.*, No. 7:23-cv-00698, 2024 U.S. Dist. LEXIS 131647, 2024 WL 3535138, at *1 (W.D. Va. July 25, 2024) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).  However, "[movant's] injury need not have already been inflicted or be certain to occur; a strong threat of irreparable injury before a trial on the merits is adequate for a preliminary injunction to issue." *Stone v. Ozcelebi (In re Ozcelebi)*, 2022 Bankr. LEXIS 1375, at * 14 (Bankr. S.D. Tex. May 13, 2022).

20.     Regarding the third element, when applying this factor, "a court should consider whether granting the requested relief will result in greater harm to the party on whom it is imposed than its denial will have on the party who seeks it." *Farberware, Inc. v. Mr. Coffee, Inc.*, 740 F.Supp. 291, 304 (D.Del.1990) (citations omitted.).

21.     Finally, a plaintiff must show that the preliminary injunction is in the interest of public policy. *Lia Network v. City of Kerrville*, 163 F.4th 147, 160-1 (5th Cir. 2025).

## V.

## ARGUMENT

### A.     Plaintiffs Have No Identity of Interest with the Broker Dealers

22.     Plaintiffs first argue that a contractual indemnification agreement between themselves and the third-party broker dealers requires that this Court stay all of the current FINRA arbitrations.  Specifically, Plaintiffs argue that this court may extend the automatic stay to cover the claims brought against the broker dealers in the FINRA arbitrations because "there is such an identity between the debtor and the third party defendant that the debtor may be said to be the real defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor." *Gigi's Cupcakes, LLC v. 4 Box LLC,* No. 17-3009,2009 WL 1767003, at * 1 (N.D. Tex. Apr. 22, 2019).

23.     The purposes of the bankruptcy stay under 11 U.S.C. § 362 "are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Gatx Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985). "By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors." *Id.*

The Fifth Circuit has also noted that "section 362 is rarely, however, a valid basis on which to stay actions against non-debtors." *Arnold v. Garlock, Inc.* 278 F.3d 426, 436 (5th Cir. 2001).

24.     Here, Plaintiffs argue that an identity of interest, justifying an extension of the automatic stay, exists because of Plaintiffs' contractual indemnification obligations to Luke Lee (the Plaintiffs' former CEO) and to the various broker dealers.  It is unclear at this point why Luke Lee would have any liability.  To the best of Defendants' knowledge, Luke Lee has not been sued or accused of misconduct in *any* of the over 100 FINRA arbitrations that are currently active.  Plaintiffs' concern regarding any indemnification obligation they may owe Mr. Lee is purely hypothetical.

25.     Furthermore, Plaintiffs claim that they owe contractual indemnification to Mr. Lee by way of their director and officer liability policy (the "D&O Policy").  *See* the Brief at pg. 2-3.  This argument rest upon a misunderstanding of bankruptcy law.  A D&O policy cannot implicate the interests of a debtor, as a debtor's estate does not own the proceeds.  In *Matter of Louisiana World Exposition*, 832 F.2d 1391, 1394 (5th Cir. 1987), the Fifth Circuit examined the issue of whether the proceeds of an insurance policy meant to indemnify the liability of the directors were owned by the estate of a bankrupt corporation or by the directors whom the policy was meant to indemnify.  The Fifth Circuit determined that, since the insurance policy proceeds were payable *exclusively* to the directors of the corporation, that the directors were the true owner of the proceeds even if the corporation owned the policy itself.  *Id.,* at 1401.  Consequently, the Plaintiffs' D&O Policy does not implicate any interest of Plaintiffs and is not grounds for an extension of the automatic stay.

26.     Plaintiffs' argument that an identity of interest exists because of their indemnification agreement with the broker dealers also fails.  Plaintiffs fail to acknowledge that their indemnification

agreement with the broker dealers only indemnifies the broker dealers for liability that arises due to

the actions of *Plaintiffs' themselves*.   Plaintiffs agree to indemnify the broker dealers for the

following wrongful acts:

a. Any untrue statement or alleged untrue statement of a material fact contained in the Memorandum, Authorized Sales Material or in any Application, except any such statement made in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement, to Inspired Healthcare by Managing Dealer or any Selling Group Member, or any omission or alleged omission from the Memorandum, Authorized Sales Material or Application of a material fact necessary in order to make the statements made there in, in light of the circumstances under which they were made , not misleading, except any such omission made or in reliance upon and in conformity with the express written information furnished, or which was required to be furnished under this Agreement to Inspired Healthcare by Managing Dealer or any Selling Group Member;

