Electronically Received 09/25/2025 01:06 PM

BROWN RUDNICK LLP
ARJUN SIVAKUMAR, #297787
asivakumar@brownrudnick.com
TESS M. MESSIHA, #333136
tmessiha@brownrudnick.com
SAMANTHA FLATTERY, #342420
sflattery@brownrudnick.com
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

Attorneys for Plaintiff
EMERSON EQUITY BRIDGE FUND I, LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 9/25/2025 1:06 PM David W. Slayton, Executive Officer/Clerk of Court, By A. Mirzoyan, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| EMERSON EQUITY BRIDGE FUND I, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>INSPIRED HEALTHCARE CAPITAL LLC, a Delaware limited liability company; INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, a Delaware limited liability company; LUKE LEE, an individual; and Does 1-10,<br><br>Defendants. | CASE NO. 25VECV05053<br><br>[ASSIGNED FOR ALL PURPOSES TO THE HONORABLE SHIRLEY K. WATKINS, DEPT. T]<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT AND MISREPRESENTATION**<br><br>ACTION FILED: September 5, 2025<br>TRIAL DATE: TBD |

Plaintiff EMERSON EQUITY BRIDGE FUND I, LLC ("Plaintiff" or "Emerson") brings this Complaint against Defendants INSPIRED HEALTHCARE CAPITAL LLC ("Borrower" or "IHC"), INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC ("IHH"), LUKE LEE ("Lee," and collectively with "IHH," "Guarantors") and DOES 1-10, inclusive (collectively, "Defendant(s)"), alleging as follows:



GN DEFENDANTS EXHIBIT 3

## PARTIES

1. Plaintiff EMERSON EQUITY BRIDGE FUND I, LLC, is a Delaware limited liability company doing business in the State of California, County of Los Angeles. For avoidance of doubt, Plaintiff does not share ownership interest in and is not affiliated in any way with Emerson Equity LLC.

2. Defendant INSPIRED HEALTHCARE CAPITAL LLC, is a Delaware limited liability company and party to the Note providing for performance in the State of California, County of Los Angeles.

3. Defendant INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, is a Delaware limited liability company and party to the Guaranty governed by California law and providing for performance in the State of California, County of Los Angeles.

4. Defendant LUKE LEE is an individual resident in the State of Arizona and party to the Guaranty governed by California law and providing for performance in the State of California, County of Los Angeles.

5. Plaintiff is ignorant of the true names and capacities of Defendants sued here as Does 1-10, and therefore sued said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, Defendants, and each of them, were the principals, agents, partners, predecessors in interest, and/or successors in interest of each other, and in relation to the matters here alleged, were acting within the course and scope of such agency or partnership and/or ratified the acts and conduct of each other. Plaintiff will amend its complaint to allege the true names and capacities of said Defendants when ascertained.

## JURISDICTION/VENUE

6. Jurisdiction and venue are proper in this Court because the State of California, County of Los Angeles, is the nexus of the transactions at issue in this action, the situs for performance under the Note and Guaranty, the situs of the Guaranty's governing law, and the situs of injury. There is no forum selection clause in either the Note or Guaranty which states any extant jurisdiction in which this action must be brought.

/ / /

**FACTUAL ALLEGATIONS**

7. Plaintiff is in the business of making healthcare related loan investments to qualifying borrowers following a thorough vetting and approval process. Defendant IHC is a healthcare industry fund and program sponsor. Guarantor IHH is an affiliate of IHC, and Guarantor Lee is the Principal and Chief Executive Officer of IHC.

8. In or about Fall 2024, Plaintiff and IHC began discussions regarding a potential loan from Plaintiff to IHC. In accordance with Emerson's standard practices for assessing potential investments, Emerson requested an audited financial statement for IHC and a personal financial statement for Lee, together with related assurances such as that Lee was not a guarantor on any other personal guarantees. IHC provided these documents and related assurances.

9. In reliance on the same, Emerson made a $1.5 million loan to IHC pursuant to a Balloon Promissory Note ("Note") effective December 5, 2024. The Note was guaranteed by IHH and Lee pursuant to a Guaranty of Payment and Performance ("Guaranty") effective the same date. True and correct copies of the Note and Guaranty are attached hereto as Exhibits "1" and "2," respectively. At the time the Note was signed and executed, Plaintiff had no reason to believe the documents, assurances, and other statements IHC made and provided through Lee were inaccurate in any way. Plaintiff believed IHC's documents, assurances, and other statements to be accurate.

