SOMPO INTERNATIONAL INSURANCE

# Sompo International

## Broad Form Insurance For Alternative Investment Professionals Liability

**Policy Number:** AIP30040363901
**Effective Dates:** June 20, 2024 To: June 20, 2025
**Endurance American Insurance Company**

**Issuing Office:**
1221 Avenue of the Americas
New York, NY 10020
www.sompo-intl.com

**PN 0027 0221**

**GN DEFENDANTS EXHIBIT 6**

SOMPO INTERNATIONAL

Endurance American Insurance Company
Wilmington, Delaware

# BROAD FORM INSURANCE FOR ALTERNATIVE INVESTMENT PROFESSIONALS DECLARATIONS

NOTICE: PLEASE READ CAREFULLY

THIS POLICY IS A CLAIMS-MADE POLICY AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD, OR THE DISCOVERY PERIOD, IF EXERCISED, AND REPORTED IN WRITING TO THE INSURER WITHIN THE TIME AND PURSUANT TO THE TERMS HEREIN. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES, JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED AND MAY BE FULLY EXHAUSTED BY DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.

POLICY NUMBER: AIP30040363901

PRIOR POLICY NUMBER: AIP30040363900

Item 1. Named Insured: Realty Cap Advisors LLC
Address: 7047 East Greenway Parkway
Suite 300
Scottsdale, AZ 85254

Item 2. Policy Period: From: June 20, 2024 To: June 20, 2025
(12:01 AM Standard Time at the address of the Named Insured.)

Item 3. Coverage Schedule

| Coverage Schedule | Purchased (Yes or No) | Limit of Liability | Retention | Prior Litigation Date |
|---|---|---|---|---|
| A. Investment Advisor Professional Liability Coverage Section | Y | $2,500,000 | $250,000 | 8/16/2022 |
| B. Private Fund Professional Liability Coverage Section | Y | $2,500,000 | $250,000 | 8/16/2022 |
| C. Directors & Officers Liability Coverage Section | Y | $2,500,000 | $250,000 | 8/16/2022 |
| D. Employment Practices Liability Coverage Section | N | N/A | N/A | N/A |

Pursuant to Section IV.B. of the General Terms and Conditions, no retention shall apply to any Coverage Section with regard to Non-Indemnifiable Loss.

Item 4. Aggregate Limit of Liability for all Loss under all Coverage Sections combined: $2,500,000

Item 5. Discovery Period:

A. Additional Period: N/A

B. Additional Premium: N/A

Item 6. New organization threshold amount:

| | | |
|---|---|---|
| A. | Investment Advisor Professional Liability Coverage Section | The total assets under management of the new investment advisor exceed 100% of the total assets under management of the Named Insured as of the inception date of this policy. |
| B. | Private Fund Professional Liability Coverage Section | The total assets under management of the new private fund exceed 100% of the total assets under management of all the Private Funds as of the inception date of this policy. |
| C. | Directors & Officers Liability Coverage Section | The total assets of the new organization exceed 100% of the total assets of the Named Insured as reflected in their most recent audited financial statements. |
| D. | Employment Practices Liability Coverage Section | The total number of Employees of the Named Insured increases by more than N/A% |

Item 7. Notice:

A. Claims or Potential Claims:

Insuranceclaims@sompo-intl.com
1-877-676-7575

Financial Institutions
Attn: Claims Department
1221 Avenue of The Americas
New York,NY 10020

B. All Other Notices:

Financial Institutions
Attn: Underwriting Department
1221 Avenue of The Americas
New York,NY 10020

Item 8. Premium: [redacted]

Item 9. Producer's Name and Address:

RSG Specialty, LLC dba RT Specialty
155 North Wacker Drive
Suite 4000
Chicago, IL 60606

Item 10. Forms and Endorsements Effective at Inception:
See attached Forms and Endorsements Schedule, IL 0101.

This Policy shall constitute the contract between the Insureds and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.



Authorized Representative

Date

# BROAD FORM INSURANCE FOR ALTERNATIVE INVESTMENT PROFESSIONALS
## General Terms and Conditions

All words and phrases that appear in bold type (except headings) have special meaning and are defined under GENERAL DEFINITIONS (Section II) of these General Terms and Conditions or under DEFINITIONS (Section II) of the respective Coverage Sections.

In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer in the Application, which is hereby made a part hereof, and subject to all other terms of this Policy, the Insureds and the Insurer agree as follows:

I. SEPARATE COVERAGE SECTIONS

A Coverage Section is included within this Policy and affords coverage only if the Coverage Section is affirmatively designated as purchased in Item 3 of the Declarations. If a Coverage Section is designated as not purchased, then such Coverage Section is not included within this Policy.

The terms and conditions in each Coverage Section apply only to the Insuring Agreement(s) contained in such Coverage Section and shall not apply to any other Coverage Section or Insuring Agreement.

If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any applicable Coverage Section, the terms and conditions of such Coverage Section shall control for purposes of that Coverage Section.

II. GENERAL DEFINITIONS

When used in this Policy, the following terms, whether in the singular or plural, are defined as follows:

A. Application means all signed applications and any materials attached thereto, submitted by or on behalf of the Insureds to the Insurer, and all publicly available documents filed by the Company with the Securities and Exchange Commission during the one (1) year prior to inception of this Policy.

B. Claim (under the Investment Advisor Professional Liability Coverage Section, the Private Fund Liability Coverage Section, or the Directors and Officers Liability Coverage Section) means:

1. a written demand for monetary damages or other relief against any Insured commenced by the Insured's receipt of such demand,
2. a civil proceeding against any Insured commenced by the service of a complaint or similar pleading,
3. an arbitration proceeding, mediation or any other alternative dispute resolution proceeding (ADR) against any Insured commenced by the Insured's receipt of an arbitration, mediation or any other ADR demand,
4. a criminal proceeding against any Insured commenced by a return of an indictment, information or similar document,
5. any official request for the Extradition of any Insured Person or the execution of a warrant for the arrest of any Insured Person where such execution is an element of Extradition,
6. a formal civil, administrative, regulatory, adjudicatory or investigative proceeding against any Insured commenced by the filing of a notice of charge, investigative order or similar document,



GN DEFENDANTS EXHIBIT 6

7. a civil, criminal, administrative or regulatory investigation or inquiry against any Insured commenced by the service upon or other receipt by any Insured of a written notice, including a Wells Notice, Target Letter, order to show cause, search warrant, or subpoena from the investigating authority identifying the Insured as a party against whom a formal proceeding may be commenced,
8. any request or demand by a regulatory, governmental or similar authority for the production of documents, information, testimony or interview by an Insured, in his, her or its capacity as such and related to an investigation; provided such request or demand (i) is not part of a routine examination, inspection, audit, “industry sweep”, “fishing expedition”, deficiency letter, oversight or compliance activity, and (ii) is in connection with a Wrongful Act.
9. any request or demand by a regulatory, governmental or administrative or similar authority to interview or depose an independent director of a Private Fund, but only in their capacity as a non-party witness to a proceeding involving at least one other Insured, and then further, only if the Private Fund Liability Coverage Section is purchased, or
10. a written request that the Insured toll or waive a statute of limitations with respect to a potential or threatened claim against any Insured for a Wrongful Act, including any appeal therefrom.

Solely with respect to the Employment Practices Liability Coverage Section, Claim means an Employment Practices Claim, or a Third-Party Discrimination Claim.

C. Company means, collectively, the Named Insured and its Subsidiaries, including any such organization as a debtor-in-possession under United States bankruptcy law or an equivalent status under any applicable law.

D. Defense Costs means that part of Loss consisting of reasonable and necessary costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or Employees of the Company) incurred by or on behalf of the Insureds in the defending, settling, appealing or investigating of a Claim, including costs assessed against the Insureds in a Claim or the premium for appeal, attachment or similar bonds, provided the Insurer shall have no obligation to apply for or furnish such bonds.

E. Domestic Partner means any natural person qualifying as a party to a civil union or a domestic partner under the provisions of any applicable federal, state, local, or foreign jurisdiction statute or law, or under the provisions of any formal program established by the Company.

F. Discovery Period means the period of extended reporting coverage as set forth in Item 5.A of the Declarations.

G. Employee means the following:

1. any natural person in the regular service of the Company in the ordinary course of the Company’s business and whom the Company compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, including any such natural person who is a leased, temporary, part-time or seasonal employee of the Company;
2. any natural person independent contractor who is treated under applicable law as an employee of the Company; and
3. any volunteers of the Company;

provided any coverage for any such leased employee or independent contractor shall be specifically excess of any indemnification or insurance otherwise available to such leased employee or independent contractor from the applicable leasing company or any other source.

H. Employment Practices Claim means:

1. a written demand for monetary damages or other relief, commenced by the receipt of such demand,
2. a civil proceeding, commenced by the service of a complaint or similar pleading;
3. an administrative or regulatory proceeding, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by the filing of a notice of charges or similar document;
4. a civil, administrative or regulatory investigation, commenced by the service upon or other receipt of a target letter or other written notice from the investigating authority identifying by name an Insured as an individual or entity against whom a proceeding may be commenced;
5. an arbitration proceeding against, commenced by receipt of an arbitration demand; or
6. a written request to toll or waive a statute of limitations with respect to a potential or threatened claim;

which is brought and maintained by or on behalf of any past, present, future or prospective Employee of the Company against any Insured, including any appeal therefrom, for any Wrongful Act in connection with any actual or alleged:

1. breach of any express or implied employment contract;
2. violation of any law or public policy concerning discrimination in employment whether based upon race, national origin, religion, sex, sexual preference, pregnancy, marital status, disability, medical leave, genetic predisposition or any other protected class; or
3. employment-related tort including without limitation wrongful termination, failure or refusal to hire or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure; humiliation; retaliation for asserting a legal right; workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications; negligent hiring, retention, supervision, training or performance evaluation; and employment-related misrepresentation, defamation, invasion of privacy, false imprisonment, malicious prosecution or infliction of emotional distress; and

provided Employment Practices Claim does not include a labor or grievance proceeding pursuant to a collective bargaining agreement;

I. Executive Officers means with respect to the Named Insured, any natural persons who were, now are, or shall become its chief executive officer, chief financial officer, in-house general counsel, or the functional equivalent of any of such foregoing positions. Further, with respect to any Private Fund, Executive Officer means the chairman of the board of directors, or the functional equivalent thereof.

J. Extradition means any formal process by which an Insured Person located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a Wrongful Act.

K. Financial Impairment means the status of an Insured Entity resulting from the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such entity, or such entity becoming a debtor-in-possession.

L. Independent Contractor means any non-affiliated, third party entity that performs services for an Insured Entity pursuant to an express contract or agreement.

M. Insured is as defined in each Coverage Section.

N. Insured Entity means any Insured that is not a natural person.

O. Interrelated Wrongful Acts means all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event or transaction.

P. Loss is as defined in each Coverage Section.

Q. Managers means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an Insured Entity that is a limited liability company.

R. Named Insured means the organization designated in Item 1 of the Declarations.

S. Policy means, collectively, the Declarations, the General Terms and Conditions, the Application, the purchased Coverage Sections and any endorsements hereto.

T. Policy Period means the period set forth in Item 2 of the Declarations, subject to prior termination in accordance with Section XVI of these General Terms and Conditions.

U. Pollutants means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Pollutants shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

V. Private Fund is as defined in the Private Fund Liability Coverage Section.

W. Subsidiary means an entity in which and for so long as the Company owns more than fifty (50) percent of the issued and outstanding voting stock, or controls rights representing the present right to elect or appoint more than fifty (50) percent of the directors or trustees, on or before the effective date of this Policy. Subsidiary shall also mean any entity scheduled as such to this Policy via endorsement. A Private Fund is not a Subsidiary.

X. Third-Party Discrimination Claim means an actual or alleged violation of any law or public policy concerning discrimination or harassment, which is brought and maintained by or on behalf of any natural person (including customers, vendors, service providers and other business invitees) other than an Insured Person.

Y. Wrongful Act is as defined in each Coverage Section.

III. EXCLUSIONS

A. The Insurer shall not be liable under any Coverage Section for Loss on account of any Claim made against any Insured:

1. based upon, arising out of, or attributable to any fact, circumstance or situation which has been the subject of any written notice given under any insurance policy of which this Policy is a direct or indirect renewal or replacement;

2 based upon, arising out of, or attributable to any litigation, administrative or regulatory proceeding or investigation against any Insured pending on or before the applicable Prior Litigation Date set forth in the Coverage Schedule in Item 3 of the Declarations, or the same or substantially the same Wrongful Act, fact, circumstance or situation underlying or alleged therein;

3. based upon, arising out of, or attributable to an Insured having gained any personal profit or remuneration to which such Insured was not legally entitled or having committed any deliberate fraud or willful violation of any civil or criminal law, if a final and non-appealable adjudication in the underlying action adverse to such Insured establishes that such Insured gained any such personal profit or remuneration or committed such deliberate fraud or willful violation of law;

4. for bodily injury, sickness, disease or death of any person, or for the misappropriation of, damage to or destruction of any tangible property including loss of use thereof, but this exclusion shall not apply to any Claim alleging emotional distress or mental anguish:

   (i) in connection with the Insured's performance of, or failure to perform Investment Advisory Services under the Investment Advisor Professional Liability Coverage (if purchased);

   (ii) in connection with the Insured's performance of, or failure to perform Private Fund Services under the Private Fund Liability Coverage (if purchased);

   (iii) against an Insured Person in their capacity as such for Personal Injury under the Directors and Officers Liability Coverage (if purchased); and

   (iv) humiliation under the Employment Practices Liability Coverage (if purchased);

5. brought or maintained by or on behalf of any Insured, Independent Contractor or any Insured Person in an Outside Position on behalf of the Outside Entity, except:

   a. a Claim that is a derivative action brought or maintained on behalf of the Company by one or more persons who are not Insured Persons and who bring and maintain the Claim without the active assistance or participation of, or solicitation by, the Company or any Insured Person; provided further that this Exclusion 5 shall also not apply to such a derivative action if the only such assistance, participation or solicitation by Insured Persons is (i) solely pursuant to, or in compliance with, a subpoena or similar legal process, or (ii) protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002, as amended, by Section 929A of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any similar whistleblower statute or regulation;

   b. a Claim brought or maintained by any Insured Person for contribution or indemnity, if the Claim directly results from another Claim covered under this Policy;

   c. a Claim brought by an Insured Person who has not been an Insured Person for at least two (2) years prior to the date such Claim is first made and who brings and maintains such Claim without the active assistance or participation of, or solicitation by, an Insured Entity or any other Insured Person who is or has been an Insured Person within such two (2) year period;

   d. a Claim brought by an independent director of a Private Fund (if Private Fund Liability Coverage is purchased);



GN DEFENDANTS EXHIBIT 6

e. a Claim brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such Insured Entity or any assignee of such trustee, examiner, receiver, or similar official or creditors committee;

f. a Claim brought and maintained outside of the United States, Canada, the United Kingdom, Australia or any other common law jurisdiction, including any territory or possession thereof; or

g. any Employment Practices Claim (if Employment Practices Liability Coverage is purchased);

6. for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or any similar foreign, state or local common or statutory law, provided that this exclusion shall apply only to plans that are sponsored by an Insured Entity;

7. for any (a) actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of Pollutants into or on real or personal property, water or the atmosphere; or (b) direction or request that an Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so, including without limitation any Claim by or on behalf of any Insured, its securities holders or creditors based upon, arising out of, or attributable to the matters described in this exclusion; but this exclusion shall not apply to any Loss incurred by an Insured Person for which the Insured Entity does not indemnify the Insured Persons either because the Insured Entity is neither permitted nor required to grant such indemnification or because of the Financial Impairment of the Insured Entity; or

8. based upon, arising out of, or attributable to any Insured's activities as a Broker and/or Dealer, or an Underwriter, as such terms are described in the Securities Exchange Act of 1934, and the Securities Act of 1933, respectively;

B. For the purpose of determining the applicability of Exclusion 3. set forth in this Section III, the Wrongful Act or knowledge of any Insured Person shall not be imputed to any other Insured Persons; and only the Wrongful Act or knowledge of an Executive Officer shall be imputed to the Named Insured or Private Fund.

