Amir Tadjedin (CA Bar No.186967; OR Bar No.055613; WA Bar No. 47414)
Craig A. Vollono (NY Bar No. 4446431)
David G. Smitham (CA Bar No.335635; NY Bar No. 4194676)
Christopher Anthony (MD Bar No. 1512150017; OR Bar No. 257313)
Tyler G. Mills (OR Bar No. 215303)

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Tel: 503-224-9294
amirt@ttelawgroup.com
craigv@ttelawgroup.com
davids@ttelawgroup.com
christophera@ttelawgroup.com
tylerm@ttelawgroup.com

*Attorneys for Respondent*
*Emerson Equity LLC*

**IN THE ARBITRATION BEFORE THE**

**FINANCIAL INDUSTRY REGULATORY AUTHORITY**

| | |
|---|---|
| NIKKI CHUA,<br><br>Claimant,<br><br>v.<br><br>EMERSON EQUITY, LLC (CRD# 130032), IAN MCELREATH (CRD#4754189) AND PATRICK LAM (CRD# 4723020),<br><br>Respondents. | Arbitration No. 25-02052<br><br>**RESPONDENT EMERSON EQUITY LLC'S ANSWER TO THE STATEMENT OF CLAIM** |

Respondent Emerson Equity LLC ("Emerson" or "Respondent") hereby submits this Statement of Answer pursuant to FINRA Rule 12303. Claimant Nikki Chua ("Claimant") filed her Statement of Claim ("SOC") against Respondent alleging: (1) suitability; (2) breach of contract; (3) violations of California consumer protection and deceptive trade practices law; (4) violations

of California and federal securities laws and fraud; (5) breach of fiduciary duty; (6) control person liability; (7) negligence; and (8) violations of Reg BI.

Respondent expressly denies all allegations of wrongdoing or actionable conduct. Respondent affirmatively states that its actions were in conformity with all applicable laws, rules, and regulations, as well as industry standards and practices. To the extent that Claimant suffered any losses from the investments at issue, such losses were not the result of any culpable action or inaction by Respondent. Any allegation in Claimant's SOC not specifically addressed herein shall be deemed denied by Respondent. Respondent reserves the right to amend its Statement of Answer and/or Affirmative Defenses based on the discovery of additional facts and information.

## I. PRELIMINARY STATEMENT

Claimant alleges in the SOC that she was defrauded in purchasing certain investments completed with Emerson (the "Investments" or "investments at issue"). All of the alleged claims are defective factually and legally.

First, Claimant was not an unsophisticated investor who only desired safe and secure investments. She was an "accredited investor" who had made unrealized profits from real estate investing, and she wished to avoid an immediate tax bill if she sold these investments. Second, contrary to what is portrayed in the SOC, prior to investing, Claimant received numerous detailed disclosures about the Investments, and signed paperwork confirming the amount of her assets, her liquidity needs, and her net worth. The documents that she received explained the nature of her Investments, and the risks associated with these Investments. Any attempt to persuade this Panel that she is naïve, unsophisticated, and was bamboozled into purchasing the Investments is utterly ridiculous.

Without basis, Claimant alleges deficiencies in due diligence by Emerson. Emerson, however, sold the Investments after performing the requisite due diligence and approving them for sale to those clients for whom the Investments were deemed suitable, including this Claimant.

The reality is that no one tricked Claimant into making her investment decisions, let alone misrepresented risks associated with her Investments. This claim is nothing more than a transparent attempt by a sophisticated investor to cast blame for those selected investments that may not have performed as well as she would have hoped. This attempt should be denied, and Claimant should not be permitted to make Emerson a guarantor of her Investments.

## II. STATEMENT OF FACTS

### A. Respondent Emerson Equity LLC

Emerson (CRD No. 130032) is a broker-dealer registered with FINRA, the United States Securities and Exchange Commission, and all fifty U.S. states. Emerson's principal place of business is in San Mateo, California.

### B. Claimant Nikki Chua

Claimant Nikki Chua is currently 49 years old and when she began to invest through the firm, she told Emerson that she was a Senior Designer at Americhine LLC. Claimant was an "accredited investor" as defined by the SEC and she was an experienced real estate investor. [redacted]

Based upon the information that she provided to Emerson, her investments were suitable at the time of purchase. Claimant told Emerson that her liquidity needs were "low" and that she was prepared to accept "high risk" with her investments through Emerson and that she sought "growth and income." In addition to any other investments, Claimant maintained real estate investments on which she had made significant unrealized profits. A cash sale of the real estate would have resulted in taxes being due and Claimant sought a way to defer payment of these taxes. Emerson recommended investments in in 1031 exchanges through Delaware Statutory Trusts ("DSTs").

