Amir Tadjedin (CA Bar No.186967; OR Bar No.055613; WA Bar No. 47414)
Craig A. Vollono (NY Bar No. 4446431)
David G. Smitham (CA Bar No.335635; NY Bar No. 4194676)
Christopher Anthony (OR Bar No. 257313; MD Bar No. 1512150017)
Tyler G. Mills (OR Bar No. 215303)

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Tel: 503-224-9294
amirt@ttelawgroup.com
craigv@ttelawgroup.com
davids@ttelawgroup.com
christophera@ttelawgroup.com
tylerm@ttelawgroup.com

*Attorneys for Respondent*
*Emerson Equity LLC*

**IN THE ARBITRATION BEFORE THE**

**<u>FINANCIAL INDUSTRY REGULATORY AUTHORITY</u>**

| | |
|---|---|
| DAVID LOWENSTERN, INDIVIDUALLY AND AS MANAGER OF VALLEY GARDENS LLC,<br><br>Claimant,<br><br>v.<br><br>EMERSON EQUITY LLC (CRD# 130032),<br><br>Respondent. | Arbitration No. 25-02215<br><br>**RESPONDENT EMERSON EQUITY LLC'S ANSWER TO THE STATEMENT OF CLAIM** |

Respondent Emerson Equity ("Emerson" or "Respondent") hereby submits its Statement of Answer pursuant to FINRA Rule 12303. Claimant David Lowenstern, individually and as Manager of Valley Gardens LLC, ("Claimant") filed his Statement of Claim ("SOC") against Respondent alleging: (1) unsuitability; (2) violation of Federal and state securities laws and fraud; (3) breach of fiduciary duty; (4) breach of contract; (5) negligence; and (6) violations of Reg BI.



GN DEFENDANTS EXHIBIT 26

## I. PRELIMINARY STATEMENT

Respondent denies any allegation of wrongdoing or actionable conduct. Respondent affirmatively states that its actions were in conformity with all applicable laws, rules, and regulations, as well as industry standards and practices. To the extent that Claimant suffered any losses from the investments at issue, such losses were not the result of any culpable action or inaction by Respondent. Any allegation in Claimant's SOC, not specifically addressed herein, shall be deemed denied by Respondent. Respondent reserves the right to further amend its Statement of Answer and/or Affirmative Defenses based on the discovery of additional facts and information.

Claimant alleges in the SOC that he was defrauded in purchasing certain investments completed with Emerson (the "Investments" or "investments at issue"). All of the alleged claims are defective factually and legally.

First, Claimant was not an unsophisticated investor who only desired safe and secure investments. He was an "accredited investor" who had made unrealized profits from real estate investing, and he wished to avoid an immediate tax bill if he sold these investments. Second, contrary to what is portrayed in the SOC, Claimant received numerous detailed disclosures about the Investments prior to investing, and signed paperwork confirming the amount of his assets, his liquidity needs, and his net worth. The documents he received explained the nature of the Investments and the risks associated with these Investments. Any attempt to persuade this Panel that he is a naïve, unsophisticated individual, who was bamboozled into purchasing the Investments is utterly ridiculous.

Without basis, Claimant alleges deficiencies in due diligence by Emerson. Emerson, however, sold the Investments after performing the requisite due diligence and approving them for sale to those clients for whom the Investments were deemed suitable, including this Claimant.

The reality is that no one tricked Claimant into making his investment decisions, let alone misrepresented risks associated with the Investments. Claimant made his own decision to invest. This claim is nothing more than a transparent attempt by a disappointed investor to cast blame for those selected investments that may not have performed as well as he would have hoped. This

attempt should be denied, and Claimant should not be permitted to make Emerson a guarantor of the Investments.

## II. STATEMENT OF FACTS

### A. Respondent Emerson Equity LLC

Emerson (CRD No. 130032) is a broker-dealer registered with FINRA, the United States Securities and Exchange Commission, and all fifty U.S. states. Emerson's principal place of business is in San Mateo, California.

### B. Claimant Lowenstern is an Experienced Real Estate Investor

David Lowenstern is a New Jersey resident who owns Claimant Vine Gardens LLC, a company created to hold investments that he selected.

Based upon the information Claimant provided to Emerson, the Investments were suitable for him. In February 2022, Claimant Lowenstern told Emerson that he was an "accredited investor" as defined by the SEC and that he was an experienced real estate investor. His net worth (excluding the value of his home) was sufficient to permit him to make the Investments and he had "extensive knowledge" of investing in shares and mutual funds. Claimant told Emerson that his liquidity needs were "low." Claimant Lowenstern also advised Emerson that, although he was a "moderate" investor, he was willing to take higher risks with certain of Claimant's investments:

> **I consent to investments that may have risks that are different than the tolerances stated above, including Reg A or D offerings, Limited Partnerships, Notes or Debt Offerings, and/or Secondary Transactions, understanding that these types of investments carry high risk and are generally long-term, illiquid investments.**

Claimant Lowenstern thus acknowledged that he was willing to take higher risks with the type of investments about which he now complains.

In addition to any other investments, Claimant also maintained real estate investments in which he had made significant unrealized profits. A cash sale of the real estate would have resulted

in taxes being due and Claimant sought a way to defer payment of these taxes. Emerson recommended investments in in 1031 exchanges through Delaware Statutory Trusts ("DSTs").

