CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *ET AL.*<br><br>DEBTORS. | CHAPTER 11<br><br>CASE NO. 26-90004-mxm-11<br><br>(JOINTLY ADMINISTERED) |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *ET AL.*<br><br>PLAINTIFFS,<br><br>v.<br><br>AURORA SECURITIES, ET AL.,<br><br>DEFENDANTS. | ADV. PROC. NO: 26-09006 |

**ORDER GRANTING PLAINTIFF-DEBTORS' REQUEST**
**<u>FOR PRELIMINARY INJUNCTION</u>**
*[RELATES TO ADV. ECF NO. 3]*

Before the Court is the *Plaintiffs' Emergency Motion for Injunctive Relief* (the "***Motion***")[1] by which the Plaintiff-Debtors seek (a) entry of a preliminary injunction under 11 U.S.C. § 105(a) and Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Federal Rules of Bankruptcy Procedure enjoining "all persons and entities," including the Defendants, from commencing or continuing any and all IHC Investment-Related Claims[2] against any Non-Debtor Defendants[3] including, but not limited to, those specific proceedings listed on *Schedule 1* attached to the Complaint; and/or (b) extending the automatic stay under 11 U.S.C. § 362(a) in the Plaintiff-Debtors' above-captioned bankruptcy cases to include any such proceedings against any Non-Debtor Defendants.[4]

The Court has reviewed and carefully considered the Motion, the Plaintiff-Debtors' Brief,[5] the Objections[6] filed on behalf of approximately 90 Objecting FINRA Claimants,[7] the testimony of witnesses, the documents admitted into evidence,[8] the documents of which judicial notice was requested or is specifically referenced in this Order, and the arguments of counsel.

---

[1] Adv. ECF No. 3. Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the *Plaintiffs' Verified Complaint for Declaratory Judgment and Injunctive Relief,* ECF No. 1 (the "***Complaint***"). *See* BD Ex. 1 (Exhibits referenced in this Order are identified as follows: Plaintiff-Debtors' exhibits: "P Ex. __"; Ad Hoc Group of Broker Dealers' exhibits: "BD Ex __"; and Objecting Defendants' exhibits: "GN Ex__").

[2] For purposes of this Order, "***IHC Investment-Related Claims***" means any lawsuit, arbitration proceeding (including before FINRA), or any other legal proceeding against any Non-Debtor Defendant arising from or relating to any purchase or sale of Investment Fund Securities or DST Interests issued by the Plaintiff-Debtors or their affiliates, or relating to any alleged act or omission of any Non-Debtor Defendant in connection with those offerings. Additional claims and lawsuits that may be filed in connection with an IHC Investment-Related Claim by an IHC Investor that are not included on *Schedule 1* to the Complaint as a Listed Action, are referred to herein as, ("***Later-Filed Actions***").

[3] Non-Debtor Defendants include the Broker-Dealers (defined *infra* in § II(a)) and Mr. Luke Lee (together, the "***Non-Debtor Defendants***").

[4] *See generally* BD Ex. 1.

[5] *Plaintiffs' Brief in support of Emergency Motion for Injunctive Relief,* Adv. ECF No. 4 (the "***Plaintiff-Debtors' Brief***").

[6] *Objection to Debtors' Emergency Motion for Injunctive Relief – Temporary Restraining Order,* Adv. ECF No. 17; *Defendants' Response to Plaintiffs' Emergency Motion for Injunctive Relief,* Adv. ECF No. 19; and *Defendants' Response to Plaintiffs' Emergency Motion for Injunctive Relief,* Adv. ECF No. 44 (together, the "***Objections***").

[7] *Id.* Approximately 67 FINRA claimant Defendants represented by Jones Murry LLP and approximately 23 FINRA claimant Defendants represented by Whitaker Chalk Swindle & Schwartz PLLC filed the Objections (together, the "***Objecting FINRA Claimants***").

[8] Adv. ECF No. 55.

For the reasons detailed below, the Court finds and concludes that the Plaintiff-Debtors' have satisfied the elements required for the issuance of a preliminary injunction under 11 U.S.C. § 105(a) and Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Federal Rules of Bankruptcy Procedure. Therefore, the request for the issuance of a preliminary injunction is ***GRANTED*** as detailed herein. Because the Court is issuing a preliminary injunction, the Court need not address the Plaintiff-Debtors' request for declaratory relief to further extend the automatic stay under 11 U.S.C. § 362(a) in the Plaintiff-Debtors' above-captioned bankruptcy cases. Therefore, the request to further extend the § 362(a) automatic stay is ***DENIED*** as moot, without prejudice.

## I. JURISDICTION

The Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b) and the standing order of reference in this District. The matter before the Court constitutes a core proceeding over which the Court has both statutory and constitutional authority to enter final orders pursuant to 28 U.S.C. § 157. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Notice of the Motion and the hearing on the Motion was sufficient and appropriate under the circumstances and in compliance with the requirements of Chapter 11 and title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules for the Northern District of Texas, and the *General Order Regarding Procedures for Complex Cases*.[9]

---

[9] *In re Procedures for Complex Cases*, General Order 2026-02 entered April 14, 2026, in the United States Bankruptcy Court for the Northern District of Texas - *General Order Regarding Procedures for Complex Cases*.