b. The failure of Inspired Healthcare to comply with any of the applicable provisions of the Securities Act (including, but not limited to, Rule 506 of Regulation D), the Exchange Act or the regulations there under, or any applicable laws, rules or regulations of any state or other jurisdiction (other than as a result of breach of this Agreement or noncompliance with applicable securities laws or FINRA rules or regulations by the Managing Dealer or any other Selling Group Member);

c. Any unauthorized verbal or written representations in connection with Offerings made by Inspired Healthcare, or its employees, affiliates or agents (other than by Managing Dealer, Selling Group Members or each of their employees, registered representatives, agents or affiliates) in violation of the Securities Act, or any other applicable federal or state securities laws and regulations;

d. The disqualification, within the meaning of Rule 506(d) of Regulation D, of Inspired Healthcare, any predecessor of Inspired Healthcare, any affiliated issuer of Inspired Healthcare any director or executive officer or other officer of Inspired Healthcare participating in the Offering, any general partner of Inspired Healthcare, any managing member of the general partner of Inspired Healthcare, any beneficial owner of 20% or more of the outstanding voting securities of Inspired Healthcare, any promoter connected with Inspired Healthcare in any capacity, and any person other than Selling Group Members employed by Inspired Healthcare who has been or will be paid remuneration for solicitation of purchasers, during the term of the Offerings , or the failure to disclose any such matter required to be disclosed under Rule 506(e) ; or

e. The breach by Inspired Healthcare of any representation, warranty or covenant made by Inspired Healthcare in this Agreement.

*See Plaintiffs' Complaint* [Docket No. 1], Exhibit 1 at page 11.

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'**
**EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 9**
DM 845921 / 32093.001

27.     Notably, Plaintiffs have not agreed to indemnify the broker dealers for their own acts of negligence, securities violations, or fraudulent acts they may commit in connection with the Managing Broker Dealer Agreement.  In all of Defendants' FINRA arbitrations, Defendants have not alleged that Plaintiffs committed any unlawful or wrongful act.  All claims in Defendants' FINRA arbitrations are related to the unlawful conduct of the broker dealers themselves.  Consequently, it is impossible for any indemnification obligation to be triggered under these circumstances.  Plaintiffs have failed to explain or identify what portion of Defendants' claims could possibly be covered by this indemnification provisions; they simply assert that it is so, *ipse dixit*.  Plaintiffs' indemnification obligations to the broker dealer do not create any contractual liability in relation to Defendants' FINRA arbitration claims, and the Motion should be denied.

**B.     The Arbitrations Do Not Seek to Obtain Property of the Estate**

28.     Plaintiffs next argue that the FINRA arbitrations are seeking to obtain possession of property of their bankruptcy estates.  Plaintiffs make two arguments in this regard.  First, Plaintiffs argue that they may have their own claims against Luke Lee and the broker dealers.  Plaintiffs fear that allowing the FINRA arbitrations to proceed could diminish Luke Lee's and the broker dealers' respective insurance policies and that their estates may miss out on a chance to recover against these policies.

29.     This initial argument is absurd and unsupported by any case citations whatsoever.  Plaintiffs are dealing in only hypotheticals, not facts.  Plaintiffs do not allege the existence of any specific insurance policy, attach any copies, or cite any provisions.  It is unclear whether these policies, what they cover, or what their limit may be.  Plaintiffs are exercising their creative imagination.  That unbounded speculation will not support an injunction.

30.    Moreover, there is no legal support for the idea that just because a debtor is seeking to recover against a third party that all related or unrelated legal actions against the that third party are subject to the automatic stay.  The assets of the Luke Lee and the broker dealers are not property of the estate subject to the automatic simply because Plaintiffs may have a claim against them.  Plaintiffs are asking the Court to expand the meaning of estate property infinitely without any legal basis.  The Court should decline to do so.

31.    Second, Plaintiffs argue that the FINRA arbitrations seek property of the estate because Plaintiffs and Luke Lee are covered by the same insurance policy.  Plaintiffs claim that the FINRA arbitrations will deplete insurances proceeds that could otherwise be paid out to creditors of the estate and thus are seeking property of the estate.  This argument also fails.  Fifth Circuit case law dictates that in fact, Plaintiffs have no interest in the proceeds from this insurance policy.