10. The Note provides, among other terms, customary Events of Default including in connection with the material falsity or incorrectness of representations made in connection therewith by the Borrower or Guarantors. The Note additionally provides for Borrower to pay Lender's costs and reasonable attorneys' fees in collecting and enforcing payment thereof.

11. Subsequent to execution and funding of the Note, in or around July 2025, Plaintiff learned of material misrepresentations and omissions in the submissions by IHC in connection with seeking the loan. These included (but were not limited to) omitting that IHC had entered severe financial distress in the months subsequent to the financial statement provided and was insolvent at the time, and falsely representing that Lee had no other personal guarantees when he was in fact liable for over $200 million in personal guarantees.

/ / /

12. An Event of Default having been accordingly triggered under the Note, on August 19, 2025, Plaintiff contacted Borrower and Guarantors demanding repayment within two weeks of the $1,500,000.00 principal together with accrued interest, as provided by the terms of the Note and Guaranty, by no later than September 1, 2025. A true and correct copy of that correspondence is attached hereto as Exhibit "3." No response or payment was received, necessitating this action for breach of contract and misrepresentation to recover the funds owed to Plaintiff.

**FIRST CAUSE OF ACTION**

**(Breach of Note against IHC)**

13. Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth fully herein.

14. Plaintiff and IHC are parties to the Note.

15. The Note provides that time is of the essence.

16. Plaintiff has at all times performed its obligations under the Note.

17. IHC has breached the Note by failing to repay the Note upon an event of default thereunder.

18. Plaintiff has been damaged by IHC's breach and is entitled to recovery in an amount subject to proof.

**SECOND CAUSE OF ACTION**

**(Breach of Guaranty against IHH and Lee)**

19. Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth fully herein.

20. Plaintiff, IHH, and Lee are parties to the Guaranty.

21. Plaintiff has at all times performed its obligations under the Guaranty.

22. IHH and Lee have breached the Guaranty by failing to repay the Note on Borrower's behalf upon an event of default under the Note.

23. Plaintiff has been damaged by Guarantors' breach and is entitled to recovery in an amount subject to proof.

/ / /



GN DEFENDANTS EXHIBIT 3

**<u>THIRD CAUSE OF ACTION</u>**

**(Intentional Misrepresentation against Defendants)**

24. Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth fully herein.

25. Defendants made various misrepresentations and/or omissions in their submissions applying for the loan at issue, including without limitation representing that Lee was not a party to any personal guarantees and omitting that IHC was insolvent and that financial records submitted did not accurately represent IHC's current financial state.

26. Defendants' representations were false. Moreover, Defendants intentionally failed to disclose certain facts to Plaintiff, and/or intentionally disclosed some facts to Plaintiff but intentionally failed to disclose other facts making the disclosure deceptive, and/or intentionally failed to disclose certain facts that were known only to them which Plaintiff could not have discovered, and/or prevented Plaintiff from discovering certain facts.

27. Defendants knew the representations were false when they made them, and/or made the representations recklessly and without regard for their truth. Plaintiff did not know facts concealed by Defendants.

28. Defendants intended that Plaintiff rely on the representations and that Plaintiff be deceived by concealment of facts.

29. Plaintiff did in fact reasonably rely on the representations by agreeing to enter into the Note and extend the loan at issue to IHC, which it would otherwise not have done. Had omitted information been disclosed, Plaintiff would have behaved differently.

30. Plaintiff was harmed by Defendants' conduct, in an amount to be determined at trial.

31. Plaintiff's reliance on Defendants' representations and Defendants' concealment was a substantial factor in causing Plaintiff's harm.

32. Defendants acted with oppression, fraud, and/or malice in the aforementioned conduct and accordingly exemplary damages should be awarded to punish and make an example of Defendants.

/ / /



GN DEFENDANTS EXHIBIT 3

**<u>FOURTH CAUSE OF ACTION</u>**

**(Negligent Misrepresentation against Defendants)**

33. Plaintiff repeats and realleges the foregoing paragraphs and incorporates the same as though set forth fully herein.

34. Defendants made various misrepresentations and/or omissions in their submissions applying for the loan at issue, including without limitation representing that Lee was not a party to any personal guarantees and omitting that IHC was insolvent and that financial records submitted did not accurately represent IHC's current financial state.