## IV. LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS

A. Limits of Liability

1. Combined Aggregate Limit of Liability

The amount set forth in Item 4 of the Declarations shall be the Insurer's maximum aggregate liability for all Loss covered in all Coverage Sections, combined.

2. Coverage Section Aggregate Limit of Liability

The respective Aggregate Limit of Liability for each Coverage Section, as set forth in the Coverage Schedule in Item 3 of the Declarations, shall be the Insurer's maximum aggregate liability for all Loss covered under such Coverage Section. Each Coverage Section Aggregate Limit of Liability shall be part of and not in addition to the Combined Aggregate Limit of Liability set forth in Item 4 of the Declarations.

3. Defense Costs Within Limit of Liability



GN DEFENDANTS EXHIBIT 6

Defense Costs are part of and not in addition to the applicable Limit of Liability and the payment by the Insurer of Defense Costs reduces and may even exhaust such applicable Limit of Liability.

4. Discovery Period Limit of Liability

The Limit of Liability for any Discovery Period shall be part of and not in addition to the applicable Limits of Liability for the Policy Period. The purchase of the Discovery Period shall not increase or reinstate the applicable Limit of Liability. If more than one individual Discovery Period is elected pursuant to Subsection V.C of these General Terms and Conditions, the Insurer's maximum aggregate liability under all such individual Discovery Periods, combined, shall not exceed the Insurer's maximum aggregate liability for any one individual Discovery Period.

B. Retention

The Insurer's liability with respect to Loss on account of each Claim shall apply only to that part of Loss which is excess of the applicable Retention set forth in the Coverage Schedule in Item 3 of the Declarations.

No Retention shall apply to Loss incurred by any Insured Person for which the Insured Entity is not permitted by common or statutory law to indemnify, or is not financially able to indemnify by reason of Financial Impairment.

With respect to any Claim against an Insured Person, if the Insured Entity is permitted or required by common or statutory law to indemnify an Insured Person for Loss, or to advance Defense Costs on their behalf, and does not in fact do so for reasons other than Financial Impairment, then the Insurer shall pay such Loss or advance such Defense Costs on behalf of such Insured Person without regard to any Retention, but the Named Insured shall reimburse the Insurer for such amounts up to the Retention set forth in Item 3 of the Declarations.

C. Single Claims

All Claims which arise out of the same Wrongful Act or Interrelated Wrongful Acts of Insureds shall be deemed one Claim, and such Claim shall be deemed to be first made on the date the earliest of such Claims is first made against any Insured, regardless of whether such date is before or during the Policy Period.

D. Single Claim Covered by Multiple Insuring Agreements

If a single Claim is covered in whole or in part under more than one Coverage Section, then the applicable Retention for each such Coverage Section shall apply to that portion of such Claim covered under such Coverage Section, provided that the sum of all Retentions applicable to such Claim under all such Coverage Sections shall not exceed the largest of such applicable Retentions.

V. EXTENSIONS

A. Estates, Legal Representatives, Spouses and Domestic Partners

The coverage otherwise available under this Policy to an Insured Person shall be extended to any estate, heir, legal representative, assign, spouse or Domestic Partner of such Insured Person but only for a Claim arising solely out of their status as such and, in the case of a spouse or Domestic Partner, where such Claim seeks damages from marital community property, jointly held property or property transferred from the Insured Person to the spouse or Domestic Partner. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or Domestic Partner. All provisions in these General Terms and Conditions and any respective Coverage Section applicable to Loss incurred by the Insured

Person shall also apply to loss incurred by such estate, heir, legal representative, assign, spouse or Domestic Partner.

B. Discovery Period

If the Named Insured terminates this Policy or the Named Insured or Insurer refuses to renew this Policy, the Insureds shall have the right, upon payment of the additional premium set forth in Item 5.B. of the Declarations, to an extension of coverage for the Discovery Period set forth in Item 5.A. of the Declarations following the effective date of termination or nonrenewal, but only with respect to any Wrongful Act taking place prior to the effective date of such termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the Insureds to the Insurer within ninety (90) days following the effective date of termination or nonrenewal.

The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

The entire additional premium for the Discovery Period shall be deemed fully earned at the inception of the Discovery Period.

C. Individual Insured Person Discovery Period

If for any reason, the Named Insured is entitled to but does not exercise the Discovery Period, then any individual Insured Person shall have the right to elect a Discovery Period under any Coverage Section applicable only for such specified Insured Person, subject to the provisions of this Policy. The extension of coverage pursuant to any such individual Discovery Period shall apply only with respect to coverage under such Coverage Section for Loss which is incurred by the Insured Person who elected such extension of coverage and who is not indemnified by an Insured Entity, and shall not apply to any other coverage afforded under this Policy.

This right of extension shall lapse unless written notice of such election is given by the Insured Person to the Insurer within thirty (30) days after the Named Insured's right to exercise the Discovery Period has expired. If one or more Insured Persons give such written notice within such thirty (30) day period, then promptly after expiration of such thirty (30) day period the Insurer shall notify all the Insured Persons who elected such individual Discovery Period of the additional premium payable by each such Insured Person for such extension, in no event to exceed one hundred percent (100%) of the amount stated in Item 5.B of the Declarations. This extension of coverage for any such Insured Person is conditioned upon such Insured Person paying such additional premium within fifteen (15) days after being notified of the amount of the additional premium.

The purchase of an individual Discovery Period by a specified Insured Person does not in any way serve to increase or reinstate the Limit of Liability under this Policy. There shall be only one Limit of Liability available regardless of the number of Insured Persons purchasing an individual Discovery Period.

VI. ALLOCATION

If in any Claim the Insureds incur both Loss covered by this Policy and loss not covered by this Policy either because the Claim against the Insureds includes both covered and uncovered matters or because the Claim is made against both Insureds who are afforded coverage for such Claim and others, including Insureds, who are not afforded coverage for such Claim, the Insureds and the Insurer shall use their best efforts to allocate such amount between covered Loss and uncovered loss based upon the relative legal and financial exposures of the parties involved. The Insurer's obligation shall relate only to those sums allocated to matters which are afforded coverage. If the Insured and Insurer cannot agree on an allocation of Defense Costs, the Insurer shall advance

Defense Costs which the Insurer believes to be covered under the Policy until a different allocation is negotiated, arbitrated or judicially determined.

Nothing in this Section VI shall limit, waive or remove the rights of any Insured or the Insurer to assert claims for indemnity or contribution against third parties pursuant to any statutory or common law or any provision of this Policy.

No presumption shall exist concerning what is a fair and proper allocation between covered Loss and uncovered loss. Any allocation of Defense Costs on account of a Claim shall not apply to or create any presumption with respect to the allocation of other Loss arising from such Claim or any other Claim.

VII. CHANGES IN EXPOSURE

A. New Organizations

1. If during the Policy Period the Company:

   a) acquires or creates a new Investment Advisor;

   b) acquires, creates or sponsors a new Private Fund; or

   c) acquires or creates a new Subsidiary;

   Then any applicable coverage provided by purchased Coverage Sections shall automatically apply to the new Investment Advisor, new Private Fund, or new Subsidiary and its respective Insured Persons, provided such coverage shall apply only with respect to Claims for Wrongful Acts taking place after the date of such acquisition, creation or sponsorship.

2. However, if the size of a new Investment Advisor, new Private Fund or new Subsidiary as described in subsection 1 above exceeds the threshold(s) for the respective Coverage Sections as shown in Item 6 of the Declarations Page, then coverage under this Policy for such Coverage Section as provided in subsection 1 above shall apply only if the Insurer agrees to afford such coverage pursuant to subsection 3 below.

3. The Insurer may agree to extend the coverage described in subsection 1 above to the new Investment Advisor, new Private Fund or new Subsidiary described in subsection 2 above and its respective Insured Persons if, within thirty (30) days after the creation, acquisition, sponsorship, or merger the Named Insured provides any additional information, pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such extension of coverage. In such event, the Insurer shall issue an endorsement to this Policy confirming such coverage extension.

B. Acquisition of Named Insured

If during the Policy Period the Named Insured merges into or consolidates with another organization such that the Named Insured is not the surviving entity, or another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees or equivalent executives of the Named Insured, then coverage under this Policy shall continue until the expiration date of this Policy, provided such coverage shall apply only with respect to Claims for Wrongful Acts taking place prior to the date of such merger, consolidation or acquisition.



GN DEFENDANTS EXHIBIT 6

C. Cessation of Investment Advisors, Subsidiaries or Named Insured

If during the Policy Period any entity ceases to be an Investment Advisor or Subsidiary or the Named Insured ceases operations, coverage with respect to such Investment Advisor, Subsidiary or Named Insured and its respective Insured Persons shall continue until termination of this Policy, provided coverage for such Investment Advisor, Subsidiary or Named Insured shall apply only with respect to Claims for Wrongful Acts taking place prior to the date such organization ceased to be an Investment Advisor or Subsidiary or the date that the Named Insured ceased operations.

D. Cessation of Private Funds

If during the Policy Period a Private Fund is dissolved, terminated, liquidated, or otherwise ceases to be sponsored by the Named Insured, then coverage for such Private Fund and its respective Insured Persons under the Private Fund Coverage Section, if purchased, shall continue until termination of this Policy, provided such coverage shall apply only with respect to Claims for Wrongful Acts taking place prior to the date of such dissolution, termination, liquidation or cessation of sponsorship.

VIII. DEFENSE AND SETTLEMENT

It shall be the duty of the Insureds and not the duty of the Insurer to defend any Claim.

The Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds regarding the investigation, defense, negotiation, or settlement of any Claim that is or reasonably could be covered in whole or in part by this Policy.

The Insureds shall not settle, offer to settle, incur any Defense Costs or otherwise assume any obligation, admit any liability or stipulate to any judgment with respect to any Claim that is or reasonably could be covered in whole or in part by this Policy without the Insurer's prior consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any settlement, offer to settle, Defense Costs, assumed obligation, admission of liability or stipulated judgment to which it has not given its prior consent.

The Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a Claim the Insureds will intentionally do nothing that shall prejudice the Insurer's position or its rights of recovery.

The Insurer shall advance on a current basis Defense Costs which the Insurer believes to be covered under this Policy. If and to the extent it is determined that the Insureds are not entitled to Defense Costs under the terms and conditions of this Policy, then any advancement of Defense Costs shall be repaid to the Insurer by the Insureds severally according to their respective interests.

Subject to Section XV of these General Terms and Conditions, the Insurer is entitled to pay Loss as it becomes due and payable by the Insureds, without consideration of other future payment obligations.

If the Insureds are able to settle all Claims which are subject to a single Retention for an aggregate amount, including Defense Costs, not exceeding such Retention, the Insurer's consent shall not be required for the settlement of such Claims.

The Insurer shall not unreasonably withhold any consent referenced in this Section VIII.

IX. REPORTING AND NOTICE

a. Claims Reporting

As a condition precedent to their rights to coverage under this Policy, the Insureds shall give to the Insurer written notice of any Claim made against the Insureds as soon as practicable after an Executive Officer first becomes aware of such Claim, but in no event later than (i) ninety (90) days after expiration of the Policy Period, or (ii) the expiration of the Discovery Period, if exercised.

B. Notice of Potential Claims

If during the Policy Period or the Discovery Period, if exercised, the Insureds become aware of circumstances that could give rise to a Claim against the Insureds, and give written notice of such circumstances to the Insurer during the Policy Period or the Discovery Period, if exercised, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Period. No coverage is afforded for fees, expenses or other loss amounts incurred in connection with such potential Claim prior to the time such notice results in a Claim.

C. Transmission of Notice Reporting

As a condition precedent to exercising their rights to coverage under this Policy, the Insureds shall (i) include within any notice of Claim or circumstances a description of the Claim or circumstance, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the Insureds first became aware of the Claim or circumstance; and (ii) give to the Insurer such information and cooperation as it may reasonably require.

All notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notice to the Insureds may be given to the Named Insured at the address as shown in Item 1 of the Declarations. Notice to the Insurer shall be given to the respective address shown in Item 7 of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or in the case of courier, email or fax, one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

X. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES

A. Representations

Each Insured represents and acknowledges that the statements and information contained in the Application are true and complete, and are the basis of the underwriting of this Policy and are to be considered as incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth and completeness of such representations.

B. Severability of the Application

The Application shall be construed as a separate application for coverage by each of the Insured Persons. In the event the Application contains any misrepresentation or omission (i) made with the intent to deceive, or (ii) which materially affects either the acceptance of the risk or the hazard assumed by the Insurer, then this Policy shall be void *ab initio* as to:

1. any Insured Person who had knowledge that the facts were not truthfully disclosed in the Application;
2. any Insured Entity to the extent such Insured Entity indemnifies an Insured Person who had knowledge that the facts that were not truthfully disclosed in the Application; or



GN DEFENDANTS EXHIBIT 6

3. any Insured Entity if an Executive Officer had knowledge that the facts that were not truthfully disclosed in the Application;

whether or not such Executive Officer or Insured Person had knowledge that the Application contained such misrepresentation or omission. The knowledge of one Insured Person shall not be imputed to any other Insured Persons for the purposes of this Section X.

C. Non-Rescindable for Non-Indemnifiable Coverage

Notwithstanding the foregoing, the Insurer shall not have the right to rescind the coverage provided under this Policy for any Loss incurred by an Insured Person which is not indemnified by the Company.