**C. The Investments at Issue**

The SOC includes lengthy allegations concerning tenancy in common investments ("TICs.") which are irrelevant to the claims in this matter. Contrary to the allegations in the SOC, Claimant did not invest in TICs. Claimant invested in two DSTs sponsored by Inspired Healthcare Capital ("IHC"). Her DST investments included purchases of Inspired Senior Living of Hamilton DST and Inspired Senior Living of Grapevine DST.

**D. Claimant Understood the Nature of Her Investments**

The investments at issue concern transactions by Claimant in real estate-based DSTs. Any attempt to confuse the issues before the Panel by alleging that DSTs are complex investments and that Claimant did not understand them is without foundation. A DST is simply an alternative way of making real estate investments and deferring taxes through a 1031 exchange.[1] The structure and benefits of DSTs, as well as their associated risks, were explained in detail to Claimant through the documents that she received and executed, and she may not argue that she did not understand her DST investments.

The structure of a DST is not complex, and its permitted structure and activities are defined by IRS Revenue Ruling 2002-86 ("IRS 86").[2] A DST is a special legal entity, typically created by a "Sponsor" that acquires commercial properties to be held in a trust. The Sponsor then sells beneficial interests in the trust to DST investors, which allows them to have an "undivided fractional interest" in the investment property owned by the trust. Because DSTs are qualified as replacement properties, as established by IRS 86, the seller of an investment property can defer their tax liability on profitable real estate sales if they acquire replacement property that is equal

---

[1] A 1031 exchange is a real estate tax break that allows commercial property sellers to exchange one investment property for another, like kind, property while deferring capital gains tax on the sale. Without this tax break, sellers must pay capital gains tax at the time of sale. (https://calawyers.org/real-property-law/what-is-a-1031-exchange/)

[2] DSTs are qualified as replacement properties as established by IRS Revenue Ruling 2002-86 ("IRS 86"). IRS 86 holds that a DST formed to hold real property subject to a lease under a trust agreement is classified as a trust for Federal tax purposes under § 301.7701-4(c). Each of Trust's owners is treated as an owner of a pro-rata portion of Trust. Because an owner of an undivided fractional interest in Trust owns for Federal tax purposes the assets of Trust attributable to that interest, each owner is considered to own for those purposes an undivided fractional interest in the real rental property held by Trust. Accordingly, under § 1031 of the Code, a taxpayer may exchange an interest in real property for an interest in Trust without recognition of gain or loss if the other requirements of § 1031 are satisfied.



GN DEFENDANTS EXHIBIT 20

or greater value to the sale value, and if they utilize all of the proceeds resulting from their sale in the new DST investment. In short, the seller of property can choose to defer taxes by reinvesting 100% of the sale proceeds into a DST, rather than selling for cash and reinvesting the after-tax proceeds of the sale in other investments.

Investing in DSTs can offer other benefits as well as tax deferral through a 1031 exchange. A DST investment can offer diversification into large-scale properties and also potentially provide regular, passive income. DST investors are passive owners, as the Sponsor controls the property's management and sale and a professional trustee manages the property, thus allowing investors to participate in real estate investments without any on-going landlord management responsibilities.

Claimant was made aware of the risks and benefits of DSTs and confirmed this in the documents that she executed. Despite being fully aware of the nature of her investments, Claimant now takes issue with the fact that those long-term investments may not have performed as she would have hoped in the short term. Claimant's claims are without basis and premature, and it is wholly inappropriate for her to seek to have Emerson insure her investment decisions.

Further, any argument that Claimant was over concentrated in real estate through her Investments in DSTs makes no sense. Claimant could easily have sold her original properties, paid the capital gains tax on the sale, and reinvested in a portfolio of diverse investments, such as stock, bonds, or commodities. Instead, she invested in DSTs to take advantage of the deferred tax opportunities that DSTs offer, advantages which could only have been obtained by investing in real estate again.

**E. Claimant Seeks to Make Respondent a Guarantor of Her Investments**

Claimant vaguely alleges misconduct by Respondent in connection with Claimant's decision to invest in DSTs issued by Inspired Healthcare Capital LLC ("IHC"). Claimant is simply seeking to make Respondent a guarantor of the investments that she made in IHC, a third-party entity over which Emerson had no control, following negative publicity about the activities of IHC.

IHC is an alternative investment sponsor dedicated exclusively to senior housing. Based in Scottsdale, Arizona, IHC focuses on properties that address the demands of seniors with an eye to

America's aging population. IHC shared with the public its plans to acquire and develop senior housing facilities, including independent living, assisted living, and memory care.

In recent times, according to IHC, it managed assets exceeding $1.5 billion in value and acquired and ran senior living and healthcare facilities. Its offerings included private placements, such as DSTs. At the time of writing, IHC has suspended investment offerings and investor distributions.