**C. The Investments at Issue**

The investments at issue in the SOC concern transactions by Claimant in real estate-based DSTs, some of which were sponsored by Inspired Healthcare Capital LLC ("IHC"), but he invested in other DSTs issued by different sponsors and also made similar investments through a different broker dealer. The investments he made through Emerson included purchases of Inspired Senior Living of Naperville. Claimant made a number of DST investments through Emerson, but also alleges that he consulted with non-party Arkadios, before making at least one other investment through that firm.

**D. Claimant Invested in DSTs and Understood the Nature of His Investments**

Claimant understood the nature and risks of DST Investments. Any attempt to confuse the issues before the Panel by alleging that DSTs are complex investments and that the Claimant did not understand them is without foundation. A DST is simply an alternative way of making real estate investments and deferring taxes through a 1031 Exchange.[1] The structure and benefits of DSTs, as well as their associated risks, were explained in detail to the Claimant through the documents he received and executed, and he may not argue that he did not understand his DST investments.

The structure of a DST is not complex, and its permitted structure and activities are defined by IRS Revenue Ruling 2002-86 ("IRS 86").[2] A DST is a special legal entity, typically created by a "Sponsor" that acquires commercial properties to be held in a trust. The Sponsor then sells

---

[1] A 1031 exchange is a real estate tax break that allows commercial property sellers to exchange one investment property for another, like kind, property while deferring capital gains tax on the sale. Without this tax break, sellers must pay capital gains tax at the time of sale. (https://calawyers.org/real-property-law/what-is-a-1031-exchange/)

[2] DSTs are qualified as replacement properties as established by IRS Revenue Ruling 2002-86 ("IRS 86"). IRS 86 holds that a DST formed to hold real property subject to a lease under a trust agreement is classified as a trust for Federal tax purposes under § 301.7701-4(c). Each of Trust's owners is treated as an owner of a pro-rata portion of Trust. Because an owner of an undivided fractional interest in Trust owns for Federal tax purposes the assets of Trust attributable to that interest, each owner is considered to own for those purposes an undivided fractional interest in the real rental property held by Trust. Accordingly, under § 1031 of the Code, a taxpayer may exchange an interest in real property for an interest in Trust without recognition of gain or loss if the other requirements of § 1031 are satisfied.



GN DEFENDANTS EXHIBIT 26

beneficial interests in the trust to DST investors, which allows them to have an "undivided fractional interest" in the investment property owned by the trust. Because DSTs are qualified as replacement properties, as established by IRS 86, the seller of an investment property can defer their tax liability on profitable real estate sales if they acquire replacement property that is equal or greater value to the sale value, and if they utilize all of the proceeds resulting from their sale in the new DST investment. In short, the seller of property can choose to defer taxes by reinvesting 100% of the sale proceeds into a DST, rather than selling for cash and reinvesting the after-tax proceeds of the sale in other investments.

Investing in DSTs can offer other benefits as well as tax deferral through a 1031 exchange. A DST investment can offer diversification into large-scale properties and also potentially provide regular, passive income. DST investors are passive owners, as the Sponsor controls the property's management and sale and a professional trustee manages the property, thus allowing investors to participate in real estate investments without any on-going landlord management responsibilities.

Claimant was made aware of the risks and benefits of DSTs and confirmed this in the documents he executed. Despite being fully aware of the nature of his investments, Claimant now takes issue with the fact that those long-term investments may not have performed as he would have hoped in the short term. Claimant's claims are without basis and premature, and it is wholly inappropriate for him to seek to have Emerson insure their investment decisions.

**E. Any Allegations Concerning Concentration Make No Sense**

Any argument by Claimant that he was over concentrated in real estate through his Investments in DSTs makes no sense. Claimant could easily have sold his original properties, paid the capital gains tax on the sale, and reinvested in a portfolio of diverse investments, such as stock, bonds, or commodities. Instead, he invested in DSTs to take advantage of the deferred tax opportunities that DSTs offer, advantages which could only have been obtained by investing in real estate again.



GN DEFENDANTS EXHIBIT 26

**F. Claimant Seeks to Make Respondent a Guarantor of His Investments**

Claimant vaguely alleges misconduct by Respondent in connection with Claimant's decision to invest in DSTs, including those sponsored by Inspired Healthcare Capital LLC ("IHC"). Claimant is simply seeking to make Emerson a guarantor of the investments he made in IHC, a third-party entity over which Emerson had no control, following negative publicity about the activities of IHC.

IHC is an alternative investment sponsor dedicated exclusively to senior housing. Based in Scottsdale, Arizona, IHC focuses on properties that address the demands of seniors with an eye to America's aging population. IHC shared with the public its plans to acquire and develop senior housing facilities, including independent living, assisted living, and memory care.

In recent times, according to IHC, it managed assets exceeding $1.5 billion in value and acquired and ran senior living and healthcare facilities. Its offerings included private placements, such as DSTs. At the time of writing, IHC has suspended investment offerings and investor distributions.