## II. BACKGROUND FACTS

### A. The Parties

Plaintiff-Debtor Inspired Healthcare Capital Holdings, LLC ("***Holdings***") is the parent entity of the Plaintiff-Debtors' enterprise (together, the "***Company***") and each Plaintiff-Debtor is a debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy cases. The Company was founded in 2016 to acquire or develop and oversee upscale senior living communities (the "***Communities***") throughout the country. Mr. Luke Lee ("***Mr. Lee***") was a co-founder of the Company and previously served as the Chief Executive Officer of Plaintiff-Debtor Inspired Healthcare Capital, LLC (the "***Debtor Sponsor***").

To raise capital to fund the acquisition and development of the Communities, the Debtor Sponsor raised funds through (i) various debtor fund entities formed as subsidiaries of Debtor Sponsor (each an "***Investment Fund***"), and (ii) various Delaware statutory trusts (each a "***DST***"). The various Investment Funds raised money through private-placement offerings of equity or debt (depending on the Investment Fund) to investors (the "***Fund Investors***"). Whereas the various DSTs raised money through private-placement offerings by selling beneficial interests in the various DSTs to investors (the "***DST Investors***" and together with the Fund Investors, the "***IHC Investors***").

To assist the Plaintiff-Debtors with marketing the private placement offerings to the IHC Investors, the Debtor Sponsor entered into a Managing Broker-Dealer Agreement[10] with a Managing Broker-Dealer. The Managing Broker-Dealer then allegedly entered into separate soliciting dealer agreements[11] with various Soliciting Dealers (together, with the Managing Broker-Dealer and each of

[10] *See* P Ex. 1 at pgs. 21-39; GN Ex. 4; DB Ex. 11. *Exclusive Managing Broker-Dealer Agreement* (the "***Managing Broker-Dealer Agreement***").
[11] No such agreements were offered into evidence. The uncontroverted testimony of Mr. Jones on this point suggests that the existence of such agreements is not in dispute. To be clear, the Court makes no findings about the existence or legal effect of any such agreements in this Order.

their respective officers, directors, employees, affiliated and associated individual brokers, and other agents, the "***Broker-Dealers***").

The Plaintiff-Debtors contend the Company ultimately raised more than $1.2 billion from approximately 3,300 Fund Investors and 2,300 DST Investors.[12] Of these total investors, the approximate 90 or so Objecting FINRA Claimants appeared in opposition to the injunctive relief sought in the Motion.

**B. The IHC Investment-Related Claims against Non-Debtor Defendants**

Beginning in mid-2025, IHC Investors began asserting IHC Investment-Related Claims against various Non-Debtor Defendants. To date, approximately 105 IHC Investors have commenced IHC Investment-Related Claims against Non-Debtor Defendants, which are identified on *Schedule 1* to the Complaint (the "***Listed Actions***"). None of the IHC Investment-Related Claims filed against Non-Debtor Defendants name a Plaintiff-Debtor as a respondent in the Listed Actions.

Mr. M. Benjamin Jones, the Plaintiff-Debtors' Chief Restructuring Officer ("***Mr. Jones***"), testified credibly that if injunctive relief is not granted, he anticipates other IHC Investors will file additional IHC Investment-Related Claims against additional Non-Debtor Defendants[13] (the "***Later-Filed Actions***").

**C. The Plaintiff-Debtors' Bankruptcy Cases and Request for Injunctive Relief**

On February 2, 2026 (the "***Petition Date***"), each of the Plaintiff-Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code initiating the above-captioned bankruptcy cases. As of the Petition Date, the Company owned 33 operating senior-living facilities, 2 partially completed senior-living facilities, and 3 parcels of real property designated for future senior-living facility development across 15 states.

---

[12] BD Ex. 1 at ¶ 30.
[13] *See* BD Exs. 8, 10.

On June 28, 2026, the Plaintiff-Debtors filed the Complaint and Motion seeking the requested injunctive relief enjoining all IHC Investment-Related Claims against Non-Debtor Defendants until the "effective date" of any confirmed plan(s) of reorganization or liquidation in the Plaintiff-Debtors' bankruptcy cases.

Effective June 30, 2026, the Court entered a Temporary Restraining Order[14] providing the requested injunctive relief and extending the § 362 automatic stay for 14 days through July 14, 2026. A final hearing on the Plaintiff-Debtors requested issuance of a preliminary injunction and/or further extension of the § 362 automatic stay was set on July 14, 2026.

At the final hearing, counsel to the DST Committee[15] and counsel to the UCC[16] each argued in support of the Plaintiff-Debtors' Motion. But both the DST Committee and the UCC urged that the injunctive relief should be limited to 120 days, without prejudice to the Plaintiff-Debtors, the DST Committee, the UCC to seek a further extension of such injunctive relief.

Following the hearing, the Court took the matter under advisement and, pursuant to Fed. R. Civ. P. 65(b)(2), orally extended the TRO for an additional 14 days, through July 28, 2026. The Court found good cause for the extension based on the Court's need for additional time to rule on the requested preliminary injunction and requested extension of the § 362 automatic stay.