32.    Plaintiffs are simply incorrect in their assertion that they have any ownership interest in the proceeds of the liability policy.  Plaintiffs cite *In re Kevco, Inc.* for the proposition that "where the debtor owns a policy that covers *its own* liability vis-à-vis third parties, both the policy and its proceeds are property of the estate.").  309 B.R. 458, 468 (Bankr. N.D. Tex. 2004).  Plaintiffs' reliance on *Kevco* is a gross oversimplification, at best, and a misrepresentation of the law at worst.

33.    Fifth Circuit jurisprudence has evolved greatly since *Kevco.*  Current Fifth Circuit rulings make clear that most of the time, the proceeds from a debtor's liability policy are **not** property of the estate.  The most relevant Fifth Circuit case on this issue is *Martinez v. OGA Charters, LLC (In re Charters, LLC)*, 901 F.3d. 599 (5th Cir. 2018).  In *OGA Charters*, the Court

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'
EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 11**
DM 845921 / 32093.001

reaffirmed a previous ruling it had made in *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993), stating that:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate. *OGA Charters*, 901 F.3d at 603

Furthermore, the Court explained the limited circumstances in which a debtor's estate could own its insurance policy proceeds, holding that "[i]n the limited circumstances, as here, where a siege of tort claimants threatens the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate." *Id.* at 604. In short, for the insurance proceeds to become property of Plaintiffs' bankruptcy estates, Plaintiffs must prove that (1) there are multiple claims against the same insurance policy; and (2) that the insurance policy limits are exceeded by the amounts alleged by the claims.

34.    Plaintiffs have failed to show they have an ownership interest in the insurance proceeds in accordance with *OGA Charters*. Plaintiffs do not allege what the policy limit is. Plaintiffs have not identified the alleged claimants are against the unproduced insurance policy and whether their claims combined would exceed the insurance policy limits. Plaintiffs are relying on an outdated case and have failed to show that they have any ownership interest in the insurance proceeds at issue. Plaintiffs have not demonstrated that any of the FINRA arbitration claimants have asserted claims against their D&O coverage or liability coverage. Therefore, the Plaintiffs have failed to show that the FINRA arbitrations are seeking to recover property of the estates, and the automatic stay should not be extended.

C.      **Plaintiffs have Failed to Show that Allowing the Arbitrations to
Proceed would Interfere with the Reorganizations of the Estates**

35.     Plaintiffs argue that the FINRA arbitrations should be stayed as courts have
"recognized the need to temporarily stay claims or proceedings against non-debtors where "the
allegations raised against ***co-defendants*** are inextricably interwoven with claims against the
debtor" *See* the Brief at pg. 7 (citing *Blundell v. Home Quality Care Home Health Care, Inc.*,
2017 WL 5889715, at *4-6 (N.D. Tex. Nov. 29, 2017) (emphasis added). Plaintiffs' argument is
defeated by its own citations. At least in regard to Defendants' FINRA arbitrations, the Plaintiffs
are not a ***co-defendant*** in any of the cases. Defendants have not alleged in the FINRA arbitration
cases that Plaintiffs have done anything wrong, let alone brought claims against them. The broker
dealers are independent third parties. There is no risk of *res judicata* or collateral estoppel against
the Plaintiffs in Defendants FINRA arbitrations.

36.     Plaintiffs also argue that the FINRA arbitrations should be stayed because letting
the arbitrations continue would interfere with the reorganization of the of the debtor. *See* the Brief
at pg. 8. Plaintiffs claim that even if FINRA arbitrations only proceeded against the non-debtor
defendants, Plaintiffs would be ensnared in "discovery and create costs of the Debtors' estates."
*Id.*   Plaintiffs' argument is mere speculation, and inaccurate speculation at that. As already
described above, Defendants' claims against the broker dealers are premised only on the alleged
wrongful conduct of the broker dealers themselves. Plaintiffs are merely a background to the
FINRA arbitration as the broker dealer sold the Plaintiffs' DST. However, the FINRA arbitration
focus solely on the duties and conduct of the broker dealer. There is no showing or evidence that
the Plaintiffs employees are relevant witnesses or the Plaintiffs' possession relevant information.
The fact that Plaintiffs are in bankruptcy is public knowledge. The only people with relevant
information are the broker dealers. Plaintiffs are peripheral to that story.