35. Defendants' representations were false. Moreover, Defendants negligently failed to disclose certain facts to Plaintiff, and/or negligently disclosed some facts to Plaintiff but negligently failed to disclose other facts making the disclosure deceptive, and/or negligently failed to disclose certain facts that were known only to them which Plaintiff could not have discovered, and/or prevented Plaintiff from discovering certain facts.

36. Defendants knew the representations were false when they made them, and/or made the representations negligently and/or without reasonable grounds for believing they were true. Plaintiff did not know facts concealed by Defendants.

37. Defendants intended that Plaintiff rely on the representations, and intended, knew, or should have known that Plaintiff would be deceived by concealment of facts.

38. Plaintiff did in fact reasonably rely on the representations by agreeing to enter into the Note and extend the loan at issue to IHC, which it would otherwise not have done. Had omitted information been disclosed, Plaintiff would have behaved differently.

39. Plaintiff was harmed by Defendants' conduct, in an amount to be determined at trial.

40. Plaintiff's reliance on Defendants' representations and Defendants' concealment was a substantial factor in causing Plaintiff's harm.

/ / /

/ / /

/ / /

/ / /

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. Money damages in an amount according to proof;
2. Exemplary damages;
3. Prejudgment and post-judgment interest;
4. Costs of suit;
5. Attorney fees, costs, and expenses; and
6. Such other and further relief as the Court may deem just and proper.

DATED: September 25, 2025 BROWN RUDNICK LLP

By: ______________________
TESS M. MESSIHA
Attorneys for Plaintiff,
EMERSON EQUITY BRIDGE FUND I, LLC

# Exhibit 1

# BALLOON PROMISSORY NOTE

**$1,500,000.00** **Effective Date:** December 5, 2024

**FOR VALUE RECEIVED,** and pursuant to the terms of this Promissory Note ("Note"), the undersigned, **INSPIRED HEALTHCARE CAPITAL, LLC,** a Delaware limited liability company (the "Borrower" or "Maker"), unconditionally promises and agrees to pay, on or before the second (2nd) anniversary of the Effective Date of this Note ("Maturity Date"), to the order of **EMERSON EQUITY BRIDGE FUND I,** a Delaware limited liability company (the "Lender") the maximum principal sum of **ONE MILLION FIVE HUNDRED THOUSAND AND 00/100 US DOLLARS** ($1,500,000.00 US), together with interest on the unpaid principal at the rate of 20% per annum. Funds shall be disbursed at closing as follows:

i. $1,500,000 shall be wired to Borrower within one (1) business day of the execution of this Note.

All amounts due and owing under this Note shall be paid no later than the Maturity Date.

This Note is secured by Guarantee of Payment and Performance (the "Guaranty") made by Luke Lee (individually) and Inspired Healthcare Holdings, LLC, executed simultaneously with this Note.

All payments, balloon payment, all accrued but unpaid interest and any other sums due under this Note, shall be paid in full in lawful money of the United States by Borrower to Lender at: 21900 Burbank Boulevard, Suite 300, Woodland Hills, CA 91367, or such other address as may be designated by Lender

If Borrower defaults in the performance of any of the terms or provisions of this Note, the principal sum or so much of the principal remaining unpaid with all interest accrued thereon, shall i) at the option of Lender and without notice, become due and payable immediately; and ii) shall accrue default rate interest at the highest rate permitted by law, but in no event shall the default interest exceed the maximum rate permitted by law (including all fees and charges that may be deemed to be interest). Payment of the foregoing may be enforced and recovered at any time by one or more of the remedies provided to Lender in this Note, in the Guaranty of Payment and Performance, or as available by law.

Borrower may prepay all of part of this Note at any time without penalty of any kind. Upon payoff of this Note, Borrower shall not be given a credit of any excess amount, if any, of prepaid interest held by Lender.

The Borrower represents and warrants to the Lender as follows:

(a) The Borrower is a Delaware limited liability company, is active and in good standing, and has not been dissolved. This Note is binding upon the Borrower. The Borrower has the requisite power and authority to

operate its properties and assets, to Guaranty the subject property, to borrow money, and to carry on its business as now conducted and as proposed to be conducted.