XI. TERRITORY AND VALUATION

All premiums, limits, retentions, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If a judgment is rendered, settlement is denominated, or another element of Loss under this Policy is stated in a currency other than United States of America dollars, then payment under this Policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of Loss is due, respectively.

Coverage under this Policy shall extend to Wrongful Acts taking place or Claims made anywhere in the world, to the extent legally permitted.

XII. OTHER INSURANCE

If any Loss is insured under any other valid and collectible policy(ies) issued to any Insured, then this Policy shall act as an excess insurance policy and will cover such Loss, subject to its limitations, conditions, provisions and other terms of this Policy, only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is (i) written as specific excess insurance over the Limits of Liability provided in this Policy, or (ii) personal umbrella excess liability insurance purchased by an Insured Person.

XIII. SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all the Insureds' rights of recovery, including without limitation any right of recovery from an Insured Entity for Loss incurred by Insured Persons which is indemnifiable by such Insured Entity. The Insureds shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Insureds.

In any subrogation claim against an Insured Entity to enforce an Insured Person's right of indemnification, the shareholder and board of directors' resolutions of the Insured Entity shall be deemed to provide indemnification to the fullest extent permitted by law.

In the event the Insurer recovers amounts it paid under this Policy, the Insurer will reinstate the Limits of Liability of this Policy to the extent of such recovery, less the Insurer's costs incurred in administering and obtaining such recovery. The Insurer assumes no duty to seek a recovery of any amounts paid under this Policy.

The Insurer shall not exercise its right of subrogation against an Insured Person with respect to payments made under any Coverage Section unless and to the extent that Exclusion 3. in these General Terms and Conditions applies to such Insured Person.

XIV. ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized representative of the Insurer.

The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

XV. PAYMENT PRIORITY

If the Loss due and owing by the Insurer under this Policy exceeds the then-remaining Limit of Liability applicable to such Loss, the Insurer shall pay such Loss, subject to the applicable Limits of Liability, in the following priority:

A. First, the Insurer shall pay such Loss which is incurred by Insured Persons and which is not indemnified by the Insured Entity; and

B. Second, the Insurer shall pay such Loss which is incurred by Insured Persons and which is indemnified by the Insured Entity;

C. Third, the Insurer shall pay all other Loss.

XVI. POLICY TERMINATION AND NONRENEWAL

This Policy shall terminate at the earliest of the expiration date of the Policy Period shown in Item 2 of the Declarations, or the effective date of cancellation, as described in A. below.

A. Cancellation

1. The Named Insured may cancel this Policy by giving prior written notice to the Insurer stating when such cancellation shall take effect and by surrendering this Policy to the Insurer.

2. The Insurer may cancel this Policy only for nonpayment of premium. In such event, the Insurer shall mail written notice of cancellation for nonpayment of premium to the Named Insured. Such notice shall state the effective date of cancellation, which shall not be less than fifteen (15) days after mailing such notice.

3. In the event of cancellation, the Insurer shall refund the unearned premium computed pro rata.

B. Nonrenewal

If the Insurer elects not to renew this Policy, the Insurer shall mail to the Named Insured written notice thereof at least sixty (60) days prior to the expiration of the Policy Period. The Insurer's offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute an election by the Insurer not to renew this Policy.

C. Notice

The Insurer shall send all notices required for cancellation and nonrenewal under this Section XVI by certified mail to the Named Insured at the address in Item 1 of the Declarations, and by mail or email to the Named Insured's authorized agent, if any. Proof of mailing will be sufficient proof of notice.



GN DEFENDANTS EXHIBIT 6

XVII. AUTHORIZATION CLAUSE

By acceptance of this Policy, the Named Insured agrees to act on behalf of the Insureds with respect to giving and receiving notices of Claim or termination, paying premiums and receiving any return premiums that may become due under this Policy, agreeing to endorsements, and giving or receiving notices provided for in this Policy, and the Insureds agree that the Named Insured shall act on their behalf.

XVIII. BANKRUPTCY

Bankruptcy or insolvency of any Insured or of the estate of any Insured shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

In the event that a liquidation or reorganization proceeding is commenced by or against the Company pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the Company and the Insureds hereby (i) waive and release any automatic stay or injunction which may apply in such proceeding to this Policy or its proceeds under such bankruptcy law, and (ii) agree not to oppose or object to any efforts by the Insurer, the Company or any Insured to obtain relief from any such stay or injunction.

# BROAD FORM INSURANCE FOR ALTERNATIVE INVESTMENT PROFESSIONALS
## Investment Advisor Professional Liability Coverage Section

**I.** INSURING AGREEMENT

The Insurer shall pay on behalf of the Insureds all Loss for which the Insureds become legally obligated to pay on account of a Claim first made against the Insureds during the Policy Period or during the Discovery Period, if exercised, for any Wrongful Acts taking place prior to the end of the Policy Period.

**II.** DEFINITIONS

When used with respect to this Coverage Section, the following terms, whether in the singular or plural, are defined as follows:

A. Insured Person means any one or more natural persons who were, now are or shall become duly elected or appointed directors, trustees, governors, Managers, officers, Employees, advisory directors or members of a duly constituted committee or board of the Investment Advisor or their functional equivalent.

B. Insureds means the Insured Persons and the Investment Advisor.

C. Investment Advisor means an entity that provides Investment Advisory Services and which is scheduled by written endorsement to this Policy as an Investment Advisor.

D. Investment Advisory Services means:

1. The provision of investment, economic or financial advice or the provision of investment management services to customers pursuant to a contract;

2. The provision of administrative services, computer or Internet services or the preparing of publications by an Insured, but only to the extent that such services are performed in connection with section 1. above;

3. The selection, oversight or direction by any Insured of an Independent Contractor to provide the services described in sections 1. or 2. above on behalf of an Investment Advisor pursuant to a contract.

E. Loss means the total dollar amount an Insured becomes legally obligated to pay on account of a Claim made against them for a Wrongful Act for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, Defense Costs and civil money penalties assessed against an Insured pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any other federal, state, local or foreign law if such law violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Investment Advisor, the Insured Person, the Insurer, or such Claim is located.

The Insurer shall not assert non-insurability as to that portion of any Claim alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended.



**GN DEFENDANTS EXHIBIT 6**

F. Wrongful Act means any error, omission, misstatement, misleading statement, act, or breach of duty actually or allegedly committed or attempted by an Insured in her, his or its capacity as such, and solely in the performance of, or failure to perform Investment Advisory Services.

**III.** EXCLUSIONS

A. The exclusions in this Coverage Section are in addition to the exclusions set forth in the General Terms and Conditions. The Insurer shall not be liable under this Coverage Section for Loss on account of any Claim made against any Insured:

1. for the inability of any person or entity to make payment, settle or effect a transaction of any kind; provided, however, that this exclusion shall not apply to Claims for Wrongful Acts involving the selection of such persons or entities to provide services for the Investment Advisor, in connection with the performance of Investment Advisory Services;

2. for any liability under any written or express contract or agreement; provided however, that this exclusion shall not apply to:

   a. any Claims brought by a customer of an Investment Advisor to the extent that the Claims allege breach of contractual obligations in the rendering of, or failure to render Investment Advisory Services; or

   b. any liability which would attach to an Investment Advisor in the absence of a contract.

3. based upon, arising from or attributable to any actual or alleged investment in securities issued by a Company or an Investment Advisor, provided that this exclusion will not apply to an investment in securities issued by a Private Fund (if Private Fund Liability Coverage is purchased); or

4. which constitutes an Employment Practices Claim or Third-Party Discrimination Claim.

B. Section III., Exclusion 5 of the General Terms and Conditions shall not apply to any Claims against any Insured under this Investment Advisor Professional Liability Coverage Section brought by or on behalf of an entity that qualifies as a Private Fund (if Private Fund Liability Coverage is purchased), if in the opinion of independent legal counsel to be selected and paid for by the Insured (subject to approval by the Insurer with such approval not to be unreasonably withheld), the failure to bring such Claims would result in liability upon Insureds under the Private Fund Liability Coverage Section, for failure to assert such Claims.

C. Loss does not include:

1. any amount for which the Insureds are absolved from payment,

2. matters uninsurable under the law pursuant to which this Policy is construed,

3. the theft or disappearance of money, securities, property or other items of value in the custody or control of any Insured or its, his or her agents or in transit, or

4. any amount incurred by the Insured in a proceeding or investigation that is not at that time a Claim, even if such amount also benefits the defense of a Claim and even if such proceeding or investigation subsequently gives rise to a Claim.

D. Loss, other than Defense Costs, does not include:

1. fines or penalties imposed by law, other than civil money penalties expressly referenced in the definition of Loss above,

2. the return of fees,
3. taxes, other than taxes (a) imposed upon an Insured Entity for which the Insured Persons are legally liable solely by reason of the Investment Advisor's insolvency, or (b) imposed upon an Insured Person solely by reason of the Insurer's payment of Loss incurred by such Insured Person,
4. the return or claw back of any form of compensation under Section 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

# BROAD FORM INSURANCE FOR ALTERNATIVE INVESTMENT PROFESSIONALS
## Private Fund Professional Liability Coverage Section

**I.** INSURING AGREEMENT

The Insurer shall pay on behalf of the Insureds all Loss for which the Insureds become legally obligated to pay on account of a Claim first made against the Insureds during the Policy Period or during the Discovery Period, if exercised, for any Wrongful Acts taking place prior to the end of the Policy Period.

**II.** DEFINITIONS

When used with respect to this Coverage Section, the following terms, whether in the singular or plural, are defined as follows:

A. Insured Persons means any one or more natural persons who were, now are or shall become duly elected or appointed directors, trustees, governors, Managers, officers, natural person general partners, Employees, advisory directors or members of a duly constituted committee or board of a Private Fund or of any entity that is a managing member or general partner of a Private Fund.

B. Insureds means the Insured Persons, the Private Funds, and any entity that is a managing member or general partner of a Private Fund.

C. Private Fund means any investment company created or sponsored by the Company as of the effective date of this Policy and which is scheduled by written endorsement to this Policy as a Private Fund. Private Fund shall also include any special purpose entities or investment holding companies created for the purpose of holding investments in the name or right of a respective Private Fund.

D. Private Fund Services means:

1. Those services provided to and in connection with the management, operation, creation, or dissolution of any Private Fund;

2. The provision of administrative services, computer or Internet services or the preparing of publications by an Insured, but only to the extent that such services are performed in connection with section 1. above;

3. The selection, oversight or direction by any Insured of an Independent Contractor to provide the services described in sections 1. or 2. above on behalf of a Private Fund, or an entity managing member or entity general partner of a Private Fund, pursuant to a contract.

E. Loss means the total amount an Insured become legally obligated to pay on account of a Claim made against them for a Wrongful Act for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, Defense Costs and civil money penalties assessed against an Insured pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any other federal, state, local or foreign law if such law violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the



GN DEFENDANTS EXHIBIT 6

Insureds, including without limitation the jurisdiction in which the Private Fund, the Insured Person, the Insurer, or such Claim is located.

The Insurer shall not assert non-insurability as to that portion of any Claim alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

F. Wrongful Act means:

1. any error, omission, misstatement, misleading statement, act, or breach of duty actually or allegedly committed or attempted by an Insured in her, his or its capacity as such, and solely in the performance of, or failure to perform Private Fund Services; and

2. any other matter claimed against an Insured Person solely by reason of their serving in such capacity.

**III.** EXCLUSIONS

A. The exclusions in this Coverage Section are in addition to the exclusions set forth in the General Terms and Conditions. The Insurer shall not be liable under this Coverage Section for Loss on account of any Claim made against any Insured:

1. for the inability of any person or entity to make payment, settle or effect a transaction of any kind; provided, however, that this exclusion shall not apply to Claims for Wrongful Acts involving the selection of such persons or entities to provide services for the Private Fund, in connection with the performance of Private Fund Services;

2. for any liability under any written or express contract or agreement; provided however, that this exclusion shall not apply to:

   a. any Claims brought by a customer or client of a Private Fund to the extent that such Claims allege breach of contractual obligations in the rendering of, or failure to render Private Fund Services, including but not limited to the organization and/or governance documents of a Private Fund; or

   b. any liability which would attach to a Private Fund in the absence of a contract;

3. based upon, arising out of, or attributable to any actual or alleged investment in securities issued by a Company or an Investment Advisor, provided that this exclusion will not apply to an investment in securities issued by a Private Fund; or

4. which constitutes an Employment Practices Claim or Third-Party Discrimination Claim.

B. Section III, Exclusion 5 of the General Terms and Conditions shall not apply to any Claims against any Insured under this Private Fund Liability Coverage Section brought by or on behalf of a person or entity that qualifies as an Insured under the Investment Advisor Professional Liability Coverage Section (if purchased), provided that such Claims are brought without the assistance, or participation of any Insured under this Private Fund Liability Coverage Section.

C. Loss does not include:

1. any amount for which the Insureds are absolved from payment,

2. matters uninsurable under the law pursuant to which this Policy is construed,

3. the theft or disappearance of money, securities, property or other items of value in the custody or control of any Insured or its, his or her agents or in transit, or

4. any amount incurred by the Insured in a proceeding or investigation that is not at that time a Claim, even if such amount also benefits the defense of a Claim and even if such proceeding or investigation subsequently gives rise to a Claim.

D. Loss, other than Defense Costs, does not include:

1. fines or penalties imposed by law, other than civil money penalties expressly referenced in the definition of Loss above,

2. the return of fees,

3. taxes, other than taxes (a) imposed upon a Company for which the Insured Persons are legally liable solely by reason of the Investment Advisor's insolvency, or (ii) imposed upon an Insured Person solely by reason of the Insurer's payment of Loss incurred by such Insured Person, or

4. the return or claw back of any form of compensation under Section 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.



GN DEFENDANTS EXHIBIT 6

# BROAD FORM INSURANCE FOR ALTERNATIVE INVESTMENT PROFESSIONALS
## Directors & Officers Liability Coverage Section

**I.** INSURING AGREEMENTS

A. Insured Person Liability

The Insurer shall pay on behalf of the Insured Persons all Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons have become legally obligated to pay on account of a Claim first made against the Insured Persons during the Policy Period or during the Discovery Period, if exercised, for any Wrongful Acts taking place prior to the end of the Policy Period.

B. Company Indemnification

The Insurer shall pay on behalf of the Company all Loss for which the Company grants indemnification to the Insured Persons and which the Insured Persons have become legally obligated to pay on account of a Claim first made against the Insured Persons during the Policy Period or during the Discovery Period, if exercised, for any Wrongful Acts taking place prior to the end of the Policy Period.