**F. Claimant's Allegations Concerning Due Diligence Have No Foundation**

Claimant alleges unidentified failures of "due diligence," without any evidence or support for her claims. The "due diligence" process involves a review of a securities issuer's business prior to permitting the sale of an investment by a broker-dealer, but it is not a guarantee of the future success of that business, nor does the process make a broker-dealer a guarantor of Claimant's investments.

A due diligence review offers a snapshot of an issuer's business based upon documents and information available at the time the due diligence is conducted. The process involves no crystal ball and those conducting due diligence cannot be held responsible for unforeseen future events, such as those that occurred at IHC. Claimant has not offered a single example or, indeed, any evidence of any failure to complete due diligence in connection with her IHC investments and the allegations should be dismissed.

**G. The Written Documents That Claimant Signed Must Prevail Over Alleged Oral Statements**

Courts have found that, as a matter of law, a claimant may not claim reliance on alleged oral misrepresentations where those "misrepresentations" are contradicted by a written document. In short, where there is a shouting match about alleged conversations that took place some years ago, the written documents executed by Claimant must prevail.

Reliance on alleged oral fraudulent representations "…is unreasonable as matter of law where alleged misrepresentations contradict express terms of ensuing written agreement." *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283, 1295 (S.D. 2007). *See also First Union Discount*



GN DEFENDANTS EXHIBIT 20

*Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 846 (11th Cir. 1993). *Solution Z v. Alma Lasers, Inc.*, 2013 WL 12246356 * 10 (S.D. 2013) (Granting a motion to dismiss on the grounds that it was unreasonable to rely on alleged oral representations which were specifically and repeatedly contradicted by the express terms of the contract.)

Documents warning investors that commercial real estate limited partnerships were risky investments precluded common-law fraud claims based on alleged oral statements that a plaintiff's investment was safe and conservative. *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544 (7th Cir. 1996).

A plaintiff's reliance on an oral statement is not reasonable when it is contradicted by a written contract between the parties or otherwise conflicts with a written document that is readily available to the plaintiff. *Daneshvar v. Kipke*, 266 F.Supp.3d 1031 (E.D. Mich. 2017). *See*, e.g., *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 125 (4th Cir. 1990) (finding that reliance on oral representations was not reasonable when contradicted by written offering memoranda); *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 805 (1st Cir.1987) (when plaintiffs "closed their eyes and passively accepted the contradictions" between oral misrepresentations and written representations, reliance was not justifiable as a matter of law).

Claimant has acknowledged understanding the DST Investments. For example, in May 2022, Claimant made an investment in Inspired Senior Living of Hamilton DST. She completed a purchaser questionnaire form, (the "Form") in connection with this investment. In capitals, the Form advised Claimant as follows:

> **EACH PROSPECTIVE INVESTOR SHOULD EXAMINE THE SUITABILITY OF THIS TYPE OF INVESTMENT IN THE CONTEXT OF HIS OWN NEEDS, PURCHASE OBJECTIVES, AND FINANCIAL CAPABILITIES AND SHOULD MAKE HIS OWN INDEPENDENT INVESTIGATION AND DECISION AS TO SUITABILITY AND AS TO THE RISK AND POTENTIAL GAIN INVOLVED. ALSO, EACH PROSPECTIVE INVESTOR IS ENCOURAGED TO CONSULT WITH HIS ATTORNEY, ACCOUNTANT, FINANCIAL CONSULTANT OR OTHER BUSINESS OR TAX ADVISOR REGARDING THE RISKS AND MERITS OF THE PROPOSED INVESTMENT.**

In fact, on the Form, Claimant Chua affirmed that she was sufficiently experienced in financial matters to understand and evaluate the DST Investment. She stated that:

> **I have such knowledge and experience in financial and business matters that 1 am capable of evaluating the merits and risks of a purchase of the Interests. The following is a description of my experience in financial and business matters:**
>
> ***10+ vears real estate investments. (*****Form at page 3) (Emphasis added)**

The Form also advised Claimant to "read carefully" the Confidential Private Placement Memorandum (the "Memorandum") for the investment. Claimant acknowledged that she had read the Memorandum (Form at page 4). The Memorandum included a summary of the risks of investing in the DST, including the illiquid nature of the Investment, and also included a section titled **"Risk Factors,"** which detailed number of potential risks in investing in the DST.