**G. Claimant's Allegations Concerning Due Diligence Have No Foundation**

Claimant alleges unidentified failures of "due diligence," without any evidence or support for his claims. The "due diligence" process involves a review of a securities issuer's business prior to permitting the sale of an investment by a broker-dealer, but it is not a guarantee of the future success of that business, nor does the process make a broker-dealer a guarantor of Claimant's investments.

A due diligence review offers a snapshot of an issuers' business based upon documents and information available at the time the due diligence is conducted. The process involves no crystal ball and those conducting due diligence cannot be held responsible for unforeseen future events, such as those that occurred at IHC. Claimant has not offered a single example or indeed any evidence of any failure to complete due diligence in connection with his IHC investments and the allegations should be dismissed.

### H. The Written Documents That Claimant Signed Must Prevail Over Alleged Oral Statements

Courts have found that, as a matter of law, a Claimant may not claim reliance on alleged oral misrepresentations where those "misrepresentations" are contradicted by a written document. In short, where there is a shouting match about alleged conversations that took place some years ago, the written documents executed by Claimant must prevail.

Reliance on alleged oral fraudulent representations "…is unreasonable as matter of law where alleged misrepresentations contradict express terms of ensuing written agreement." *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283, 1295 (S.D. 2007). *See also First Union Discount Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 846 (11th Cir. 1993). *Solution Z v. Alma Lasers, Inc.*, 2013 WL 12246356 * 10 (S.D. 2013) (Granting a motion to dismiss on the grounds that it was unreasonable to rely on alleged oral representations which were specifically and repeatedly contradicted by the express terms of the contract.)

Documents warning investors that commercial real estate limited partnerships were risky investments precluded common-law fraud claims based on alleged oral statements that Plaintiff's investment was safe and conservative. *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544 (7th Cir. 1996).

A plaintiff's reliance on an oral statement is not reasonable when it is contradicted by a written contract between the parties or otherwise conflicts with a written document that is readily available to the plaintiff. *Daneshvar v. Kipke*, 266 F.Supp.3d 1031 (E.D. Mich. 2017). *See*, e.g., *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 125 (4th Cir. 1990) (finding that reliance on oral representations was not reasonable when contradicted by written offering memoranda); *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 805 (1st Cir.1987) (when plaintiffs "closed their eyes and passively accepted the contradictions" between oral misrepresentations and written representations, reliance was not justifiable as a matter of law).

Claimant has acknowledged his understanding of his DST Investments. In March 2022, Claimant made an investment in Inspired Senior Living of Naperville DST. He completed a purchaser questionnaire form, (the "Form") in connection with this investment. In capitals, the Form advised Claimant as follows:



GN DEFENDANTS EXHIBIT 26

**EACH PROSPECTIVE INVESTOR SHOULD EXAMINE THE SUITABILITY OF THIS TYPE OF INVESTMENT IN THE CONTEXT OF HIS OWN NEEDS, PURCHASE OBJECTIVES, AND FINANCIAL CAPABILITIES AND SHOULD MAKE HIS OWN INDEPENDENT INVESTIGATION AND DECISION AS TO SUITABILITY AND AS TO THE RISK AND POTENTIAL GAIN INVOLVED. ALSO, EACH PROSPECTIVE INVESTOR IS ENCOURAGED TO CONSULT WITH HIS ATTORNEY, ACCOUNTANT, FINANCIAL CONSULTANT OR OTHER BUSINESS OR TAX ADVISOR REGARDING THE RISKS AND MERITS OF THE PROPOSED INVESTMENT.**

Claimant Lowenstern affirmed that he was sufficiently experienced in financial matters to understand and evaluate the Investment:

**I have such knowledge and experience in financial and business matters that 1 am capable of evaluating the merits and risks of a purchase of the Interests.**

He told Emerson that he had **"10+ years"** of investing in real estate.

The Form also advised Claimant to "read carefully" the Confidential Private Placement Memorandum (the "Memorandum") for the investment. Claimant acknowledged that he had read the Memorandum (Form at page 4). The Memorandum included a summary of the risks of investing in the DST, including the illiquid nature of the Investment, then noted that a potential buyer must read and review the Memorandum, focusing on the section titled **"Risk Factors,"** which disclosed various potential risks associated with the Investment.

Claimant also signed a Purchaser Agreement in connection with his IHC Naperville purchase, in which Claimant acknowledged reading the Memorandum and explicitly agreed that he had relied on the written materials provided by Emerson, and not on any oral representations:

**4.3.1 Buyer acknowledges that it has received, read, and fully understands the Memorandum. Buyer acknowledges that it is basing its decision to invest in the Interest on the Memorandum and Buyer has relied only on the information contained in said materials and has not relied upon any representations made by any other person. Buyer recognizes that an investment in the Interest involves substantial risk and Buyer is fully cognizant of and understands all of the risk factors related to the purchase of the Interest, including, but not limited to, those risks set forth in the section of the Memorandum entitled "RISK FACTORS."**

Considering the above statements by Claimant, and the other documents executed by him, this Panel should reject Claimant's attempt to argue that that he relied on alleged statements from

his registered representative which contradicted the information that he acknowledged receiving. To the extent that Claimant's claims rely on any oral purported misrepresentations, such claims fail as a matter of law. Claimant could not have reasonably relied on them given the numerous written warnings and disclosures that he has acknowledged receiving.