## III. ANALYSIS

### A. Preliminary Injunction Under § 105, Rules 65 and 7065 —the Four-Factor Test

To be entitled to a preliminary injunction, the Plaintiff-Debtors must allege and establish four prerequisites:

---

[14] *Order Granting 14-Day Extension of the § 362 Automatic Stay and Issuing a Temporary Restraining Order under 11 U.S.C. § 105 and Rule 7065 of the Federal Rules of Bankruptcy Procedure Pending a Final Haring on Debtors' Motion to Further Extend the § 362 Automatic Stay and/or Issue a Preliminary Injunction,* Adv. ECF No. 30 (the "***TRO***").
[15] The Official Committee of Delaware statutory trust investors and claimants appointed in certain of the Plaintiff-Debtors bankruptcy cases (the "***DST Committee***").*See* Bkr. ECF No. 633.
[16] The Official Committee of Unsecured Creditors appointed in certain of the Plaintiff-Debtors bankruptcy cases (the "***UCC***"). *See* Bkr. ECF No. 161.

i. a likelihood of success on the merits;

ii. a likelihood of movant's irreparable harm if an injunction is not granted and issued;

iii. the balancing of equities tips in movant's favor; and

iv. an injunction will serve the public interest.[17]

"The first factor—likelihood of success on the merits—is 'the most important [factor].'"[18] But even with a strong likelihood of success, a court cannot give the other factors short shrift.[19]

The Plaintiff-Debtors offered the testimony of Chief Restructuring Officer, Mr. Jones, to satisfy their burden of establishing the above elements required for a preliminary injunction. The Court found Mr. Jones' testimony credible. Because Mr. Jones' testimony bears on multiple elements of the preliminary injunction analysis, the Court summarizes his testimony below:

- Mr. Jones first learned of pending FINRA arbitration actions against certain Non-Debtor Defendants in mid-February 2026, shortly after the Plaintiff-Debtors filed their respective bankruptcy petitions.[20]

- Mr. Jones initially thought approximately 20 FINRA arbitration actions had been commenced but has since discovered that over 100 such actions are currently pending with scheduled arbitration trial settings beginning in October 2026 with other trial settings scheduled through mid to late 2027.

- Mr. Jones also testified that the pending FINRA actions against the Non-Debtor Defendants center around the Company's private-placement offerings.[21] Therefore, as CRO of the Plaintiff-Debtors, he is concerned that:

    - The Plaintiff-Debtors face a substantial risk of the filing of indemnity claims arising, in part, from pending and future IHC Investment-Related Claims litigation and FINRA proceedings against the Non-Debtor Defendants; and

    - Those proceedings also may adversely affect property (and arguable estate property)[22] of the Plaintiff-Debtors' bankruptcy estates, including the

---

[17] *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Jackson v. Tarrant Cnty.,* 158 F.4th 571, 580-81 (5th Cir. 2025); *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 765 (5th Cir. 1995).

[18] *Jackson v. Tarrant Cnty.,* 158 F.4th 571 at 581; *see also Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023); *Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 463 (5th Cir. 2016).

[19] *Mock v. Garland*, 75 F.4th at 587 n.60; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. at 21-26.

[20] P Exs. 188-197; *see also* P Ex. 198.

[21] *See* P Exs. 188-198; GN Exs. 9-35.

[22] *See Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 303 (5th Cir. 2005) ("in the fact of uncertainty or ambiguity, courts should presume protection of arguable property").

dissipation and wasting of the estates' possible recovery of insurance proceeds caused by the payment of defense costs associated with the prosecution of IHC Investment-Related Claims.

- In mid-2025, Plaintiff-Debtors employed over 200 corporate-level employees but reduced to approximately 20 corporate employees by the time the Plaintiff-Debtors filed their bankruptcy cases. Currently Plaintiff-Debtors employ 14 corporate-level employees.

- Mr. Jones testified further that the remaining 14 corporate level employees now effectively hold "two full-time jobs."

  - First, the remaining 14 corporate-level employees maintain their daily responsibilities to uphold standard care for residents across the senior living Communities. Mr. Jones acknowledged that while the Communities rely on outside management companies, the slimmed-down core team is still tasked with overseeing the third-party management companies.

  - Second, the remaining 14 corporate-level employees must also handle the extraordinary demands of the Plaintiff-Debtors' bankruptcy cases, including:

    - assisting with obtaining and updating the necessary confidential sale memoranda for each Community;

    - assisting with updating the information to be included in the sale due diligence data room;

    - assisting with responding to specific due diligence requests from potential purchasers;

    - assisting with coordinating ongoing site visits by potential purchasers, which have to this point numbered over one hundred site visits which will continue through the scheduled August 2026 auction date and sale hearing;

    - assisting in gathering information and documents related to the ongoing negotiations with potential "stalking horse" bidders;

    - assisting with responding to information and document requests from the UCC;

    - assisting with responding to information and document requests from the DST Committee;

    - assisting with gathering information and documents responsive to requests from various secured creditors and parties-in-interest;

    - assisting with post-sale transitions for the facilities;

    - assisting with the preparation of required bankruptcy reports including, but not limited to, Monthly Operating Reports for each of the Plaintiff-Debtors;
    - gathering information and documents in response to requests from the Plaintiff-Debtors' retained professionals, the UCC, and the DST Committee regarding the ongoing forensic investigations; and
    - assisting with gathering the necessary information for the anticipated proposed disclosure statement(s) and plan(s) of reorganization or liquidation to be filed by the Plaintiff-Debtors after the conclusion of the pending sale process.

- Mr. Jones testified further that unless the IHC Investment-Related Claims litigation against the Non-Debtor Defendants is paused by a short preliminary injunction or extension of the § 362 automatic stay, estate resources will be compromised. Staff will be forced to monitor the IHC Investment-Related Claims litigation against Non-Debtor Defendants instead of focusing on the critical stages of the Plaintiff-Debtors' sale and plan efforts.

- Finally, Mr. Jones testified that substantial progress has been made in the Plaintiff-Debtors' sale and reorganization efforts that he believes can maximize recoveries for all creditors and parties-in-interest so long as he and the management team can devote their full time and attention to the upcoming sale and plan efforts.