D.    **Plaintiffs Cannot Meet the Preliminary Injunction Elements**

i.    **Plaintiffs are not Likely to Succeed on the Merits**

37.    Plaintiffs are not likely to succeed on the merits of their claim that an extension of the automatic stay under 11 U.S.C. § 105(a) or 11 U.S.C. § 362 is warranted. Plaintiffs' argument in this regard is that "the existence of indemnification obligations between the Debtors and Non-Debtor Defendants, overlapping claims against Non-Debtor Defendant insurance policies, and the entangled nature of the claims" all show they are likely to succeed. *See* the Brief at pg. 9. As already described above: (1) Plaintiffs have no actual indemnification obligations, (2) having a speculative claim against the same unidentified insurance policy as unrelated third parties is not good cause to extend the automatic stay, and (3) the claims are not entangled, as Plaintiffs conduct is not at issue in the Defendants' FINRA arbitrations. Accordingly, Plaintiffs have not satisfied the first element of a preliminary injunction.

ii.    **Plaintiffs will not Suffer Irreparable Harm Absent Injunctive Relief**

38.    Absent a preliminary injunction extending the automatic stay, Plaintiffs will not suffer immediate and irreparable harm. Here, Plaintiffs claim that the irreparable harm is the possible depletion of the bankruptcy estate as the arbitrations will distract from the reorganization. As described above, Plaintiffs are not even party to the FINRA arbitrations. Defendants do not believe Plaintiffs have any significant information relevant to its FINRA arbitrations. The broker dealers have the information Defendants need, and Plaintiffs involvement in the cases will be minimal if any. There is no risk of irreparable harm to Plaintiffs if this Court does not issue a preliminary injunction. Plaintiffs have failed to satisfy this element.

iii.    **The Balance of Equities Favors Defendants**

39.    Plaintiffs argue the threatened imminent harm to them far outweighs a stay of the FINRA arbitrations. According to Plaintiffs, the imminent harm is that they will be forced to

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'**
**EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 14**
DM 845921 / 32093.001

participate in numerous FINRA arbitrations, distracting from their reorganization.  Respectfully, the argument is false.  Again, Plaintiffs are not parties to the FINRA arbitrations.  Defendants do need Plaintiffs' participation in these cases in any significant way.  There is no threatened harm. A stay of these cases would only serve to delay the adjudication of claims against non-debtor third parties, unrelated to Plaintiffs' conduct, and prolong the hardship for defrauded investors, many of whom lost their retirement savings.  The balance of equities favors Defendants.

### iv.      The Public Interest Supports Injunctive Relief

40.      The public interest does not favor granting injunctive relief.  Here, Plaintiffs reiterate their previous argument stating that the arbitrations threaten their reorganization and that "staying litigation claims that threaten the reorganization of the debtor prevents a chaotic and uncontrolled scramble for the debtor's assets." *See* the Brief at pg. 11 (citing *Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986).  Defendants will similarly repeat itself.  Plaintiffs are not party to the arbitrations.  Defendants are not seeking any assets of Plaintiffs.  Defendants are seeking to recover against the third-party broker dealers, who do not work for Plaintiffs.  The public interest favors allowing the timely adjudication of claims that only tangentially involve Plaintiffs.

### VI.

### <u>REQUESTED RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court deny the Motion in its entirety or in the alternative, deny the Motion with respect to Defendants' FINRA arbitration Actions.

June 30, 2026

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'
EMANCIPATION... EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 15**
DM 845921 / 32093.001

Respectfully submitted,

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**

*/s/ Robert A. Simon*
Robert A. Simon
Texas Bar No. 18390000
John T. Behan 24129111
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
rsimon@whitakerchalk.com
**COUNSEL FOR DEFENDANTS,**

## CERTIFICATE OF SERVICE

I hereby certify, on this 30th day of June 2026 that I served a true and correct copy of the foregoing Amended Response upon all parties registered to receive service via this Court's ECF notification system.

*/s/ Robert A. Simon*
Robert A. Simon

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS'
EMERGENCY MOTION FOR INJUNCTIVE RELIEF - PAGE 16**
DM 845921 / 32093.001