(b) The Borrower has all requisite power and authority to execute and deliver and issue this Note.

(c) All action on the part of the Borrower necessary for the authorization, execution, delivery and performance of this Note by the Borrower and the performance of the Borrower's obligations hereunder, including the issuance and delivery of the Note and interests has been taken. This Note is and will be a valid and binding obligation of the Borrower enforceable in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency, the relief of debtors and, with respect to rights to indemnity, subject to federal and state securities laws.

(d) Borrower is not in violation or default of any term of its operating agreement, articles of organization, bylaws, and other organizational documents or any other document to which it is a party. The execution, delivery and performance of this Note and the consummation of the transactions contemplated hereby or thereby will not

result in any such violation or be in conflict with, or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, decree, order or writ or an event that results in the creation of any lien, charge or encumbrance upon any assets of the Borrower or the suspension, revocation, impairment, forfeiture, or nonrenewal of any material permit, license, authorization or approval applicable to the Borrower, its business or operations or any of its assets or properties. Without limiting the foregoing, the Borrower has obtained all waivers reasonably necessary with respect to any preemptive rights, rights of first refusal or similar rights, including any notice or offering periods provided for as part of any such rights, in order for the Borrower to consummate the transactions contemplated hereunder without any third party obtaining any rights to cause the Borrower to offer or issue any securities of the Borrower as a result of the consummation of the transactions contemplated hereunder.

In each case of the happening of the following events (each of which is an "Event of Default"):

(a) any payment of interest or principal is not received by Lender within ten (10) days following the respective due date for such payments;

(b) any representation, warranty or certification made by Borrower herein, in the Guaranty, or in any other document executed by Borrower with respect to this loan shall prove to have been false or incorrect or breached in a material respect on the date as of which made;

(c) any default in the performance or observance of any covenant or agreement contained herein, in the Guaranty, or in any other document executed by Borrower with respect to this loan; or

(d) if Borrower makes a general assignment for the benefit of creditors, or Borrower shall file a voluntary petition in bankruptcy under the Bankruptcy Reform Act of 1978, as amended or recodified from time to time (the "Bankruptcy Code") or under any other state or federal law relating to bankruptcy or reorganization granting relief to debtors, whether now or hereafter in effect, or shall file an answer admitting the jurisdiction of the court and the material allegations of any involuntary petition filed against Borrower pursuant to the Bankruptcy Code or any such other state or federal law; or Borrower shall be adjudicated a bankrupt, or shall make an assignment for the benefit of creditors, or shall apply for or consent to the appointment of any custodian, receiver or trustee for all or any substantial part of Borrower's property, or shall take any action to authorize any of the actions set forth above in this paragraph; or an involuntary petition seeking any of the relief specified in this paragraph shall be filed against Borrower; or any order for relief shall be entered against Borrower in any involuntary proceeding under the Bankruptcy Code or any such other state or federal law referred to in this subsection (d); then, upon each and every Event of Default and at any time thereafter during the continuance of such Event of Default, at the election of Lender, this Note shall immediately become due and payable, both as to principal and interest (including any deferred interest and any accrued and unpaid interest), without presentment, demand, or protest, all of which are hereby expressly waived, anything contained herein to the contrary notwithstanding (except in the case of an Event of Default under paragraph (d) above, in which event such indebtedness shall automatically become due and payable).

In the event it should become necessary to employ counsel to protect, collect or enforce this Note, the Borrower agrees to pay (to the extent permitted by applicable law) costs and reasonable attorneys' fees incurred by Lender in collecting or enforcing payment thereof.

Any failure by Lender to insist upon strict performance by Borrower of any of the terms and provisions of this Note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Lender shall have the right thereafter to insist upon strict performance by Borrower of any and all of them.

Presentment, demand of payment, notice of dishonor or nonpayment, protest, notice of protest on this Note, and the giving of notice of default or other notice to any party liable on this Note are hereby waived by Borrower. It is expressly agreed that the maturity of this Note, or any payment hereunder, may be extended or modified from time to time without in any way affecting the liability of Borrower.