C. Company Liability

The Insurer shall pay on behalf of the Company all Loss for which the Company becomes legally obligated to pay on account of a Claim first made against the Company during the Policy Period or during the Discovery Period, if exercised, for any Wrongful Acts taking place prior to the end of the Policy Period.

D. Outside Position Liability

Subject to their other terms and conditions, Insuring Agreements A and B include coverage for Insured Persons while serving in an Outside Position. Any such coverage shall be specifically excess of any indemnity and insurance available from or provided by the Outside Entity in which the Insured Person serves in the Outside Position.

**II.** DEFINITIONS

When used with respect to this Coverage Section, the following terms, whether in the singular or plural, are defined as follows:

A. Insured Persons means:

1. any one or more natural persons who were, now are or shall become duly elected or appointed directors, trustees, governors, Managers, officers, advisory director or member of a duly constituted committee or board of the Company, or the functional equivalent of any of the foregoing; and
2. Employees of the Company (including employed lawyers solely in their capacity as an Employee of the Company) who are named in any Claim that also names Insured Persons as described in subparagraph 1 above.

B. Insureds means:

1. the Insured Persons; and



GN DEFENDANTS EXHIBIT 6

2. solely with respect to Insuring Agreements B and C, the Company.

C. Loss means the total amount the Insureds become legally obligated to pay on account of Claims made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, Defense Costs and civil money penalties assessed against an Insured pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any other federal, state, local or foreign law if such law violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insureds, including without limitation the jurisdiction in which the Company, the Insured Persons, the Insurer, or such Claim is located.

The Insurer shall not assert non-insurability as to that portion of any Claim alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

D. Outside Entity means:

1. any organization chartered and operated as a not-for-profit organization, or

2. any other entity specifically included as an Outside Entity by endorsement to this Policy, provided such entity is not included in the definition of Company.

E. Outside Position means the position of director, officer, manager, trustee or other equivalent executive position held by an Insured Person in an Outside Entity if service in such position is with the knowledge and written consent of, and at the direction or request of, or part of the duties regularly assigned to the Insured Person by the Company.

F. Personal Injury means false arrest, wrongful detention or imprisonment, malicious prosecution, defamation including libel, slander or false light, invasion or infringement of privacy or wrongful entry or eviction.

G. Wrongful Act means:

1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the Insured Persons in their capacity as such, or in an Outside Position, or with respect to Insuring Agreement C, by the Company, or

2. any matter claimed against an Insured Person solely by reason of their serving in such capacity or in an Outside Position.

**III.** EXCLUSIONS

A. The exclusions in this Coverage Section are in addition to the exclusions set forth in the General Terms and Conditions. The Insurer shall not be liable under this Coverage Section for Loss on account of any Claim made against any Insured:

1. for any Claim brought by or on behalf of any limited partners, shareholders or investors of any Private Fund, or any other investment company created or sponsored by the Company;

2. for a Wrongful Act actually or allegedly committed or attempted by the Company in its capacity as a general partner, or by Insured Persons in their capacity as a director, officer,

trustee, manager or employee, of any organization other than an Outside Entity or the Company; or



GN DEFENDANTS EXHIBIT 6

3. based upon, arising from, or attributable to any public offering of securities by the Company; provided however, this exclusion shall not apply to any public offering of securities, if, within thirty (30) days prior to the effective time of such public offering: (i) the Company shall give the Insurer written notice of such public offering together with full details and underwriting information required thereto; and (ii) the Company accepts such terms, conditions and additional premium required by the Insurer for such coverage.

4. solely with respect to Insuring Clauses B, C and D:

   a. for any liability of the Company under any written or express contract or agreement;

   b. for Personal Injury;

   c. for taxes;

   d. for the rendering of or failure to render professional services, including but not limited to, Investment Advisory Services or Private Fund Services;

   e. based upon, arising out of or attributable to an actual or alleged violation of any federal, state, local, common or foreign laws involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing, restraint of trade, unfair trade practices or tortious interference with another's actual or prospective business or contractual relationships or opportunities;

   f. based upon, arising out of or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas, intellectual property, or trade secrets or the unauthorized disclosure of or access to confidential information; or

   g. which constitutes an Employment Practices Claim or Third Party Discrimination Claim.

B. Loss does not include:

1. any amount for which the Insureds are absolved from payment,

2. matters uninsurable under the law pursuant to which this Policy is construed,

3. the theft or disappearance of money, securities, property or other items of value in the custody or control of any Insured or its, his or her agents or in transit,

4. any amount incurred by the Insured in a proceeding or investigation that is not at that time a Claim, even if such amount also benefits the defense of a Claim and even if such proceeding or investigation subsequently gives rise to a Claim, or

5. any amount incurred by the Company that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a Company in connection with its purchase of any securities or assets.

C. Loss, other than Defense Costs, does not include:

1. fines or penalties imposed by law, other than civil money penalties expressly referenced in the definition of Loss above,

2. the return of fees,

3. taxes, other than taxes (a) imposed upon a Company for which the Insured Persons are legally liable solely by reason of the Investment Advisor's insolvency, or (ii) imposed upon an Insured Person solely by reason of the Insurer's payment of Loss incurred by such

Insured Person, or

4. the return or claw back of any form of compensation under Section 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

# FORMS AND ENDORSEMENT SCHEDULE

## BROAD FORM INSURANCE FOR ALTERNATIVE INVESTMENT PROFESSIONALS LIABILITY

| End. No. | Title | Number |
|---|---|---|
| | Broad Form Insurance for Alternative Investment Professionals Declarations | AIP 0001 0714 |
| | Broad Form Insurance for Alternative Investment Professionals - General Terms & Conditions | AIP 0201 1213 |
| | Investment Advisor Professional Liability Coverage Section | AIP 0202 1213 |
| | Private Fund Professional Liability Coverage Section | AIP 0203 1213 |
| | Directors & Officers Liability Coverage Section | AIP 0204 1213 |
| | Forms and Endorsement Schedule | IL 0101 0712 |
| 1 | Schedule of Investment Advisor Endorsement | AIP 0102 0114 |
| 2 | Amend Prior Litigation Date | IL 1001 0712 |
| 3 | Real Estate Private Equity Extension | IL 1001 0712 |
| 4 | Arizona Changes | AIP 0305 0514 AZ |
| 5 | Advancement of Defense Costs Amended | AIP 0345 0318 |
| 6 | Claim Amended (Foreign Equivalent) | AIP 0352 0318 |
| 7 | Derivative Evaluation Costs Coverage | AIP 0358 0318 |
| 8 | Discovery Period Amended | AIP 0360 0318 |
| 9 | Investor Claims Exclusion Deleted | AIP 0373 0318 |
| 10 | Amendment to Insured Definition | AIP 0611 0114 |
| 11 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 12 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 1220 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0721 |
| | Signature Page | IL 1007 1222 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*



**GN DEFENDANTS EXHIBIT 6**

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | Endorsement Number: | 1 |

## SCHEDULE OF INVESTMENT ADVISOR

It is agreed that:

The term Investment Advisor as defined in Section II.C. of the Investment Advisor Professional Liability Coverage Section of this Policy, is amended to include the following:

Inspired Healthcare Capital, LLC

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| **Named Insured:** | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | Endorsement Number: | 2 |

## GENERAL CHANGE
### (AMEND PRIOR LITIGATION DATE)

It is agreed that:

The Prior Litigation Date for each Coverage Section set forth in the Coverage Schedule in Item 3. of the Declarations is replaced with the following:

<u>Prior Litigation Date:</u>

For the first $1,000,000 of the Aggregate Limit of Liability of this **Policy**: 5/21/2021

For the Limit of Liability of $1,500,000 excess of the first $1,000,000 of the Aggregate Limit of Liability of this **Policy**: 8/16/2022

The foregoing Prior Litigation Dates apply to all Coverage Sections.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| **Named Insured:** | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | Endorsement Number: | 3 |

## GENERAL CHANGE
### (REAL ESTATE PRIVATE EQUITY EXTENSION)

It is agreed that:

I. The General Terms and Conditions is amended as follows:

A. Section II. GENERAL DEFINITIONS is amended as follows:

1. Definition W. **Subsidiary** is amended by the addition of the following:

**Subsidiary** does not include a **Real Estate Portfolio Company**.

2. The following Definitions are added:

**Non-Indemnifiable Loss** means **Loss** of an **Insured Person** for which the **Insured Entities** are either not permitted by law to indemnify such **Insured Person** for such **Loss**, or are financially unable to indemnify the **Insured Person** due to **Financial Impairment**.

**Property Management and Development Services** means:

1. the physical development, construction, renovation, or landscaping of any real property, including architectural and engineering design and environmental testing in connection therewith;

2. property management; or

3. services performed as a real estate agent or broker, leasing agent or broker, appraiser, referral agent, or auctioneer.

**Real Estate Financial Services** means the provision of investment, economic, or financial advice relating to:

1. real property;

2. any loan or indebtedness secured by or in relation to real property; or

3. equity interests in any pooled investment vehicle that invests exclusively in real estate related investments;

to customers pursuant to a contract.

**Real Estate Portfolio Company** means an organization, other than an **Insured Entity**, in which a **Private Fund** holds a debt or equity interest for investment purposes, either directly or indirectly through a holding company or other entity established by an **Insured Entity** for purposes of holding such interest.

B. Section III. EXCLUSIONS is amended by the addition of the following:

The Insurer shall not be liable under any Coverage Section for **Loss** on account of any **Claim** made against any **Insured** based upon, arising out of, or attributable to **Property Management and Development Services**; except that this Exclusion shall not apply to the **Insured's** selection or supervision of a third party to perform such services.

II. Definition II.D. **Investment Advisory Services** of the Investment Advisor Professional Liability Coverage Section is amended by the addition of the following:

**Investment Advisory Services** also means **Real Estate Financial Services**.

III. The Private Fund Professional Liability Coverage Section is amended as follows:

A. Section II. DEFINITIONS is amended as follows:

1. Definition C. **Private Fund** is replaced with the following:

C. **Private Fund** means:

an investment vehicle created or sponsored by the **Company** as of the effective date of this **Policy** and which is scheduled by written endorsement to this **Policy** as a **Private Fund**;

special purpose entities or investment holding companies created for the purpose of holding real estate investments in the name or right of a **Private Fund**; and

any grantor trust, other trust, fund, partnership, limited liability company, corporation, or other entity formed or maintained for the purpose of monitoring, liquidating, dissolving, or winding down an investment vehicle described above or for the purpose of holding investments in connection with monitoring, liquidating, dissolving, or winding down such an investment vehicle.

**Private Fund** does not include a **Real Estate Portfolio Company**.

2. Definition D. **Private Fund Services** is amended by the addition of the following:

**Private Fund Services** also means:

1. the service by an **Insured Person** as a **Real Estate Portfolio Company Manager** of a **Real Estate Portfolio Company**; and

2. **Real Estate Financial Services**.

3. The following Definitions are added:

**Outside Entity**, solely for purposes of the coverage provided by this Coverage Section, means a **Real Estate Portfolio Company**.

**Outside Position**, solely for purposes of the coverage provided by this Coverage Section, means a **Real Estate Portfolio Company Manager**.

**Real Estate Portfolio Company Manager** means an **Insured Person** in his or her capacity as a director, officer, or the functional equivalent of such positions, of any **Real Estate Portfolio Company**.

B. The following Section is added:

OTHER INSURANCE AND INDEMNIFICATION – REAL ESTATE PORTFOLIO COMPANY MANAGERS

The coverage provided by this **Policy** for **Claims** against an **Insured Person** in his or her capacity as a **Real Estate Portfolio Company Manager** shall be specifically excess of any indemnification or valid and collectible insurance available to such **Insured Person** from a **Real Estate Portfolio Company**. If **Loss** on account of a **Claim** against an **Insured Person** in his or her capacity as a **Real Estate Portfolio Company Manager** is **Non-Indemnifiable Loss**, then no Retention shall apply, otherwise the Retention applicable to this Coverage Section shall apply to any such **Claim**.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>(12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | Endorsement Number: | 4 |

## ARIZONA CHANGES

It is agreed that:

A. Paragraph A. 2., Cancellation, of Section XVI., POLICY TERMINATION AND NONRENEWAL, is deleted and replaced by the following:

The Insurer may cancel this Policy only for nonpayment of premium by mailing written notice of cancellation stating the reason for cancellation. The Insurer will mail this notice at least fifteen (15) days before the effective date of cancellation.

B. Paragraph B., Nonrenewal, of Section XVI., POLICY TERMINATION AND NONRENEWAL, is deleted and replaced by the following:

1. If the Insurer elects not to renew this Policy, the Insurer shall mail to the Named Insured written notice thereof at least sixty (60) days prior to the expiration of the Policy Period.
2. However, if the Insurer elects to renew this Policy and the renewal is subject to any of the following:
   a. Increase in premium;
   b. Change in deductible;
   c. Reduction in limits of insurance; or
   d. Substantial reduction in coverage;

   the Insurer will mail or deliver written notice of the change(s) to the Named Insured at least sixty (60) days before the anniversary or expiration date of the Policy.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | Endorsement Number: | 5 |

## ADVANCEMENT OF DEFENSE COSTS AMENDED

It is agreed that:

The fifth paragraph of Section VIII. DEFENSE AND SETTLEMENT of the General Terms and Conditions is replaced with the following:

> The Insurer shall advance Defense Costs which the Insurer believes to be covered under this Policy on a current basis, but no later than sixty (60) days following the receipt of itemized bills for such Defense Costs. If and to the extent it is determined that the Insureds are not entitled to Defense Costs under the terms and conditions of this Policy, then any advancement of Defense Costs shall be repaid to the Insurer by the Insureds severally according to their respective interests.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | Endorsement Number: | 6 |

## CLAIM AMENDED
## (Foreign Equivalent)

It is agreed that:

Definition II.B. Claim of the General Terms and Conditions is amended by the addition of the following:

Claim also means the foreign equivalent of any of the Claims described in Paragraphs 1. through 10. above.



Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.



GN DEFENDANTS EXHIBIT 6

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | Endorsement Number: | 7 |

## DERIVATIVE EVALUATION COSTS COVERAGE

It is agreed that:

I. Item 3. Coverage Schedule of the Declarations is amended by the addition of the following:

Derivative Evaluation Costs Sublimit: $250,000

II. The General Terms and Conditions is amended as follows:

A. Section II. GENERAL DEFINITIONS is amended as follows:

1. Definition B. Claim is amended by the addition of the following:

Solely with respect to the Private Fund Derivative Evaluation Costs Coverage Insuring Agreement of the Private Fund Professional Liability Coverage Section and the Company Derivative Evaluation Costs Coverage Insuring Agreement of the Directors & Officers Liability Coverage Section, Claim means only a Derivative Demand or Action.