Claimant also signed a Purchaser Agreement in which Claimant acknowledged reading the Memorandum and explicitly agreed that she had relied on the written materials provided by Emerson, and not on any oral representations:

> **4.3.1 Buyer acknowledges that it has received, read, and fully understands the Memorandum. Buyer acknowledges that it is basing its decision to invest in the Interest on the Memorandum and Buyer has relied only on the information contained in said materials and has not relied upon any representations made by any other person. Buyer recognizes that an investment in the Interest involves substantial risk and Buyer is fully cognizant of and understands all of the risk factors related to the purchase of the Interest, including, but not limited to, those risks set forth in the section of the Memorandum entitled "RISK FACTORS."**

As a further example of Claimant's knowledge and understanding of DSTs, in November 2022, Claimant made an investment in Inspired Senior Living of Grapevine DST. Claimant signed a Letter of Understanding to Emerson which stated:

> **I write regarding your investment in <u>Inspired Senior Living of Grapevine DST</u> and to confirm that you are fully aware of the risks involved with investing in this specific offering and are comfortable with these types of investments generally, and that you are not concerned about the lack of liquidity in this investment as you have adequate resources for all your liquidity needs. (See Exhibit "A" attached hereto).**

This Panel should reject Claimant's attempt to argue that that she relied on alleged statements from her registered representative which contradicted the information that she acknowledged receiving. To the extent that Claimant's claims rely on any oral purported misrepresentations, such claims fail as a matter of law. Claimant could not have reasonably relied on them given the numerous written warnings and disclosures that she acknowledged having received.

## III. LEGAL ARGUMENTS

### A. Claimant's Claim of Unsuitability Must Be Dismissed

To state a claim for unsuitability, an investor must prove that (1) the investment was incompatible with the customer's investment objectives at the time the recommendation was made; (2) the broker recommended the investment anyway; and (3) the broker knew or reasonably believed the investment was inappropriate. *Keenan v. D.H. Blair & Co.*, 838 F. Supp. 82, 86-87 (S.D.N.Y. 1993); *see Mauriber v. Shearson/American Express, Inc.*, 567 F. Supp. 1231, 1237 (S.D.N.Y. 1983); *see Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 813 n.3 (6th Cir. 2015); *see O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 898 n.6 (10th Cir.1992).

A suitability claim raises the question of whether the investment was appropriate at the time it was recommended. *Keenan*, 838 F. Supp. at 86-87. In other words, a suitability analysis entails a "point of sale" analysis. Conclusory allegations regarding unsuitable investments will not suffice, a plaintiff must adequately describe their investment goals and give some indication why plaintiff considers the investment at issue to have been unsuitable when purchased. *Keenan*, 838 F. Supp. at 87; *Betz v. Trainer Worthem & Co., Inc.*, No. C 03-3231 SI, 2004 WL 7340652, at *6 (N.D. Cal. Feb. 2, 2004) (Granting a motion to dismiss on ground that plaintiff failed to plead with particularity as to why the particular securities purchased were unsuitable for plaintiff at the time; why or in what way the defendants knew the securities were unsuitable for plaintiff; or what misrepresentations were made concerning suitability.). In addition, the investor must also show that they *justifiably relied* on the broker's alleged wrongdoing. *Brown v. E.F. Hutton Group, Inc.*,

991 F.2d 1020, 1031 (2d Cir. 1993). Finally, the investor must show that their losses were *caused* by the alleged wrongdoing. *See In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 273 F. Supp. 2d 351, 361-62 (S.D.N.Y. 2003), *aff'd in relevant part*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).

Suitability is evaluated at the time of the recommendation, and not after the fact with 20/20 hindsight. Of course, "a subsequent diminution in value reveals nothing about the quality of the stock when it was purchased and does not illuminate the reasons why the stock was unsuitable for investment objectives." *Keenan*, 838 F. Supp. at 86-87. Under federal securities law, an unsuitability claim falls under a § 10(b) fraud claim, which requires a finding "that, with scienter, the defendant made material misrepresentations. . . relating to the suitability of the securities" *Brown*, 991 F.2d at 1031. "Analytically, an unsuitability claim is a subset of the ordinary § 10(b) fraud claim." *Id.* Therefore, a plaintiff must show: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which Appellants relied (5) which proximately caused their injury. *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002) (citing *McCormick v. Fund Am. Companies, Inc.*, 26 F.3d 869, 875 (9th Cir. 1994)); *see Brown*, 991 F.2d at 1031; *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986). *See generally*, *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 424 F. Supp. 1021 (S.D.N.Y. 1977), *aff'd*, 570 F. 2d 38 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978).

As will be established at the hearing, Claimant cannot meet her burden of proof in this matter. Based upon the information that Claimant provided to Emerson, the Investments were suitable at the time of purchase. Claimant was provided with detailed risk disclosures that she acknowledged having received and understood. The suitability claims should be denied.

**B. Claimant Fails to Allege a Breach of Contract Claim**

A cause of action for breach of contract requires proof of each of the following elements:

(1) existence of the contract;

(2) plaintiff's performance or excuse for nonperformance;

(3) defendant's breach; and

(4) damages to plaintiff as a result of the breach. *Miles v. Deutsche Bank National Trust Co.*, 236 Cal.App.4th 394, 402 (2015). Furthermore, to allege a breach of contract in California, a claimant must identify not only the contract at issue, but also which provisions were breached: Claimant has done neither. *See* e.g., *Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056 (2016). Here, no contract is even identified, let alone which provision was allegedly breached.