## III. LEGAL ARGUMENT[3]

### A. The Recommendations Made to Claimant Were Suitable

To state a claim for unsuitability, an investor must prove that (1) the investment was incompatible with the customer's investment objectives at the time the recommendation was made; (2) the broker recommended the investment anyway; and (3) the broker knew or reasonably believed the investment was inappropriate. *Keenan v. D.H. Blair & Co.*, 838 F. Supp. 82, 86-87 (S.D.N.Y. 1993); *see Mauriber v. Shearson/American Express, Inc.*, 567 F. Supp. 1231, 1237 (S.D.N.Y. 1983); *see Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 813 n.3 (6th Cir. 2015); *see O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 898 n.6 (10th Cir.1992).

A suitability claim raises the question of whether the investment was appropriate at the time it was recommended. *Keenan*, 838 F. Supp. at 86-87. In other words, a suitability analysis entails a "point of sale" analysis. Conclusory allegations regarding unsuitable investments will not suffice, a plaintiff must adequately describe their investment goals and give some indication why plaintiff considers the investment at issue to have been unsuitable when purchased. *Keenan*, 838 F. Supp. at 87; *Betz v. Trainer Worthem & Co., Inc.*, No. C 03-3231 SI, 2004 WL 7340652, at *6 (N.D. Cal. Feb. 2, 2004) (Granting a motion to dismiss on ground that plaintiff failed to plead with particularity as to why the particular securities purchased were unsuitable for plaintiff at the time; why or in what way the defendants knew the securities were unsuitable for plaintiff; or what misrepresentations were made concerning suitability.). In addition, the investor must also show

[3] Claimant selected New Jersey as the venue for these claims, but also reference California law, presumably seeking some kind of advantage. Respondent denies violating the laws of any state. Respondent will answer only the New Jersey law-based allegations and will reserve the right to address the choice of venue issue separately.

that they justifiably relied on the broker's alleged wrongdoing. *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993). Finally, the investor must show that their losses were caused by the alleged wrongdoing. *See In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 273 F. Supp. 2d 351, 361-62 (S.D.N.Y. 2003), *aff'd in relevant part*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).

Suitability is evaluated at the time of the recommendation, and not after the fact with 20/20 hindsight. Of course, "a subsequent diminution in value reveals nothing about the quality of the stock when it was purchased and does not illuminate the reasons why the stock was unsuitable for investment objectives." *Keenan*, 838 F. Supp. at 86-87. Under federal securities law, an unsuitability claim falls under a § 10(b) fraud claim, which requires a finding "that, with scienter, the defendant made material misrepresentations. . . relating to the suitability of the securities" *Brown*, 991 F.2d at 1031. "Analytically, an unsuitability claim is a subset of the ordinary § 10(b) fraud claim." *Id.* Therefore, a plaintiff must show: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which Appellants relied (5) which proximately caused their injury. DSAM Glob. *Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002) (citing *McCormick v. Fund Am. Companies, Inc.*, 26 F.3d 869, 875 (9th Cir. 1994)).

Based upon the information provided by Claimant, the Investments were suitable for Claimant when they were purchased. Claimant was provided with numerous explicit risk disclosures regarding the Investments. He was an experienced real estate investor who purchased the Investments in accordance with his risk tolerance, liquidity needs, and investment objectives. Claimant has not, and cannot, identify a single written statement or document evidencing material misrepresentations or omissions by Emerson or its agents which show an intent to deceive or defraud Claimant.

**B. Claimant's Causes of Action Based in Fraud Are Baseless**

***1. Claimant Has No Fraud Claim Under the Federal Securities Act***

Claimant has no 10b-5 fraud claim under the Federal Securities Act. In order to prove a 10b-5 claim, Claimant must plead and prove all of the following elements:

(1) a material misrepresentation (or omission);

(2) scienter, i.e., a wrongful state of mind;

(3) a connection with the purchase or sale of a security;

(4) reliance;

(5) economic loss; and

(6) "loss causation." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336,341 (2005).

In this action, Claimant cannot meet any of these standards. As noted previously, all material facts he may claim were omitted were in fact disclosed, and he cannot meet the burden of showing that his losses were caused by Emerson. Finally, Claimant cannot show scienter, as there is no evidence that Respondent acted intentionally to defraud him. On the contrary, Claimant purchased the 1031 eligible investments that he sought.

**2. *Claimant's Common Law Fraud Claim Is Without Evidentiary Support***

Claimant cannot prove common law fraud. To maintain a cause of action for fraud in New Jersey, Claimant must demonstrate: (1) material misrepresentation of a presently existing or past fact; (2) knowledge or belief by defendant of its falsity; (3) intention that other person rely on it; (4) reasonable reliance thereon by other person; and (5) resulting damages. *Zelnick v. Morristown-Beard School,* 445 N.J.Super. 250, 267 (2015). Claimant must prove each and every element by "clear and convincing evidence." *Stochastic Decisions, Inc. v. DiDomenico,* 236 N.J.Super. 388, 395, (App.Div.1989).