In response, the Objecting FINRA Claimants offered the testimony of Mr. Kalju Nekvasil and Mr. Samuel B. Edwards. Mr. Nekvasil an attorney and his firm represent certain Objecting FINRA Claimants in the underlying FINRA arbitrations. Mr. Edwards is also an attorney and his firm represents other Objecting FINRA Claimants in the underlying FINRA arbitrations. The Court found the testimony of both Mr. Nekvasil and Mr. Edwards credible. Following is a summary of their testimony:

- Each of the FINRA arbitrations revolve around FINRA Rule 2111—commonly known as the suitability rule, which has two components:
    - know your product component—the reasonable-basis suitability component; and
    - know your client component—the customer-specific suitability component which requires the recommendation to align with the specific investor's financial needs and risk profile.

- None of the Plaintiff-Debtors are a party in any of the Objecting FINRA Claimants FINRA arbitration actions.

- It usually takes about nine months from the time an expedited track FINRA arbitration is filed to get to the final arbitration hearing, and a year from the time a standard FINRA arbitration is filed to get to the final arbitration hearing.

- The first FINRA arbitration filed by Mr. Nekvasil was filed last June (a year ago) with its final arbitration hearing scheduled for October 2026.

- The following harm will be suffered by the Objecting FINRA Claims if a preliminary injunction is issued or the § 362 automatic stay is extended:

    - Scheduled final hearings will be taken off calendar and cannot be rescheduled until the preliminary injunction or the extended § 362 automatic stay is lifted.

    - Once the preliminary injunction or the extended § 362 automatic stay is lifted, it can take up to a year before the final arbitration hearing can reset due to scheduling issues for the three arbitrators, counsel, and witnesses.

    - Non-IHC investors may proceed with arbitrations or litigation against the Non-Debtor Defendants. Consequently, IHC Investors risk losing recovery opportunities if available insurance proceeds are depleted by the non-IHC investor claimants before IHC Investors are able to prosecute their IHC Investment-Related Claims.

- Some of the FINRA arbitration cases filed by Mr. Nekvasil and Mr. Edwards involve only IHC Investment-Related Claims by their respective clients, but other FINRA arbitration cases involve IHC Investors that hold both IHC Investment-Related Claims and non-IHC related claims against the Non-Debtor Defendants.

- Both Mr. Nekvasil's and Mr. Edwards' law firms have and continue to solicit IHC Investors as potential clients who may have made IHC Investment-Related Claims against the Non-Debtor Defendants.[23]

The Court will next address each of the four prerequisites to the issuance of a preliminary injunction under § 105 and Rules 65 and 7065, in turn.

***1. Likelihood of Success on the Merits***

The Complaint contains two Counts—*Count I Declaratory and Injunctive Relief Pursuant to 11 U.S.C. § 362*; and *Count II Injunctive Relief Pursuant to 11 U.S.C. § 105*.[24] According to the

---

[23] *See* BD Exs. 8 and 10 respectively.
[24] BD Ex. 1 at ¶¶ 53-67.

Complaint, the Plaintiff-Debtors are seeking three ultimate goals. The goals are "(i) ensuring continued stability of day-to-day operations; (ii) maximizing estate value through a comprehensive strategic and investigative process; and (iii) fairly distributing estate proceeds through a confirmed Chapter 11 plan."[25] Therefore, the Plaintiff-Debtors contend that the "likelihood of success on the *merits*" is the likelihood that Plaintiff-Debtors can successfully obtain confirmation of their plan(s) of reorganization or liquidation.[26]

The Objecting FINRA Claimants, on the other hand, argue the Court should look to the pending Listed Actions, not the Complaint, to determine whether the Plaintiff-Debtors have established a "likelihood of success on the merits."[27] They further contend the Plaintiff-Debtors cannot establish a likelihood of success on the merits because the Plaintiff-Debtors are not respondents in the Listed Actions and do not share an "aligned interest" with the Non-Debtor Defendants, who are respondents in those proceedings.[28]

The Objecting FINRA Claimants confuse and conflate the two separate forms of relief requested by the Plaintiff-Debtors —(i) the issuance of a preliminary injunction under § 105 and Rules 65 and 7065,[29] as opposed to (ii) extending the § 362 automatic stay in the Plaintiff-Debtors' bankruptcy cases.[30] These two forms of relief are different and require satisfaction of separate elements.

---

[25] BD Ex. 1 at ¶ 12.

[26] *See Meutra, Ltd. v. Terry (In re Acis Cap. Mgmt, L.P.*), 604 B.R. 484, 528 (N.D. Tex. 2019); *In re Genesis Healthcare, Inc.,* No. 25-2963, 2026 WL 1194759, at *8 (N.D. Tex. May 1, 2026). *See also* 2 Collier on Bankruptcy P 105.03 ("In chapter 11 cases, the typical request will be for an injunction to preserve the status quo until reorganization can occur." Or "the first element is satisfied if 'a debtor seeking to stay an action against a non-debtor . . . show(s) a reasonable likelihood of a successful reorganization.").

[27] *See* Adv. ECF No. 17 at ¶¶ 14-15; Adv. ECF No. 19 at ¶ 37; Adv. ECF No. 44 at ¶¶ 17-24, 29-38.

[28] *Id.*

[29] *See* 11 U.S.C. § 105; Fed. R. Civ. P. 65; Fed. R. Bankr. P. 7065; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Jackson v. Tarrant Cnty.,* 158 F.4th 571, 580-81 (5th Cir. 2025).