Borrower shall pay the cost of all revenue tax, stamp tax, intangibles tax or other tax previously, now or hereafter required by law at any time to be affixed to this Note or in respect of the indebtedness hereunder and if any tax is now or hereafter imposed with respect to notes of the nature of this Note or debts of the nature of the debt evidenced by this Note, Borrower agrees to pay to Lender, upon demand, the amount of such tax, together with any late charges, interest, fines or

penalties, and Borrower waives any contrary provision of any law or rule of court now or hereafter in effect. Borrower shall indemnify and defend Lender and hold Lender harmless from any such taxes, penalties, late charges or fines as may actually be or become due and payable, such indemnity to survive final payment of the monetary obligations.

Notwithstanding any provision of this Note to the contrary, it is the intent of Borrower and Lender that Lender shall never be entitled to receive, collect or apply as interest on principal of the indebtedness any amount in excess of the maximum rate of interest permitted to be charged by applicable law; and in the event the Lender ever receives, collects, or applies as interest any such excess, such amount which would be excessive interest shall be deemed a partial prepayment of principal and treated hereunder as such; and, if the principal of the indebtedness secured hereby is paid in full, any remaining excess funds shall forthwith be paid to Borrower.

Upon receipt of a duly executed, notarized and unsecured written statement from the Lender with respect to the loss, theft or destruction of this Note (or any replacement hereof), and without requiring an indemnity bond or other security, or, in the case of a mutilation of this Note, upon surrender and cancellation of such Note, the Borrower shall issue a new Note, of like tenor and amount, in lieu of such lost, stolen, destroyed or mutilated Note.

This Note may not be modified or amended in any manner except in writing executed by the Borrower and the Lender.

The remedies provided in this Note shall be cumulative and no remedy contained herein shall be deemed a waiver of compliance with the provisions giving rise to such remedy and nothing herein shall limit the Lender's right to pursue actual damages for any failure by the Borrower to comply with the terms of this Note. Amounts set forth or provided for herein with respect to payments and the like (and the computation thereof) shall be the amounts to be received by the Lender and shall not, except as expressly provided herein, be subject to any other obligation of the Borrower (or the performance thereof). The Borrower acknowledges that a breach by it of its obligations hereunder will cause irreparable and material harm to the Lender and that the remedy at law for any such breach may be inadequate. Therefore the Borrower agrees that, in the event of any such breach or threatened breach, the Lender shall be entitled, in addition to all other available rights and remedies, at law or in equity, to seek and obtain such equitable relief, including but not limited to specific performance and/or an injunction restraining any such breach or threatened breach, without the necessity of showing economic loss and without any bond or other security being required.

This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to principles of conflict of laws.

Borrower hereby: (a) submits to the jurisdiction of the circuit courts sitting in Lake County, Delaware for purposes of any such action or proceeding to enforce this Note; (b) agrees that the venue of any such action or proceeding may be laid in the circuit courts sitting in Lake County, Delaware and waives any claims that the same is an inconvenient forum; and (c) stipulates that service of process in any such action or proceeding shall be properly made if mailed by any form of registered or certified mail, postage prepaid, to the address then registered in Lender's records for Borrower, and that any process so served shall be effective five (5) days after mailing. No provision of this Note shall limit Lender's right to serve legal process in any other manner permitted by law or to bring any such action or proceeding in any other competent jurisdiction.

Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction. To the extent that Borrower may lawfully waive any law that would otherwise invalidate any provision of this Note, Borrower hereby waives the same, to the end that this Note shall be valid and binding and enforceable against Borrower in accordance with all of its terms.

TIME IS OF THE ESSENCE with respect to Borrower's obligations under this Note. This Note cannot be changed or modified orally. Except as otherwise required by law or by the provisions of this Note, payments received by Lender hereunder shall be applied first against expenses and indemnities, next against interest accrued under this Note, and next in reduction of the outstanding principal balance of this Note, except that from and after any Event of Default, Lender may apply such payments in any order of priority determined by Lender in its sole and absolute discretion. Borrower shall receive immediate credit on payments if made and received in immediately available funds; otherwise, payments shall be credited after clearance. If any payment required to be made pursuant to this Note is not received on the due date, Lender shall have

the right, at its election, to charge any of Borrower's accounts at Lender with the amount of such payment. Except as otherwise required by the provisions of this Note, any notice required to be given to Borrower or the Lender shall be deemed sufficient if made in accordance with the Guaranty. All of the terms of this Note shall insure to the benefit of Lender and its successors and permitted assigns and shall be binding upon Borrower and its successors and permitted assigns. Borrower shall not be permitted to transfer or assign this Note or any of its obligations hereunder to any other party. Borrower acknowledges and agrees that Lender may assign and/or transfer this Note at any time in Lender's sole and absolute discretion.

BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER LENDER OR BORROWER.

IN WITNESS WHEREOF, this Promissory Note has been executed on the 5th day of December 2024, but shall be effective as of the date first above written.

**BORROWER:**

**INSPIRED HEALTHCARE CAPITAL, LLC,** a Delaware limited liability company

By: ______________________________
Name: Luke Lee
Title: CEO

# Exhibit 2

**GUARANTY OF PAYMENT AND PERFORMANCE**

**FOR VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged, the undersigned **LUKE LEE**, an individual, and **INSPIRED HEALTHCARE HOLDINGS LLC**, a Delaware limited liability company (collectively, "**Guarantor**"), hereby unconditionally guarantees payment in full of that Promissory Note, dated on or about the date hereof, made by **Inspired Healthcare Capital, LLC** ("**Borrower**"), to **Emerson Equity Bridge Fund, LLC** ("**Lender**"), in the principal amount of $ 1,500,000 (as the same may be modified, replaced, extended and/or renewed, the "**Note**"), and the full and faithful performance of Borrower of all other the terms, covenants and conditions of the Note and all terms, covenants and conditions of all instruments and agreements given to secure payment thereof (collectively, the "**Security Instruments**"). This Guaranty of Payment and Performance (this "**Guaranty**") is made as of December 5, 2024 to and for the benefit of Lender, and Guarantor hereby acknowledges and agrees that Guarantor directly or indirectly benefits from the loan evidenced by the Note.

Lender may, without notice to or the consent of Guarantor, at any time and from time to time, (i) agree with Borrower to amend any provision of the Note or any Security Instrument, including any change in the interest rate therein or any change in the time or manner of payment thereunder, (ii) make any agreement with Borrower for the extension, payment, compounding, compromise, discharge or release of any provision of the Note or any Security Instrument or for any modification of the terms thereof, (iii) release any other guarantor or any of the persons designated as Guarantor of any of Borrower's obligations, and (iv) release, modify or accept any security for any obligation and/or this Guaranty and the guarantees herein by Guarantor shall not be impaired or affected by any of the foregoing.

Guarantor agrees to indemnify Lender against any and all liability, loss, costs, charges, penalties, obligations, expenses, attorney's fees, litigation, judgments, damages, claims and demands of any kind whatsoever in connection with, arising out of or by reason of the assertion by Borrower of any defense to its obligations under the Note or any Security Instrument other than a valid defense of full performance. Guarantor waives any right or claims of right to cause a marshalling of Borrower's assets or to proceed against Guarantor, Borrower or any other guarantor of any of Borrower's obligations in any particular order, including, but not limited to, any right arising out of NRS 40.430, and Guarantor agrees that any payments or performance required to be made hereunder shall become due upon demand in accordance with the terms hereof immediately upon the happening of a default under either the Note or any Security Instrument, whether or not Guarantor has been given notice of such default, and Guarantor expressly waives and relinquishes all rights and remedies accorded by applicable law to guarantors, including, but not limited to, presentment for payment, protest or demand, notice of such protest, demand, dishonor or nonpayment, any failure to pursue Borrower or its property, any right of subrogation, any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation and any defense arising by reason of any defense of Borrower or by reason of the cessation of the liability of Borrower. Guarantor further waives any defenses based on suretyship or impairment of collateral. Without limiting the generality of the foregoing (i) the liability of Guarantor hereunder shall not be modified in any manner whatsoever by any extension, discharge or rejection that may be granted to Borrower by any court in any proceeding under any bankruptcy act or amendments thereof and Guarantor expressly waives the benefit of any such extension, discharge or rejection, (ii) this Guaranty shall be reinstated if at any time payment of any of the obligations guaranteed hereby is rescinded or must otherwise be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Borrower, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for Borrower or any substantial part of its property, or otherwise, all as though such payment had not been made, and (iii) it is especially and expressly agreed that if indebtedness of Borrower now or at any time hereafter exceeds the amount permitted by law, or Borrower is not liable because the act of creating any obligation is ultra vires,

or the officers creating the same acted without authority, and for these reasons the indebtedness to Lender cannot be enforced against Borrower, such fact shall in no manner affect Guarantor's liability hereunder.