2. Definition D. Defense Costs is amended by the addition of the following:

Solely with respect to the Private Fund Derivative Evaluation Costs Coverage Insuring Agreement of the Private Fund Professional Liability Coverage Section and the Company Derivative Evaluation Costs Coverage Insuring Agreement of the Directors & Officers Liability Coverage Section, Defense Costs means only Derivative Evaluation Costs.

3. The following Definitions are added:

Derivative Demand or Action means:

1. a written demand by one or more shareholders or equity holders of an Insured Entity upon the board of directors or equivalent governing body of that Insured Entity to bring a civil action in a court of law against an Insured Person of such Insured Entity; or

2. a lawsuit brought by the shareholders or equity holders of the Insured Entity purportedly on behalf of the Insured Entity against an Insured Person of such Insured Entity;

for a Wrongful Act of such Insured Person that takes place before the end of the Policy Period.

Derivative Evaluation Costs means reasonable and necessary fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of an Insured Person or the overhead expenses of a Insured Entity) incurred by the Insured Entity (including the board of directors or any committee of the board of directors of such Insured Entity) in the investigation or evaluation of a Derivative Demand or Action.

B. Section IV. LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS is amended as follows:

1. Subsection A. Limits of Liability is amended by the addition of the following:

Derivative Evaluation Costs Sublimit

The Insurer's maximum aggregate liability for all Derivative Evaluation Costs under all Coverage Sections of this Policy is the Derivative Evaluation Costs Sublimit set forth in Item 3. Coverage Schedule of the Declarations, which amount shall be part of, and not in addition to, the Limits of Liability applicable to the Private Fund Professional Liability Coverage Section and the Directors & Officers Liability Coverage Section, as applicable, and the Combined Aggregate Limit of Liability applicable to the Policy set forth in Item 4 of the Declarations.

2. Subsection B. Retention is amended by the addition of the following:

No Retention shall apply to Derivative Evaluation Costs under the Private Fund Derivative Evaluation Costs Coverage Insuring Agreement of the Private Fund Professional Liability Coverage Section or the Company Derivative Evaluation Costs Coverage Insuring Agreement of the Directors & Officers Liability Coverage Section.

III. Section I. INSURING AGREEMENT of the Private Fund Professional Liability Coverage Section is amended by the addition of the following:

Private Fund Derivative Evaluation Costs Coverage

The Insurer shall pay Derivative Evaluation Costs on behalf of a Private Fund on account of a Derivative Demand or Action first made with respect to such Private Fund during the Policy Period or the Discovery Period, if exercised.

IV. Section I. INSURING AGREEMENTS of the Directors & Officers Liability Coverage Section is amended by the addition of the following:

Company Derivative Evaluation Costs Coverage

The Insurer shall pay Derivative Evaluation Costs on behalf of the Company on account of a Derivative Demand or Action first made with respect to such Company during the Policy Period or the Discovery Period, if exercised.



Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | Endorsement Number: | 8 |

## DISCOVERY PERIOD AMENDED

It is agreed that:

I. Item 5. Discovery Period of the Declarations is replaced with the following:

II. The first paragraph of Subsection V.B. Discovery Period of the General Terms and Conditions is replaced with the following:

If the Named Insured terminates this Policy or the Named Insured or Insurer refuses to renew this Policy, the Insureds shall have the right to purchase a Discovery Period set forth in Item 5 of the Declarations following the effective date of termination or nonrenewal, but only with respect to any Wrongful Act taking place prior to the effective date of such termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the Insureds to the Insurer within ninety (90) days following the effective date of termination or nonrenewal.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.



GN DEFENDANTS EXHIBIT 6

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | Endorsement Number: | 9 |

## INVESTOR CLAIMS EXCLUSION DELETED

It is agreed that:

Exclusion III.A.1. of the Directors & Officers Liability Coverage Section is deleted.

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Realty Cap Advisors LLC | Policy Number: | AIP30040363901 |
| Endorsement Effective Date: | June 20, 2024<br>(12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | Endorsement Number: | 10 |

## AMENDMENT TO DEFINITION OF INSURED

It is agreed that:

The definition of Insured in Section II. Definitions of the General Terms and Conditions is amended to add the following:

The definition of Insured shall also include:

1. Any entity (including, but not limited to any blocker entity, feeder fund and/or other pass through vehicle) which, directly or indirectly, through one or more intermediaries, is controlled by an Insured; or (b) any entity controlled, directly or indirectly, through one or more intermediaries, by any person who is the managing partner, managing member, a principal, partner and/or member of an Insured Entity, so long as the entity is also under common control with an Insured Entity;
2. Any advisory board or advisory committee or investment, management or similar committee (including, but not limited to, any foreign equivalent of each of the foregoing) formed pursuant to an operating agreement (including, but not limited to, a limited partnership agreement, operating agreement, limited liability company agreement, private placement memorandum, investment advisory agreement or other equivalent formation, offering or advisory documents or resolutions) of an Insured Entity; and
3. Any grantor trust, other trust, fund, partnership, limited liability company, corporation or other entity formed or maintained for the purpose of monitoring, liquidating, dissolving or winding down a pooled investment vehicle described above or for the purpose of holding investments in connection with monitoring, liquidating, dissolving or winding down such a pooled investment vehicle.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

Named Insured: Realty Cap Advisors LLC

Policy Number: AIP30040363901

Endorsement Effective Date: June 20, 2024
12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations.

Endorsement Number: 11

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Christopher Elser

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# ENDORSEMENT

Named Insured: Realty Cap Advisors LLC

Policy Number: AIP30040363901

Endorsement Effective Date: June 20, 2024
12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations.

Endorsement Number: 12

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

It is agreed that:

SCHEDULE: Terrorism Premium (Certified Acts): Included in Premium

A. Disclosure of Premium
In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

B. Disclosure of Federal Participation in Payment of Terrorism Losses
The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C. Cap On Insurer Participation In Payment Of Terrorism Losses
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# ENDORSEMENT



Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's website - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission 

SOMPO INTERNATIONAL

Endurance American Insurance Company
1221 Avenue Of the Americas
New York, NY 10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

| | |
|---|---|
| Senior Vice President | President |



GN DEFENDANTS EXHIBIT 6

# EXHIBIT C

**[Nexus Policy]**

nexus

Underwritten by: Professional Solutions Insurance Company, 14001 University Avenue, Clive, IA 50325

# FOLLOW FORM EXCESS LIABILITY POLICY
# DECLARATIONS

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED TO THE UNDERWRITER IN ACCORDANCE WITH THIS POLICY. DEFENSE EXPENSES ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE EXPENSES. ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES OR OTHERWISE, NO COVERAGE IS AVAILABLE UNDER THIS POLICY FOR THE PAYMENT OF SETTLEMENTS OR JUDGMENTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**ITEM 1**

| NAMED INSURED AND ADDRESS | UNDERWRITER |
|---|---|
| Realty Cap Advisors LLC<br>7047 E Greenway Parkway, Suite 300<br>Scottsdale, AZ 85254 | Professional Solutions Insurance Company,<br>14001 University Avenue, Clive, IA 50325 |
| **POLICY NUMBER** | **PRODUCER** |
| HU425DMLA242 | RT ProExec (Chicago) |

**Renewal of:** HU425DMLA231

**ITEM 2** **POLICY AGGREGATE LIMIT OF LIABILITY:** $2,500,000

**ITEM 3** **POLICY PERIOD:** FROM 06/20/2024 TO 06/20/2025
12:01 A.M. LOCAL TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

**ITEM 4** **NOTICE TO UNDERWRITER:**

Notice of Claim or Circumstances:

Nexus Specialty, Inc.
Attn: Claims
556 W. Adams Street, Ste.210
Chicago, IL 60661
notifications@nexusclaims.com

All Other Notices:

Nexus Specialty, Inc.
Attn: Underwriting
556 W. Adams Street, Ste.210
Chicago, IL 60661
NSIsubs@nexusunderwriting.com

**ITEM 5** **POLICY PREMIUM:** [redacted]



**GN DEFENDANTS EXHIBIT 6**

**ITEM 6 UNDERLYING INSURANCE:**

(A**)** **Followed Policy:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Retention: |
|---|---|---|---|---|---|
| Endurance American Insurance Company | D&O<br>E&O | AIP30040363901 | 06/20/2024 to 06/20/2025 | $2,500,000 | D&O - $250,000<br>E&O - $250,000 |

(B**)** Other **Underlying Insurance:**

| Insurer: | Policy Number: | Policy Period: | Limits of Liability: | Attachment: |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

**ITEM 7** **FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE DATE THIS POLICY IS ISSUED**
**See attached Schedule of Forms and Endorsements**

## Policy Attachments:

| Coverage: General Clauses |
|---|
| MXE-10006-12-19 \| Reliance on Application<br>MXE-10009-12-19 \| Prior or Pending Litigation Exclusion Endorsement<br>MXE-10011-07-20 \| Disclosure Pursuant to Terrorism Insurance Act<br>MXE-10013-07-20 \| Cap on Losses from Acts of Terrorism Endorsement |

nexus

# FOLLOW FORM EXCESS LIABILILITY POLICY

In consideration of payment of the premium and in reliance on all statements made in the Application (as defined in the Followed Policy), and subject to the terms, conditions and limitations of this policy, including the Declarations and all endorsements hereto ("this Policy"), the Underwriter (shown on the Declarations) and the **Insured** agree as follows:

## I. INSURING AGREEMENT

Except as specifically set forth herein, and subject to the applicable Limit of Liability shown in ITEM 2 of the Declarations, this Policy shall provide insurance excess of the **Underlying Insurance** in conformance with all provisions of the **Followed Policy**. Liability shall attach to the Underwriter only after the full amount of the applicable **Underlying Limit**, and any applicable retention or deductible, has been paid, in legal currency, by the insurers of the **Underlying Insurance**, the **Insureds**, or others on behalf of the **Insureds**, in any combination, in accordance with the terms of the **Underlying Insurance**.

For the purposes of determining when the coverage afforded under this Policy shall attach, only actual payments for covered loss, including defense expenses, count towards reduction or exhaustion of the applicable retention(s) and the limits of liability of the Underlying Insurance.

## II. DEFINITIONS

When used in this Policy, the following terms, whether in the singular or plural, are defined as follows:

A. **Followed Policy** means the policy scheduled as such in ITEM 6(A) of the Declarations.

B. **Insured** means the person or organization shown in ITEM 1 of the Declarations and any person or organization included within the definition of **Insured** in the **Underlying Insurance**.

C. **Underlying Insurance** means all insurance policies scheduled in ITEM 6 of the Declarations, including the **Followed Policy**.

## III. LIMITS OF LIABILITY

The amount stated in ITEM 2 of the Declarations is the Underwriter's maximum aggregate Limit of Liability under this Policy for all loss, including defense expenses. This Policy shall attach only in the event of exhaustion of the limits of liability of the **Underlying Insurance** and shall not drop down for any reason, including partial or total uncollectibility of the **Underlying Insurance**.

## IV. CONDITIONS

A. Underlying Insurance: The **Insureds** shall give written notice to the Underwriter if any **Underlying Insurance** is changed or terminated or if any insurer of the **Underlying Insurance** becomes financially unable to pay its limit of insurance. No such event shall affect coverage under this Policy, unless the Underwriter so agrees in writing. The failure of the **Insureds** to comply with this section shall not invalidate coverage. However, the Underwriter shall not be liable to a greater extent than it would have been had no such event occurred.

B. Sublimited Coverage: This Policy shall not apply to any coverage under the **Followed Policy** that is subject to a sublimit of liability of a lesser amount than that is Scheduled in ITEM 6 of



GN DEFENDANTS EXHIBIT 6

the Declarations, but payment for such coverage in any manner described in the INSURING AGREEMENT section of this Policy shall reduce the **Underlying Limit** by the amount of such payment.

C. Association: The Underwriter has the right, but not the duty, to associate in the defense, investigation, or settlement of any claim reasonably likely to reach the attachment point of this Policy, even if the **Underlying Insurance** has not been exhausted.

D. Cooperation: The **Insured** will cooperate with the Underwriter and provide the Underwriter with all information that the Underwriter reasonably requests.

E. Changes and Assignment: No change in or modification of this Policy shall be effective, and no assignment of any interest under this Policy shall bind the Underwriter, unless agreed to in writing by the Underwriter.

F. Notice: All notices to the Underwriter must be in writing and delivered to the address designated in ITEM 4 of Declarations. Notice to any other insurer shall not constitute notice to the Underwriter unless also given to the Underwriter as provided herein.

G. Claims Control: The Underwriter shall maintain full and complete control as respects coverage for claims under this Policy, and no action by any other insurer, or positions taken by any other insurer, shall bind the Underwriter under this Policy.

## V. STATE AMENDATORY ENDORSEMENTS

In the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, then, where permitted by law, the Underwriter shall apply those terms and conditions of either the state amendatory endorsement or this Policy which are more favorable to the **Insured**.

**ENDORSEMENT NO.** MXE-10006-12-19

RELIANCE ON APPLICATION

This Endorsement, which is effective at 12:01 a.m. on 06/20/2024, forms part of:

| | |
|---|---|
| Policy No. | HU425DMLA242 |
| Issued to | Realty Cap Advisors LLC |
| Issued by | Professional Solutions Insurance Company |

The Underwriter has relied upon the statements, representations and warranties in the application(s) shown in the schedule below. The **Insured** represents that the particulars and statements contained in such application(s) and other materials submitted with such application(s) are true, accurate, and complete and agrees that:

1. this Policy is issued and continued in force by the Underwriter in reliance upon the truth of such representation;
2. such application(s) and those particulars and statements are material to the Underwriter's decision to issue this Policy; and
3. such application(s) and those particulars and statements are incorporated in and form a part of this Policy

| **Application(s):** | **Application Date(s):** |
|---|---|
| REAL ESTATE INVESTMENT FUNDS SUPPLEMENTAL APPLICATION | 06/20/2024 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10009-12-19

PRIOR OR PENDING LITIGATION EXCLUSION ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on 06/20/2024, forms part of:

| | |
|---|---|
| Policy No. | HU425DMLA242 |
| Issued to | Realty Cap Advisors LLC |
| Issued by | Professional Solutions Insurance Company |

In consideration the premium charged, the following is added to Section I INSURING AGREEMENT:

This Policy excludes coverage for any claim or loss based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any (1) any demand, litigation, or alternative dispute resolution, administrative, regulatory, investigative, or arbitration proceeding which was pending as of, or existed prior to, the date shown in the SCHEDULE below; or (2) the same or substantially similar fact, circumstance, situation, transaction, event, act, error, or omission underlying or alleged in such demand, litigation, or alternative dispute resolution, administrative, regulatory, investigative, or arbitration proceeding.

| |
|---|
| **Prior or Pending Litigation Date:**<br><br>08/16/2022 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10011-07-20

DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

This Endorsement, which is effective at 12:01 a.m. on 06/20/2024, forms part of:

| | |
|---|---|
| Policy No. | HU425DMLA242 |
| Issued to | Realty Cap Advisors LLC |
| Issued by | Professional Solutions Insurance Company |

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

1. In accordance with the Terrorism Risk Insurance Act, the Underwriter is required to provide the Insured with a notice disclosing the premium, if any, attributable to coverage for Certified Acts of Terrorism. The premium attributable to such coverage is $0.