Additionally, even assuming that Respondent is obligated to comply with FINRA rules (as a regulated party), no private cause of action can arise from any hypothetical breach/violation of any account opening documents.

Finally, Claimant's claim for breach of contract is derivative and arises from Claimant's other claims. As this claim is entirely derivative in nature, it fails for the same reasons discussed above and must be dismissed.

**C. Claimant Has No Fraud Claim Under Any Applicable Law**

***1. Claimant Has No Fraud Claim Under the Federal Securities Act***

Claimant has no 10b-5 fraud claim under the Federal Securities Act. In order to prove a 10b-5 claim, Claimant must plead and prove each and every one of the following elements:

(1) a material misrepresentation (or omission);

(2) scienter, i.e., a wrongful state of mind;

(3) a connection with the purchase or sale of a security;

(4) reliance;

(5) economic loss; and

(6) "loss causation." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336,341 (2005). In this action, Claimant cannot meet any of these standards. As noted previously, all facts that she claims were omitted were in fact disclosed, and she cannot meet the burden of showing that her losses were caused by Emerson. Finally, Claimant cannot show scienter, as there is no evidence that Respondent acted intentionally to defraud her.

**2. *Claimant Has No Fraud Claim Under the California Securities Law***

Claimant's allegation that Respondent violated the California Securities Act is baseless and alleged without reference to any of the requisite provisions of California's securities fraud statute. Claimant vaguely refers to a violation of the California Securities Act § 25401, which states that it is unlawful for a person, in connection with the sale or purchase of a security, "to make an untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401. To show a violation of § 25401, a plaintiff must allege **with particularity** that "there was a sale or purchase of stock in California by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading." *See MTC Electronic Technologies Co., Ltd. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995).

Here, Claimant makes only conclusory statements that Respondent's conduct (somehow) amounted to fraudulently or negligently misrepresented material facts. Respondent neither made false or material misrepresentations, nor omitted information from Claimant. Claimant has failed to identify any misrepresentations or omissions with particularity, and any fraud claims must fail.

As with Claimant's 10b-5 fraud claim under the Federal Securities Act, courts have held that to show justifiable reliance on misrepresented or omitted information sufficient to constitute securities fraud, Claimant must show that with the exercise of reasonable diligence, she still could not have discovered the truth behind the alleged fraudulent omission or misrepresentation. In light of all the detailed disclosures Claimant received, no reliance on any alleged misstatement or omission could be justified.

**3. *Claimant Fails to Allege a Claim for Common Law Fraud***

Claimant generally alleges causes of action under "Negligent Misrepresentation or Omission" without pleading with any particularity the specific violations – let alone the applicable laws that Claimant brings these causes of action under.

Claimant cannot prove her claim of intentional or negligent misrepresentation. To prevail on a claim of fraudulent misrepresentation, Claimant must produce evidence that:

(1) the defendant represented to the plaintiff that an important fact was true;

(2) that representation was false;

(3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth;

(4) the defendant intended that the plaintiff would rely on the representation;

(5) the plaintiff reasonably relied on the representation;

(6) the plaintiff was harmed; and

(7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. *Perlas v. GMAC Mortg.*, LLC, 187 Cal. App. 4th 429, 434 (2010) (citing *Manderville v. PCG & S Group, Inc.*, 146 Cal.App.4th 1486, 1498 (2007)).

Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged. *Cadlo v. Owens–Illinois, Inc.*, 125 Cal.App.4th 513, 519 (2004) ("the mere assertion of reliance is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance."). In a fraud claim against a corporation, "a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written." *Perlas* 187 Cal. App. 4th at 434 (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996)).

Claimant merely alleges that Respondent had a duty to make accurate representations and disclosures to Claimant regarding the risks associated with her investments. Claimant then makes a conclusory statement that Respondent breached this duty. The allegations as to "misrepresentations" and/or "omissions" in the SOC are nowhere near pled with the requisite particularity for such a claim. Claimant does not allege any specific statement by Respondent that Respondent knew was false and cannot show that any statement by Respondent directly and proximately caused the damages alleged by Claimant. Respondent neither made false or material misrepresentations, nor omitted information from Claimant.



GN DEFENDANTS EXHIBIT 20

**D. The Breach of Fiduciary Duty Claim Should Be Dismissed**

Claimant cannot prevail in her claim for breach of fiduciary duty based on the purported facts outlined in her own SOC. In order to plead a cause of action for breach of fiduciary duty in California, "there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101, 3 Cal. Rptr. 2d 236, 240 (1991).