In New Jersey, a pleading of fraud requires the Claimant to meet a heightened standard of pleading. Rule 4:5-8(a) of the New Jersey Rules of Civil Procedure, which is based on the Federal Rules of Procedure Rule 9(b), requires that pleading of fraud be made with specificity. Naked allegations of fraud are insufficient.

The SOC fails even to recite these basic elements of fraud, let alone to plead with particularity any conduct on the part of Respondent that constitutes fraud. Claimant fails to cite to any specific statements that Emerson misrepresented to and/or omitted from Claimant. Similarly, Claimant cannot show that Respondent made any statements to Claimant that Emerson knew were

false. Even assuming that a misrepresentation and/or omission had occurred, the substantial disclosures Claimant reviewed and acknowledged run counter to showing that any reliance on an allegedly misleading oral statement or omission was actually justifiable. Instead, Claimant vaguely asserts that Respondent defrauded them by recommending unsuitable investments and by making oral misrepresentations and/or omissions regarding the risks of the Investments, for which Claimant could not have reasonably relied upon given the numerous written warnings and disclosures he acknowledged receiving.

Claimant ultimately made his decision to make the Investment purchases after receiving, reviewing, and signing a number of documents and disclosures in advance of his decision. Emerson satisfied any duties it owed to Claimant, and no false or misleading information was provided to him by Respondent. To the extent that Claimant suffered any losses in relation to the investment at issue, such losses are the result of third-party actors and factors, and Emerson cannot be held liable for such losses.

**3. *Respondent Did Not Violate New Jersey Securities Law***

Claimant's allegation that Respondent violated New Jersey's securities fraud statute is baseless.[4] Claimant simply cannot prove the required elements of a claim under the New Jersey Uniform Securities Law N.J.S.A. 49:3-71, a Respondent may be liable for fraud if it:

> **(2) offers, sells or purchases a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), or**
>
> **(3) offers, sells or purchases a security by employing any device, scheme, or artifice to defraud, or**
>
> **(4) offers, sells or purchases a security by engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person…**

---

[4] Nor can Claimant allege a cause of action under New Jersey's Consumer Fraud Act ("CFA"). Securities are exempt from the CFA's provisions. *Estate of Parr v. Buontempo Ins. Services*, 2006 WL 2620504 *3 (Sept. 8, 2006).

Claimant does not allege with any specificity that Respondent violated any such statutory provisions.

In fact, Claimant simply allege that Respondent somehow failed to advise him about the nature of the Investments by omitting and, or, misrepresenting certain "material facts" during the process of investing in the Investments. The allegations as to "misrepresentations" and/or "omissions" in the SOC are not pled with the requisite particularity for such claims.

Claimant simply makes the conclusory statement that Emerson's conduct (somehow) amounted to fraudulently or negligently misrepresenting material facts. Respondent neither made false or material misrepresentations, nor omitted information from Claimant. On the contrary, Respondent provided substantial disclosure documents, which Claimant then acknowledged he reviewed and then knowingly made the Investments.

As with a 10b-5 fraud claim under the Federal Securities Act, courts have held that to show justifiable reliance on misrepresented or omitted information sufficient to constitute securities fraud, Claimant must show that with the exercise of reasonable diligence, he still could not have discovered the truth behind the alleged fraudulent omission or misrepresentation. In light of all the detailed disclosures Claimant received, no reliance on any alleged misstatement or omission could be justified. Claimant, who represented familiarity with real estate investments, reviewed and knowingly made his own decisions to invest.

**C. Claimant Fails to Allege a Breach of Contract Claim**

In New Jersey, to establish breach of contract claim, Claimant must plead and prove that: the parties entered into a contract containing and identify information concerning the contract. Claimant must identify the contract at issue; confirm that Claimant performed what was required of him under the contract; allege that Respondent did not fulfill its obligation under the contract and that Respondent's breach caused a loss to Claimant. *See Globe Motor Co. v. Igdalev,* 225 N.J. 469, 482, (2016) (citing *Model Jury Charge (Civil)* § 4.10A. Claimant bears the burden of proving each of the above elements by a preponderance of the evidence. Here, no enforceable contract is even identified.

Additionally, even assuming that this incoherent claim is a claim that Emerson is obligated to comply with FINRA rules (as a regulated party), no private cause of action can arise from any hypothetical breach/violation. There is no contract between Respondent and Claimant obligating Emerson to guarantee a course of conduct by the issuers.

Finally, Claimant's claim for breach of contract is derivative and arises from Claimant's other claims — namely, his allegations of fraud. As this claim is entirely derivative in nature, it fails for the same reasons discussed above and must be dismissed.

**D. The Breach of Fiduciary Duty Claim Should Be Dismissed**

Claimant cannot prevail on a claim for breach of fiduciary duty based on the purported facts outlined in his own SOC. To satisfy the elements of a claim for breach of fiduciary duty in New Jersey, a Claimant must allege four elements: (1) existence of a fiduciary duty arising from a relationship between the parties, (2) breach of that duty, (3) damages, and (4) a causal relationship between the breach and the damages. *Namerow v. PediatriCare Associates, LLC*, 461 N.J.Super. 133, 146 (2018). Claimant fails even to plead the requisite elements with the necessary degree of particularity for such a claim.