[30] *See* 11 U.S.C. § 362; *see also Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2023 (*quoting GATX Aircraft v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985); *see also Gigi's Cupcakes, LLC v. 4 Box LLC*, 2019 U.S. Dist. LEXIS 67670 (N.D. Tex. Apr. 22, 2019).

Although the absence of an identity of interests may bear on whether the "unusual circumstances" exception warrants and extension of the § 362 automatic stay, it is legally unpersuasive in the Court's analysis of whether to issue a preliminary injunction under § 105 and Rules 65 and 7065. The primary goal of the Plaintiff-Debtors' Complaint is to confirm their plan(s) (of reorganization or liquidation) in their underlying bankruptcy cases. Accordingly, the lens through which the Court should determine the "likelihood of success on the merits," is whether the Plaintiff-Debtors will likely obtain confirmation of a plan (or plans) in their above-captioned bankruptcy cases.

The Objecting FINRA Claimants offered no credible evidence to rebut the Plaintiff-Debtors' substantial proof that they will likely be successful in obtaining confirmation of their anticipated plan(s) if a preliminary injunction is issued. Consequently, based on the credible evidence offered by the Plaintiff-Debtors, the Court finds and concludes the Plaintiff-Debtors satisfied their burden to establish the likelihood of success to obtain confirmation of their plan(s) in their above-captioned bankruptcy cases should the preliminary injunction be issued.

***2. Irreparable Harm if an Injunction is Not Granted***

To satisfy this prong of the preliminary injunction test, the Plaintiff-Debtors "must show that [they are] 'likely to suffer irreparable harm,' that is, harm for which there is no adequate remedy at law."[31] Additionally, such harm must be "likely rather than merely possible."[32]

The Plaintiff-Debtors contend that they will suffer at least three independent forms of harm if a preliminary injunction is not issued—(i) harmful distraction of the management team away from the critical stages in their bankruptcy cases; (ii) diminution and wasting of potential insurance proceeds caused by defense costs that are likely associated with the prosecution of IHC Investment-

[31] *See Daniels Health Scis., LLC v. Vascular Health Scis., LLC,* 710 F.3d 579, 585 (5th Cir. 2013); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
[32] *Id.*

Related Claims at this time; and (iii) increased risk of indemnity claims being asserted by the Non-Debtor Defendants against the Plaintiff-Debtors' bankruptcy estates. The Court found Mr. Jones' testimony on these points to be credible and justified.

In response, the Objecting FINRA Claimants first argue Mr. Jones admitted in his testimony that the Plaintiff-Debtors' management team has not been distracted by the pending FINRA arbitration proceedings thus far in their bankruptcy cases. The Court agrees. However, as Mr. Jones testified, he has since learned, after the Petition Date, that the number of pending FINRA arbitration proceeds are five times as many as he expected and upcoming FINRA arbitration trials are rapidly approaching. Accordingly, the Plaintiff-Debtors filed the Complaint and Motion at this time because they *now* require preliminary injunctive relief to prevent the anticipated disruption in their bankruptcy cases. The Court found Mr. Jones' testimony on this point credible.

The Objecting FINRA Claimants next argue the Plaintiff-Debtors are not respondents in any of the FINRA proceedings and therefore lack sufficient "identity of interests" with the Non-Debtor Defendants. They contend that the Plaintiff-Debtors' concern that they will face indemnity claims arising from those proceedings is speculative and without merit. Counsel for the Ad Hoc Group of Broker Dealers disagrees and asserts that such Broker Dealers possess viable indemnity claims against the Plaintiff-Debtors and they intend to assert those claims in a timely manner.

Regardless of whether any such indemnity claims are filed against the Plaintiff-Debtor's bankruptcy estates, the evidence established if the preliminary injunction is not granted, Mr. Jones and the Plaintiff-Debtors will have an immediate need to divert attention away from the current critical stages in the Plaintiff-Debtors' sales and plan efforts to monitor the IHC Investment-Related Claims and FINRA arbitration proceedings—the first of which is set for trial in October 2026.

Based on the credible testimony of Mr. Jones along with other credible evidence,[33] the Court finds and concludes the Plaintiff-Debtors satisfied their burden to establish that they will likely suffer irreparable harm if a temporary preliminary injunction is not issued.

***3. The Balancing of the Equities***

In this assessment, the Court weights "the competing claims of injury and [] consider[s] the effect on each party of the granting or withholding of the requested relief."[34] The harm to the Plaintiff-Debtors should a preliminary injunction not be issued is addressed in the previous prong of the preliminary injunction test. In addition to those specific harms, the Plaintiff-Debtors, the DST Committee, and the UCC each argue that the approximate 3,300 Fund Investors and 2,300 DST Investors will specifically be harmed if a preliminary injunction is not issued because they will be unfairly prejudiced by the Objecting FINRA Claimants and any other IHC Investors if they are allowed to jump the line and "race to the courthouse" with their alleged claims against the Non-Debtor Defendants.

In response, the Objecting FINRA Claimants contend that a preliminary injunction will cause them three primary harms. First, A preliminary injunction would halt all discovery and pre-trial activity. Messrs. Nekvasil and Edwards testified that FINRA arbitration actions currently scheduled for trial will lose their settings, and it will take between nine months to a year to be placed back the FINRA arbitration trial docket once the injunction is lifted. Although a delay for their clients constitutes some harm, it does not outweigh the harm to the Plaintiff-Debtors, their creditors, parties-in-interest and their bankruptcy estates, as established by the Plaintiff-Debtors, the DST Committee, and the UCC.