The obligations of Guarantor hereunder are independent of the obligations of Borrower and, in the event of any default hereunder, a separate action or actions may be brought and prosecuted against Guarantor whether or not Borrower is joined therein or a separate action or actions is or are brought against Borrower. Lender's rights hereunder shall not be exhausted by its exercise of any of its rights or remedies or by any action or by any number of successive actions until and unless all indebtedness and obligations hereby guaranteed have been paid and fully performed.

No delay on Lender's part in exercising any right, power or privilege under this Guaranty or any other document executed in connection herewith shall operate as a waiver of any such privilege, power or right.

Guarantor agrees that any judgment rendered against Borrower for monies due Lender shall in every and all respects bind and be conclusive against Guarantor to the same extent as if Guarantor had appeared in any such proceedings and judgment therein had been rendered against Guarantor.

Any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also toll the statute of limitations as to Guarantor.

In the event any action is commenced by Lender against Guarantor in connection with this Guaranty, including any bankruptcy proceeding, Lender shall be entitled to its costs and expenses, including reasonable attorney fees.

The obligations hereunder of any party to this Guaranty shall be joint and several.

Any and all notices and demands required or desired to be given hereunder shall be in writing and shall be validly given or made if (i) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or (ii) made by Federal Express or other similar delivery service keeping records of deliveries and attempted deliveries. Service shall be conclusively deemed made on the first business day delivery is attempted or upon receipt, whichever is sooner. Any notice or demand to Guarantor shall be addressed to Guarantor at 7047 E Greenway Pkwy, Suite 300, Scottsdale, AZ 85254, Attention: LUKE LEE, Any notice or demand to Lender shall be addressed to Lender at 21900 Burbank Blvd. Suite 300, Woodland Hills, CA. Attention: Howard Davis. Any party may change its address for the purpose of receiving notices or demands as herein provided by a written notice given in the manner aforesaid to the other party, which notice of change of address shall not become effective, however, until the actual receipt thereof by the other party.

If any term, provision, covenant or condition of this Guaranty, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions of this Guaranty and all applications thereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

The laws of the State of California ard shall govern the validity, construction, performance and effect of this Guaranty. THE PARTIES HEREBY IRREVOCABLY AGREE THAT ANY JUDICIAL PROCEEDING BY THE PARTIES OR THEIR AFFILIATES INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS GUARANTY, THE LOAN EVIDENCED BY THE NOTE, OR THE SECURITY INSTRUMENTS SHALL BE BROUGHT ONLY IN A COURT IN CLARK COUNTY, DELAWARD.



**GN DEFENDANTS EXHIBIT 3**

This Guaranty may be executed in several counterparts and by facsimile transmission or email scan, each of which when so executed and delivered (including delivery by facsimile transmission or email scan) shall be deemed an original, and all of which together shall constitute one and the same instrument.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty of Payment and Performance as of the day and year first above written.

______________________________
**LUKE LEE**, an individual

**INSPIRED HEALTHCARE HOLDINGS LLC**, a Delaware limited liability company

By:______________________
Name: LUKE LEE
Title: Manager

ARIZONA NOTARY ACKNOWLEDGEMENT
(PUBLIC OFFICER, TRUSTEE, OR PERSONAL REPRESENTATIVE)
State of Arizona )
County of Maricopa )
The foregoing instrument was acknowledged before me this December 5th 2024 (date) by ______________________ (name and title of position).
(Seal)
______________________
Signature of Person Taking Acknowledgement

______________________
Title or Rank

______________________
Serial Number, if any
My Commission Expires: July 2, 2026

BRIAN D GEIGER
Notary Public - Arizona
Maricopa County
Commission # 633288
My Comm. Expires Jul 2, 2026



GN DEFENDANTS EXHIBIT 3

# Exhibit 3

brownrudnick

Tristan G. Axelrod
+1 617-856-8456
taxelrod@brownrudnick.com

August 19, 2025

***VIA E-MAIL***

Inspired Healthcare Capital, LLC
7033 E Greenway Parkway, Ste. 250
Scottsdale, AZ 85254
Attn: Luke Lee, CEO
Attn: Elliot Neumann, President
Luke@ihcfunds.com
Elliot.neumann@ihcfunds.com