2. If coverage is provided by the Coverage Section(s) identified above for losses resulting from **Certified Acts of Terrorism**, such losses may be partially reimbursed by the United States Government under a formula established by federal law. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

3. If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a calendar year and the Underwriter has met its insurer deductible under the Terrorism Risk Insurance Act ("the Act"), the Underwriter shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

4. For the purposes of this endorsement, the DEFINITIONS Section of the Coverage Section identified above is amended to include the following terms:

    **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("the Act"), to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a **Certified Act of Terrorism** include the following:

a. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Act;

b. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10013-07-20

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on 06/20/2024, forms part of:

| | |
|---|---|
| Policy No. | HU425DMLA242 |
| Issued to | Realty Cap Advisors LLC |
| Issued by | Professional Solutions Insurance Company |

In consideration of the premium charged:

1. If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a calendar year and the Underwriter has met its insurer deductible under the Terrorism Risk Insurance Act ("the Act"), the Underwriter shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

2. For the purposes of this endorsement, the DEFINITIONS Section of the Coverage Section identified above is amended to include the following terms:

   **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("the Act"), to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a **Certified Act of Terrorism** include the following:

   a. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Act;

   b. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# EXHIBIT D

**[Hudson Policy]**

HUDSON
INSURANCE GROUP®

# TruXS Excess
# Liability Insurance Policy

**PLEASE READ YOUR POLICY CAREFULLY**
**If it is not correct, please return it immediately to:**

**HUDSON INSURANCE COMPANY**
**100 William Street, 5th Floor**
**New York, NY 10038**
**212.978.2800**

# Hudson Insurance Company

100 William Street, 5th Floor, New York, NY 10038 hereinafter "Insurer"

## TruXS℠ EXCESS LIABILITY POLICY

**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY AND COVERS ONLY CLAIMS FIRST MADE DURING THE POLICY PERIOD OR THE DISCOVERY PERIOD, IF EXERCISED, AND REPORTED TO THE INSURER AS PROVIDED HEREIN. PLEASE READ THIS POLICY CAREFULLY.**

## DECLARATIONS

Policy No.
**HN-0303-8761-062024**

Item 1. Parent Company: **Realty Cap Advisors, LLC**
Address: **7047 East Greenway Parkway**
**Suite 300**
**Scottsdale, AZ 85254**

Item 2. Policy Period:

From 12:01 A.M. **June 20, 2024**
To 12:01 A.M. **June 20, 2025**
Local time at the address shown in Item 1.

Item 3. Limit of Liability:

**$2,500,000 excess of $5,000,000** All Claims first made during each Policy Period

Item 4. Underlying Insurance:

(A) Primary Policy:

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| **Endurance American Insurance Company** | **AIP30040363901** | **$2,500,000** | **June 20, 2024 to June 20, 2025** |

(B) Underlying Excess Policy(ies):

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| **Professional Solutions Insurance Company** | **HU425DMLA242** | **$2,500,000** | **June 20, 2024 to June 20, 2025** |

Item 5. Premium: [redacted]

Item 6. Discovery Period:

(A) Additional Premium: [redacted]

(B) Additional Period: **One year**



**GN DEFENDANTS EXHIBIT 6**

**Hudson Insurance Company**
100 William Street, 5th Floor
New York, NY 10038
hereinafter "Insurer"

Item 7. Form number and endorsements attached at issuance:
Form No.: **TruXS HG Ed. 10/06**
Endorsements:

| | | |
|---|---|---|
| **1.** | **HFP AZ Prdr Notice (08/16)** | **Arizona Producer** |
| **2.** | **HIC TRU-XS AZ AMEND (12/06)** | **Arizona Changes** |
| **3.** | **HIC TRU-XS E1 Ed. 10/06** | **Pending or Prior Litigation Exclusion** |
| **4.** | **HIC TRU-XS A28 Ed. 01/15** | **Amend Item 8 of the Declarations** |
| **5.** | **HIC TRU-XS A33 Ed. 06/16** | **Sublimit Clarification** |
| **6.** | **IL 09 85 01 21 (01/21)** | **Disclosure Pursuant to Terrorism Risk Insurance Act** |
| **7.** | **X-19 (01/21)** | **Cap on Losses from Certified Acts of Terrorism** |

Item 8. Notice to Insurer:

Hudson Insurance Company
100 William Street, 5th Floor
New York, NY 10038
Fax: 516.739.1862

Or

HFP-Claims@Hudsoninsgroup.com

Item 9. Followed Policy:

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| **Endurance American Insurance Company** | **AIP30040363901** | **$2,500,000** | **June 20, 2024 to June 20, 2025** |

In witness whereof, the Insurer has caused this Policy to be signed by its President and Secretary, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

09/16/2024
Date

By: [signature]
Authorized Representative



GN DEFENDANTS EXHIBIT 6

**I. INSURING AGREEMENT**

The Insurer designated in the Declarations ("Insurer"), in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the **Insured** that the Insurer shall provide the **Insured** with insurance during the **Policy Period** which is in excess of the total limits of liability and any retention or deductible amounts under the **Underlying Insurance**, as set forth in Item 4 of the Declarations, and shall pay **Loss** arising from a **Claim** for a **Wrongful Act** first made during the **Policy Period**.

**II. POLICY DEFINITIONS**

**A.** **Insured** means any natural person or entity designated as such in the **Underlying Insurance**.

**B.** The terms **Followed Policy, Primary Policy, Policy Period,** and **Underlying Insurance** shall each have the same meaning as attributed to them in the Declarations.

**C.** The terms **Wrongful Act**, **Loss** and **Claim** shall each have the same meaning as defined in the **Primary Policy**.

**III. POLICY LIMIT OF LIABILITY AND PAYMENTS UNDER UNDERLYING INSURANCE**

**A.** The Insurer shall be liable to pay **Loss** only after any combination of the **Insured** and all insurers constituting the **Underlying Insurance** shall have paid the full amount of liability provided by the **Underlying Insurance**, or any insurer providing a coverage that is otherwise excess of this policy but with a difference in conditions provision shall have paid the full amount of any such insurer's liability solely due to the financial insolvency of that insurer. The Insurer shall then be liable to pay only such additional amount up to the Limit of Liability set forth in Item 3 of the Declarations.

**B.** In the event of the reduction or exhaustion of the aggregate limits of liability in the **Underlying Insurance** by reason of **Loss** paid thereunder for **Claim(s)** first made during the **Policy Period**, this policy shall (1) in the event of reduction, continue in force in excess of the remaining amount of **Underlying Insurance**; or (2) in the event of total exhaustion, continue in force as primary insurance, subject to all terms, conditions and other provisions of this policy, including endorsements hereto; provided that in the event of this policy becoming primary insurance, it shall only pay excess of the retention or deductible amount set forth in the **Primary Policy**, which shall be applied to any subsequent loss. Notice of reduction or exhaustion of any limits of liability within the **Underlying Insurance** shall be given to the Insurer promptly upon such reduction or exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Insurer to defend any **Insured** or to pay defense costs or any other part of **Loss** in addition to the Limit of Liability set forth in Item 3 of the Declarations.

**IV. MAINTENANCE OF UNDERLYING INSURANCE**

**A.** This policy is subject to the same terms, conditions, other provisions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in the **Followed Policy** identified in Item 9 of the Declarations as such policy has been represented to the Insurer as to be issued, or as may be added at a later time to restrict coverage. Any changes made to such **Followed Policy** to expand or broaden it shall only be effective as part of this policy if accepted in writing by the Insurer.

**B.** The **Underlying Insurance** shall be maintained in full effect while this policy is in force, except for any reduction of the aggregate limits contained therein (as provided for in Section III.B. above), and such maintenance shall be a condition precedent to the attachment of any liability of the Insurer under this policy. To the extent that any **Underlying Insurance** is not maintained in full effect while this policy is in force, the **Insured** shall be deemed to be self-insured for the amount of the limit of liability of the **Underlying Insurance,** which is not so maintained.

**V. CLAIM AND OTHER NOTICES**

The Insurer shall be given notice in writing as soon as practicable: (a) in the event of cancellation or non-renewal of any **Underlying Insurance**; and (b) of any additional or return premiums assessed in connection with any **Underlying Insurance**. Any changes in policy provisions in the **Underlying Insurance** or any changes in the **Insured** that would require notice under the **Underlying Insurance** shall be reported to the Insurer in writing as soon as practicable, provided always that the Insurer shall not be bound by any such changes without its consent.

Written notice of **Claim** made against any **Insured** or any circumstances or matters that might later result in a **Claim** shall be given to the Insurer in the same manner and at the same time as given to the **Primary Policy** and shall be sent to the Insurer at the address set forth in Item 8 of the Declarations.

*IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York.*

President

Secretary

Policy Number: **HN-0303-8761-062024** Endorsement Number: **1**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

## ARIZONA INSURANCE PRODUCER ENDORSEMENT NOTICE

Please read carefully.

In Accordance with Arizona insurance regulations, this notice is to inform you that the producer for this Hudson Financial Products policy is:

RT Specialty, LLC

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE EFFECT THE PROVISIONS OF THIS ENDORSEMENT.**



**GN DEFENDANTS EXHIBIT 6**

Policy Number: **HN-0303-8761-062024** Endorsement Number: **2**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

## ARIZONA CHANGES

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is hereby agreed that this policy is amended by the addition of the following:

### VI. CANCELLATION AND NONRENEWAL

**A.** The Insurer may cancel this policy only for nonpayment of premium by giving the Parent Company written notice of cancellation at least 10 days before the effective date of cancellation. The notice of cancellation shall state the reason for cancellation.

**B.** The Insurer shall not be obligated to renew this policy upon its expiration. If the Insurer decides not to renew this policy, the Insurer shall send notice of nonrenewal to the Parent Company not less than 45 days before the expiration of the policy. The notice of nonrenewal shall state the reason for nonrenewal.

**C.** The Parent Company may cancel this policy during the Policy Period by giving prior written notice to the Insurer stating when such cancellation shall be effective. The Insurer shall refund unearned premium computed at the customary short rate. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE EFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HN-0303-8761-062024** Endorsement Number: **3**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

PENDING OR PRIOR LITIGATION EXCLUSION
FOLLOW FORM UNDERLYING EXCEPT AS TO DATE

It is hereby agreed that:

The Insurer shall not be liable to make any payment under this policy for **Loss** resulting from any **Claim** made against an **Insured** for, based upon, arising from, or in any way related to any demand, suit, administrative or regulatory proceeding against or involving an **Insured** which was pending on or existed prior to June 20, 2023, or any **Claim** arising from the same or substantially the same facts, circumstances or allegations which are the subject of or basis for such demand, suit or proceeding described in this paragraph.

Notwithstanding the preceding paragraph, which is provided solely for identification and reference purposes, the Insurer shall follow form of and incorporate into this Policy, the substantively similar exclusion or endorsement found in Policy No. AIP30040363901 issued by Endurance American Insurance Company as part of the **Underlying Insurance,** except that the operative date of such exclusion or endorsement shall remain as set forth in the preceding paragraph.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HN-0303-8761-062024** Endorsement Number: **4**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

**AMEND ITEM 8 OF THE DECLARATIONS**

It is hereby agreed that Item 8. of the DECLARATIONS is deleted in its entirety and replaced with the following:

Item 8. Address for Notices to Insurer:

**Send Claims related notices to:**

Hudson Financial Products
ATTN: **Claims Department**
100 William Street
New York, NY 10038

or
HFP-Claims@HudsonInsGroup.com

**Send all other notices to:**

Hudson Financial Products
ATTN: **Underwriting**
100 William Street
New York, NY 10038

or
HFP-Underwriting@HudsonInsGroup.com

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**



**GN DEFENDANTS EXHIBIT 6**

Policy Number: **HN-0303-8761-062024** Endorsement Number: **5**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

## Sublimit Clarification Endorsement

It is agreed that:

(1) For the purposes of this endorsement, the term "Sublimit" means any limit of liability of any underlying Policies which:

(a) applies only to a particular grant of coverage under such Underlying Policies, and

(b) is part of, and not in addition to the otherwise applicable limits of liability of such Underlying Policies set forth in ITEM 4 of the Declarations.

(2) No coverage will be available under this Policy for claims which are subject to any Sublimit in any Underlying Policies provided that the erosion of the aggregate limit(s) of liability of Underlying Policies shall be recognized to the extent of any payment of loss in connection with such claims.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HN-0303-8761-062024** Endorsement Number: **6**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

**SCHEDULE – PART I (Enter charge, even if -0-)**
**Terrorism Premium (Certified Acts) $0**

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**

**Excess Directors and Officers Liability Policy**
**Directors and Officers Liability Policy**

**Additional information, if any, concerning the terrorism premium:**
**N/A**

**SCHEDULE – PART II**
**Federal share of terrorism losses 80% Year: 20 20**
**(Refer to Paragraph B. in this endorsement.)**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**
In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention.



GN DEFENDANTS EXHIBIT 6

However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Includes material copyrighted by Insurance Services Office, Inc.**

Policy Number: **HN-0303-8761-062024** Endorsement Number: **7**
Effective at 12:01 a.m. Standard Time: **June 20, 2024**
Insurer: **Hudson Insurance Company**
Named Insured: **Realty Cap Advisors, LLC**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

**Excess Directors and Officers Liability Policy**
**Directors and Officers Liability Policy**

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Program Reauthorization Act of 2019 - H.R. 1865 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

**Includes material copyrighted by Insurance Services Office, Inc.**



**GN DEFENDANTS EXHIBIT 6**

HUDSON INSURANCE GROUP®

100 William Street, 5th Floor, New York, NY 10038

**GN DEFENDANTS EXHIBIT 6**

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**EXHIBIT E**

**[CapSpecialty Policy]**

CapSpecialty
A BERKSHIRE HATHAWAY COMPANY
CAPITOL SPECIALTY INSURANCE CORPORATION | A Stock Company
1600 Aspen Commons, Suite 300 | Middleton, WI 53562 | CapSpecialty.com

# WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT

Send all notices of claims or potential claim notices, as well as other required material to:

| | |
|---|---|
| Email (Preferred): | claims@CapSpecialty.com |
| Or Mailing Address: | Capitol Specialty Insurance Corporation<br>Claims Department<br>P.O. Box 5900<br>Madison, WI 53705 |
| Or Overnight/Express: | Capitol Specialty Insurance Corporation<br>Claims Department<br>1600 Aspen Commons<br>Suite 300<br>Middleton, WI 53562 |
| Or Facsimile: | 608.829.7411 |
| Or Toll Free: | 800.475.4450 (Select #3 for Claims) |

Please reference your policy for complete details relating to reporting requirements in connection with claims or potential claims, including what to include in your notices.