Claimant fails to plead the requisite elements with the necessary degree of particularity for such a claim. Emerson did not breach any fiduciary duty to Claimant. Moreover, if Respondent had, hypothetically speaking, breached its duty, the action or inaction of Emerson did not cause the alleged harm suffered by Claimant.

Claimant ultimately made her own decision to make the Investment purchases after receiving, reviewing, and signing a number of documents and disclosures in advance of her decision. Emerson satisfied any duties it owed to Claimant, and no false or misleading information was provided to her by Respondent. To the extent that Claimant suffered losses in relation to the investments at issue, such losses are the result of third-party actors and factors, and Emerson cannot be held liable for such losses. Claimant's breach of fiduciary duty claim should be denied in its entirety.

**E. Claimant Has No Negligence Claim**

Any purported negligence claim would fall within California tort law. California tort law requires five essential elements to be pled in order to bring a cause of action for negligence: "duty, breach, actual cause, proximate cause, and damages." *Clarke v. Hoek,* 174 Cal.App.3d 208, 213, 219 Cal.Rptr. 845, 850 (1985); *MTC Elec. Techs. Co. v. Leung*, 889 F. Supp. 396, 402 (C.D. Cal. 1995). In pleading a negligence claim, it must also be noted that there are "limits to the generality with which a plaintiff is permitted to state her cause of action, and ... the plaintiff must indicate the acts or omissions which are said to have been negligently performed. He may not recover upon the bare statement that the defendant's negligence has caused him injury." *Berkley v. Dowds*, 152 Cal. App. 4th 518, 527 (2007) (citing *Guilliams v. Hollywood Hospital*, 18 Cal.2d 97, 101 (1941)).

Claimant fails to even properly recite these basic elements, and her vague allegations as to any alleged duty and breach thereof are not pled with the requisite particularity for such a claim. Claimant does not allege any specific act by Respondent that breached any duty and cannot show that any act by Respondent directly and proximately caused the alleged damage.

Claimant's negligence claim must be dismissed with prejudice because she fails to plead the requisite elements. Rather, Claimant makes the conclusory statement that Respondent's conduct (somehow) amounted to negligence. As such, Respondent did not violate any duty nor did their conduct amount to negligence. Any decline in the value of Claimant's investment was not due to any negligent act by Respondent.

**F. Any Failure to Supervise Claim Is Baseless**

Any attempt to impose liability on Respondent by alleging that Emerson failed to supervise its agent is without factual or legal basis. "Failure to supervise" is not an independent basis for imposing liability. To prove a claim of failure to supervise, Claimant must first prove her substantive claims and then prove that Respondent allowed those alleged series of events to occur and/or was negligent in supervising Claimant's registered representative. *See Indemnified Cap. Invs., SA. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1412 (7th Cir. 1993); *See Lehoczky v. Commodity Futures Trading Comm'n*, 125 F.3d 844, 1997 WL 606863, *3 (2d Cir. 1997); *See* e.g. *Samedi v. Miami–Dade County*, 134 F. Supp. 1320, 1352-53 (S.D. Fla. 2001).

Here, Claimant not only fails to cite any relevant statutory or legal authority to support such a claim but also fails to establish an actual cognizable injury beyond mere hypothetical and speculative damages. Similarly, Claimant has failed to state with any specificity exactly how Emerson was derelict in any duty to supervise its agent, and instead, makes general claims that Respondent breached its duty of care to supervise its agent. These allegations are patently false and wholly unsupported by any factual information presented in the SOC. Even if Claimant could show a failure of supervision, which she cannot, it is irrelevant when the broker being supervised did nothing wrong.

In light of the fact that Claimant cannot prove any of her underlying claims with respect to any transaction or event in Claimant's accounts, any derivative causes of action for failure to supervise should be dismissed.

**G. Claimant Has No Claim for Control Person Liability**

The SOC does not present any case of control person liability or vicarious liability under the doctrine of *respondeat superior* against Emerson or any of its agents. Courts have stated their reliance on federal law for interpreting the pleading requirements for stating a claim under Title 15 and Section 20(a) of the Securities Act. *Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1315, 123 Cal. Rptr. 3d 803, 813 n.8 (2011). To establish a cause of action under Section 20(a) of the Securities Act, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5 and then show that the defendant exercised actual power over the primary violator. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

Similarly, a cause of action for vicarious liability through the doctrine of *respondeat superior,* requires that a plaintiff first establish the tortious conduct committed by an employee acting within the scope of employment and then demonstrate that the employer had the power and ability to control the method and results of the employee's professional activities. *See Oravecz v. New York Life Ins. Co.*, 95 Cal.Rptr.3d 1, 15 (Ct. App. 2009).