The simple fact is that Emerson did not breach any fiduciary duty to Claimant. Moreover, if Respondent had, hypothetically speaking, breached its duty, the action or inaction of Emerson did not proximately cause the alleged harm suffered by Claimant. Respondent's conduct fell well within the scope of any duty it may have owed to the Claimant. Emerson satisfied any duties it owed to Claimant, and no false or misleading information was provided to him by Respondent.

Claimant is an experienced investor, capable of making well-informed investment decisions. Indeed, Claimant was quite capable of analyzing the recommendations and exercised ultimate control and decision-making in completing the Investments. Claimant's registered representative did not take any action in Claimant's accounts prior to discussing the potential action and receiving instructions from Claimant to take such action. With full knowledge, substantial information, and a complete understanding of the risks, Claimant made the decisions regarding the investments at issue. Claimant knew and, until now, accepted the risks he was taking.

Now, Claimant must bear any consequences, whether positive or negative, of his informed investment decisions. Claimant's breach of fiduciary duty claim should be denied in its entirety.

**E. Claimant Has No Negligence Claim**

Claimant fails to assert any statutory violation of federal or New Jersey securities laws involving liability for a claim based in negligence. Moreover, Claimant cannot allege a private right of action under FINRA rules because no such private right of action exists Therefore, any purported negligence claim would fall within New Jersey tort law.

The elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 217 N.J. 199, 208, (2014). The Claimant bears the burden of establishing those elements by some competent proof and an action by Respondent must have been the actual and proximate of any alleged damages. *Davis v. Brickman Landscaping, Ltd.*, 98 A.3d 1173, 1179 (2014). Claimant fails even to properly recite these basic elements, and his vague allegations as to any alleged duty and breach thereof are not pled with the requisite particularity for such a claim.

Nor does Claimant adequately allege gross negligence. Ordinary negligence is converted to gross negligence when a defendant fails, for example, "to exercise a slight degree of care," where there is the "lack of even scant care," or where a defendant acts with "thoughtless disregard to the consequence that may follow from an act" or "utter unconcern for the safety of others." *Model Jury Charges (Civil),* "Gross Negligence" (2004). The Model Jury Charge goes on to explain that to make a finding of gross negligence the jury must find "[t]hat the injury was not the result of ... mistaken judgment.... [R]ather it must appear that the injury was the natural and probable result of the failure to exercise slight care or diligence." *Zelnick v. Morristown-Beard School,* 445 N.J.Super. 250, 268 (2015).

In fact, Claimant does not allege any specific act by Respondent that breached any duty and cannot show that any act by Emerson directly and proximately caused the alleged damages. Rather, Claimant makes the conclusory statement that Respondent's conduct somehow may have

amounted to negligence. Emerson did not violate any duty nor did its conduct amount to negligence in connection with the investments at issue. To the contrary, Respondent exercised reasonable care and provided detailed disclosure documents, which Claimant was then able to review, research, and he knowingly made his decisions to purchase the investments at issue. Nor can Claimant prove causation - any decline in the value of Claimant's Investments was not due to any negligent act by Emerson. Accordingly, Claimant's negligence claim must be dismissed with prejudice.

**F. Any Failure to Supervise Claim Is Baseless**

Any attempt to impose liability on Respondent by alleging that Emerson failed or neglected to supervise registered representatives is without factual or legal basis. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito,* 217 N.J. 199, 208 (2014).

For a claim of negligent supervision in particular, a Claimant must show that the employer or other party with a responsibility to supervise an employee "knew or had reason to know that the failure to supervise or train [the] employee in a certain way would create a risk of harm," and that the "risk of harm materialize[d] and cause[d] the plaintiff's damages." *G.A.-H. v. K.G.G.,* 238 N.J. 401, 416 (2019). *See also McDermid v. 3M Company*, 2024 WL 3281984 (N.J. July 3, 2024). However, a claim of negligent supervision alone is not an independent basis for imposing liability against an employer, as Claimant must first show that he was injured by the wrongful act of an employee.

Claimant not only fails to properly plead the requisite elements of a negligent supervision claim under applicable law but also fails to establish an actual cognizable injury beyond mere hypothetical and speculative damages. Claimant cannot identify any New Jersey-recognized common-law tortious conduct committed by any agent of Emerson occurring outside the scope of their employment and make no attempt to connect any agent of Emerson's employment history to any alleged tortious conduct leading to any alleged injury. Similarly, Claimant has failed to state with any specificity exactly how Emerson was derelict in any duty to supervise any agent of

Emerson and cannot show that any hypothetical breach proximately caused any alleged injury suffered by Claimant. Instead, Claimant simply makes blanket and general statements that Emerson breached its duty of care to supervise.

In actuality, Emerson exercised more than reasonable supervision over its agents as it relates to the investments at issue by carefully reviewing the new account forms, subscription documents, and other materials that Claimant reviewed, as required by FINRA rules. Even if Claimant could show that Emerson negligently supervised any of its agents, which he cannot, it is irrelevant when the broker being supervised did nothing wrong.

In light of the fact that Claimant cannot prove any of his underlying claims with respect to any transaction or event in Claimant's accounts, any derivative causes of action for failure to supervise should be dismissed.