---

[33] *See* P Exs. 2-11, 13-37, 39-65, 67-89, 91-105, 110, 188-198; BD Exs. 8, 10, 12-28; 9-35; GN Exs. 9-35.
[34] *See Vanderstock v. BlackHawk Mfg. Grp. Inc.*, 639 F. Supp. 3d 722, 730 (N.D. Tx. 2022).

Second, Messrs. Nekvasil and Edwards testified further that harm to their clients may occur because many of their clients are elderly, making the prompt scheduling of their FINRA trials important. But the Court recognizes, as argued by the Plaintiff-Debtors, the DST Committee, and the UCC, a substantial number of the other approximate 3,300 Fund Investors and 2,300 DST Investors are also elderly. Further, the Plaintiff-Debtors, the DST Committee, and the UCC argue that the potential for a global resolution for the benefit of all such investors in a timely manner is outweighs allowing a few IHC Investors to race to the courthouse to attempt to obtain a recovery on their IHC Investment-Related Claims.

Finally, Messrs. Nekvasil and Edwards testified that enjoining the Objecting FINRA Claimants (and any IHC Investment-Related Claims) from proceedings against the Non-Debtor Defendants will allow investors with non-IHC related claims against the same Non-Debtor Defendants will enable the non-IHC claimants to exhaust all available insurance proceeds to the detriment of the ICH Investors. But the Plaintiff-Debtors, the DST Committee, and the UCC contend that the bankruptcy estates and all other IHC Investors will suffer substantially more harm if the Objecting FINRA Claimants are permitted to jump the line and "race to the courthouse" ahead of the potential claims of the thousands of other IHC Investors.[35]

After carefully considering the evidentiary record, the Court finds and concludes that the Plaintiff-Debtors have satisfied their burden to establish that the balancing of the equities favors the Plaintiff-Debtors and their bankruptcy estates over the Objecting FINRA Claimants. Therefore, the Plaintiff-Debtors have satisfied this prong for the issuance of a preliminary injunction.

---

[35] The Court recognizes and considers the fact that not all IHC Investors are the same or could satisfy the "know your client component" for a viable FINRA Rule 2111 action. But given the sheer numbers of IHC Investors, the Court can make a reasonable inference that many more than 100 or so might have viable claims. This reasonable inference is further supported by DB Exs. 8 and 10.

#### *4. The Public Interest*

The final prong requires the Court to balance the public interest served by issuing a preliminary injunction for the benefit of the Plaintiff-Debtors bankruptcy estates, their creditors and parties-in-interest, as opposed to the public interest to permit a limited number of investors to pursue their alleged IHC Investment-Related Claims through individual FINRA arbitration proceedings or other litigation without the interruption of a 120-day pause. After carefully considering the evidentiary record, the Court finds and concludes that under the facts of these cases, the public interest prong favors the Plaintiff-Debtors to complete their sale and reorganization process involving the 33 Communities, their approximately 2,620 Residents, and thousands of creditors and investors over the public interest for a limited number of Objecting FINRA Claimants or other IHC Investors to proceed with their potential individual IHC Investment-Related Claims without the interruption of a 120-day injunction.

Therefore, the Court finds and concludes that the Plaintiff-Debtors have satisfied this final prong for the issuance of a preliminary injunction.[36]

#### *5. Duration of the Preliminary Injunction*

The Plaintiff-Debtors request that the preliminary injunction remain in place until the effective date of their plan(s) of reorganization. Both the UCC and the DST Committee argue that a limited 120-day injunction is reasonable under the facts and circumstances of these cases. The Court agrees.

### B. Extending the § 362 Automatic Stay

In addition to requesting the Court to issue a preliminary injunction under 11 U.S.C. § 105(a) and Rules 65 and 7065, the Plaintiff-Debtors also request, in the alternative, for the Court to extend

---

[36] The Court recognizes that many of the Objecting FINRA Claimants are asserting both IHC Investment-Related Claims and non-IHC related causes of action against the Non-Debtor Defendants. To be clear, nothing in this Order prohibits any IHC Investor from pursuing non-IHC related causes of action against a Non-Debtor Defendant.

the § 362 automatic stay in their respective bankruptcy cases to include any all proceedings asserting IHC Investment-Related Claims against any Non-Debtor Defendants.

The law is well established that § 362(a)(1) imposes an automatic stay of any proceeding "*against the debtor*" and "[b]y its terms the automatic stay applies only to the debtor" not to a nonbankrupt co-defendant.[37] The Fifth Circuit, however, recognizes the "unusual circumstances" exception to this general rule—"[a] bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[38]

The Objecting FINRA Claimants oppose the extension of the § 362 automatic stay contending that the Plaintiff-Debtors cannot establish the requisite "identity of interest" between the Plaintiff-Debtors and the Objecting FINRA Claimants claims against the Non-Debtor Defendants.

Because the Plaintiff-Debtors have established the elements necessary for the issuance of a preliminary injunction under § 105(a) and Rules 65 and 7065, the Court need not address the request to extend § 362 automatic stay. Therefore, the Court denies the Plaintiff-Debtors' request to extend the § 362 automatic stay as moot, without prejudice.

## IV. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** as follows:

---

[37] *See Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *GATX Aircraft v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985).

[38] *See Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d at 825; *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001).