**RE: Emerson Equity Bridge Fund I Promissory Note
Default and Acceleration Notice / Demand for Payment**

Dear Mr. Lee and Mr. Neumann,

This law firm represents Emerson Equity Bridge Fund I ("Emerson"). I write concerning the Balloon Promissory Note between Emerson and Inspired Healthcare Capital, LLC ("IHC") executed on December 5, 2024 (the "Note"), and accompanying Guaranty of Payment and Performance between Emerson, IHC affiliate Inspired Healthcare Holdings LLC ("IHH"), and Luke Lee ("Lee," and, together with Emerson, IHC and IHH, the "Parties") executed on December 5, 2024 in connection with the Note (the "Guaranty"), pursuant to which Emerson agreed to loan IHC $1,500,000.00 subject to the Guaranty from Lee and IHH. As set forth below, IHC is in default under the Note (the "Default"). Emerson submits this letter as a notice of default and acceleration of obligations and demand for repayment (the "Demand Letter") notifying you of IHC's Default, and demanding (i) immediate payment of all principal outstanding and interest accrued under the Note, including default interest to the maximum extent permitted by law, and (ii) immediate payment of all costs and attorney's fees Emerson has incurred, and will incur, in connection with Emerson's efforts to collect on and enforce its rights following IHC's default under the Note and the Guaranty.

As you are aware, the Note provides certain Events of Default,[1] including that it shall be an Event of Default if:

> any representation, warranty or certification made by Borrower herein, in the Guaranty, or in any other document executed by Borrower with respect to this loan shall prove to have been false or

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Note or Guaranty, as applicable.

incorrect or breached in a material respect on the date as of which made.

Additionally, and as you are aware, prior to executing the Note and Guaranty, in October 2024, the Parties began discussions and diligence concerning a potential financing. As part of those discussions, IHC: (a) provided to Emerson a copy of (i) Mr. Lee's personal financial statement, and (ii) IHC's audited financial statements for the year ending December 31, 2023; and (b) represented in response to questioning that Mr. Lee was not personally liable as guarantor on any other outstanding obligations. Emerson's willingness to extend credit under the Note was based on the aforementioned information it received, and representations made.

Emerson has recently been made aware that certain of these representations and others made by IHC, IHH and Lee to Emerson in connection with the Note and Guaranty were materially inaccurate. Emerson understands, among other things, that (i) IHC's financial situation significantly deteriorated following the year ending December 31, 2023, such that IHC was insolvent at the time of execution of the Note and Guaranty, and (ii) Mr. Lee had personally guaranteed approximately $200 million on obligations of affiliates of IHC, including IHC Income Fund V and IHC Liquidity Fund. These facts, and others evident from Emerson's review of financial statements and discussions with IHC executives, directly contradict representations made by IHC, IHH and Lee to persuade Emerson to execute the Note and Guaranty in December 2024.

These misrepresentations are an Event of Default under the Note. Emerson, through this Demand Letter, advises IHC and Mr. Lee of its decision to exercise all rights available to it under the Note and Guaranty, including: (i) the acceleration and immediate payment of all outstanding principal owing under the Note, (ii) the acceleration and immediate payment of all accrued interest under the Note, (iii) the immediate payment of default interest at the highest rate permitted by law as set forth in the Note, and (iv) the immediate payment of all costs and attorneys' fees incurred by Emerson in collecting and enforcing payment under the Note pursuant to the Default described herein. For the avoidance of doubt, as set forth in the Guaranty, IHC, IHH and Mr. Lee are jointly and severally liable for the obligations owed to Emerson following such Default.

This is a serious matter that demands your urgent attention. Accordingly, please confirm that IHC, IHH and Mr. Lee will fulfill their outstanding and upcoming payment obligations under the Note and Guaranty, including payment of **$1,700,000** (representing principal and $200,000 interest accrued through August 5, 2025) no later than **September 1, 2025**.

Emerson reserves its rights under the Note and Guaranty, as well as those rights at law or in equity, including to supplement this Demand Letter.

Please feel free to contact me to discuss this matter. We look forward to hearing from you.

Sincerely,

**BROWN RUDNICK LLP**

/s/ Tristan G. Axelrod

Tristan G. Axelrod
cc:
Howard Davis
Andrew J. Sherman, Esq.
Rodger D. Moss, Jr., Esq.