 © 2023 CapSpecialty, Inc. All rights reserved. 

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © 2023 CapSpecialty, Inc. All rights reserved. 

CapSpecialty
A BERKSHIRE HATHAWAY COMPANY

**CAPITOL SPECIALTY INSURANCE CORPORATION | A Stock Company**
1600 Aspen Commons, Suite 300 | Middleton, WI 53562 | CapSpecialty.com

# Declarations

## Excess Liability Policy

| | | | |
|---|---|---|---|
| Policy No.: | APX2201006-03 | Renewal of Policy No.: | APX2201006-02 |
| Issuing Company: | Capitol Specialty Insurance Corporation | | |

**NOTICE:** PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. CERTAIN PROVISIONS RESTRICT COVERAGE.

THE LIMIT OF LIABILITY WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES.

THE ISSUING COMPANY DOES NOT ASSUME ANY DUTY TO DEFEND.

**Item 1.** **First Named Insured** and Mailing Address:
Realty Cap Advisors LLC
7047 E Greenway Parkway, Suite 300
Scottsdale, AZ 85254

**Item 2.** **Policy Period:**

| Effective Date | Expiration Date |
|---|---|
| June 20, 2024 | June 20, 2025 |

12:01 a.m. standard time at the mailing address of the **First Named Insured** as shown in Item 1. above.

**Item 3.** Limit of Liability:
a. $ $2,500,000 Per **Claim**
b. $ $2,500,000 Aggregate for all **Claims**
(Excess of the **Underlying Limits of Liability** specified in Item 4. below)

**Item 4.** Schedule of **Underlying Insurance Policies:**

| Insurer | Policy # / Policy Period / Coverage Description | Limits of Liablility | | Deductible or Attachment | Policy Description |
|---|---|---|---|---|---|
| | | Each Claim | Aggregate | | |
| Endurance American Insurance Company | AIP30040363901<br>06/20/2024 - 06/20/2025<br>Broad Form Insurance For Alternative Investment Professionals Liability | $2,500,000 | $2,500,000 | $250,000 | Primary 1 |
| Professional Solutions Insurance Company | HU425DMLA242<br>06/20/2024 - 06/20/2025<br>Follow Form Excess Liability (FS) | $2,500,000 | $2,500,000 | $2,500,000 | Excess 2 |
| Hudson Insurance Company | HN-303-8761-062024<br>06/20/2024 - 06/20/2025<br>TruXS HG Ed. 10/06 | $2,500,000 | $2,500,000 | $5,000,000 | Excess 3 |
| **Total Underlying Limits of Liability** | | | | | |

**Item 5.** **Premium and Applicable Taxes / Fees:**

| **Policy Period Premium** | | |
|---|---|---|
| **All Purchased Coverage(s)**: | $ [redacted] | |
| **Terrorism**: | $ [redacted] | *Applies to Management Liability Coverage, if purchased.* |
| **Total Policy Premium**: | $ [redacted] * | |

* The Issuing Company is not responsible for and does not collect or file surplus lines taxes or any other applicable fees. It is the responsibility of the surplus lines producing agent to determine such amounts, and collect and file those taxes and fees in accordance with the applicable state's surplus lines laws and/or regulations.

**Item 6.** **Forms and Endorsements:**

| | |
|---|---|
| WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT | N-200 (10/23) |
| U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS | N-159 (02/23) |


©2023 CapSpecialty, Inc. All rights reserved.


GN DEFENDANTS EXHIBIT 6

CapSpecialty
A BERKSHIRE HATHAWAY COMPANY

**CAPITOL SPECIALTY INSURANCE CORPORATION | A Stock Company**
1600 Aspen Commons, Suite 300 | Middleton, WI 53562 | CapSpecialty.com

# Declarations

| | |
|---|---|
| Policy No.: | APX2201006-03 |
| **First Named Insured:** | Realty Cap Advisors LLC |

| | | |
|---|---|---|
| | Excess Liability Policy Declarations | D-X-1005 (10/23) |
| | Excess Liability Policy | P-X-2005 (10/23) |
| 1 | Service of Suit | E-9000 (04/21) |
| 2 | Pending / Prior Litigation Exclusion | E-X-4300 (07/17) |
| 3 | Cap On Losses from Certified Acts of Terrorism | E-PL-7012 (04/17) |
| 4 | Conditional Exclusion of Terrorism | E-PL-7013 (04/17) |
| 5 | Disclosure Pursuant to Terrorism Risk Insurance Act | E-PL-7014 (07/20) |
| | ARIZONA - NOTICE TO POLICYHOLDERS | N-100AZ (04/20) |

THESE DECLARATIONS, THE POLICY FORM AND ENDORSEMENTS, CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE ISSUING COMPANY AND THE INSURED RELATING TO THIS INSURANCE.

In Witness Whereof, we have caused this Excess Policy to be executed and attested, and, if required by state law, this Excess Policy shall not be valid unless countersigned by our authorized representative.

Suzanne M Broadbent
Secretary

President

Authorized Representative

July 01, 2024
Date

 ©2023 CapSpecialty, Inc. All rights reserved. 

GN DEFENDANTS EXHIBIT 6

CapSpecialty

A BERKSHIRE HATHAWAY COMPANY

# Excess Liability Policy

**COVERAGE IS SUBJECT TO ALL TERMS AND CONDITIONS OF THIS EXCESS POLICY. THE COMPANY WILL HAVE NO DUTY TO DEFEND. THE LIMIT OF LIABILITY WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. PLEASE READ THE ENTIRE EXCESS POLICY CAREFULLY AND DISCUSS THE COVERAGE(S) WITH YOUR INSURANCE AGENT OR BROKER. CERTAIN PROVISIONS RESTRICT COVERAGE.**

**WORDS AND PHRASES, OTHER THAN TITLES OR CAPTIONS,THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANING AND ARE DEFINED SEPARATELY. WHENEVER A SINGULAR FORM OF A WORD IS USED, THE SAME WILL INCLUDE THE PLURAL WHEN REQUIRED BY CONTEXT.**

In consideration of the payment of the Premium and in reliance on all the statements made and the information contained in the **Application** and subject to all terms and conditions of this Excess Policy, the **Company** agrees with the **Insured** as follows:

## I. COVERAGES

### A. INSURING AGREEMENTS

The **Company** will pay on the **Insured's** behalf, except as otherwise stated in this Excess Policy, those amounts in excess of the **Underlying Limit of Liability** (and any applicable deductible or retention) for **Claims** first made during the **Policy Period** for which coverage is provided under the terms, conditions and limitations contained in the **First Underlying Insurance Policy**, including any endorsements thereto, in effect as of the Effective Date of this Excess Policy. However, in no event will this Excess Policy provide coverage broader than that provided by the most restrictive of the **Underlying Insurance Policies**, and in no event will the **Company** pay more than the Limit of Liability specified in the Declarations.

### B. NO DUTY TO DEFEND

The **Company** does not assume any duty to defend.

## II. WHO IS AN INSURED

A. The **First Named Insured**. The **First Named Insured** is the person or entity specified in the Declarations; and

B. **Insured** means those individuals and entities defined as Insured(s) by the **First Underlying Insurance Policy**.

## III. DEFINITIONS

A. **Application** means:

1. Any application(s) and any supplemental application(s) completed by, or on behalf of, the **Insured** in applying for this Excess Policy and any **Underlying Insurance Policies**;
2. Any attachments submitted or required in conjunction with that/those application(s), along with all publicly available material published or disseminated by an **Insured** about an **Insured** that the **Company** obtained as part of the application process; and
3. If this Excess Policy is a renewal policy issued by the **Company**, **Application** also means all previous **Applications** and any and all attachments submitted to the **Company** with any such **Applications**, all of which will be kept on file by the **Company** and are deemed attached to this Excess Policy as if physically attached.

B. **Claim** has the same meaning as that term is defined in the **First Underlying Insurance Policy**.

C. **Company** means the Issuing **Company** specified in the Declarations.

D. **DIC Insurer** means any insurer that wrote a difference-in-conditions policy excess of this Excess Policy that drops down due to the difference-in-conditions provisions of such policy to pay an amount due under the **Underlying Insurance Policies**.

E. **First Underlying Insurance Policy** means the primary policy specified in the Declarations.

F. **Policy Period** means the period of time from the Effective Date as specified in the Declarations to the earlier of the Expiration Date as specified in the Declarations or the effective date of cancellation of this Excess Policy.

 © 2023 CapSpecialty, Inc. All rights reserved. 

GN DEFENDANTS EXHIBIT 6

G. **Underlying Insurance Policies** means the **First Underlying Insurance Policy** and all other policies specified in the Declarations.

H. **Underlying Insurer(s)** refers to the Insurer(s) issuing the **Underlying Insurance Policies**.

I. **Underlying Limit of Liability** means the sum of the combined Limits of Liability of all **Underlying Insurance Policies** and any self-insured retention or deductible applicable under the **First Underlying Insurance Policy**.

## IV. LIMIT OF LIABILITY / EXHAUSTION OF UNDERLYING INSURANCE

A. The Limit of Liability specified in the Declarations is the most the **Company** will pay for all amounts (including defense expenses) from all **Claims** made during the **Policy Period** or the Extended Reporting Period, if applicable. In no event will the **Company** pay more than the Limit of Liability specified in the Declarations.

B. Payment of defense expenses under this Excess Policy will reduce and may exhaust the Limit of Liability.

C. The Limit of Liability applicable to this Excess Policy will only apply after all **Underlying Insurance Policies**, the **Insured**, or any applicable **DIC Insurer** have actually paid the full amount of the **Underlying Limit of Liability** and the **Insured** has actually paid the full amount of any applicable deductibles or self-insured retentions.

D. If one or more **Underlying Insurers** fails to pay any amount in connection with any **Claim** covered under the **Underlying Insurance Policies** because of the insolvency, bankruptcy or liquidation of the **Underlying Insurer**, then the **Insured** will be deemed to be self-insured for the Limit of Liability of the **Underlying Insurance Policy** issued by the insolvent, bankrupt or liquidated **Underlying Insurer**. In no event will this Excess Policy drop down to respond to any gap in coverage.

E. If any **Underlying Insurance Policy** provides coverage subject to a limit other than the Limits shown for that policy as specified in the Declarations of this Excess Policy, such as a sub-limit of liability, this Excess Policy will not offer such coverage. However, this Excess Policy will recognize erosion of the **Underlying Limit of Liability** by payments made by the **Underlying Insurer** or the **Insured** as to such coverage in an **Underlying Insurance Policy**.

## V. CONDITIONS

### A. DUTIES IN THE EVENT OF A **CLAIM**

<u>Reporting of **Claims**</u>

(For Claims Department contact information please refer to the “WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT” notice accompanying this Excess Policy.)

1. If a **Claim** is first made during the **Policy Period**, the **Insured** will provide written notification to the **Company** of the **Claim** as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period**. If a **Claim** is first made within any applicable Extended Reporting Period, the **Insured** will provide written notification to the **Company** of such **Claim** as soon as practicable but in no event later than the termination of the Extended Reporting Period. In the event a suit is commenced against an **Insured**, the **Insured** must immediately send the **Company** copies of all demands, notices, settlement summonses or legal papers received in connection with the **Claim**.
2. Notice given under the **Underlying Insurance Policies** or to any **Underlying Insurers** will not constitute notice to the **Company**.
3. The **Company** will have no duty to defend the **Insured**, but will have the right to effectively associate with the **Insured** and/or the **Underlying Insurers** in the investigation, settlement or defense of any **Claim** even if the **Underlying Limit of Liability** has not been exhausted. The **Company** will not be bound by any positions taken by the **Underlying Insurers** with respect to coverage, policy interpretation or settlement, which may affect this Excess Policy.
4. Upon the **Company’s** request, the **Insured** must authorize the **Company** to obtain records and other information.

### B. BANKRUPTCY

The bankruptcy or insolvency of an **Insured** or an **Insured’s** estate will not relieve the **Company** of its obligations under this Excess Policy nor deprive the **Company** of its rights or defenses under this Excess Policy and the **Underlying Insurance Policies**.

### C. CANCELLATION

1. The **First Named Insured** may cancel this Excess Policy by mailing or delivering to the **Company** advance written notice of cancellation. If the **First Named Insured** cancels this Excess Policy, the return Premium will be calculated as ninety percent (90%) of the prorated return Premium.
2. The **Company** may cancel this Excess Policy by mailing or delivering to the **First Named Insured** written notice of

 © 2023 CapSpecialty, Inc. All rights reserved. 

GN DEFENDANTS EXHIBIT 6

cancellation at least:

a. Ten (10) days before the effective date of cancellation for nonpayment of Premium; or

b. Thirty (30) days before the effective date of cancellation for any other reason or as otherwise specified by state law.

3. The **Company** will mail or deliver notice to the **First Named Insured's** last known mailing address. Notice of cancellation will state the effective date of the cancellation. This Excess Policy will expire on that date. If this Excess Policy is cancelled, the **Company** will send the **First Named Insured** or their authorized representative any return Premium due. The **Company's** payment or tender of unearned Premium is not a condition of cancellation. If notice is mailed, proof of mailing will be sufficient proof of notice.

## D. EXTENDED REPORTING PERIOD

The **Insured** will be entitled to an Extended Reporting Period pursuant to the terms and conditions of the **First Underlying Insurance Policy** except as specified herein. An Extended Reporting Period is not available unless the **Insured** purchases the Extended Reporting Period for all **Underlying Insurance Policies** and for this Excess Policy. The additional Premium for the Extended Reporting Period for this Excess Policy is fully earned at the Effective Date of the Extended Reporting Period. The Extended Reporting Period is not cancelable. The Premium for the Extended Reporting Period for this Excess Policy will be a percentage of the annual Premium and cannot be less than the highest percentage charged by any of the **Underlying Insurers** for an Extended Reporting Period on their **Underlying Insurance Policies**.

## E. LEGAL ACTION AGAINST THE **COMPANY**

No person or organization has a right under this Excess Policy:

1. to join the **Company** as a party or otherwise bring the **Company** into a suit against an **Insured**.
2. to sue or bring action against the **Company** unless the **Insured** has fully complied with all terms and conditions of this Excess Policy.