Here, there was no primary wrongdoing by any agent of Emerson. Therefore, there is no basis for liability under the doctrine of *respondeat superior* or under the control person liability statute. *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("in the absence of a viable claim of primary liability, plaintiff cannot state a claim…for control person liability under § 25504."). Therefore, there is no basis for control person or vicarious liability against Emerson or any of its agents under California law.

**H. There Is No Private Right of Action for Violation of FINRA Rules**

To the extent that Claimant cites to FINRA rules as the basis for causes of action, such claims should be denied. First, courts have considered this point for decades and have consistently come away with the conclusion that no such cause of action exists. *See*, e.g., *In re VeriFone Sec.*

*Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule will not support a private claim; *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 680–81 (9th Cir.1980) (Securities Exchange Act does not provide a private cause of action for violation of stock exchange rules, NASD rules); *Rolf v. Blyth Eastman Dillion & Co.*, 424 F.Supp. 1021, 1041 (S.D.N.Y. 1977), *aff'd*, 570 F.2d 88 (2d Cir. 1978) ("Each court that has considered the question has concluded that mere negligent violations of the NYSE or NASD rules are not actionable in federal court; rather, to form the basis for liability in damages, the broker's violations of the rules must be "tantamount to fraud."). *See also Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990) (no right of action for violation of NASD rules); *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413 (11th Cir. 1983) (no private right of action for violation of know your customer or suitability rules of SROs); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir. 1990) ("NYSE Rule 405 does not imply a private right of action"). *See also Kirkland v. E.F. Hutton and Co., Inc.*, 564 F. Supp. 427 (E.D. Mich., S.D., 1983); Emmons v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 532 F. Supp. 480 (S.D. Ohio, W.D.); *Golob v. Nauman Vandervoort, Inc.,* 353 F. Supp. 1264 (N.D. Ohio, W.D., 1972).

Even assuming that there was a private right of action for violation of FINRA rules, Respondent complied with all applicable rules and regulations. Emerson did not breach any duty that it owed to Claimant, nor did it fail to conduct adequate due diligence regarding either the recommended investment or the issuer of the investment at issue. Any allegations to the contrary entirely lack support in the evidence.

**I. Emerson's Conduct Was Consistent With the Standards of Reg BI**

The SEC's REG BI established a "best interest" standard of conduct for broker-dealers and associated persons when they make a recommendation to a retail customer of any securities transaction or investment strategy involving securities, including recommendations of types of

accounts."[3] All of Emerson's recommendations met this standard. (*See also* "Suitability - Section A" above).

## IV. <u>AFFIRMATIVE DEFENSES</u>

The foregoing discussion demonstrates that Respondent is not liable to Claimant under any of the theories of recovery set forth in the SOC. In addition, Respondent, as permitted by Rule 12303(a) of the Customer Code, offers the following defenses:

### FIRST AFFIRMATIVE DEFENSE

The SOC, and each purported cause of action contained therein, are barred because they fail to state facts sufficient to constitute a cause of action against Respondent.

### SECOND AFFIRMATIVE DEFENSE

In further response to the SOC, Respondent states that there is no private right of action and Claimant cannot state a claim for a violation of the rules of FINRA, the NASD, the NYSE, the SEC, or any other self-regulatory organization, including, without limitation, claims and allegations concerning unsuitability and failure to supervise.

### THIRD AFFIRMATIVE DEFENSE

The causes of action are barred by the applicable statutes of limitation and repose.

### FOURTH AFFIRMATIVE DEFENSE

Claimant is barred from recovery by the equitable doctrines of waiver, estoppel, unclean hands, and laches.

### FIFTH AFFIRMATIVE DEFENSE

Respondent is informed and believes, and on that basis alleges, that Claimant has failed to mitigate her damages, if any, and any damages awarded should be reduced accordingly.

---

[3] https://www.finra.org/rules-guidance/key-topics/regulation-best-interest

**SIXTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Claimant, at all times, retained authority for all transactions and investments at issue purchased through Respondent.

**SEVENTH AFFIRMATIVE DEFENSE**

Claimant is barred from recovery to the extent that she authorized, affirmed, and/or ratified the Investments, transactions, and all actions and/or omissions of which she now complains.

**EIGHTH AFFIRMATIVE DEFENSE**

The damages, if any, allegedly suffered by Claimant were proximately caused by, or were the consequence of, the conduct, actions, omissions, negligence, or intentional acts of Claimant and/or parties other than Respondent.

**NINTH AFFIRMATIVE DEFENSE**

Claimant expressly or implicitly consented to each and every action on the part of Respondent of which Claimant now complains.

**TENTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Respondent did not know, and in the exercise of reasonable care, could not have known of the alleged material misleading statements and omissions suggested in Claimant's SOC and, at all times, acted in good faith.

**ELEVENTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that a reasonable and justified statement of opinion regarding investments or market conditions is not actionable.

**TWELFTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that it is not liable for failing to predict market fluctuations, the performance of any of Claimant's investments, or any other matters at issue in the SOC.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Claimant knowingly and voluntarily assumed the risk of losing her invested assets.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Claimant is not entitled to an award of attorney's fees or costs because there is no basis under statute, contract, or otherwise for such an award for Claimant.

**FIFTEENTH AFFIRMATIVE DEFENSE**

The causes of action are barred, in whole or in part, by Claimant's acquiescence in the purported acts and/or omissions upon which they are predicated.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Respondent's acts were not willful, malicious, in bad faith, or motivated by ill-will or fraud.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The damages for which Claimant seeks to hold Respondent liable resulted in whole or in part from acts or omissions of third parties, and Respondent is not responsible for or liable to Claimant for the wrongful or negligent acts or omissions by these third parties.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

The claims at issue are barred in their entirety by the "bespeaks caution doctrine." *See In re Worlds of Wonder*, 35 F.3d 1407, 1413 (9th Cir. 1994).

**NINETEENTH AFFIRMATIVE DEFENSE**

Claimant's damages, if any, should be offset and reduced by the amount received from the investments at issue.

**TWENTIETH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Claimant's negligence-based claims are barred by the economic loss doctrine which prevents recovery on an unintentional tort basis for pure economic loss.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that, as a matter of law, the damages that Claimant seeks are too speculative to be awarded. *See Chanoff v. U.S. Surgical Corp.,* 857 F. Supp. 1011 (D. Conn. 1994).

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Claimant's damages, if any, were the consequence of the superseding cause of one or more third-party's conduct.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Claimant has failed to allege a factual or legal basis for an award of punitive damages and, to the extent that she seeks such relief, any such request for recovery of punitive damages must be denied. Furthermore, any claim for punitive damages is barred because an award of punitive damages would violate Respondent's constitutional rights under the due process clause of the Fourteenth Amendment and the excessive penalties clause of the Eighth Amendment to the United States Constitution.

**ADDITIONAL AFFIRMATIVE DEFENSES**

Respondent reserves its right to assert additional affirmative defenses in the event that discovery and/or investigation indicates that additional affirmative defenses are applicable.

## V. <u>RELIEF REQUESTED</u>

Respondent Emerson Equity LLC respectfully requests:

1. That all causes of action be dismissed in their entirety;
2. That Claimant take nothing by way of the SOC;
3. That Respondent be awarded its attorney fees and costs incurred defending the claims;
4. That Respondent's portion of the forum fees be assessed against Claimant; and
5. Such other and further relief as the Panel deems just and proper.

Dated: December 22, 2025

Respectfully submitted,

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP

*/s/ Amir Tadjedin*

Amir Tadjedin
Craig A. Vollono
David G. Smitham

Christopher Anthony
Tyler G. Mills

*Attorneys for Respondent*
*Emerson Equity LLC*

EMERSONEQUITY

Date: 11 / 14 / 2022

**Client Name:** Nikki Chua

*Via Email*

Re: Letter of Understanding – Investment in Inspired Senior Living of Grapevine DST

Dear Nikki Chua,

I write regarding your investment in Inspired Senior Living of Grapevine DST and to confirm that you are fully aware of the risks involved with investing in this specific offering and are comfortable with these types of investments generally, and that you are not concerned about the lack of liquidity in this investment as you have adequate resources for all your liquidity needs.

Further, you confirm that you are not concerned with:

☑ The concentration risk associated with placing a substantial portion of your disclosed net worth into a single offering;

and/or

The concentration risk associated with placing a substantial portion of your disclosed net worth into a single sponsor company.

(Please check all that apply)

We appreciate your attention to this matter and appreciate having you as a client.

Sincerely,

Emerson Equity LLC

Received and Acknowledged:

NikkiC

Client Name: Nikki Chua

Exhibit A

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *RESPONDENT EMERSON EQUITY LLC'S ANSWER TO THE STATEMENT OF CLAIM* was uploaded to the FINRA DR Portal by which the following were to receive service on December 22, 2025:

GOODMAN & NEKVASIL, P.A.
Kalju Nekvasil, Esq.
624 1st Avenue South
St. Petersburg, FL 33701
Email: gnmain@gnfirm.com

*Attorneys for Claimant*

FREEMAN MATHS & GARY, LLP
Chad Weaver, Esq.
3030 Old Ranch Parkway
Suite 200
Seal Beach, CA 90740-2713
Email: cweaver@fmglaw.com

*Attorney for Respondents*
*Patrick W. Lam and Ian McElreath*

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP

*/s/ Chris Harris*
Chris Harris