**G. Emerson and Its Agents Have No Control Person Liability**

The SOC does not present any case of control person liability or vicarious liability under the doctrine of *respondeat superior* against Respondent or its agents under any law, state or Federal. First, a control person liability claim must also satisfy the heightened pleading requirements of the federal Private Securities Litigation Reform Act ("PSLRA"). *Lustgraaf v. Behrens*, 619 F.3d 867, 958 (8th Cir. 2010). Under PSLRA's falsity requirement, it is not enough to simply allege that fraud has occurred, a complaint must indicate the false statements that were made and why the alleged misstatements were false when made. *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir.2005). Also, under PSLRA's scienter requirement, it is not enough to allege generally that the defendant acted with scienter, the plaintiff must, "with respect to each act or omission alleged ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012) (citing 15 U.S.C. § 78u–4(b)(2)). Here, Claimant fails to show any evidence to support his control person claim.

Second, to find someone liable as a control person, Claimant must first prove an underlying wrong: there was no primary wrongdoing by Respondent or its agents, and therefore, no basis for

liability under the doctrine of *respondeat superior* or under the control person liability statute. *See* 15 U.S.C. § 78t(a); *see Schwartz v. Celestial Seasonings, Inc.*, 904 F. Supp. 1191, 1201 (D. Colo. 1995) (holding that the failure of claimant to adequately plead securities fraud under either the Securities Act or the Exchange Act also precluded any finding of control person liability under either Act).

Third, Federal securities law concepts described above are also used to define a "control person" under the relevant New Jersey statute. *Abrams v. Ohio Cas. Ins. Co*., 322 N.J.Super. 330, 337 (1999). In New Jersey, courts have found that an officer who does not "personally participate" in a tort may not be found liable as a control person. *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 303 (2002). (Finding that a predicate to a corporate officer's personal liability under the participation theory is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer, and the officer breached the duty of care by his own personal conduct.)

Emerson denies any alleged wrongdoing and basis for liability, including any misconduct on the part of the registered representatives at issue. Therefore, there is no basis for control person or vicarious liability against Emerson or any of its agents under any state or Federal law.

**H. There is No Private Right of Action for Alleged Violation of FINRA Rules**

Claimant cites to numerous FINRA rules as the basis of several causes of action. First, courts have considered this point for decades and have consistently come away with the conclusion that no such cause of action exists. *See*, e.g., *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule will not support a private claim; *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 680–81 (9th Cir.1980) (Securities Exchange Act does not provide a private cause of action for violation of stock exchange rules, NASD rules); *Rolf v. Blyth Eastman Dillion & Co.*, 424 F.Supp. 1021, 1041 (S.D.N.Y. 1977), *aff'd*, 570 F.2d 88 (2d Cir. 1978) ("Each court that has considered the question has concluded that mere negligent violations of the NYSE or NASD rules are not actionable in federal court; rather, to form the basis for liability in damages, the broker's violations of the rules must be "tantamount to fraud."). *See also Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990) (no right of action for violation of

NASD rules); *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413 (11th Cir. 1983) (no private right of action for violation of know your customer or suitability rules of SROs); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir. 1990) ("NYSE Rule 405 does not imply a private right of action"). *See also Kirkland v. E.F. Hutton and Co.*, Inc., 564 F.Supp. 427 (E.D. Mich., S.D., 1983); *Emmons v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 532 F.Supp. 480 (S.D. Ohio, W.D.); *Golob v. Nauman Vandervoort, Inc.*, 353 F.Supp. 1264 (N.D. Ohio, W.D., 1972).

Even assuming that there was a private right of action for violation of FINRA rules, Respondent complied with all applicable rules and regulations. Emerson did not breach any duty that it owed to Claimant, nor did it fail to conduct adequate due diligence regarding either the recommended Investments or the issuers of the investments at issue. Any allegations to the contrary entirely lack support in the evidence.

**I. Emerson's Conduct Was Consistent With the Standards of Reg BI**

The SEC's REG BI established a "best interest" standard of conduct for broker-dealers and associated persons when they make a recommendation to a retail customer of any securities transaction or investment strategy involving securities, including recommendations of types of accounts." All of Emerson's recommendations met this standard. (*See also* "Suitability - Section A" above).

## IV. AFFIRMATIVE DEFENSES

The foregoing discussion demonstrates that Respondent is not liable to Claimant under any of the theories of recovery set forth in the SOC. In addition, Respondent, as permitted by Rule 12303(a) of the Customer Code, offers the following defenses:

### FIRST AFFIRMATIVE DEFENSE

The SOC, and each purported cause of action contained therein, is barred because they fail to state facts sufficient to constitute a cause of action against Respondent.

**SECOND AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that there is no private right of action and Claimant cannot state a claim for a violation of the rules of FINRA, the NASD, the NYSE, the SEC, or any other self-regulatory organization, including, without limitation, claims and allegations concerning unsuitability and failure to supervise.

**THIRD AFFIRMATIVE DEFENSE**

The causes of action are barred by the applicable statutes of limitation and repose.

**FOURTH AFFIRMATIVE DEFENSE**

Claimant is barred from recovery by the equitable doctrines of waiver, estoppel, unclean hands, and laches.