1. The Motion requesting the issuance of a preliminary injunction under 11 U.S.C. § 105(a) and Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Federal Rules of Bankruptcy Procedure is hereby ***GRANTED*** under the terms as set forth herein.

2. Any and all IHC Investors (including the Objecting FINRA Claimants) are hereby enjoined from:

   a. commencing any new lawsuit, arbitration proceeding (including before FINRA), regulatory proceeding, or any other legal proceeding against any Non-Debtor Defendant in connection with an IHC Investment-Related Claim;

   b. continuing to prosecute any Listed Action identified on *Schedule 1* attached to the Complaint, including by filing papers, conducting depositions, seeking or enforcing discovery, seeking defaults, or otherwise advancing those proceedings;

   c. serving any subpoena, deposition notice, discovery demand, or other legal process in connection with any Listed Action that would require the production of documents from, or testimony by, any current or former officer, director, or employee of any Debtor;

   d. taking any act to obtain possession of, or to exercise control over, property (or arguable property) of the Debtors' estates, including the D&O Policies and the proceeds thereof pending further order of this Court; and

   e. taking any collection activity on account of an IHC Investment-Related Claim against any Non-Debtor Defendant or its officers, directors, employees, or agents or its respective assets.

3. For the avoidance of doubt, (a) the relief ordered herein shall apply only to all IHC Investment-Related Claims against Non-Debtor Defendants, regardless of whether any

such claims or actions have been removed, remanded, transferred, dismissed and refiled under a different case number or is on appeal. For further avoidance of doubt, and notwithstanding anything to the contrary in this Order, the preliminary injunction imposed by this Order is intended to apply to all IHC Investment-Related Claims activity including, but not limited to, any such activity in the Listed Actions, whether offensive or defensive.

4. Nothing in this Order nor any actions taken pursuant to the relief granted herein is intended or shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Plaintiff-Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of the Plaintiff-Debtors' or any other party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against, or interest in, any Plaintiff-Debtor, its property, or its estate on any grounds; (c) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (d) a promise or requirement to pay any claim or other obligation including a deductible or self-insured retention; (e) granting third-party-beneficiary status, bestowing any additional rights on any third party, or being otherwise enforceable by any third party; (f) an impairment or waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law; (g) an admission of liability or wrongdoing by any Non-Debtor Defendant or any determination or finding with respect to the merits of any claim by or against any Non-Debtor Defendant; or (h) an impairment or waiver of any defenses available to any Non-Debtor Defendant in any current or future proceeding, including but not limited to statutes of limitations, laches, or any other procedural, substantive, or equitable defense.

5. Notwithstanding anything in this Order to the contrary, nothing in this Order shall (a) preclude any Non-Debtor Defendant from taking any action necessary to comply with applicable law, including but not limited to any obligation to respond to a regulatory inquiry or examination, preserve documents, or maintain required records; (b) affect the ability of any Non-Debtor Defendant to seek or obtain coverage under any applicable insurance policy; (c) preclude any Non-Debtor Defendant from defending against any claims by the Plaintiff-Debtors or the Plaintiff-Debtors' bankruptcy estates; or (d) require any Non-Debtor Defendant to take any action that would constitute a waiver of any applicable defense, privilege, or immunity.

6. For the avoidance of doubt, nothing in this Order shall preclude any Non-Debtor Defendant from filing a proof of claim, administrative claim, or other pleading in the Plaintiff-Debtors' Chapter 11 Cases or from participating in the claims allowance or plan confirmation process in the Chapter 11 Cases, including but not limited to filing objections to any proposed plan of reorganization or disclosure statement.

7. ***Initial Notice of Counsel of Record***. Within seven (7) calendar days of the entry of this Order, Plaintiff-Debtors shall serve a copy of this Order by first-class mail or, where available, by electronic mail upon (a) all counsel of record in each Listed Action, as identified in *Schedule 1* attached to the Complaint; (b) all plaintiffs/claimants in the Listed Actions for whom no counsel of record has been identified; and (c) all other parties listed on the Chapter 11 Cases' master service list.

8. ***Filing the Order in Other Forums***. Plaintiff-Debtors and any Non-Debtor Defendant are hereby authorized, without further order of this Court, to file a certified copy of this Order with any court, arbitration tribunal, regulatory body, or other forum in which any Listed Action or Later-Filed Action is pending or is commenced, for the purpose of

obtaining a stay, abatement, or dismissal without prejudice of such action consistent with the terms of this Order.

9. This Order is entered without prejudice to the Plaintiff-Debtors' rights to request that this Court extend this Order to include other entities, persons and actions not previously identified in *Schedule 1* attached to the Complaint pursuant to the following procedures.

10. ***Notice of Later-Filed Actions***. In the event that any person or entity commences a Later-Filed Action after entry of this Order:

a. The Plaintiff-Debtors, as applicable, shall serve a copy of this Order upon the plaintiff or claimant in the Later-Filed Action (and upon their counsel, if known) within three (3) business days of receiving notice of the commencement of such Later-Filed Action.

b. Service shall be affected by overnight mail and, where available, by electronic mail or through the service procedures of the applicable court or arbitration forum ("***Later-Filed Action Notice***").

c. Plaintiff-Debtors shall maintain a running supplemental schedule of all Later-Filed Actions, which shall be filed with this Court within the first business day of each calendar month during the pendency of the above-captioned bankruptcy proceeding.

d. This Order automatically applies to any Later-Filed Action at the moment of its commencement, without the need for a separate motion, hearing, or order of this Court. The fact that a claimant or plaintiff in a Later-Filed Action did not have actual notice of this Order prior to commencing such Later-Filed Action shall not affect the applicability of this Order to such Later-Filed Action, provided that the Plaintiff-Debtors shall promptly

provide actual notice of this Order to such claimant or plaintiff in accordance with this Order, and the stay of such Later-Filed Action shall take immediate effect upon the Plaintiff-Debtors' provision of such notice. Any Later-Filed Action filed in any court, arbitration forum, or regulatory body shall be automatically abated upon filing to the extent it asserts an IHC Investment-Related Claim, and the plaintiff or claimant therein shall be deemed to have immediate notice of this Order upon service as provided herein.