## F. MAINTENANCE OF **UNDERLYING INSURANCE POLICIES**

1. The **Insured** will maintain all **Underlying Insurance Policies** in full effect while this Excess Policy is in effect. If the **Insured** fails to do so, the **Company** will only be liable to the extent the **Company** would have been liable had the **Insured** maintained the **Underlying Insurance Policies** and the **Insured** will be deemed to be self-insured for the amount of **Underlying Limit of Liability** that was not maintained.
2. The **Company's** obligations under this Excess Policy will not be increased, expanded or otherwise changed as a result of:

   a. Any positions taken by the **Underlying Insurers** with respect to coverage;

   b. The **Insured's** failure to comply with any condition of any **Underlying Insurance Policies**; or

   c. Insolvency, bankruptcy, liquidation or the inability or refusal to pay by any of the **Underlying Insurers**, or the cancellation of any of the **Underlying Insurance Policies**.
3. If during the **Policy Period** the terms or conditions of any of the **Underlying Insurance Policies** change in any manner, or if any **Underlying Insurance Policies** are cancelled, the **First Named Insured** will give the **Company** written notice of the full particulars as soon as possible, but no later than thirty (30) days following the effective date of such change. Any changes to any of the **Underlying Insurance Policies** will not be binding on the **Company** unless specifically agreed to by the **Company** in writing, and unless the **Insured** has paid any additional Premium the **Company** assesses as a result of the change.

## G. NO OBLIGATION TO RENEW

The **Company** will not be obligated or required to renew this Excess Policy. Any offer of renewal of terms involving a change of Premium, Limit of Liability, or other terms and conditions will not constitute, nor be construed as, a refusal by the **Company** to renew this Excess Policy. The **Company** may elect to non-renew this Excess Policy by mailing to the **First Named Insured** at their last known address at least thirty (30) days advance written notice or notice as otherwise specified by state law. If notice is mailed, proof of mailing will be sufficient proof of notice.

## H. NO WAIVER OR CHANGE OF TERMS

Notice or knowledge possessed by any person will not affect a waiver or a change in any part of this Excess Policy or estop the **Company** from asserting any rights under the terms of this Excess Policy; nor will the terms of this Excess Policy be waived or changed except by written endorsement issued by the **Company**.


© 2023 CapSpecialty, Inc. All rights reserved.

## I. SPECIAL RIGHTS AND DUTIES OF THE **FIRST NAMED INSURED**

The **First Named Insured** is responsible for the payment of all Premiums. The **First Named Insured** has exclusive authority to act on behalf of all **Insureds** with respect to matters relating to this Excess Policy, including:

1. Giving and receiving of all required notices;
2. Receiving return Premiums;
3. Agreeing to any changes to this Excess Policy; and
4. Purchasing an Extended Reporting Period.

## J. SUBROGATION

The **Insured** and the **Company** may have rights to recover all or part of any payment an **Insured** or the **Company** make under this Excess Policy. If so, the rights of the **Insured** are transferred to the **Company**.

The **Insured** must do nothing to impair such rights. At the **Company's** request, the **Insured** will do everything necessary to secure such rights and help the **Company** to enforce them, including the execution of documents necessary to enable the **Company** to effectively bring suit. Any recoveries will be applied as follows:

1. First, to the **Company** up to the amount of its payment under this Excess Policy; and
2. Second, to the **Insured** as recovery of any deductible or retention amounts paid.

## K. TRANSFER OF **INSURED'S** RIGHTS AND DUTIES UNDER THIS EXCESS POLICY

An **Insured's** rights and duties under this Excess Policy may not be transferred without the **Company's** prior written consent.


© 2023 CapSpecialty, Inc. All rights reserved.

| | |
|---|---|
| Endorsement No.: | 1 |
| Endorsement Effective Date: | 06/20/2024<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | APX2201006-03 |
| Issued to: | Realty Cap Advisors LLC |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Service of Suit

This endorsement modifies insurance provided under the following:
Excess Liability Policy

It is hereby understood and agreed that:

In any cause of action arising under this policy, or certificate, cover note, or other confirmation of this insurance issued by your surplus lines agent, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States. However, nothing herein constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of appeal.

All lawful process may be served in any action, suit or proceeding instituted by, or on behalf of, you or any beneficiary under this policy, against us arising out of this policy, upon:

Chief Claims Officer
Capitol Specialty Insurance Corporation
1600 Aspen Commons
Suite 300
Middleton, Wisconsin 53562-4718

Pursuant to any law of any state, the District of Columbia or territory of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other applicable individual specified for that purpose in the applicable statute or regulation, or his successor or successors in office, as attorney or agent for receipt of lawful service of process as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this policy. We hereby designate the above-named as the person to whom the said individual, surplus lines producer, or any applicable state surplus lines association or stamping office is authorized to mail such process or a true copy thereof. The service of process as set forth above and below is cumulative to any other methods which may be provided by law for service of process upon us.

THE LANGUAGE OF THIS ENDORSEMENT ABOVE IS MODIFIED IN EACH APPLICABLE STATE AS SET FORTH BELOW TO COMPLY WITH CERTAIN STATE SPECIFIC REQUIREMENTS AND DISCLOSURES:

**California**

For any cause of action arising under any surplus lines insurance contract issued or delivered in California, service may be made upon the Insurance Commissioner or his successor or successors in office pursuant to the procedures set forth in Cal. Ins. Code §§ 1610 to 1620. It is further agreed that by assuming surplus lines insurance, we subject ourselves to Chapter 6 of the California Insurance Code.

**Delaware**

For any cause of action arising under a surplus lines insurance policy or contract issued or delivered by us in Delaware, service of process in such action may be made upon the Insurance Commissioner of the State of Delaware as provided for in specific state laws and/or regulations.

**Florida**

For any cause of action, suit or proceeding arising under a policy or contract issued by us in Florida, service of process shall be made upon the Chief Financial Officer of the State of Florida or other designee as provided for in specific state laws and/or regulations.

**Illinois**

For any action, suit or proceeding arising out of any insurance we write that is delivered pursuant to 215 Ill. Comp. Stat. § 5/445, service of process in such suit may be made upon the Director of the Illinois Department of Insurance and his successor or successors in office or other designee as provided for in specific state laws and/or regulations.

 © 2021 CapSpecialty, Inc. All rights reserved.
Includes material copyrighted by Insurance Services Office, Inc., used with permission. 

# Service of Suit

**Maine**

For any cause of action arising out of the solicitation, effectuation, or delivery of any insurance contract in Maine, or the performance in Maine of any other service or transaction connected with such insurance by or on behalf of us, we agree that service of process shall be made upon the superintendent and his successors in office pursuant to specific state laws and/or regulations.

**North Dakota**

For any cause of action arising out of our transaction of surplus lines business in North Dakota, service of process in such suit must be made upon the North Dakota Commissioner of Insurance pursuant to specific state laws and/or regulations.

**New York**

For any proceeding brought against us on a contract issued in New York, service of process in such proceeding may be made upon the New York Superintendent of Insurance pursuant to specific state laws and/or regulations.

**Oregon**

For any cause of action arising under any policy of insurance issued or delivered by us in Oregon, service of process may be made upon the insurance producer on the policy or the Secretary of State or the successor in office pursuant to specific state laws and/or regulations.

**Washington**

For any cause of action arising in Washington under any contract issued as a surplus lines contract under Wash. Rev. Code Ann. Chapter 48.15, we must be sued in the superior court of the county in which the cause of action arose. By issuing a policy under Wash. Rev. Code Ann. Chapter 48.15, we have authorized service of process against us in the manner prescribed under Wash. Rev. Code Ann. § 48.02.022, and we hereby designate the Washington Commissioner of Insurance as the person upon whom such service of process may be made.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2021 CapSpecialty, Inc. All rights reserved.
Includes material copyrighted by Insurance Services Office, Inc., used with permission.

| | |
|---|---|
| Endorsement No.: | 2 |
| Endorsement Effective Date: | 06/20/2024<br>12:01 a.m. standard time at the address of the **First Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | APX2201006-03 |
| Issued to: | Realty Cap Advisors LLC |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Pending / Prior Litigation Exclusion

This endorsement modifies insurance provided under the following:

Excess Liability Policy

It is hereby understood and agreed that this Excess Policy is amended as follows:

The following Section is added to the end of this Excess Policy:

## EXCLUSIONS

Pending / Prior Litigation

The coverage under this Excess Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, or in any way involving any pending or prior litigation, suit or administrative or regulatory proceeding of which any **Insured** had notice as of June 20, 2023, or the same or substantively similar facts, circumstances, situations, transactions, events or wrongful acts underlying or alleged in such litigation, suit or proceeding.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2017 CapSpecialty, Inc. All rights reserved.


GN DEFENDANTS EXHIBIT 6

| | |
|---|---|
| Endorsement No.: | 3 |
| Endorsement Effective Date: | 06/20/2024<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | APX2201006-03 |
| Issued to: | Realty Cap Advisors LLC |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Cap On Losses from Certified Acts of Terrorism

This endorsement modifies insurance provided under the following:
Excess Liability Policy

It is hereby understood and agreed that:

The following additional provision is added to the Policy:

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

1. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act (**Certified Acts of Terrorism**, as defined below) exceed $100 billion in a calendar year and the **Company** has met its insurer deductible under the Terrorism Risk Insurance Act, the **Company** will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.
2. **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorisms Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:
   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance act; and
   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
3. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage that is otherwise excluded under this Policy.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

 © 2017 CapSpecialty, Inc. All rights reserved. 

GN DEFENDANTS EXHIBIT 6

| | |
|---|---|
| Endorsement No.: | 4 |
| Endorsement Effective Date: | 06/20/2024<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | APX2201006-03 |
| Issued to: | Realty Cap Advisors LLC |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Conditional Exclusion of Terrorism

## (Relating to Disposition of Federal Terrorism Risk Insurance Act)

This endorsement modifies insurance provided under the following:

Excess Liability Policy

It is hereby understood and agreed that:

A. Applicability of the Provisions of this Endorsement

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. However, if this Policy (meaning the **Policy Period** in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date this Policy begins.
   a. The federal Terrorism Risk Insurance Program (hereafter referred to as Program) established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under the Coverage Section; or
   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to the **Insured** or with revisions that:
      1) Increase the **Company's** statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses the **Company** must pay in a calendar year before the federal government shares in subsequent payment of certified terrorism losses.); or
      2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or
      3) Redefine terrorism or make insurance coverage for terrorism subject to the provisions or requirements that differ from those that apply to other types of events or occurrences under this Policy.
2. If the provisions of this endorsement become applicable, such provisions:
   a. Supersede any terrorism endorsement already endorsed to this Coverage Section that addresses **Certified Acts of Terrorism** and/or other acts of **Terrorism**, but only with respect to an incident(s) of terrorism however defined which results in a **Claim** first being made against an **Insured** or after the date when the provisions of this endorsement become applicable; and
   b. Remain applicable unless the **Company** notifies the **Named Insured** of changes in these provisions, in response to federal law.
3. If the provisions of this endorsement do not become applicable, any terrorism endorsement already endorsed to this Coverage Section that addresses **Certified Acts of Terrorism** and/or other acts of **Terrorism** will continue in effect unless the **Company** notifies the **Named Insured** of changes to that endorsement in response to federal law.

B. The **DEFINITIONS** section of the Policy is amended to add the following additional definition:

**Terrorism** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:
   a. Use or threat of force or violence; or
   b. Commission or threat of a dangerous act; or
   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and
2. When one or both of the following applies:
   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express oppositions to) a philosophy or ideology.

 © 2017 CapSpecialty, Inc. All rights reserved. 

# Conditional Exclusion of Terrorism
## (Relating to Disposition of Federal Terrorism Risk Insurance Act)

C. The **EXCLUSIONS** section of the Policy is amended to add the following:

No coverage shall be provided under this Policy for any **Claim** based upon, arising out of, relating to or resulting from, in whole or in part, **Terrorism**, including action in hindering or defending against an actual or expected incident of **Terrorism**, regardless of any other cause or event that contributes concurrently or in any sequence to such **Terrorism**. But this exclusion applies only when one or more of the following are attributed to an incident of **Terrorism**:

1. The **Terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or
2. Radioactive material is released, and it appears that one purpose of the **Terrorism** was to release such material; or
3. The **Terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **Terrorism** was to release such materials; or
5. The total insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the **Company** will include all insured damage sustained by property of all persons and entities affected by the **Terrorism** and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or
6. Fifty or more persons sustain death or serious physical injury. For the purpose of this provision, serious physical injury means:
   a. Physical injury that involves a substantial risk of death; or
   b. Protracted and obvious physical disfigurement; or
   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of **Terrorism** which occur within a seventy-two (72) hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident of **Terrorism**, for the purpose of determining whether the thresholds in Paragraphs 5. or 6. immediately above are exceeded.

With respect to this exclusion, Paragraphs 5. and 6. immediately above describe the threshold used to measure the magnitude of an incident of **Terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to that incident of **Terrorism**, there is not coverage under this Policy.

D. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any **Loss** that is otherwise excluded under this Policy.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

 © 2017 CapSpecialty, Inc. All rights reserved. 

| | |
|---|---|
| Endorsement No.: | 5 |
| Endorsement Effective Date: | 06/20/2024<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | APX2201006-03 |
| Issued to: | Realty Cap Advisors LLC |
| Issuing Company: | Capitol Specialty Insurance Corporation |

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# Disclosure Pursuant to Terrorism Risk Insurance Act

This endorsement modifies insurance provided under the following:
Excess Liability Policy

It is hereby understood and agreed that:

| | | |
|---|---|---|
| **SCHEDULE – PART I** | | |
| **Terrorism Premium (Certified Acts)** | **$** [redacted] | |
| **This premium is the total Certified Acts premium and is attributable only to those coverages provided under the Policy to which TRIA applies.** | | |
| **Additional information, if any, concerning the terrorism premium:** | | |
| **SCHEDULE – PART II** | | |
| **Federal share of terrorism losses** | 80 **%** | (Refer to Paragraph **B.** in this endorsement.) |
| | | |

A. DISCLOSURE OF PREMIUM

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

B. DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, may pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C. CAP ON INSURER PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2020 CapSpecialty, Inc. All rights reserved.


GN DEFENDANTS EXHIBIT 6

# ARIZONA – NOTICE TO POLICYHOLDERS

**Pursuant to section 20–401.01, subsection B, paragraph 1, Arizona Revised Statutes, this policy is issued by an insurer that does not possess a certificate of authority from the director of the Arizona Department of Insurance and Financial Institutions. If the insurer that issued this policy becomes insolvent, insureds or claimants will not be eligible for insurance guaranty fund protection pursuant to title 20, Arizona Revised Statutes.**


© 2020 CapSpecialty, Inc. All rights reserved.