**FIFTH AFFIRMATIVE DEFENSE**

Respondent is informed and believes, and on that basis alleges, that Claimant has failed to mitigate his damages, if any, and any damages awarded should be reduced accordingly.

**SIXTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Claimant, at all times, retained authority for all transactions and investments at issue, purchased through Respondent.

**SEVENTH AFFIRMATIVE DEFENSE**

Claimant is barred from recovery to the extent he authorized, affirmed and/or ratified the Investment, transactions, and all actions and/or omissions of which he now complains.

**EIGHTH AFFIRMATIVE DEFENSE**

The damages, if any, allegedly suffered by Claimant were proximately caused by, or were the consequence of, the conduct, actions, omissions, negligence, or intentional acts of Claimant and/or parties other than Respondent.

**NINTH AFFIRMATIVE DEFENSE**

Claimant expressly or implicitly consented to each and every action on the part of Respondent of which Claimant now complains.

**TENTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Respondent did not know, and in the exercise of reasonable care, could not have known of the alleged material misleading statements and omissions suggested in Claimant's SOC, and at all times, acted in good faith.

**ELEVENTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that a reasonable and justified statement of opinion regarding investments or market conditions is not actionable.

**TWELFTH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that it is not liable for failing to predict market fluctuations, the performance of any of Claimant's investments, or any other matters at issue in the SOC.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Claimant knowingly and voluntarily assumed the risk of losing his invested assets.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Claimant is not entitled to an award of attorney's fees or costs because there is no basis under statute, contract, or otherwise for such an award for Claimant.

**FIFTEENTH AFFIRMATIVE DEFENSE**

The causes of action are barred, in whole or in part, by Claimant's acquiescence in the purported acts and/or omissions upon which they are predicated.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Respondent's acts were not willful, malicious, in bad faith, or motivated by ill-will or fraud.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The damages for which Claimant seeks to hold Respondent liable resulted in whole or in part from acts or omissions of third parties, and Respondent is not responsible for or liable to Claimant for the wrongful or negligent acts or omissions by these third parties.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

The claims-at-issue are barred in their entirety by the "bespeaks caution doctrine." *See In re Worlds of Wonder*, 35 F.3d 1407, 1413 (9th Cir. 1994).

**NINETEENTH AFFIRMATIVE DEFENSE**

Claimant's damages, if any, should be offset and reduced by the amount received from the investments at issue.

**TWENTIETH AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Claimant's negligence-based claims are barred by the economic loss doctrine, which prevents recovery on an unintentional tort basis for pure economic loss.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that, as a matter of law, the damages that Claimant seeks are too speculative to be awarded. *See Chanoff v. U.S. Surgical Corp.*, 857 F. Supp. 1011 (D. Conn. 1994).

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Claimant's damages, if any, were the consequence of the superseding cause of one or more third-party's conduct.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

In further response to the SOC, Respondent states that Claimant has failed to allege a factual or legal basis for an award of punitive damages and to the extent that he seeks such relief, any such request for recovery of punitive damages must be denied. Furthermore, any claim for punitive damages is barred because an award of punitive damages would violate Respondent's constitutional rights under the due process clause of the Fourteenth Amendment and the excessive penalties clause of the Eighth Amendment of the United States Constitution.

**ADDITIONAL AFFIRMATIVE DEFENSES**

Respondent reserves its right to assert additional affirmative defenses in the event that discovery and/or investigation indicates that additional affirmative defenses are applicable.

## V. RELIEF REQUESTED

Respondent Emerson Equity LLC respectfully requests:

1. That all causes of action be dismissed in their entirety;
2. That Claimant take nothing by way of the SOC;
3. That Respondent be awarded its attorney fees and costs incurred defending the claims;
4. That Respondent's portion of the forum fees be assessed against Claimant; and
5. Such other and further relief as the Panel deems just and proper.

Dated: December 16, 2025

Respectfully submitted,

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP

*/s/ David G. Smitham*

Amir Tadjedin
Craig A. Vollono
David G. Smitham
Christopher Anthony
Tyler G. Mills

*Attorneys for Respondent Emerson Equity LLC*

redacted

Name: [redacted]

Addres[redacted]

Date: 03 / 07 / 2022

Emerson Equity LLC
155 Bovet Road, Suite 725
San Mateo, CA 94002

Re: Letter of Understanding - Investment In IHC Naperville

To Whom It May Concern:

I/We are fully aware of the risks involved with investing in *(list investment)* IHC Naperville and are comfortable with these types of investments. I/We are not concerned with the lack of liquidity, as I/we have adequate resources for all my/our liquidity needs.

In light of volatility of my/our stock investments, I/we believe I/we are helping to diversify my/our overall portfolio investing in these types of assets.

Sincerely,

Signature: David Lowenstern

Name: David Lowenstern

**Exhibit A**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *RESPONDENT EMERSON EQUITY LLC'S ANSWER TO THE STATEMENT OF CLAIM* was uploaded to the FINRA DR Portal by which the following were to receive service on December 16, 2025:

GOODMAN & NEKVASIL, P.A.
Kalju Nekvasil, Esq.
624 1st Avenue South
St. Petersburg, FL 33701
Email: gnmain@gnfirm.com

*Attorney for Claimant*

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP

*/s/ Chris Harris*
Chris Harris