11. ***Objections – Inclusion of Later-Filed Actions***. Any plaintiff to a Later-Filed Action who objects to the extension of this Order to such Later-Filed Action may file an objection within seven (7) calendar days after receiving notice of this Order effected pursuant to paragraph 10 above. If no timely objection is filed, the action shall be deemed a Later-Filed Action as of the date of the Later-Filed Action Notice without further order of the Court. The Plaintiff-Debtors shall have seven (7) calendar days from the service of any such objection to file and serve a response. Absent a timely objection, the Plaintiff-Debtors' proposed additions shall be approved by order of this Court without the necessity of a hearing. If a timely objection is filed, the Court shall schedule a hearing on an expedited basis.

12. ***Supplementation of Schedule 1–Procedure to Add Actions to Schedule 1***. If Plaintiff-Debtors identify any action, arbitration, or other proceeding that was pending prior to the Order Date and that constitutes a Listed Action but was otherwise omitted from *Schedule 1* attached to the Complaint, the Plaintiff-Debtors may file a notice of supplementation (a "***Supplementation Notice***") with this Court identifying the action and the grounds for its inclusion.

a. The Supplementation Notice shall be served on all parties to the newly identified action and on counsel of record in the adversary proceeding.

b. This Order automatically applies to the proceeding identified in a Supplementation Notice upon filing of the Supplementation Notice and service of same, without the need for a separate motion, hearing, or order of this Court.

c. Any party objecting to the inclusion of such action in *Schedule 1* attached to the Complaint may file an objection within seven (7) calendar days of service of the Supplementation Notice. If no timely objection is filed, the action shall be deemed a Listed Action as of the date of the Supplementation Notice without further order of the Court. If a timely objection is filed, the Court shall schedule a hearing and briefing schedule on an expedited basis.

13. ***Bond Waiver***. Pursuant to Bankruptcy Rule 7065 and Federal Rule of Civil Procedure 65(c), the Plaintiff-Debtors are relieved from the requirement to post any security or bond as a condition to the issuance of injunctive relief. The Plaintiff-Debtors' ongoing reorganization, the nature of the relief sought, the equitable purposes served by this adversary proceeding, and the potential unjust burden on the Plaintiff-Debtors' estates constitute good cause for waiver of a security bond.

14. Notwithstanding anything to the contrary in this Order, this Order shall not require any Non-Debtor Defendant to take or refrain from taking any action in the Listed Actions that would constitute an admission of liability, a waiver of defenses, or a default, including but not limited to the failure to respond to pleadings, discovery, or motions to the extent such response is required to avoid an adverse consequence; provided, however, that any such responsive action by a Non-Debtor Defendant shall

be limited to the minimum necessary to avoid such adverse consequence, and such Non-Debtor Defendant shall promptly notify Plaintiff-Debtors' counsel of such action.

15. ***Tolling***. This Order shall toll any applicable statute of limitations, statute of repose, or any other time limitation under non-bankruptcy law, any order entered in a non-bankruptcy proceeding, or any agreement that fixes a period under which (a) an enjoined claimant or plaintiff is required to commence or continue a civil action in a court or forum other than this Court on any IHC Investment-Related Claim asserted against the Plaintiff-Debtors or any Non-Debtor Defendant, or (b) a Non-Debtor Defendant is required to assert any claim, defense, or counterclaim, in each case until the later of: (i) the end of such period, including any suspension of such period occurring on or after the Petition Date; or (ii) 30 days after the termination or expiration of this Order.

16. ***Cooperation by Non-Debtor Defendants with Estate Fiduciaries in Discovery***. In connection with the relief provided herein, the Non-Debtor Defendants shall accept email service of discovery requests provided by counsel to the Plaintiff-Debtors, the UCC, or the DST Committee, and shall cooperate in further reasonably requested discovery by such parties, provided, however, that (i) all information provided in such discovery pursuant to this paragraph shall be provided subject to that certain protective order governing the Chapter 11 Cases on a "Professional Eyes Only" basis and shall not be shared with any other party absent further order of this Court; and (ii) such Non-Debtor Defendants shall produce pursuant to this paragraph within fourteen (14) days of the date hereof (a) copies of insurance policies available to satisfy IHC Investment-Related Claims, and (b) financial statements or comparable financial information for the three most recent fiscal years.

17. This Order shall automatically expire 120 days from the entry of this Order on the Court's Docket, *to wit*, ***Saturday November 21, 2026***.

18. The Plaintiff-Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

19. This Order shall be immediately effective and enforceable upon its entry on the Court's Docket.

20. This Court retains exclusive jurisdiction over all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

21. The Plaintiff-Debtor's request in the Motion for declaratory relief to extend the automatic stay under 11 U.S.C. § 362(a) in the Plaintiff-Debtors' above-captioned bankruptcy cases is ***DENIED*** as moot, without prejudice.

**# # # END OF ORDER # # #**